ACCEPTED
15-25-00022-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/26/2025 10:33 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00022-CV

# In the Court of Appeals
# For the Fifteenth District of Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/26/2025 10:33:15 PM
CHRISTOPHER A. PRINE
Clerk

## City of Coppell, Texas, et al.,

### *Appellants,*

### v.

## Kelly Hancock, in His Official Capacity as Acting Comptroller of Public Accounts of the State of Texas,

### *Appellee.*

Appeal from the 201st Judicial District Court, Travis County, Texas
(Hon. Karin Crump, Presiding)

## Coppell Parties' Opening Brief as Appellants

James B. Harris
State Bar No. 09065400
james.harris@hklaw.com

Stephen F. Fink
State Bar No. 07013500
stephen.fink@hklaw.com

Richard B. Phillips, Jr.
State Bar No. 24032833
rich.phillips@hklaw.com

Reed C. Randel
State Bar No. 24075780
reed.randel@hklaw.com

HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 964-9500

**Counsel for Coppell Parties**

**Oral Argument Requested**

## IDENTITY OF PARTIES AND COUNSEL

| Appellants/Cross-Appellees | Counsel |
|---|---|
| City of Coppell, Texas<br>City of Humble, Texas<br>City of DeSoto, Texas<br>City of Carrollton, Texas<br>City of Farmers Branch, Texas | James B. Harris<br>Stephen F. Fink<br>Richard B. Phillips, Jr.<br>Reed C. Randel<br>Brandon L. King<br>Cole W. Browndorf<br>Holland & Knight LLP<br>1722 Routh Street, Suite 1500<br>Dallas, Texas 75201 |

| Appellee/Cross-Appellant | Counsel |
|---|---|
| Glen Hegar, in His Official Capacity as Texas Comptroller of Public Accounts | Kyle Pierce Counce<br>Deputy Division Chief<br>Tax Litigation Division<br><br>Deborah Rao[1]<br>Matthew Kennedy[2]<br>Amanda K. Romenesko[3]<br><br>Office of the Attorney General of Texas<br>P.O. Box 12548<br>Austin, Texas 78711<br><br>Ray Langenberg[4]<br>Special Counsel for Tax Litigation<br>Texas Comptroller of Public Accounts<br>Office of the Attorney General<br>Tax Division MC 029<br>P.O. Box 12548 |

---

[1] Ms. Rao is no longer counsel for the Comptroller.

[2] Mr. Kennedy is no longer counsel for the Comptroller.

[3] Ms. Romenesko is no longer counsel for the Comptroller.

[4] Mr. Langenberg is no longer counsel for the Comptroller.

| Cross-Appellee | Counsel |
|---|---|
| City of Round Rock, Texas | Cindy Olson Bourland<br>Bourland Law Firm, P.C.<br>P.O. Box 546<br>Round Rock, Texas 78680<br><br>Bryan J. Dotson[5]<br>Chamberlain Hrdicka<br>112 East Pecan Street, Ste. 1450<br>San Antonio, Texas 78205<br><br>Doug Sigel[6]<br>Ryan Law Firm, PLLC<br>Terrace 1, 2600 Via Fortuna Drive<br>Suite 150<br>Austin, Texas 78746 |

---

[5] Mr. Dotson is no longer counsel for the City of Round Rock.
[6] Mr. Sigel has passed away and is no longer counsel for the City of Round Rock.

# TABLE OF CONTENTS

Page

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . .   i

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . .  viii

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . .  xiii

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . .  xiv

Statement Regarding Record References . . . . . . . . . . . . . . . . . . .  xv

Issue Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xvi

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

    1.    Local Sales Tax—The Statutory Background: Tax Code Sections 321.002(a)(3)(A) and 321.203. . . . . . . . . . . . .  3

    2.    Local Sales Tax—The Regulatory Background: 34 TAC § 3.334. . . . . . . . . . . . . . . . . . . . . . . . .  6

    3.    Internet Sales, Fulfillment Centers, and the Changes to § 3.334 . . . . . . . . . . . . . . . . . . . . . .  9

    4.    The Coppell Plaintiffs, Internet Sales, Fulfillment Centers, and Local Sales Tax . . . . . . . . . . . . . . . . . . . .  11

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . .  13

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1.  The subsections of current § 3.334 that the Coppell
    Plaintiffs challenge that collectively re-define
    "place of business" are facially invalid because
    they contradict the statute they purport to
    implement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

2.  The limiting conditions adopted by the
    Comptroller in § 3.334 on how, when, where, by
    and from whom, and how often an order can be
    received contravene the plain meanings of
    "receives" and "order" found in the statute the
    rules purport to implement. . . . . . . . . . . . . . . . . . . . 18

    A.  The terms "receives" and "orders" by
        themselves and as used in the phrases "receiving
        orders" and "orders are received" must be given
        their plain meanings. . . . . . . . . . . . . . . . . . . 18

    B.  The plain meanings of "receives" and "order"
        do not limit how, when, where, by whom, or
        how often an order can be received or what it
        must contain. . . . . . . . . . . . . . . . . . . . . . . 18

    C.  The statutory histories of "place of business"
        and the directives on "consummation" reinforce
        that the Legislature intended that the plain
        meanings of "receives" and "order" controls
        their interpretation. . . . . . . . . . . . . . . . . . . 21

(1) The creation of a statutory definition for place of business was not intended to restrict receipt of an order to only one location by limiting how, when, where, by or from whom, or how often an order can be received or what it had to contain. . . . . . . . . . . . . . . . . . . . . . . . 21

(2) The 1979 and later statutory changes to where consummation occurs confirm that the Legislature intended that the plain meaning of "receives" and "order" do not limit how, when, where, by or from whom, or how often an order can be received or what it had to contain. . . . . . . . . . . . . . . . . . . . . . . . . 28

D. That the Legislature intended the plain meanings of "receives" and "order" is reflected by the Comptroller's acceptance of those meanings for 46 years. . . . . . . . . . . . . . . . . . . . . . 33

3. In § 3.334, the Comptroller has strung together intertwined regulatory provisions that improperly add conditions contravening the plain meaning of "receives" and "order" that result in the displacement of origin-sourcing. . . . . . . . . . . . . . . . 34

4. The arguments advanced by the Comptroller fail to justify his effort to limit the plain meanings of "receives" and "order.". . . . . . . . . . . . . . . . . . . . . . 37

A. "Receives" and "order" by themselves or together are not "terms of art," with a meanings different than their plain meanings. . . . . . . . . . . . . . 38

B. The phrase "for the purpose of receiving order" in the definition of "place of business" does not evidence context relevant to the meaning of that phrase. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

C.     Other states' understanding of "receives" is not "context." . . . . . . . . . . . . . . . . . . . . . . 41

D.     The plain meanings of "receives" and "order" do not create an absurdity. . . . . . . . . . . . . . . . . 42

5.     The Comptroller's limiting conditions are based on an outdated sales model – person to person – when the definition of place of business and the consummation directives are broad enough to include new approaches based on technological developments. . . . . . . . . . . . . . . . . . . . 47

Conclusion and Prayer . . . . . . . . . . . . . . . . . . . . . . . 51

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . 53

Appendix

A  —  Final Judgment (CR:2797) . . . . . . . . . . . . . . . . . . . . . Tab A

B  —  Conclusions of Law (CR:2846) . . . . . . . . . . . . . . . . . . . . . Tab B

C  —  Texas Tax Code § 321.002 . . . . . . . . . . . . . . . . Tab C

D  —  Texas Tax Code § 321.203 . . . . . . . . . . . . . . . . Tab D

E  —  45 Tex. Reg. No. 1 . . . . . . . . . . . . . . . . . . . Tab E

F  —  45 Tex. Reg. No. 21 . . . . . . . . . . . . . . . . . . Tab F

G  —  47 Tex. Reg. 6158 . . . . . . . . . . . . . . . . . . . Tab G

H — 49 Tex. Reg. 2440 . . . . . . . . . . . . . . . . . . . . . Tab H

I — 49 Tex. Reg. 4797 . . . . . . . . . . . . . . . . . . . . Tab I

J — Comparison of Statutory Language and
    Effect of Regulation . . . . . . . . . . . . . . . . . . . Tab J

# INDEX OF AUTHORITIES

Page

## CASES

*Brown v. City of Houston*,
660 S.W.3d 749 (Tex. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bullock v. Dunigan Tool & Supply Co.*,
588 S.W.2d 633 (Tex. App.—Austin 1979,
writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Centerpoint Builders GP, LLC v. Trussway, Ltd.*,
496 S.W.3d 33 (Tex. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*City of San Antonio v. City of Boerne*,
111 S.W.3d 22 (Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Combs v. City of Webster*,
311 S.W.3d 85 (Tex. App.—Austin 2009,
pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . 4, 29, 30, 40

*ExxonMobil Pipeline Co. v. Coleman*,
512 S.W.3d 895 (Tex. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Graphic Packaging Corp. v. Hegar*,
538 S.W.3d 89 (Tex. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Harris Cnty. Appraisal Dist. v. Tex. Workforce Comm'n*,
519 S.W.3d 113 (Tex. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Christus Santa Rosa Health Sys.*,
492 S.W.3d 276 (Tex. 2016) (orig. proceeding) . . . . . . . . . . . . . . . 37

*In re Texas Educ. Agency*,
619 S.W.3d 679 (Tex. 2021) (orig. proceeding) . . . . . . . . . . . . . . . 18

*Jaster v. Comet II Constr., Inc.*,
438 S.W.3d 556 (Tex. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 42

*KMS Retail Rowlett, LP v. City of Rowlett*,
593 S.W.3d 175 (Tex. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lewis v. Jacksonville Bldg. & Loan Ass'n*,
540 S.W.2d 307 (Tex. 1976) . . . . . . . . . . . . . . . . . . . 16

*Miles v. Texas Cent. R.R. & Infrastructure, Inc.*,
647 S.W.3d 613 (Tex. 2022) . . . . . . . . . . . . . . . . . 49, 50

*Rieves v. Buc-ee's Ltd.*,
532 S.W.3d 845 (Tex. App.—Houston [14th Dist.] 2017,
no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*RJR Vapor Co., LLC v. Hegar*,
681 S.W.3d 867 (Tex. App.—Austin 2023,
pet. granted). . . . . . . . . . . . . . . . . . . . . . . . 38

*Rodriguez v. Safeco Ins. Co. of Indiana*,
684 S.W.3d 789 (Tex. 2024) . . . . . . . . . . . . . . . . . 43

*Rodriguez v. Serv. Lloyds Ins. Co.*,
997 S.W.2d 248 (Tex. 1999) . . . . . . . . . . . . . . . . . 16

*Tex. Dep't of Protective & Regul. Servs. v. Mega Child Care, Inc.*,
145 S.W.3d 170 (Tex. 2004) . . . . . . . . . . . . . . . . . 34

*Tex. Health Harris Methodist Hosp. Fort Worth v. Featherly*,
648 S.W.3d 556 (Tex. App.—Fort Worth 2022,
pet. denied) . . . . . . . . . . . . . . . . . . . . . . . 38, 40

*Tex. Mut. Ins. Co. v. Ruttiger*,
381 S.W.3d 430 (Tex. 2012) . . . . . . . . . . . . . . . . . 37

*Tex. Mut. Ins. Co. v. Vista Cmty. Med. Ctr., LLP*,
275 S.W.3d 538 (Tex. App.—Austin 2008,
pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*,
511 S.W.3d 28 (Tex. 2017) . . . . . . . . . . . . . . . . 17, 18

*TGS-NOPEC Geophysical Co. v. Combs*,
340 S.W.3d 432 (Tex. 2011) . . . . . . . . . . . . . . . . . 37

Page

*Wal-Mart Stores, Inc. v. Forte,*
  497 S.W.3d 460 (Tex. 2016) . . . . . . . . . . . . . . . . . . . . . . . 20

### STATUTES

Acts 1967, 60th Leg., R.S., ch. 36 . . . . . . . . . . . . . . . . . . . 3, 5, 22, 24

Acts 1979, 66th Leg., R.S., ch. 624, § 6(B)(1) . . . . . . . . . . . . . . 5, 6, 28

Acts 2009, 81st Leg., R.S., ch. 1360, § 5 . . . . . . . . . . . . . . . . 6, 31

Acts 2011, 82nd Leg., R.S., ch. 942 . . . . . . . . . . . . . . . . . . . 26

Acts 2013, 83rd Leg., R.S., ch. 1361 . . . . . . . . . . . . . . . . . . . 26

Tex. Bus. & Com. Code § 7.102(13) . . . . . . . . . . . . . . . . . . . 10

Tex. Gov't Code § 311.011(b) . . . . . . . . . . . . . . . . . . . . . . 38

Tex. Gov't Code § 2001.038 . . . . . . . . . . . . . . . . . . . . . . . 2, 16

Tex. Tax Code § 151.008(b)(2) . . . . . . . . . . . . . . . . . . . . . . 5

Tex. Tax Code § 151.011(d)–(e) . . . . . . . . . . . . . . . . . . . . . . 10

Tex. Tax Code §§ 151.401–432 . . . . . . . . . . . . . . . . . . . . . . 3

Tex. Tax Code § 231.303(a) . . . . . . . . . . . . . . . . . . . . . . . 44

Tex. Tax Code § 321.002(a)(3)(A) . . . . . . . . . . . . . . . . . . . . *passim*

Tex. Tax Code § 321.002(a)(3)(B) . . . . . . . . . . . . . . . . . . . . 26

Tex. Tax Code § 321.003 . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tex. Tax Code § 321.101(f) . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Tax Code § 321.203 . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Tex. Tax Code § 321.303(a) . . . . . . . . . . . . . . . . . . . . . . . 6

Tex. Tax Code § 321.501 . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tex. Tax Code § 321.502 . . . . . . . . . . . . . . . . . . . . . 3

Tex. Tax Code § 321.510 . . . . . . . . . . . . . . . . . . . 3, 4

## REGULATIONS

34 Tex. Admin. Code § 3.334 . . . . . . . . . . . . . . . . . . . *passim*

34 Tex. Admin. Code § 3.374(a)(2) (1986). . . . . . . . . . . . . . 6, 33

4 Tex. Reg. 3618 (1979) . . . . . . . . . . . . . . . . . . . 6, 33

39 Tex. Reg. 9597 (2014). . . . . . . . . . . . . . . . . . . 7, 33

41 Tex. Reg. 260 (2016) . . . . . . . . . . . . . . . . . . . 7, 33

45 Tex. Reg. 98 (2020) . . . . . . . . . . . . . . . . . . . . 7

45 Tex. Reg. 3499 (2020). . . . . . . . . . . . . . . . . . . 7, 34

47 Tex. Reg. 6158 (2022). . . . . . . . . . . . . . . . . . . 20

48 Tex. Reg. 391 (2023) . . . . . . . . . . . . . . . . . . . 8

49 Tex. Reg. 53 (2024) . . . . . . . . . . . . . . . . . . . . 8

49 Tex. Reg. 2440 (2024). . . . . . . . . . . . . . . . . . . 4, 47

49 Tex. Reg. 4797 (2024). . . . . . . . . . . . . . . . . 8, 35, 38, 41

## OTHER AUTHORITIES

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) . . . . . . . . . . . . . . . . . . . 21

Bruce M. Nelson & John C. Healy, *Sales and Use Tax Answer Book* (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Glen A. Rosenbaum, *Taxation*, 33 S.W.L.J. 569 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

HB 134, 89th Leg., R.S. (2025) . . . . . . . . . . . . . . . . . . 34

HB 4072, 87th Leg., R.S. (2021) . . . . . . . . . . . . . . . . . . . . . . 34

Page

HB 5089, 88th Leg., R.S. (2023) . . . . . . . . . . . . . . . . . . . . . . 34

Webster's New Universal Unabridged Dictionary
    (2d ed. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# STATEMENT OF THE CASE

***Nature of the Case*** Plaintiffs sued the Comptroller in his Official Capacity seeking a declaration that portions of 34 Tex. Admin. Code § 3.334 are invalid because they conflict with the statutes they purport to implement. (CR:6–31; 35–69; 155–84; 1346–1513; 1866–1926; 1989–2026; 2396–2436; 2437–2570.)

***Course of Proceedings*** The district court (the 250th Judicial District Court, Travis County, Hon. Karin Crump, presiding) conducted a bench trial. (6RR:8.)

***Trial Court's Disposition*** Following the bench trial, the district court entered judgment. (CR: 2797 (App. Tab A).) Both the Comptroller and the Coppell Plaintiffs asked the district court to modify the judgment to clarify its meaning. (CR:2800–15; 2816–20.) The district court denied both motions. (CR:2840; 2841.) At the Coppell Plaintiffs' request, the district court entered conclusions of law, but those still did not resolve the confusion. (CR:2846 App. Tab B).) The Coppell Parties appealed (CR:2854–58) and the Comptroller cross-appealed (CR: 2859–64).

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal from a final judgment of the district court. Tex. Gov't Code § 22.220(a). This Court has exclusive jurisdiction over this appeal because it is a case against an officer of the State in his official capacity and it does not fall under any of the exceptions to this Court's jurisdiction. Tex. Gov't Code § 22.220(d)(1).

## STATEMENT REGARDING RECORD REFERENCES

The record on appeal comprises:

- The one-volume Clerk's Record filed in this Court on March 26, 2025, which will be cited as "CR:[page];"

- The twelve-volume Reporter's Record filed in this Court on June 27, 2025, which will be cited as "[volume]RR:[page];"

- The trial exhibits are in volumes 9 through 12 of the Reporter's Record, and they will be cited as follows:

  o Coppell Parties' Exhibits will be cited as "CPEx.[number] at [page];"

  o Round Rock Exhibits will be cited as "RREx.[number] at [page];"

  o The Comptroller's Exhibits will be cited as "DEx.[number] at [page.]"

## ISSUE STATEMENT

The Comptroller cannot adopt rules that (1) contravene specific statutory language; (2) run counter to the general objectives of the statutory provisions it is implementing; or (3) impose additional burdens, conditions, or restrictions in excess of or inconsistent with the statutory provision. Under those tests, do the following subsections of 34 TAC § 3.334: (a)(9), (a)(18), (b)(1)(A), (b)(5), or (c)(7), individually and in combination, invalidly rewrite the statutory definition of "place of business of the retailer" in Tax Code § 321.002(a)(3)(A)?

## INTRODUCTION

The City of Coppell, Texas, the City of Humble, Texas, the City of DeSoto, Texas, the City of Carrollton, Texas, and the City of Farmers Branch, Texas (the "Coppell Parties") read the district court's judgment as finding (1) that amendments to an administrative rule adopted by the Comptroller of Public Accounts violate the Tax Code and (2) that the process the Comptroller used to adopt the amendments violated the Texas Administrative Procedure Act. The Comptroller's cross-appeal shows that the Comptroller agrees that the judgment found certain of the challenged amendments were not properly adopted. But the Comptroller has advised the Coppell Plaintiffs that he reads the judgment as denying the other, substantive relief the Coppell Plaintiffs seek. Both sides asked the district court for clarification or explanation of the judgment. (CR:2800–15; 2816–20.) But the district court's responses did not resolve the parties' disagreement. (CR:2840; 2841; 2846 (App. Tab B).)

The Coppell Plaintiffs sought a declaration that the amendments they challenge contravene language in the Tax Code allocating local sales tax, impose conditions not found in that language, and are at odds with the objectives the Legislature sought to achieve in the allocation of local sales tax. The Coppell Plaintiffs seek relief because if the amendments are valid, they will lose millions of dollars in local sales tax generated by taxable sales from fulfillment centers (the

brick-and-mortar stores of the 21st century) located in their cities. That local sales tax will instead go to cities where the purchasers are located. The challenged amendments are expressly designed to have this effect on *all* fulfillment centers that ship or deliver taxable goods exclusively in response to orders placed on websites and transmitted through the internet.

If the Coppell Plaintiffs believe the district court's judgment favors them, why did they appeal? Both sides could wait to argue in future original proceedings about the meaning of the judgment, and the Coppell Plaintiffs are confident that they would prevail. But if they are wrong, not appealing now could waive the right to challenge the judgment later. Moreover, the Comptroller is tasked with enforcing the disputed local-sales-tax provisions. His disagreement about the meaning of the district court's judgment can therefore have practical consequences for the Coppell Plaintiffs. So they cannot afford to ignore the Comptroller's stated position, and they had no choice but to appeal despite believing that the judgment granted them the relief they sought.

Although there is disagreement about the judgment's meaning, because this Court's review is de novo, it can simply enter the judgment the trial court should have rendered. *See Rieves v. Buc-ee's Ltd.*, 532 S.W.3d 845, 849–50 (Tex. App.—Houston [14th Dist.] 2017, no pet.). After all, the Court could have heard the Coppell Plaintiffs' challenge directly. *See* Tex. Gov't Code § 2001.038(f). Thus, rather than lay out their interpretation of the judgment, the Coppell Plaintiffs will instead argue

in the first half of their brief why, as a matter of law, the amendments they have challenged violate the Tax Code. And, in the second half, they will argue why the Comptroller's claimed justifications for the challenged amendments fail.

**STATEMENT OF FACTS**

**1.    Local Sales Tax—The Statutory Background: Tax Code Sections 321.002(a)(3)(A) and 321.203**

In 1967 the Legislature authorized municipalities to impose a local sales and use tax. *See* Acts 1967, 60th Leg., R.S., ch. 36 (the "1967 Act").[7] This local sales and use tax was in addition to the state sales and use tax established in 1961. *See* Acts 1961, 57th Leg., 1st C.S., ch. 24 (the "1961 Act"). The Comptroller administers the collection of local sales tax by receiving from retailers[8] the local sales tax they collect in connection with their sale of taxable items with a report that identifies the municipality the retailer is obligated to pay. *See* Tex. Tax Code §§ 151.401–432. The Comptroller then distributes that local sales tax to the identified municipality. *See id.* at §§ 321.501–502. The retailer's decision about what municipality it is obligated to pay can be audited by the Comptroller. *See id.* at § 321.510. If the Comptroller

---

[7] The act is now found in Tax Code chapter 321 for cities and chapter 322 for counties. The two chapters have the same purpose and are substantively identical. This appeal focuses on chapter 321 because only municipalities are involved.

[8] The provisions of chapter 151 of the Tax Code that apply to chapter 321 assign the same broad definition to retailer or seller. Tex. Tax Code §§ 321.003; 151.008. The two words describe the same entity.

disagrees with the retailer's decision he can "claw back" that local sales tax and send it to the municipality he believes the retailer was obligated to pay. *See id.*

A fundamental issue presented to the Legislature in deciding what municipality should receive the local sales tax from a taxable sale is how to define where a sale was "consummated," i.e., made or completed. That issue determines which city could receive the local sales tax and whether tax has to be collected at all (not every city has adopted a local sales tax). The choice has nearly universally been between the purchaser's location (destination-sourcing) and the retailer's location (origin-sourcing). *See* Bruce M. Nelson & John C. Healy, *Sales and Use Tax Answer Book*, Q 20:11 (2022); (7RR:22–24.) Deciding which approach to implement involves balancing the administrative burden on retailers to determine what local sales tax applies[9] against the wish to compensate the city that has the most direct connection to and greatest investment in the activities that result in the sale. *See, e.g., Combs v. City of Webster*, 311 S.W.3d 85, 97–98 n.8 (Tex. App.—Austin 2009, pet. denied).

---

[9] If the local sales tax imposed is based on the retailer's location, all sales are subject to the same rate. If the local sales tax is based on the purchaser's location, the retailer must determine the rate where each purchaser is located. In Texas, there are over 1700 local taxing jurisdictions, and each can set its own rate to a maximum of 2%. *See* 49 Tex. Reg. 2440, 2441 (2024) (App. Tab H); Tex. Tax Code § 321.101(f). The administrative burden on the retailer is obviously greater if the amount of tax collected is determined by the purchaser's location.

The 1967 Act addressed "consummation" by adopting origin-sourcing.[10] If a retailer[11] did business in one location all taxable sales were consummated at that place of business.[12] *See* 1967 Act, § 6(B)(1). If a retailer did business in more than one location, the taxable sale was consummated at either the place of business: (a) where the buyer took possession of and removed the items or (b) from where the items were delivered to the purchaser. *See id.* For a city to receive local sales tax, two conditions had to exist. The retailer had to have a place of business in the city, and a sale had to be consummated at that place of business.[13] No sale could be consummated at a location other than a place of business. *See id.*

The 1967 Act did not define place of business. In 1979, the Legislature enacted a definition: an established location operated by the seller that has the purpose of receiving orders or receives three or more orders in a calendar year. *See* Acts 1979, 66th Leg., R.S., ch. 624, § 6(B)(1) (the "1979 Act"). The Legislature, however, cabined a retailer's ability to treat certain specified locations (a warehouse,

---

[10] This preference for origin-sourcing continues. Texas has been and continues to be considered an origin-sourcing state. *See* Nelson & Healy, Q 20:11.

[11] Defined in pertinent part, at the time and currently, as "a person who makes more than two sales of taxable items during a 12-month period, including sales made in the capacity of an assignee for the benefit of creditors or receiver or trustee in bankruptcy" Tex. Tax Code § 151.008(b)(2).

[12] The Legislature referred to locations where the retailer conducted business as, fittingly, "places of business of the retailer." In this brief that term is shortened to "place of business."

[13] Given the statute's subject-matter – *local* sales tax – "place of business" necessarily referred only to locations in Texas. The Coppell Plaintiffs use the phrase throughout this brief with the same understanding.

storage yard, or manufacturing facility) as places of business by providing that, to qualify, those facilities must receive at least three orders in a calendar year. *See id.* Those statutory requirements have remained essentially unchanged for 46 years and are currently found in Tax Code section 321.002(a)(3)(A). Their primary purpose—to maximize tax collection by capturing the entire universe of locations involved in the process of taxable sales—is evident from the original provision that is now Tax Code section 321.303(a) ("Each place of business of a retailer must have a [sales tax] permit issued by the comptroller… .").

In 1979, and again in 2009, the Legislature also added to the statutory directives on where consummation occurs to deal with circumstances not previously addressed. *See* Acts 2009, 81st Leg., R.S., ch. 1360, § 5 (the "2009 Act"). Those additions were consistent with the Legislature's preference for "origin-sourcing." The statutory consummation directives are currently found in Tax Code section 321.203. (App. Tab D.) Those directives, not the definition of "place of business of the retailer," express the Legislature's intention for which municipality, if any, should receive local sales tax.

## 2. Local Sales Tax—The Regulatory Background: 34 TAC § 3.334

In response to the 1979 Act, the Comptroller issued rules about what is a place of business and where consummation occurs. Those rules were amended several times before 2020. *See* 4 Tex. Reg. 3618, 3621 (1979); 34 Tex. Admin. Code §

3.374(a)(2) (1986); 39 Tex. Reg. 9597, 9604 (2014); 41 Tex. Reg. 260, 262 (2016). The pre-2020 rules were consistent with the statutory requirements in the Tax Code: they did not condition the existence of a place of business on how, when, where, by or from whom, or how often an order can be received, or what that order had to consist of.[14] *See id*.

All that changed in January 2020, when the Comptroller proposed amendments to 34 Tex. Admin. Code § 3.334.[15] *See* 45 Tex. Reg. 98, 98-115 (2020) (App. Tab E). The amendments were adopted as final on May 22, 2020, but the provisions of concern to the Coppell Plaintiffs did not become effective until October 1, 2021. 45 Tex. Reg. 3499, 3511 (2020) (App. Tab F). Before the effective date, the Coppell Plaintiffs asked the district court to temporarily enjoin the amendments that affected them. The parties then agreed to a temporary injunction prohibiting enforcement of the rules challenged by all plaintiffs. That injunction remained in

---

[14] There is a distinction between how many individual orders a location must receive to be a place of business and what conditions attach to an individual order for it to be considered received. This brief addresses the latter and argues that the statutory definition does not allow the Comptroller to impose the limitations found in the current version of § 3.334.

[15] In this brief, 34 Tex. Admin. Code § 3.334 is referred to as § 3.334.

effect until entry of a final judgment in December 2024. (CR:121–23; 1338–39; 1340–45; 1745–46; 2797 (App. Tab A).)

The series of amendments[16] that began in May 2020 ultimately resulted in the current version of § 3.334 (adopted in July 2024), which provides for the first time that a location is not a place of business for local sales tax purposes if it: (1) does not have sales personnel; (2) is not where a determination is made that an order can be accepted; or (3) get orders processed by computers connected to the Internet making use of a shopping website or shopping software application.

Those limiting conditions reversed the Comptroller's previous interpretation of the words "receives" and "order" in Tax Code section 321.002(a)(3)(A) and thus where consummation occurs as specified in Tax Code section 321.203. (App. Tab D.) The changes effectively mean that only one location operated by a retailer can get a buyer's request to purchase taxable items and that, if a computer gets such a request and "forwards" it, the request can never be an "order" "received" at a place of business. In other words, the amendments rewrite the statutory definition of place of business. The demonstrative attached at Appendix Tab J shows the words that would have to be added to the statutory definition of place of business to make the current version of § 3.334 consistent with the statute. (App. Tab J.) A quick glance

---

[16] *See* 48 Tex. Reg. 391 (2023); 49 Tex. Reg. 53 (2024); 49 Tex. Reg. 4797 (2024) (App. Tab I).

establishes that version is quite different from what the Legislature adopted 46 years ago.

**3. Internet Sales, Fulfillment Centers, and the Changes to § 3.334**

The Comptroller's changes to § 3.334 were made at least in part in response to the rise of e-commerce. Public use of the Internet began long after the Legislature defined "place of business" in 1979. (7RR:181.) The development of a way for computers with different operating systems to communicate with each other and of order-management software with the ability to confirm credit-card transactions allowed retailers to engage in what will be described here as "Internet Sales." (7RR:193–94.) This type of taxable sale involves a purchaser using a website to place an order that is almost instantaneously transmitted through the Internet with the help of order-management software (what the Comptroller calls an "automated shopping cart software program") to a location that uses the orders to pull, pack, and ship the requested item to the purchaser from on-site inventory. (CPEx.42:5–7; 7RR:180–84.)

By going to a website, a purchaser is thus virtually visiting an established physical location operated by a retailer, indistinguishable in function from a retailer's brick-and-mortar store with a very large inventory on display. (CPEx.32:119–21; 7RR:180–81; 187–96.) Once the purchaser identifies an item from the inventory accessed through the website and decides to purchase it, the purchaser enters a

credit-card (or debit-card) number, just as a buyer presents a credit card (or debit-card) to a cashier or inserts it in a self-checkout device at a brick-and-mortar store. (7RR:193–94; CPEx.32:119–21.) The only difference between Internet Sales and purchases at a brick-and-mortar store that uses point-of-sale software[17] is that, with Internet Sales, the purchaser is virtually present at the location with inventory versus being physically present at a brick-and-mortar location with inventory. The location that the purchaser visits virtually in the case of Internet Sales is referred to as a "fulfillment center."[18] (7RR:178–80; 8RR:28–34.)

The request by a purchaser to be supplied a taxable item communicated to the fulfillment center includes the purchaser's name and address, a description of the item or items being purchased, the quantity of items requested, and the price of the item. (7RR:200–02.) The purchaser's request is accessed and acknowledged by the retailer's employees at the fulfillment center who pick, pack, and arrange to ship the requested item to the purchaser. (7RR:180; 8RR:28–29.) Typically, the purchaser's

---

[17] Point of Sale (POS) software serves as the digital "command center" for a business's sales, processing payment types, managing transactions, tracking inventory, and providing sales data. *See* https://squareup.com/us/en/the-bottom-line/operating-your-business/what-pos-system.

[18] In § 3.334 the Comptroller describes fulfillment centers as "warehouses" or "fulfillment warehouses." But they are not warehouses under the Tax Code. The statutory definition of a "warehouse" is a "person engaged in the business of storing goods for hire," Tex. Bus. & Com. Code § 7.102(13). Yet the Tax Code defines "storage" as *not* including "the keeping of retaining of tangible personal for *sale in the regular course of business*." Tex. Tax Code § 151.011(d)–(e)(emphasis added). Because fulfillment centers keep goods for sale in the regular course of business they are not "storing" the goods, and they are not warehouses.

credit-card (or debit-card) is charged only after the item is shipped. (7RR:193–94; 198.)

Fulfillment centers are, in other words, the 21st century's version of brick-and-mortar stores. Yet the changes to § 3.334 beginning in 2020 result in fulfillment centers not being places of business because supposedly: (1) they do not have "sales personnel"; (2) review and approval of the purchaser's request to be supplied a taxable item occurs elsewhere; and (3) the purchaser's request is processed by software running on computers connected to the Internet, which is used to continue the almost instantaneous movement of the request to fulfillment centers ("forwarded" in the words of the Comptroller). *See* §§ 3.334(a)(9); (a)(18); (b)(1)(A); (b)(5); (c)(7). Stated more directly, the current, amended version of § 3.334 treats the orders that are a fundamental part of Internet Sales as not "received" at fulfillment centers, meaning the locations are not places of business and thus no taxable sales can be consummated there.

4. **The Coppell Plaintiffs, Internet Sales, Fulfillment Centers, and Local Sales Tax**

The Coppell Plaintiffs have all promoted and supported fulfillment centers in their cities. By way of example, Coppell actively encouraged and continues to encourage fulfillment centers to come there. (*See, e.g.*, 7RR:116–17.) In part, that decision was a function of Coppell being near major transportation hubs and in part because of its central location in a large and densely populated metropolitan area

allowing for efficient distribution of purchased retail goods. (*See id.*) That policy decision also meant a commitment to provide and maintain costly infrastructure necessary to deliver the services required to support fulfillment centers. (7RR:119–20.)

The cost of that support has been offset by local sales tax fulfillment centers generate. (7RR:123–24.) The fulfillment centers that operate in the Coppell Plaintiffs' communities are established locations of a retailer, each with tens of thousands of square feet of space, hundreds of retailer employees, and inventory worth millions of dollars consisting of thousands of different items for sale directly to buyers. (7RR:121–23; 8RR:28–30.) The fulfillment centers rely, moreover, exclusively on orders placed on websites linked by order-management software to computers at the center. (CPEx.32:119–21.) They engage only in Internet Sales.

If the Comptroller's 2024 amendments to § 3.334 are valid, all of the local sales tax generated from those fulfillment centers, except for items delivered to purchasers within the jurisdiction of the Coppell Plaintiffs where the fulfillment centers are located, will no longer be sent to the Coppell Plaintiffs. (CPEx.18:18–19.) Instead, it will be sent to the community to which the taxable item is delivered—but if, and only if, that community has a local sales tax. (*Id.*) In other words, instead of the Legislature's long-preferred regime of "origin-sourcing" applying to taxable

sales from fulfillment centers, the Comptroller will impose "destination-sourcing" .
(*See* CPEx.39:9–11; 15; 27.)

The loss of local sales tax will be significant in amount and effect. The Coppell Plaintiffs' comments on the Comptroller's proposed amendments to § 3.334 estimated that the combined local-sales-tax reduction at millions of dollars annually, with Coppell alone losing as much as 60% of its total sales-tax revenue. (CPEx.18:18–19.) The Coppell Plaintiffs' losses will, theoretically, represent a gain to the other 1700 local taxing entities. But because of the large number of other taxing entities, the Coppell Plaintiffs' substantial losses will result in no material equalizing gain to any other single community. (CPEx.39:37; 56–57.) In fact, the only study available to the Comptroller in connection with his proposed amendments to § 3.334 was submitted by the Coppell Plaintiffs, and that study demonstrated that Internet Sales have not resulted in any material shift in the pattern of local-sales-tax collections compared with the period before the advent of Internet Sales. (*See id.* at 46–59.)

## SUMMARY OF ARGUMENT

Section 3.334 contravenes the plain meanings of the words used in Tax Code section 321.002(a)(3)(a) to define "place of business." The text, structure, and statutory history of the relevant tax code sections evince the Legislature's intent to adopt "origin sourcing" for determining what city is entitled to local-sales-tax

revenue. The words "receives" and "orders" have broad meanings that do not limit how, when, where, by whom, or how often an order can be received or what it must contain. Thus, all that is required for a location to be a "place of business" is that it be an established location operated by the retailer that has the purpose of getting requests from a purchaser to be supplied or delivered a taxable item or that gets at least three requests from a purchaser to be supplied a taxable item in a calendar year. The fulfillment centers in the Coppell Plaintiffs' cities qualify as places of business under the plain meaning of the statute.

But § 3.334 would effectively prevent fulfillment centers from being considered "places of business." In doing so, the Comptroller is attempting to freeze retail commerce into a construct from the 1970s. But the Supreme Court has repeatedly affirmed the opposite: that broad statutory terms are presumed to encompass, not exclude, new technologies. But the current § 3.334 does more than require that particular people be involved in the ordering process. It also directs that for any order there can only be one place of business, where it is determined an order can be accepted. And if that order is determined to be acceptable by computer software, then its instantaneous transmission through the Internet to another location (or "forwarding") has not been received at that location. None of these limitations are found in the statutory definition of place of business.

The Comptroller does not contest that the provisions of § 3.334 that the Coppell Plaintiffs are challenging are at odds with the common, ordinary meaning of the words defining a "place of business." The reasons he offered in the district court for avoiding the plain meaning cannot survive scrutiny. "Receives" and "order" are not terms of art. Nor does the phrase "for the purpose of receiving orders" provide any basis to avoid the plain meaning. The Comptroller next relies on other states' approach to determining how to allocate local-sales-tax revenue. But other states' approaches to allocating local sales tax has no legal (or logical) bearing on how the Texas Tax Code should be understood. The Comptroller's reliance on the absurdity doctrine is misplaced because the plain meanings of the words used to define "place of business" do not lead to absurd results.

In rewriting by rule the statutory definition of "place of business," the Comptroller also overlooks the axioms that he must not: (1) add words to the Tax Code; (2) ignore the absence of words omitted by Legislature; (3) ignore words that the Legislature used in the Tax Code; (4) ignore the history of the disputed statute; (5) ignore the purpose of the disputed statutory provision as shown by the statutory text; or (6) reject his own previous positions about the meaning of the disputed provision. This Court should therefore render judgment that § 3.334 is invalid.

In an appeal concerning a challenge to the validity of an administrative rule under Texas Government Code section 2001.038, a trial court's declaratory judgments issued following a bench trial are reviewed *de novo*. *See Tex. Mut. Ins. Co. v. Vista Cmty. Med. Ctr., LLP*, 275 S.W.3d 538, 548 (Tex. App.—Austin 2008, pet. denied) (citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25–26 (Tex. 2003)). Moreover, administrative rules, which have the same force and effect as statutes, are to be construed in the same manner as statutes. *See id.* (citing *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999); *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976)). And, of course, matters of statutory construction are reviewed *de novo*. *See City of Boerne*, 111 S.W.3d at 25.

## ARGUMENT AND AUTHORITIES

**1. The subsections of current § 3.334 that the Coppell Plaintiffs challenge that collectively re-define "place of business" are facially invalid because they contradict the statute they purport to implement.**

An administrative rule adopted under the Texas Administrative Procedure Act is invalid if:

(1)    it contravenes specific statutory language;

(2)    it runs counter to the general objectives of the statutory provisions it is implementing; *or*

(3) it imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the statutory provisions it is implementing.

*Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017).

Here, the parts of § 3.334 the Coppell Plaintiffs challenge contravene the plain meanings of words used in section 321.002(a)(3)(A) to define "place of business." They also impose conditions beyond those allowed by the statutory language. As a result, they run counter to the general objective of section 321.203, which is to impose origin-sourcing. While the challenged parts of § 3.334 violate all three tests, violation of one test is enough to demonstrate invalidity.

As discussed below, demonstrating that the challenged subsections of § 3.334 violate the Tax Code turns on: (1) the meanings of "receives," "orders," "receiving orders," and "orders are received" in the statutory definition of "place of business" found in section 321.002(a)(3)(A); and (2) how those meanings relate to the statutory directives in section 321.203 for determining where "consummation" of a sale occurs.

**2.** **The limiting conditions adopted by the Comptroller in § 3.334 on how, when, where, by and from whom, and how often an order can be received contravene the plain meanings of "receives" and "order" found in the statute the rules purport to implement.**

    **A.** **The terms "receives" and "orders" by themselves and as used in the phrases "receiving orders" and "orders are received" must be given their plain meanings.**

*In re Texas Education Agency*, provides the road-map for statutory construction:

> We apply the *plain meaning* of statutory language *unless* (1) the Legislature has prescribed definitions, (2) the words have acquired a technical or particular meaning, (3) a contrary intention is apparent from the context, or (4) a plain-meaning construction leads to nonsensical or absurd results.

619 S.W.3d 679, 687 (Tex. 2021) (orig. proceeding) (emphasis added). The Supreme Court has cautioned that the "plain meaning" *controls* unless one of the four listed principles *compels* a different meaning. *Tex. Med. Ass'n*, 511 S.W.3d at 34–38; *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 183 (Tex. 2019).

    **B.** **The plain meanings of "receives" and "order" do not limit how, when, where, by whom, or how often an order can be received or what it must contain.**

A "place of business" as defined in section 321.002(a)(3)(A) exists if: (1) it is an established location; (2) it is operated by the retailer or its agent or employee; and (3) it either has the purpose of receiving orders or it actually receives three orders in a calendar year.

What constitutes an established location operated by the retailer is not disputed here. The Comptroller has suggested that the Coppell Plaintiffs believe a computer or computer server by itself can be a place of business. Not so. The Coppell Plaintiffs consider a computer or computer server to be a piece of equipment that may be used at an established location operated by the retailer. The presence of a computer or computer server may be a necessary condition for the existence of a place of business, but it is not a sufficient condition.

The parties disagree about what "receives" and "orders" mean, and, therefore, what "receiving orders" or "orders are received" mean.[19] The Comptroller does not dispute that the plain meaning of "receiving" or its base "receive" means "to get, accept, take, or acquire something,"[20] and that an "order" in connection with a taxable sale means "a request or commission to make or supply something."[21] In response to comments challenging the proposed changes to § 3.334, the Comptroller agreed that using the plain meanings of "receives" and "order" reasonably leads to the conclusion that fulfillment centers receive orders:

> The City of Coppell and others have advanced a contrary explanation regarding fulfillment warehouses that has superficial appeal: a warehouse cannot fulfill an order unless the warehouse has "received" the order, and therefore a fulfillment warehouse is inherently a "place

---

[19] For the rest of the brief the focus will be on the meanings of "receives" and "orders." What those words mean determines what any phrase containing those words means.

[20] *Receive*, Webster's New Universal Unabridged Dictionary (2d ed. 1983).

[21] *Order*, Webster's New Universal Unabridged Dictionary (2d ed. 1983).

of business." In the abstract, this argument may seem like a reasonable interpretation of the word "received."

47 Tex. Reg. 6158, 6160 (2022) (App. Tab G).

The Legislature's intent that the plain meanings control is demonstrated by the following. There is no statutory definition of "receives" in connection with the definition of "place of business." Nor is there a definition of the word "order" as used in the definition of "place of business." Nor has the Legislature placed any limiting conditions on how, when, or where an order is received or what it must contain. If the Legislature does not expressly define the words used in a statutory definition, or expressly condition their application, plain meaning controls. *See Harris Cnty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 128 (Tex. 2017) ("In the absence of a statutory definition, we must 'determine a term's plain or ordinary meaning,' unless a contrary meaning is apparent from the statute's language." (quoting *Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460, 471 (Tex. 2016)).

With that background in mind, the Coppell Plaintiffs submit that a "place of business" is an established location operated by the retailer that has the purpose of getting requests from a purchaser to be supplied or delivered a taxable item or that gets at least three requests from a purchaser to be supplied a taxable item in a

calendar year.[22] How such a request is gotten, when it is gotten, where else it is gotten, how often it can be gotten, who must get it, and what the request must consist of or contain are limitations not provided for by the plain—and broad—meaning of the words.

> ### C. The statutory histories of "place of business" and the directives on "consummation" reinforce that the Legislature intended that the plain meanings of "receives" and "order" controls their interpretation.
>
> #### (1) The creation of a statutory definition for place of business was not intended to restrict receipt of an order to only one location by limiting how, when, where, by or from whom, or how often an order can be received or what it had to contain.

The history of the development of the statutory definition of "place of business" can affect how it should be understood. *See Brown v. City of Houston,* 660 S.W.3d 749, 755 (Tex. 2023) ("Statutory history concerns *how the law changed*, which can help clarify *what the law means*.") (emphasis in original). Statutory history is not to be confused with legislative history. *See id.* (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167, 256 (2012)).

In 1967, when the Legislature decided to allow cities to impose a local sales tax, it made clear that a taxable sale could only be consummated at a place of

---

[22] The Comptroller agrees that an established location operated by a retailer, other than a warehouse, storage yard, or manufacturing plant, can also exist even if it does not receive three orders in a year so long as it has the "purpose of receiving orders." § 3.334(a)(18).

business, but no statutory definition was provided for that phrase. 1967 Act, §

6(B)(1). The only directive on where consummation occurred was:

> If the retailer has more than one place of business in the State, the place or places at which retail sales, leases, and rentals are consummated shall be the retailer's place or places where the purchaser or lessee takes possession and removes from the retailer's premises the articles of tangible personal property, or if the retailer delivers the tangible personal property to a point designated by the purchaser or lessee, then the sales, leases, or rentals are consummated at the retailer's place or places of business from which tangible personal property is delivered to the purchaser or lessee.[23]

*Id.*

In the absence of a statutory definition for place of business, the Comptroller

issued rulings in 1967 and 1975 discussing the term.[24] *See* Ruling No. 95-L.04 (Oct.

2, 1967), available at STAR 6710R0076A10 (the "1967 Ruling");[25] Local Ruling

.004 (Dec. 31, 1975), available at STAR 7512R0502C04 (the "1975 Ruling"). The

1967 Ruling described a "retail establishment," which holds goods for sale in the

regular course of business, as a place of business. The 1975 Ruling expanded that

guidance by including locations that take orders as part of the sales process. Both

---

[23] Although not explicitly stated in the language of the 1967 Act, its clear implication was that if a retailer had one place of business, all taxable sales were consummated at that location.

[24] It is unclear why the guidance was provided in the form of "rulings" instead of "rules." The "rulings" discussed what the Comptroller considered to be a place of business rather than providing a formal definition.

[25] STAR is the Comptroller's State Tax Automated Research System, which is available at https://star.comptroller.texas.gov/.

rulings focused on places of business as locations that the retailer considers as necessary for the completion of a taxable sale.

The 1975 Ruling was at issue in *Bullock v. Dunigan Tool & Supply Co.*, 588 S.W.2d 633 (Tex. App.—Austin 1979, writ ref'd n.r.e.). The retailer, Dunigan, claimed that it consummated the sale of oil field equipment at a truck yard located where there was no local sales tax. *See id.* at 635. The yard was operated by a third-party that did not own but temporarily stored some of Dunigan's goods for pickup.[26] The Comptroller argued that the truck yard was not a place of business and consummation happened at a Dunigan sales office in a community with a local sales tax where the order was taken. *Id.* at 635.

The district court agreed with Dunigan that consummation occurred at the truck yard, and no local sales tax could be imposed. *See id.* On appeal the Comptroller did not challenge the district court's finding that the truck yard was a place of business. He claimed, though, that consummation happened at the sales office because that is where "paper segregation" (that is, acceptance of an order)

---

[26] The facility Dunigan claimed was a place of business was a "bonded, unrelated [to Dunigan] trucking yard facilit[y] where Dunigan leased storage space on a month-to-month basis." Glen A. Rosenbaum, *Taxation*, 33 S.W. L.J. 569, 582 (1979). "Dunigan did not keep full-time personnel at the storage facilities, [although] the storage facilities were open twenty-four hours a day, and Dunigan's employees or representatives periodically entered the premises to conduct inspections and inventories." *Id.* The truck yard did not get the request from the purchaser to be supplied a taxable item. *See id.* Instead, Dunigan notified the truck yard to release the item to the purchaser. *See id.*

occurred.[27] *See id.* The court of appeals rejected that claim. It noted that the statutory directives on consummation did not include "paper segregation." *See id.* at 636. Rather, if "physical segregation" (that is, pick-up or delivery of the item) happened at a place of business that is where consummation occurred. *See id.*

At the Comptroller's urging, the Legislature reacted to the district court's decision,[28] by adopting the following statutory definition for "place of business:"[29]

> A. (1) For the purposes of the local sales and use tax, 'place of business of the retailer' means an established outlet, office, or location operated by the retailer, his agent, or employee for the purpose of receiving orders for taxable items. The term 'place of business of the retailer' includes any location at which three or more orders are received by the retailer in a calendar year. A warehouse, storage yard, or manufacturing plant may not be considered a 'place of business of the retailer' unless three or more orders are received by the retailer in a calendar year at such warehouse, storage yard, or manufacturing plant.[30]

1979 Act, § 6(B)(1).

By mandating that the location had to be established and operated by the retailer the Legislature ensured that a retailer could not claim that a facility in the

---

[27] Apparently, the Comptroller was willing to concede that a taxable sale occurred at the truck yard given that the factual finding that the truck yard was a place of business was not appealed. In other words, the Comptroller agreed that the truck yard was part of the sales process.

[28] *See* DEx.27.

[29] The definition adopted in 1979 now found in §321.002(a)(3)(A) has remained essentially unchanged since then. Any legislative modifications have not been substantive.

[30] As a result of the adoption of the statutory definition, the truck yard used by Dunigan was no longer a place of business for purposes of local sale tax allocation because it was not an established location of Dunigan's and it was not operated by Dunigan. It could not qualify as "place of business" even if it received an order.

possession of and run independently by a third-party (such as the truck yard in *Dunigan*) was a place of business of the retailer. That change severely constricted a retailer's ability to avoid local sales tax by positioning taxable items for pick-up, delivery, or shipment in areas without a local sales tax. Additionally, by requiring that the location have a purpose of receiving orders, or receive three orders in a calendar year, the Legislature concurred with the Comptroller's position that for a location to be a place of business it needed to play a role in the retailer's sales process.

The Legislature could have added then, or at any time over the next 46 years, limiting conditions on how, or when, or where, or by or from whom, or how often an order is received at a location or what it must contain. But the Legislature did not and has not. It could have added definitions for "receives," "order," or both. But it did not and has not. In short, the statutory history is consistent with the Legislature intending that the words used to define place of business would have their plain, broad meanings. As a result, many locations operated by a retailer could receive an order, regardless of its form or the means by which it is communicated. In any case, the statutory directives on where *consummation* of a sale occurred, not the definition of place of business itself, determined to which municipality the sale was attributed for local-sales-tax purposes.

In 2011 (and supplemented in 2013), the Legislature chose to be more specific about which locations receiving an order were part of the sales process. S*ee* Acts 2011, 82nd Leg., R.S., ch. 942 (the "2011 Act"); Acts 2013, 83rd Leg., R.S., ch. 1361 (the "2013 Act"). The amendments added a limiting condition—a location acting on behalf of a retailer through a contract and receiving an order needed to have more than just some connection to the sales process. It needed to deliver significant business services. The limiting condition specifies:

> (B) An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a "place of business of the retailer" if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under this chapter or exists solely to rebate a portion of the tax imposed by this chapter to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under this chapter or solely to rebate a portion of the tax imposed by this chapter if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.

Tex. Tax Code § 321.002(a)(3)(B) (App. Tab C).

The first part of the addition describes what are considered to be places of business created to evade local sales thereby skewing the allocation process and providing an economic advantage to certain retailers. It does so by defining when an established location operated on behalf of a retailer through a contract does not have

a sufficiently direct connection to the completion of the sale of taxable items to be considered a place of business. By saying what is not a place of business, it also says a location that provides "significant business services" or "vital business services" *including* logistics management, or purchasing, or inventory control has a sufficient connection to the completion of the sales process to be a place of business.

By specifying that a location operated on behalf of a retailer that performs only limited, albeit vital, business services could be a place of business, the Legislature confirmed its understanding, consistent with the plain meanings of "receives" and "order," that the same order could be received at different locations. A location providing only "logistics management," or "purchasing inventory control" on behalf of the retailer, which the Legislature identified as vital business services (among others), would need to have the order passed on from the retailer. Yet the Legislature still considered that location to be a place of business. And if a location operated on behalf of the retailer was not the first location that received the order, yet was a place of business as long as it provided a "vital business service," the same would be true for a location operated directly by a retailer.

In short, the statutory history of the definition of place of business supports the conclusion that the Legislature was not concerned with how, or when, or where, or by whom, or how often an order was received at a location or what it contained for that location to be a place of business.

**(2)** ***The 1979 and later statutory changes to where consummation occurs confirm that the Legislature intended that the plain meaning of "receives" and "order" do not limit how, when, where, by or from whom, or how often an order can be received or what it had to contain.***

In addition to adopting a definition for place of business, the 1979 amendments provided additional directives on where consummation of a taxable sale occurs. Those changes indirectly confirm that the Legislature intended that the plain, yet broad, meanings of "receives" and "order" allowed more than one established location operated by a retailer to receive an order.

One of the 1979 statutory changes to the consummation directives addressed where consummation occurs when an order is *initially* received out of state, and the taxable item sold is shipped or delivered from or picked up at a location that is *not* a place of business of the retailer in Texas. *See* 1979 Act, § 6(B)(1)(d)(ii). In that circumstance, consummation occurs at the location to which the item is shipped. In other words, the change imposes "destination-sourcing" not "origin-sourcing" on that taxable sale. One necessary implication of this statutory directive is that an order can be received by more than one location. Otherwise, there is no reason to refer to where an order is received *initially*. A second implication is that if the order is initially received out of state, but it is also received at the retailer's place of business in Texas, and the item sold is shipped, delivered, or picked up there, the taxable sale is consummated at that location in Texas for purposes of local sales tax. In other

words, this 1979 addition to the statutory consummation directives confirmed the Legislature's understanding that orders can be received at more than one location, creating multiple place of business eligible to be where consummation occurs—although consummation will happen at only one. A third implication is that unless the Legislature has explicitly directed that consummation occurs where the taxable item is shipped *to* (destination-sourcing) consummation occurs where the taxable item is shipped *from* (origin-sourcing).

In 2009, the Legislature reinforced those implications by making a further change to the statutory consummation directives in response to *Combs v. City of Webster*. At issue was whether a sale was consummated (1) at the "brick-and-mortar" store where the purchaser walked in and placed an order for furniture or (2) at the warehouse that got (through the Internet) the purchaser's confirmed request and shipped the furniture to the purchaser. *See* 311 S.W.3d at 95. The retail store was in Webster. *Id.* at 90. The warehouse from which the furniture was shipped was in Grand Prairie. *Id.* The Comptroller had decided that Grand Prairie should receive the local sales tax because the warehouse had received the order, and physical separation happened there. *Id.* Webster sued, claiming the Comptroller was misapplying the consummation rules because the brick-and-mortar store received the order, not the warehouse, and Webster should have received the local sales tax. *Id.*

In response, the Comptroller argued, in direct conflict with his current position, that a warehouse could receive orders through an "Internet computer system" that connected a purchaser with a retailer. *Id.* at 97. The Comptroller was thus necessarily arguing that orders could be forwarded from one location (the brick-and-mortar store in Webster) to another (the warehouse in Grand Prairie). *See id.* The court of appeals agreed with the Comptroller's position. *See id.* at 98–99.

In response to the litigation, and apparently concerned that the warehouse location had less connection with the sale than the brick-and-mortar retail location at which the purchaser appeared in-person to place an order, the Legislature amended the statutory consummation directives as follows:

> SECTION 2. Section 321.203, Tax Code, is amended by amending Subsections (c) and (d) and adding Subsections (c-1), (c-2), and (c-3) to read as follows:

> (c)    *If a retailer has more than one place of business in this state, <u>each</u> [a] sale of <u>each</u> [a] taxable item by the retailer is consummated at the [retailer's] **place of business <u>of the retailer in this state where the retailer first receives the order</u>**, provided that the order is placed in person by the purchaser or lessee of the taxable item at the place of business of the retailer in this state where the retailer first receives the order.*

2009 Act, § 5 (emphasis added).[31]

According to the Author's/Sponsor's Statement of Intent:

Current Texas law requires that the local sales tax on an item be sourced to the place of business from where it was shipped, provided the company has more than one place of business in this state. This has caused some confusion with regard to local sales tax sourcing of certain purchases. In some instances, a customer walks into a local retail outlet, selects, and pays for merchandise that will be shipped to his or her home, but the local sales tax is legally due to a warehouse or distribution facility in another community.

As proposed, S.B. 1202 amends Chapters 321 and 323 of the Tax Code to clarify the local sales tax sourcing laws and ensure that local sales tax is allocated to the retail location where the customer makes his or her purchase. *S.B. 1202 allows business transactions and sales made through non-traditional sales channels such as call centers and the Internet to remain sourced to the warehouse or distribution center and benefit the community that is supporting that business infrastructure.*

(CPEx.45:930–31) (emphasis added).[32]

---

[31] For the actions on and the final language of S.B. 1202, *See*: https://capitol.texas.gov/BillLookup/Amendments.aspx?LegSess=81R&Bill=SB636 dealing with S.B. 636. Compare the language in House amendment 2 to S.B. 636, identified in that link, to the version of S.B. 1202 passed by the Senate and found at https://capitol.texas.gov/tlodocs/81R/billtext/pdf/SB01202E.pdf#navpanes=0. They are identical. For procedural reasons, S.B.1202 could not be passed in the House as S.B. 1202 so it was added, with no changes, as House amendment number 2 to S.B. 636 then pending in the House, which could be passed, and then sent back over to the Senate, which adopted S.B. 636 with the addition of S.B. 1202 by the House. In short, everything that was said about S.B. 1202 applies to the portion of S.B. 636 containing S.B. 1202.

[32] There was also a "Statement of Legislative Intent" found at https://capitol.texas.gov/BillLookup/Actions.aspx?LegSess=81R&Bill=SB1202 that included the following about S.B. 1202: "It [S.B. 1202] does not impact other types of transactions including catalog, Internet, 1-800 call centers, business to business invoicing, purchase orders, etc., retain the same sourcing treatment that exists under current law."

The Legislature thus modified the consummation directives based on a policy disagreement with the Comptroller about which of two places of business (each having received the same order) should receive local sales tax. The Legislature decided that the location operated by the retailer where the order is first placed in-person and confirmed (a brick-and-mortar store) makes a more significant contribution to the transaction than the warehouse that the purchaser did not personally visit and from which the taxable item is shipped, delivered, or picked up. Therefore, the Legislature chose the brick-and-mortar store as the origin of the taxable sale entitling the municipality in which it was located to receive the local sales tax.

The need for those restrictions necessarily reflects the Legislature's understanding that, for local-sales-tax purposes, "orders" can be placed and received other than in-person, that they can be forwarded, and most importantly for this case, "orders" can be "received" at multiple locations. Otherwise, the Legislature would have had no reason to include the limiting conditions "first received" and "in person." Moreover, and critically for the dispute here, the Author's/Sponsor's Statement of Intent confirms the Legislature's understanding and intention that if an order *is not* received in-person, but instead is received through "non-traditional sales channels" (such as an order placed on a website and transmitted over the Internet,

an Internet Sale) the taxable sale is consummated at the established location operated by the retailer from which shipment or delivery to, or pickup by, the buyer occurs.

**D.    That the Legislature intended the plain meanings of "receives" and "order" is reflected by the Comptroller's acceptance of those meanings for 46 years.**

Until 2020, the Comptroller had never in a rule placed any conditions on how, when, where, by or from whom, how often an order is received, or what it must consist of. *See* 4 Tex. Reg. 3618, 3621 (1979); 34 Tex. Admin. Code § 3.374(a)(2) (1986); 39 Tex. Reg. 9597, 9604 (2014); 41 Tex. Reg. 260, 262 (2016). And the pre-2020 pronouncements generally tracked the words used in the statute to define a place of business. *See id.* Consistently from 1979 until 2020, the Comptroller considered a place of business either a retailer location with the purpose of selling or such a location that "takes orders." *See id.* Both were locations connected with the sales process. Moreover, before 2020, the Comptroller offered no regulatory definition, by rule or ruling, of "receives." There still is no regulatory definition of "order." Although that regulatory acceptance of the plain meanings of the statutory words is not conclusive, it supports the Coppell Plaintiffs' argument about what the

Legislature intended. *See Tex. Dep't of Protective & Regul. Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004).[33]

Further, until 2020 the Comptroller also agreed that orders that are a fundamental part of Internet Sales (orders placed on websites) could be received at an established location operated by the retailer. (CR:1026–30; CPExs.1–7; CR:737–38, 739–41, 859–917, 663–74, 687–709, 675–86, 742–53, 1021–22, 756–67.) And consistent with that past acceptance, the May 2020 version of § 3.334 provided that the new position on Internet Sales did not become effective for more than a year after the rule was adopted. *See* 45 Tex. Reg. 3499, 3511 (2020) (App. Tab F). There would have been no need to delay implementation if there was no change.

3. **In § 3.334, the Comptroller has strung together intertwined regulatory provisions that improperly add conditions contravening the plain meaning of "receives" and "order" that result in the displacement of origin-sourcing.**

In 2020 the Comptroller set out to rewrite the statutory definition of place of business through a series of four amendments to § 3.334. The final amendment, effective July 4, 2024, adds language not found in versions of § 3.334 predating 2020

---

[33] In the last three legislative sessions the Comptroller has supported bills that would have amended Chapter 321 to make it consistent with the current version of § 3.334. That is, the Comptroller seeks to have the Legislature impose "destination-sourcing" on Internet Sales. None of the bills the Comptroller supported made it out of the House of Representatives. (*See* CPEx.51:932–35); HB 4072, 87th Leg., R.S. (2021); (CPEx.52:936–43); HB 5089, 88th Leg., R.S. (2023); HB 134, 89th Leg., R.S. (2025), available at https://capitol.texas.gov/BillLookup/History.aspx?LegSess=89R&Bill=HB134. If the statutory definition of place of business meant what the Comptroller insists in § 3.334 it does, no change to the statutory definition would be needed.

in the following subsections: (a)(9), (a)(18), (b)(1)(A), (b)(5) and (c)(7). *See* 49 Tex. Reg. 4797, 4797–4808 (2024) (App. Tab I).

Subsection (a)(9) for the first time defines "fulfill" as not involving any steps leading to the transfer of possession of a taxable item to a purchaser or the shipment or delivery of a taxable item to a location designated by the purchaser.

Subsection (a)(18) for the first time introduces the concept that established locations operated by a retailer should have sales personnel (an undefined term) and that a computer server is not a place of business.

Subsection (b)(1)(A) for the first time requires that for certain established locations operated by the retailer to be places of business [distribution centers, manufacturing plants, storage yards, warehouses, or similar facilities] they (1) *must* have sales personnel present that receive the orders, and (2) *must not* receive forwarded orders (an undefined term).

Subsection (b)(5) for the first time dictates that (1) a "facility" not described by subsection (b)(1)(A) without sales personnel is presumed to not be a "place of

business of the retailer"[34] and (2) a computer used in connection with an Internet Sale is neither an established location nor a place of business.[35]

Subsection (c)(7) for the first time says (1) that an order can be received only once and only at the location where the information from the purchaser is received and reviewed to determine whether the order can be accepted and (2) once that acceptance determination is made whatever information is "forwarded" is not an order.

As a result, a retailer that keeps taxable items to sell in the ordinary course of its business at an established location it operates and relies entirely on Internet Sales, such as a fulfillment center, does not have a place of business at that location. No taxable sales can be consummated there. Instead, under the Comptroller's amended § 3.334, sales of taxable items shipped from such locations are consummated at the location to which the item is shipped or delivered.[36] In other words, the Comptroller has purported to impose "destination-sourcing" on such taxable sales without any action by the Legislature authorizing the change.

---

[34] There is nothing in § 3.334 that provides any guidance on how this "presumption" can be overcome. It is effectively irrebuttable.

[35] This limiting condition when combined with the others means a computer that "reviews" an order for acceptability "receives" the order but is not still not a place of business and the location that receives the order that has passed through that computer has received a "forwarded" order, meaning that order cannot create a place of business.

[36] The Comptroller has never identified a statutory basis for this conclusion. It appears to be *ipse dixit*.

Adding conditions to § 3.334 to single out Internet Sales and the fulfillment centers that are integral to such sales violates a fundamental tenet of statutory construction—administrative agencies no more than courts can add words to a statute. The Legislature is presumed to have "included each word in the statue for a purpose and that words not included were purposefully omitted." *ExxonMobil Pipeline Co. v. Coleman,* 512 S.W.3d 895, 899 (Tex. 2017); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (same); *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012) (same); *Centerpoint Builders GP, LLC v. Trussway, Ltd.*, 496 S.W.3d 33, 36 (Tex. 2016) ("We presume the Legislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact.") (cleaned up); *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 283 (Tex. 2016) (orig. proceeding) (same). Not one of the limiting conditions on what is a place of business imposed by the Comptroller in § 3.334 is found in the statutory definition of that term. (*See* App. Tab J.)

**4.      The arguments advanced by the Comptroller fail to justify his effort to limit the plain meanings of "receives" and "order."**

In the district court, the Comptroller argued that term of art, context, and avoiding absurdity required rejection of the plain meanings of "receives" and "order." As explained in detail below, the Comptroller's justifications fail.

**A.** **"Receives" and "order" by themselves or together are not "terms of art," with a meanings different than their plain meanings.**

The Comptroller has asserted that because the Legislature has defined place of business, the phrase "place of business" is a "term of art." (CR:1822–23); 49 Tex. Reg. 4797, 4798 (2024) (App. Tab I). There are four problems with that argument.

First, the phrase "place of business" is not a "term of art" simply because it has been defined by the Legislature. Courts recognize that words can acquire particular meanings by legislative definition. They can also have a particular meaning by being applied in a specific way in some art, science, or trade in which case courts "look to the particular craft in order to ascertain its proper significance." *RJR Vapor Co., LLC v. Hegar*, 681 S.W.3d 867, 881 (Tex. App.—Austin 2023, pet. granted) (quoting Tex. Gov't Code § 311.011(b)); *Tex. Health Harris Methodist Hosp. Fort Worth v. Featherly*, 648 S.W.3d 556, 570 (Tex. App.—Fort Worth 2022, pet. denied). In other words, if a statutory definition exists, courts do not look to some art, science, or trade for what it means. They look to the statutory definition.

Second, the issue in this appeal is not what the phrase "place of business" means, divorced from the words the Legislature chose to define it. Rather, at issue is what the words *in* the statutory definition mean.

Third, the words "receives" and "order" are not terms of art. Nothing in the record identifies a "given specialty" or any "particular trade, subject matter, or art"

with experts in that specialty that understand "receives" or "order" differently than their plain meanings when used to describe sales transactions.

Fourth, the meanings of "receives" and "order" must be read in conjunction with the purpose of the phrase "place of business" which is to help determine, in connection with the statutory consummation directives, which city should receive local sales tax from a taxable sale. The words "receives" and "order" only make a location in a municipality eligible to receive local sales tax because it is a place of business. The consummation directives determine whether that place of business gets the local sales tax. The Legislature is the expert on how that purpose—who gets the local sales tax—is to be achieved. If it intended the words "receives" or "order" to limit the potential locations eligible to receive local sales tax, it would have given them specialized meanings. It did not.

**B.    The phrase "for the purpose of receiving order" in the definition of "place of business" does not evidence context relevant to the meaning of that phrase.**

According to the Comptroller, the phrase "for the purpose of receiving orders," which is found in the definition of place of business, provides "context" for rejecting the plain meanings of "receives" and "order." (*See* CR:2594–97.) The Comptroller's argument goes like this. Traditionally, sales offices have the purpose of receiving orders, and traditionally, they had (and have) sales personnel to receive those orders. Therefore, "for the purpose of receiving orders" suggests to the mind

of the ordinary reader locations that have sales personnel. *See id.* There are several problems with this argument.

First, as the Comptroller has consistently recognized, an established location operated by a retailer does not have to have the purpose of receiving orders to be a place of business. (CR:2597); *City of Webster*, 311 S.W.3d at 96. If the location receives three orders in a calendar year, it is a place of business. (*See id.*) Because the purpose condition need not be satisfied for a place of business to exist, it necessarily follows that sales personnel need not be present for a location to be a place of business. And consistent with this conclusion, the Legislature provided that a warehouse, storage yard, or manufacturing facility, none of which is commonly understood as having sales personnel, can be places of business. All the Legislature required is that they must receive three orders.

Second, even for locations that are places of business based on having a "purpose of receiving orders," a need for them to have sales personnel does not follow logically. It is an example of the distributive fallacy, in which it is incorrectly assumed that a group has all the properties of one of its members. Just because one place of business with a "purpose of receiving orders" may have sales personnel does not mean all such places of business must have sales personnel.

Third, even if the Comptroller were correct in his speculation about the images that the words "for the purpose of receiving orders" would have called up in the

mind of the ordinary person in 1979—the record contains no evidence to support this speculation—statutory interpretation today does not turn on such legislative mindreading. It focuses instead on the *meanings* of the words the Legislature used. And as discussed in Part 5, the approach is not different even if the meanings of the words encompasses notions unthought of at the time the statute was enacted—such as receipt of orders by computers running software rather than by "sales personnel."

## C. Other states' understanding of "receives" is not "context."

The Comptroller asserted in the district court that the word "receive" in section 321.002(a)(3)(A) should be understood consistently with guidelines found in the Streamlined Sales and Use Tax Agreement (the "Streamlined Agreement"). *See* (7RR:93–101; CR:2594–95). He suggests, in other words, that the local-sales-tax-practices in other states is relevant "context" for the interpretation of the Texas Tax Code. So, he inserted section (c)(7) into § 3.334 verbatim from the Streamlined Agreement, using 125 words to define the single word "receive." *See* 49 Tex. Reg. 4797, 4801 (2024) (App. Tab I). In adopting the language from the Streamlined Agreement, the Comptroller contradicted the plain but broad meanings of "receives" and "order." Contrary to those plain meanings, the Streamlined Agreement limits receipt of orders to a single location and limits how, when, where, by or from whom, or how often an order can be received.

But the Legislature rejected becoming a member of the Streamlined Agreement because the guidelines were based on "destination-sourcing" not "origin-sourcing." (CPEx.36:9–10.) The Coppell Plaintiffs are unaware of any Texas decision that has considered "context" to include using how other states have expressly defined a word. To the contrary, the Legislature's rejection of the Streamlined Agreement suggests that the Legislature was also rejecting the very definition the Comptroller seeks to use to displace the plain meanings of the words in the Texas definition of "place of business."

Any doubt that the definition of "receives" as taken from the Streamlined Agreement is of no use in understanding the meaning of a word used by the Texas Legislature is laid to rest by the Supreme Court's decision in *Graphic Packaging Corp. v. Hegar,* 538 S.W.3d 89, 102, 104–05 (Tex. 2017). There, the court made clear that, even when the state is a party to a multi-state agreement, it reserves its right to administer its laws without reference to or consideration of what other states have decided to do under that agreement. *See id.* at 102. If that rule applies to multi-state agreements to which the state *is* a party, it applies more strongly when the state has *rejected* becoming a party.

### D. The plain meanings of "receives" and "order" do not create an absurdity.

For an asserted absurdity to defeat plain meaning, the result of applying plain meaning must be more than peculiar, odd, unfair, or illogical. *Jaster v. Comet II*

*Constr., Inc.*, 438 S.W.3d 556, 574 (Tex. 2014) (citation omitted). Rather, the result must be "unthinkable or unfathomable." *Rodriguez v. Safeco Ins. Co. of Indiana*, 684 S.W.3d 789, 796 (Tex. 2024). The issue the Comptroller points to does not come close to meeting those standards.

According to the Comptroller, if "receives" and "order" are given their plain meanings in the definition of place of business, any established location operated by the retailer that gets a purchaser's request to be supplied a taxable item is a place of business[37] and, in one limited situation addressed in section 321.203(d)(1) of the statute, there is no way for the retailer or the Comptroller to determine where the taxable sale is consummated. (CR:2596–97.) The only way to deal with the issue, as far as the Comptroller is concerned, is to impose limiting conditions on the definition of place of business to reduce to one, the established locations operated by a retailer that qualify as a place of business, and, in turn limiting to one where consummation happens. (*See id.*)

The Comptroller is wrong. He is disregarding both the statutory history and the structure of Chapter 321. As already discussed, statutory history establishes that the Legislature did not intend to cabin what is a place of business as has the Comptroller in § 3.334. And the structure establishes that the definition of place of

---

[37] As discussed earlier, not every established location operated by the retailer that receives an order qualifies as a place of business.

business, based on the plain meaning of the words in that definition, controls all the sections that follow because the definitional section says that "In this chapter" (the whole chapter) those definitions apply. That command necessarily includes the consummation directives. Most tellingly, the plain but broad meaning of place of business also necessarily applies to the requirement imposed in the 1979 Act, and unchanged since, that *each* place of business must have a permit. *See* Tex. Tax Code § 231.303(a). In other words, to capture every retailer location involved in sales activity, and thus all sales tax properly payable, the legislature defined "place of business" capaciously, as any location with the purpose of or that does in fact receive at least three orders.

The Comptroller rejects this sequencing and he would instead have (d)(1) require that the plain meaning be limited in order to answer at which place of business to which (d)(1) applies consummation happens. The Comptroller's assertion overlooks that the history and structure of section 321.203 provide an answer without the need to make "receives" and "order" mean something other than a request to be supplied a taxable item: their plain meanings. So the Comptroller has things backward—the consummation directives cannot be read to limit the Chapter-wide definition of place of business.

Those directives identify where the consummation of taxable sales occurs in four different situations involving four different types of places of business. For a

retailer with a single place of business, all sales are consummated at that location. *See* Tex. Tax Code § 321.203(b) (App. Tab D). For a retailer with multiple places of business, consummation occurs where physical segregation (delivery or shipment to, or pick-up by, the purchaser) occurs. *See id.* at §§ 321.203(c)–(c-1) (App. Tab D). For a retailer with multiple places of business, but an order is placed *in-person* by the purchaser, consummation occurs at the place of business that first receives that order and not where physical segregation occurs. *See id.* If none of those circumstances exist, consummation occurs at *the* place of business where *the* order was received. *See id.* at § 321.203(d)(1) (App. Tab D).[38]

Subparagraphs (b), (c), and (c-1) in section 321.203 each describe conditions for determining the location where a taxable sale is consummated that either have nothing to do with receipt of a specific order (a single place of business on one hand or where physical segregation occurs on the other) or cover an order made in a distinctive way (where an in-person order is first placed). Those conditions allow immediate identification of the exact place of business, out of all eligible places of business, where consummation occurs. Subsection (d)(1) does not do that.

---

[38] Section 321.203(d) was added in 1979 when the statutory definition of place of business was adopted in response to *Dunigan*. Given that it was added to the statutory consummation directives that recognized physical segregation, which was not deleted, it necessarily described paper segregation, which the Comptroller argued in *Dunigan* is where consummation occurs.

But the Legislature, by a process of elimination, has made clear where consummation occurs in the circumstance addressed by (d)(1). As recognized in *Dunigan,* consummation of a taxable sale can occur where physical segregation happens or where paper segregation occurs. At a single place of business, either or both happen at the same location. Where an order is first placed in-person, paper segregation happens at that location. Where a taxable good is shipped, delivered, or picked up, physical segregation occurs at that location. Physical segregation cannot happen in the circumstances covered by (d)(1) because by the terms of subsection (d), it applies only if (b), (c), or (c-1) do *not* apply. That necessarily means that in the (d)(1) situation, only paper segregation can determine where consummation happens.

And "paper segregation" by its nature only occurs once and in one location, which explains the use in (d)(1) of "the" order and "the" place of business. So, the allegedly "absurd" problem facing the Comptroller is at most a purely technical and easily manageable question: for taxable sales covered by (d)(1), where does "paper segregation" occur? It is not "unfathomable" or "unthinkable" that the Legislature would leave to the Comptroller to decide, as a practical matter, where "paper segregation" occurs in the (d)(1) situation. There is neither need nor occasion for policymaking by the Comptroller. Nor a need to overrule the plain meanings of "receives" and "order" as used in the statutory definition of place of business. The

Legislature has decided where consummation occurs in the limited (d)(1) situation: where paper separation happens.[39] The Comptroller simply needs to identify which place of business that is factually, taking into account the varying kinds of sale transactions conducted in today's economy.

5. **The Comptroller's limiting conditions are based on an outdated sales model – person to person – when the definition of place of business and the consummation directives are broad enough to include new approaches based on technological developments.**

Why did the Comptroller wait until 2020 to add limiting conditions to the plain meanings of "receives" and "order?" Based on the comments received to the proposed amendments, it appears the new rule was a response to concerns that Internet Sales were significantly diverting local sales tax from communities with "main street" brick-and-mortar stores to communities with fulfillment centers. *See* 49 Tex. Reg. 2440, 2448 (2024) (App. Tab H). Apart from the fact that this concern has no factual support,[40] the solution cannot be to rewrite the statutory definition of place of business.

---

[39] Significantly the Comptroller never identified in any of proposed amended rules beginning in 2020 that the application of (d)(1) had presented problems in the past for the agency or retailers. The purported need to issue rules making explicit how it applies, is creating a solution in the absence of a problem

[40] The only study in the administrative record on this issue demonstrates that fulfillment centers in one community do not materially reduce the amount of local sales tax other communities collect, and that if fulfillment centers are not places of business there would be no material increase in the local sales tax allocated to communities with no or few fulfillment centers. (CPEx.39:48–59.)

According to the Comptroller, if a fulfillment center ships taxable items to a purchaser based solely on Internet Sales, the fulfillment center is not a place of business. Yet as the Comptroller concedes, if three purchasers were to walk into the fulfillment center and use a computer at the fulfillment center to place an order on a website and the taxable item ordered was shipped from that fulfillment center, it would then be a place of business not only for that order but for every Internet Sales item shipped or delivered from or picked up at that location. In that circumstance *every* sale is consummated at the fulfillment center. (CR:2597; 12RR:102–04.) And likewise, as the Comptroller agrees, if a fulfillment center takes in three emailed or faxed requests to be supplied a taxable item and that item is shipped or delivered from or picked up at that location, then the sale of every Internet Sales item shipped or delivered from or picked up at that location is consummated there. But if that same location handles only Internet Sales, it is not a place of business, and no taxable sale of any taxable item shipped or delivered from or picked up at that location is consummated there. If the definition of place of business creates any absurdity, it is the application of anything other than the plain meanings of "receives" and "order" that produces these absurd results.

As explained, nothing in the definition of place of business supports such distinctions. Rather, the plain and broad meanings of "receives" and "order" compel the opposite result: the orders that are part of and fundamental to Internet Sales are

received at fulfillment centers and consummated there. The only plausible explanation for the Comptroller refusing to recognize those facts is an unwillingness to accept technological developments over the last 40 years in how people buy things—the use of order management software (automated website ordering software) that runs on computers connected via the Internet. The provisions of § 3.334 that the Coppell Plaintiffs challenge impose a person-to-person sales process that did not exist even in 1979 (think sales by fax or mail order), and has continued to evolve since, but only because what was done by actually visiting retail locations is now often done virtually and more efficiently with greater choice and lower costs through Internet Sales.

In *Miles v. Texas Central Railroad & Infrastructure, Inc.*, the Supreme Court noted:

> We have long interpreted statutes … to embrace later-developed technologies if the [statutory] language used is broad enough to embrace a subsequently developed method.

647 S.W.3d 613, 623 (Tex. 2022). At issue in *Miles* was whether the phrase "interurban electric railway company" was limited to a specific type of beefed-up urban trolley or included a modern high-speed electrically powered passenger train. *See id.* at 621. In agreeing that an "interurban electric railway company" described an entity operating a high-speed electric passenger train the court concluded:

> [H]igh-speed rail was unimaginable when the Legislature passed the 1907 statute at issue here. But if technology had accelerated such that

high-speed rail became available in 1908, no one would have thought that the Legislature would need to pass another statute to accommodate it. We agree with the dissent that courts must give a statutory provision the ordinary meaning that it had at the time it was enacted. *The 1907 statute's text may have been capacious, but it was not unclear.*

*Id.* at 623 (emphasis added) (internal citations omitted).

In the same way, the plain meanings of the words "receives" and "orders" are broad but not unclear. Their reach is not limited to what images their use may have brought to the mind of the ordinary person or the ordinary retailer or the ordinary legislator in 1979. The Legislature is deemed to have understood the breadth of the words used and that they would encompass future as well as then-current ways for orders to be received. The teaching of *Miles* could not be more plain—words that are capacious but clear include technological developments that were unknown at the time the disputed statutory language was adopted. The Legislature could, naturally, rewrite the definition of place of business to preclude locations that received orders through non-traditional sales channels from being places of business. It has not done so. And the Comptroller lacks authority to act in the Legislature's place.

Because the limiting conditions imposed by the amendments to § 3.334 challenged by the Coppell Plaintiffs simply reject technological advancements in the sales process (Internet Sales), they contravene the statutory definition of place of

business, run counter to the general objectives of the definition, and impose conditions not found in that definition. They are invalid.

## CONCLUSION AND PRAYER

Subsections (a)(9), (a)(18), (b)(1)(A), (b)(5) and (c)(7) of § 3.334 violate the statute they purport to implement. Specifically, they individually and in combination, invalidly rewrite the statutory definition of "place of business." And in doing so they (1) contravene specific statutory language; (2) run counter to the general objectives of the statutory provisions it is implementing; or (3) impose additional burdens, conditions, or restrictions in excess of or inconsistent with the stator definition of "place of business." This Court should therefore render judgment that the identified portions of § 3.334 are invalid. The Coppell Parties also request general relief.

Dated: September 26, 2025

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: */s/ Richard B. Phillips, Jr.*
    James B. Harris
    State Bar No. 09065400
    james.harris@hklaw.com

    Stephen F. Fink
    State Bar No. 07013500
    stephen.fink@hklaw.com

    Richard B. Phillips, Jr.
    State Bar No. 24032833
    rich.phillips@hklaw.com

    Reed C. Randel
    State Bar No. 24075780
    reed.randel@hklaw.com

    Cole W. Browndorf
    State Bar No. 24127229
    cole.browndorf@hklaw.com

1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 964-9500
Fax: (214) 964-9501

**Counsel for Coppell Parties**

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e), because it has been prepared in Times New Roman font in 14-point for text and 13-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), because it contains 13,001 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.

TAB

A

CAUSE NO. D-1-GN-21-003198*

(Consolidated with D-1-GN-21-003203)

| | | |
|---|---|---|
| CITY OF COPPELL, TEXAS, | § | IN THE DISTRICT COURT OF |
| CITY OF HUMBLE, TEXAS, | § | |
| CITY OF DESOTO, TEXAS, | § | |
| CITY OF CARROLLTON, TEXAS, | § | |
| CITY OF FARMERS BRANCH, TEXAS, and | § | |
| CITY OF ROUND ROCK, TEXAS, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | TRAVIS COUNTY, TEXAS |
| v. | § | |
| | § | |
| GLENN HEGAR, in his official capacity | § | |
| as Comptroller of Public Accounts of | § | |
| the State of Texas, | § | |
| | § | |
| *Defendant*. | § | 201ST JUDICIAL DISTRICT |
| | § | (*Assigned to the 250th District) |

**FINAL JUDGMENT**

On October 14–16, 2024, the Court heard the merits of these consolidated causes. Attorneys James Harris and Reed Randel appeared for Plaintiffs City of Humble, Texas; City of Desoto, Texas; City of Carroll, Texas; City of Coppell, Texas; and City of Farmers Branch, Texas (the Coppell Plaintiffs). Attorneys Cindy Olsen Bourland and Bryan Dotson appeared for Plaintiff City of Round Rock, Texas (the Round Rock Plaintiff). Attorneys Kyle Counce and Ray Langenberg appeared for Defendant Comptroller of Public Accounts of the State of Texas (the Comptroller). The parties announced ready and proceeded to trial.

After careful consideration of the evidence and arguments of counsel, the Court renders judgment as follows:



FINAL JUDGMENT
Cause No. D-1-GN-21-003198 (Consolidated)

The Court FINDS that Section 321.002(a)(3)(A) of the Tax Code requires a determination of whether at least three orders were received by the retailer during the calendar year. Therefore, the Court cannot prospectively declare Fulfillment Centers as places of business.

Accordingly, the Court FINDS that Coppell Plaintiffs' request to declare Fulfillment Centers receiving only Website Orders places of business under the 2016 version of 34 TAC § 3.334 should be and is DENIED.

The Court FINDS that 34 TAC § 3.334(a)(9) contravenes existing statutes by adding a definition at the agency level that the Legislature has not defined in Chapter 151 of the Texas Tax Code and for which Sections 321.203 and 323.203 already provide a detailed statutory scheme for determining where a sale of taxable item is "consummated."

The Court FINDS that 34 TAC § 3.334(a)(18), (b)(5), and (c) contravene specific statutory language set forth in Texas Tax Code sections 321.002(a)(3)(A), 321.203, and 323.203.

The Court FINDS that 34 TAC § 3.334(c) [(c)(1) and (c)(2) inclusive] contravenes the statutory schemes for determining where a sale is consummated, under Sections 321.203 and 323.203.

The Court FURTHER FINDS that the Comptroller did not substantially comply with the notice requirements under the APA.

The Court FURTHER FINDS that Defendant Comptroller did not substantially comply with the "reasoned justification" requirement under the APA.



IT IS JUDICIALLY DECLARED that 34 TAC § 3.334 or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Coppell Plaintiffs.

IT IS JUDICIALLY DECLARED that 34 TAC § 3.334 or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Round Rock Plaintiff.

IT IS THEREFORE ORDERED that Defendant Comptroller of Public Accounts of the State of Texas is hereby PERMANENTLY ENJOINED from enforcing 34 TAC § 3.334, subsections (a)(9), (a)(18), (b)(5), and (c), effective July 4, 2024, and those subsections are hereby REMANDED to the Comptroller of Public Accounts of the State of Texas for further consideration not inconsistent with Chapters 151, 321, and 323 of the Texas Tax Code.

All other relief not expressly granted herein is DENIED. This judgment finally disposes of all parties and all claims and is appealable.

Signed on this third day of December 2024,

KARIN CRUMP
JUDGE PRESIDING
250th DISTRICT COURT

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On _____

03/26/2025 01:01:46

VELVA L. PRICE
DISTRICT CLERK
By Deputy: VNB

CAUSE NO. D-1-GN-21-003198*

(Consolidated with D-1-GN-21-003203)

| | | |
|---|---|---|
| CITY OF COPPELL, TEXAS, | § | IN THE DISTRICT COURT OF |
| CITY OF HUMBLE, TEXAS, | § | |
| CITY OF DESOTO, TEXAS, | § | |
| CITY OF CARROLLTON, TEXAS, | § | |
| CITY OF FARMERS BRANCH, TEXAS, and | § | |
| CITY OF ROUND ROCK, TEXAS, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | TRAVIS COUNTY, TEXAS |
| v. | § | |
| | § | |
| GLENN HEGAR, in his official capacity | § | |
| as Comptroller of Public Accounts of | § | |
| the State of Texas, | § | |
| | § | |
| *Defendant*. | § | 201ST JUDICIAL DISTRICT |
| | § | Assigned to the 250th District Court |

## CONCLUSIONS OF LAW

On December 3, 2024, the Court issued its Final Judgment for this cause. The Coppell Plaintiffs' Request for Findings of Fact and Conclusions of Law was filed on December 23, 2024. On December 30, 2024, the Coppell Plaintiffs informed the Court that they have "concluded that findings of fact are unnecessary in this case [and] therefore withdraw that portion of the December 3, 2024 request for findings of fact." Accordingly, the Court hereby issues the following Conclusions of Law:

1.      34 Texas Administrative Code (TAC) § 3.334(a)(9) contravenes existing statutes by adding a definition at the agency level that the Legislature has not defined in Chapter 151 of the Texas Tax Code and for which Sections 321.203 and 323.203 already provide a detailed statutory scheme for determining where a sale of taxable item is "consummated."

2.      34 TAC § 3.334(a)(18), (b)(5), and (c) contravene specific statutory language set forth in Texas Tax Code sections 321.002(a)(3)(A), 321.203, and 323.203.

CONCLUSIONS OF LAW
Cause No. D-1-GN-21-003198 (Consolidated)

2846

3.      34 TAC § 3.334(c) [(c)(1) and (c)(2) inclusive] contravenes the statutory schemes for determining where a sale is consummated, under Sections 321.203 and 323.203.

4.      34 TAC § 3.334(b)(1)(A), when read in conjunction with its (b)(1)(B), is a descriptive statement of those circumstances when a distribution center, manufacturing plant, storage yard, warehouse, or similar facility "is a place of business of the seller" within the meaning of Texas Tax Code section 321.002(a)(3)(A). As such, 34 TAC § 3.334(b)(1)(A) is a statement of qualification by which such a location may be considered a place of business of the seller under Section 321.002(a)(3)(A).

5.      The Comptroller did not substantially comply with the notice requirements under the Administrative Procedure Act (APA).

6.      The Comptroller did not substantially comply with the "reasoned justification" requirement under the APA.

7.      34 TAC § 3.334 or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Coppell Plaintiffs.

8.      34 TAC § 3.334 or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Round Rock Plaintiff.

Signed on the 30th day of December 2024.

_____
KARIN CRUMP
Judge Presiding, 250th District Court

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On _____
03/26/2025 01:01:47
VELVA L. PRICE
DISTRICT CLERK
By Deputy: VNB

CONCLUSIONS OF LAW
Cause No. D-1-GN-21-003198 (Consolidated)

2847

**T**AB

**C**

Vernon's Texas Statutes and Codes Annotated
  Tax Code (Refs & Annos)
    Title 3. Local Taxation
      Subtitle C. Local Sales and Use Taxes
        Chapter 321. Municipal Sales and Use Tax Act (Refs & Annos)
          Subchapter A. General Provisions

V.T.C.A., Tax Code § 321.002

§ 321.002. Definitions

Currentness

(a) In this chapter:

(1) "Additional municipal sales and use tax" means only the additional tax authorized by Section 321.101(b).

(2) "Municipality" includes any incorporated city, town, or village.

(3)(A) "Place of business of the retailer" means an established outlet, office, or location operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items and includes any location at which three or more orders are received by the retailer during a calendar year. A warehouse, storage yard, or manufacturing plant is not a "place of business of the retailer" unless at least three orders are received by the retailer during the calendar year at the warehouse, storage yard, or manufacturing plant.

(B) An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a "place of business of the retailer" if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under this chapter or exists solely to rebate a portion of the tax imposed by this chapter to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under this chapter or solely to rebate a portion of the tax imposed by this chapter if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.

(C) Notwithstanding any other provision of this subdivision, a kiosk is not a "place of business of the retailer." In this subdivision, "kiosk" means a small stand-alone area or structure that:

(i) is used solely to display merchandise or to submit orders for taxable items from a data entry device, or both;

(ii) is located entirely within a location that is a place of business of another retailer, such as a department store or shopping mall; and

(iii) at which taxable items are not available for immediate delivery to a customer.

(b) Words used in this chapter and defined by Chapter 151 have the meanings assigned by Chapter 151.

**Credits**

Added by Acts 1987, 70th Leg., ch. 191, § 1, eff. Sept. 1, 1987. Amended by Acts 2003, 78th Leg., ch. 1155, § 1, eff. Sept. 1, 2003; Acts 2009, 81st Leg., ch. 1360, § 4, eff. Sept. 1, 2009; Acts 2011, 82nd Leg., ch. 942 (H.B. 590), § 1, eff. Sept. 1, 2011; Acts 2013, 83rd Leg., ch. 1361 (S.B. 1533), § 1, eff. Sept. 1, 2013.

V. T. C. A., Tax Code § 321.002, TX TAX § 321.002
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TAB

D

Vernon's Texas Statutes and Codes Annotated
  Tax Code (Refs & Annos)
    Title 3. Local Taxation
      Subtitle C. Local Sales and Use Taxes
        Chapter 321. Municipal Sales and Use Tax Act (Refs & Annos)
          Subchapter C. Computation of Taxes

V.T.C.A., Tax Code § 321.203

§ 321.203. Consummation of Sale

Currentness

(a) A sale of a taxable item occurs within the municipality in which the sale is consummated. A sale is consummated as provided by this section regardless of the place where transfer of title or possession occurs.

(b) If a retailer has only one place of business in this state, all of the retailer's retail sales of taxable items are consummated at that place of business except as provided by Subsection (e).

(c) If a retailer has more than one place of business in this state, each sale of each taxable item by the retailer is consummated at the place of business of the retailer in this state where the retailer first receives the order, provided that the order is placed in person by the purchaser or lessee of the taxable item at the place of business of the retailer in this state where the retailer first receives the order.

(c-1) If the retailer has more than one place of business in this state and Subsection (c) does not apply, the sale is consummated at the place of business of the retailer in this state:

(1) from which the retailer ships or delivers the item, if the retailer ships or delivers the item to a point designated by the purchaser or lessee; or

(2) where the purchaser or lessee takes possession of and removes the item, if the purchaser or lessee takes possession of and removes the item from a place of business of the retailer.

(c-2) Expired.

(c-3) Expired.

(c-4) Expired.

(c-5) Expired.

(d) If the retailer has more than one place of business in this state and Subsections (c) and (c-1) do not apply, the sale is consummated at:

  (1) the place of business of the retailer in this state where the order is received; or

  (2) if the order is not received at a place of business of the retailer, the place of business from which the retailer's agent or employee who took the order operates.

(e) A sale of a taxable item is consummated at the location in this state to which the item is shipped or delivered or at which possession is taken by the customer if transfer of possession of the item occurs at, or shipment or delivery of the item originates from, a location in this state other than a place of business of the retailer and if:

  (1) the retailer is an itinerant vendor who has no place of business in this state;

  (2) the retailer's place of business where the purchase order is initially received or from which the retailer's agent or employee who took the order operates is outside this state; or

  (3) the purchaser places the order directly with the retailer's supplier and the item is shipped or delivered directly to the purchaser by the supplier.

(e-1) Except as otherwise provided by Subsection (f), (g), (g-1), (g-2), (g-3), (h), (i), (j), (k), (m), or (n), a sale of a taxable item made by a marketplace seller through a marketplace as provided by Section 151.0242 is consummated at the location in this state to which the item is shipped or delivered or at which possession is taken by the purchaser.

(f) The sale of natural gas and electricity is consummated at the point of delivery to the consumer.

(g) The sale of mobile telecommunications services is consummated in accordance with Section 151.061.

(g-1) The sale of telecommunications services sold based on a price that is measured by individual calls is consummated at the location where the call originates and terminates or the location where the call either originates or terminates and at which the service address is also located.

(g-2) Except as provided by Subsection (g-3), the sale of telecommunications services sold on a basis other than on a call-by-call basis is consummated at the location of the customer's place of primary use.

(g-3) A sale of post-paid calling services is consummated at the location of the origination point of the telecommunications signal as first identified by the seller's telecommunications system or by information received by the seller from the seller's service provider if the system used to transport the signal is not that of the seller.

(h) The sale of an amusement service is consummated in the municipality in which the performance or other delivery of the service takes place.

(i) If a purchaser who has given a resale certificate makes any use of a taxable item that subjects the taxable item to the sales tax under the provisions of Section 151.154, the use or other consumption of the taxable item that subjected the taxable item to the tax is consummated at the place where the taxable item is stored or kept at the time of or just before the use or consumption.

(j) The sale of services delivered through a cable system is consummated at the point of delivery to the consumer.

(k) The sale of garbage or other solid waste collection or removal service is consummated at the location at which the garbage or other solid waste is located when its collection or removal begins.

(l) Repealed by Acts 2007, 80th Leg., ch. 1266, § 15(4).

(m) If there is no place of business of the retailer because the comptroller determines that an outlet, office, facility, or location contracts with a retail or commercial business to process for that business invoices or bills of lading and that the outlet, office, facility, or location functions or exists to avoid the tax imposed by this chapter or to rebate a portion of the tax imposed by this chapter to the contracting business, a sale is consummated at the place of business of the retailer from whom the outlet, office, facility, or location purchased the taxable item for resale to the contracting business.

(n) A sale of a service described by Section 151.0047 to remodel, repair, or restore nonresidential real property is consummated at the location of the job site.

**Credits**
Added by Acts 1987, 70th Leg., ch. 191, § 1, eff. Sept. 1, 1987. Amended by Acts 1989, 71st Leg., ch. 2, § 14.22(a), eff. Aug. 28, 1989; Acts 1989, 71st Leg., ch. 810, § 1, eff. Oct. 1, 1989; Acts 1991, 72nd Leg., ch. 705, § 26, eff. Sept. 1, 1991; Acts 2001, 77th Leg., ch. 370, § 2, eff. Aug. 1, 2002; Acts 2003, 78th Leg., ch. 209, § 55, eff. Oct. 1, 2003; Acts 2003, 78th Leg., ch. 1155, §§ 2, 3, eff. Sept. 1, 2003; Acts 2003, 78th Leg., ch. 1310, § 115, eff. July 1, 2004; Acts 2005, 79th Leg., ch. 728, § 23.001(83), eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 1266, §§ 11, 15(4), eff. Sept. 1, 2007; Acts 2009, 81st Leg., ch. 1360, § 5, eff. June 19, 2009; Acts 2013, 83rd Leg., ch. 1342 (S.B. 997), § 1, eff. June 14, 2013; Acts 2019, 86th Leg., ch. 182 (H.B. 1525), § 3, eff. Oct. 1, 2019; Acts 2021, 87th Leg., ch. 569 (S.B. 477), § 6, eff. Oct. 1, 2021.

V. T. C. A., Tax Code § 321.203, TX TAX § 321.203
Current through the end of the 2025 Regular, First Called and Chapters 2 through 4 of the Second Called Sessions of the 89th Legislature.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

# TAB E

# TEXAS REGISTER

*Volume 45 Number 1*                    *January 3, 2020*                    *Pages 1 - 234*



D-1-GN-21-003198

**TRIAL EXHIBIT**

# CP Ex-16



a section of the
Office of the Secretary of State
P.O. Box 12887
Austin, Texas 78711
(512) 463-5561
FAX (512) 463-5569

https://www.sos.texas.gov
register@sos.texas.gov

*Texas Register,* **(ISSN 0362-4781, USPS 12-0090),** is published weekly (52 times per year) for $340.00 ($502.00 for first class mail delivery) by Matthew Bender & Co., Inc., 3 Lear Jet Lane Suite 104, P. O. Box 1710, Latham, NY 12110.

Material in the *Texas Register* is the property of the State of Texas. However, it may be copied, reproduced, or republished by any person without permission of the *Texas Register* director, provided no such republication shall bear the legend *Texas Register* or "Official" without the written permission of the director.

The *Texas Register* is published under the Government Code, Title 10, Chapter 2002. Periodicals Postage Paid at Easton, MD and at additional mailing offices.

**POSTMASTER:** Send address changes to the *Texas Register,* 4810 Williamsburg Road, Unit 2, Hurlock, MD 21643.

*Secretary of State -* Ruth R. Hughs

*Director -* Robert Sumners

*Editor-in-Chief -* Jill S. Ledbetter

**_Editors_**
Liz Cordell
Eddie Feng
Belinda Kirk
Cecilia Mena
Joy L. Morgan
Breanna Mutschler
Barbara Strickland

CP Ex-16-0002 of 0030

# IN THIS ISSUE

## GOVERNOR

Appointments.................................................................7

Proclamation 41-3703 ........................................8

## ATTORNEY GENERAL

Requests for Opinions.................................................11

Requests for Opinions.................................................11

## EMERGENCY RULES

**TEXAS DEPARTMENT OF INSURANCE**

TRADE PRACTICES

28 TAC §§21.4901 - 21.4904 ....................................13

## PROPOSED RULES

**OFFICE OF THE GOVERNOR**

CRIMINAL JUSTICE DIVISION

1 TAC §§3.9000, 3.9005 - 3.9007, 3.9011, 3.9015, 3.9017, 3.9019, 3.9021, 3.9025 ........................................17

1 TAC §3.9010, §3.9013.................................24

**TEXAS HEALTH AND HUMAN SERVICES COMMISSION**

REIMBURSEMENT RATES

1 TAC §355.8201.........................................25

**JOINT FINANCIAL REGULATORY AGENCIES**

PAYOFF STATEMENTS

7 TAC §155.2.............................................33

**TEXAS DEPARTMENT OF LICENSING AND REGULATION**

BARBERS

16 TAC §§82.10, 82.20 - 82.22, 82.28, 82.52, 82.70, 82.72, 82.74, 82.77, 82.80, 82.120 ....................................35

COSMETOLOGISTS

16 TAC §§83.10, 83.20 - 83.23, 83.25, 83.28, 83.52, 83.70, 83.72, 83.74, 83.77, 83.80, 83.120 .......................42

PODIATRIC MEDICINE PROGRAM

16 TAC §§130.42, 130.44, 130.45...........................52

16 TAC §§130.53, 130.56, 130.58, 130.59......................54

16 TAC §130.60..........................................57

16 TAC §130.72..........................................57

**STATE BOARD FOR EDUCATOR CERTIFICATION**

PROFESSIONAL EDUCATOR PREPARATION AND CERTIFICATION

19 TAC §230.21..........................................60

19 TAC §230.33, §230.36...................................63

19 TAC §230.55.........................................65

19 TAC §230.104, §230.105................................65

**TEXAS BOARD OF PROFESSIONAL ENGINEERS AND LAND SURVEYORS**

LICENSING

22 TAC §133.29.........................................66

**TEXAS STATE BOARD OF PHARMACY**

ADMINISTRATIVE PRACTICE AND PROCEDURES

22 TAC §281.7..........................................68

22 TAC §281.9..........................................71

22 TAC §281.66.........................................72

22 TAC §281.69.........................................73

22 TAC §281.70.........................................74

PHARMACIES

22 TAC §291.1..........................................75

22 TAC §291.3..........................................76

22 TAC §291.4..........................................79

22 TAC §291.14.........................................80

22 TAC §291.34.........................................81

PHARMACISTS

22 TAC §295.9..........................................91

22 TAC §295.13.........................................93

CONTROLLED SUBSTANCES

22 TAC §315.3..........................................95

22 TAC §315.16.........................................97

**COMPTROLLER OF PUBLIC ACCOUNTS**

TAX ADMINISTRATION

34 TAC §3.334.........................................98

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**

COMMUNITY JUSTICE ASSISTANCE DIVISION ADMINISTRATION

37 TAC §161.21........................................115

## WITHDRAWN RULES

**TEXAS DEPARTMENT OF AGRICULTURE**

HEMP PROGRAM

4 TAC §§24.1 - 24.4 ....................................117

4 TAC §§24.5 - 24.7 ....................................117

4 TAC §§24.8 - 24.19 ...................................117

4 TAC §§24.20 - 24.23 ..................................117

4 TAC §§24.24 - 24.29 ..................................117

CP Ex-16-0003 of 0030

4 TAC §24.30, §24.31 ............................................................118

4 TAC §§24.32 - 24.38 ..........................................................118

4 TAC §§24.39 - 24.43 ..........................................................118

4 TAC §§24.44 - 24.48 ..........................................................118

4 TAC §24.49, §24.50 ............................................................118

**CREDIT UNION DEPARTMENT**

CHARTERING, OPERATIONS, MERGERS, LIQUIDATIONS

7 TAC §91.1003 .....................................................................118

## *ADOPTED RULES*

**TEXAS DEPARTMENT OF AGRICULTURE**

QUARANTINES AND NOXIOUS AND INVASIVE PLANTS

4 TAC §§19.400 - 19.408 ......................................................119

**RAILROAD COMMISSION OF TEXAS**

OIL AND GAS DIVISION

16 TAC §3.70 ........................................................................119

PIPELINE SAFETY REGULATIONS

16 TAC §8.1, §8.5 .................................................................124

16 TAC §§8.101, 8.110, 8.115, 8.125, 8.135 ......................125

16 TAC §§8.201, 8.205, 8.206, 8.209, 8.210, 8.225, 8.230, 8.235, 8.240 ..................................................................................126

16 TAC §8.301, §8.315 .........................................................126

LP-GAS SAFETY RULES

16 TAC §§9.1 - 9.18, 9.21, 9.22, 9.26 - 9.28, 9.35 - 9.38, 9.41, 9.51, 9.52, 9.54 .............................................................................131

16 TAC §§9.101 - 9.103, 9.107 - 9.110, 9.113 - 9.116, 9.126, 9.129 - 9.132, 9.134 - 9.137, 9.140 - 9.143 ..................................143

16 TAC §§9.201 - 9.204, 9.206, 9.208, 9.211, 9.212 .........144

16 TAC §§9.301 - 9.304, 9.306 - 9.308, 9.311, 9.313 ........144

16 TAC §9.312 .......................................................................145

16 TAC §9.401, §9.403 .........................................................145

COAL MINING REGULATIONS

16 TAC §12.108 ....................................................................146

**PUBLIC UTILITY COMMISSION OF TEXAS**

PROCEDURAL RULES

16 TAC §22.246 ....................................................................147

**TEXAS HIGHER EDUCATION COORDINATING BOARD**

RULES APPLYING TO ALL PUBLIC AND PRIVATE OR INDEPENDENT INSTITUTIONS OF HIGHER EDUCATION IN TEXAS REGARDING ELECTRONIC

REPORTING OPTION FOR CERTAIN OFFENSES; AMNESTY

19 TAC §§3.1 - 3.20 .............................................................150

19 TAC §§3.11 - 3.15 ...........................................................152

**TEXAS MEDICAL BOARD**

LICENSURE

22 TAC §163.13 ....................................................................153

USE OF EXPERTS

22 TAC §§182.1, 182.3, 182.5, 182.8 .................................153

22 TAC §§182.2, 182.4, 182.6, 182.7 .................................153

**TEXAS DEPARTMENT OF INSURANCE**

GENERAL ADMINISTRATION

28 TAC §1.414 ......................................................................154

CORPORATE AND FINANCIAL REGULATION

28 TAC §7.1001 ....................................................................159

## *RULE REVIEW*

**Proposed Rule Reviews**

Office of the Governor ..........................................................161

State Board for Educator Certification ................................161

Texas State Board of Pharmacy ...........................................161

Texas Department of Criminal Justice .................................162

**Adopted Rule Reviews**

Joint Financial Regulatory Agencies ...................................162

## *TABLES AND GRAPHICS*

...........................................................................................163

## *IN ADDITION*

**Texas State Affordable Housing Corporation**

Draft Annual Action Plan Available for Public Comment .............217

**Office of Consumer Credit Commissioner**

Notice of Rate Ceilings .........................................................217

**Credit Union Department**

Application for a Merger or Consolidation ...................................217

Application to Expand Field of Membership ................................217

Notice of Final Action Taken ..............................................217

**Texas Commission on Environmental Quality**

Agreed Orders ......................................................................218

Amended Notice of Application and Public Hearing for an Air Quality Standard Permit for a Concrete Batch Plant With Enhanced Controls: Proposed Air Quality Registration Number 159167 ......................222

Enforcement Orders ..............................................................222

CP Ex-16-0004 of 0030

Enforcement Orders ........................................................226

Notice of Public Meeting for a New Municipal Solid Waste Facility: Registration Application No. 40305 ................................229

Notice of Water Quality Application .............................229

**Department of State Health Services**

Designation of a Practice Serving a Medically Underserved Population ....................................................................................229

**Texas Department of Insurance**

Company Licensing .......................................................230

**Public Utility Commission of Texas**

Notice of Application to Adjust High Cost Support Under 16 TAC §26.407(h)......................................................................230

Notice of Hearing on Emergency Order ........................230

Notice of Intent to Implement a Minor Rate Change Under 16 TAC §26.171 .........................................................................231

**South Plains Association of Governments**

Llano Estacado Regional Water Planning Group - Region O Solicitation of Nominations .......................................................231

Notice of Solicitation for Nominations for Persons to Serve on the Llano Estacado Regional Water Planning Group - Region O..........232

**Texas Department of Transportation**

Dallas District Notice Affording an Opportunity for a Public Hearing .................................................................................232

CP Ex-16-0005 of 0030



# THE GOVERNOR

As required by Government Code, §2002.011(4), the *Texas Register* publishes executive orders issued by the Governor of Texas. Appointments and proclamations are also published. Appointments are published in chronological order. Additional information on documents submitted for publication by the Governor's Office can be obtained by calling (512) 463-1828.

Appointments

**Appointments for December 2, 2019**

Appointed to the Judicial Compensation Commission, for a term to expire February 1, 2023, Linda W. Kinney of Comfort, Texas (replacing Frederick C. "Fred" Tate of Colleyville, who resigned).

Appointed as Commissioner of the Department of Family and Protective Services, for a term to expire August 31, 2021, Jaime D. Masters of Round Rock, Texas (replacing Henry L. "Hank" Whitman, Jr. of Floresville, who resigned).

Appointed to the Product Development and Small Business Incubator Board, for a term to expire February 1, 2021, Kimberly M. Gramm of Lubbock, Texas (replacing Kellilynn M. "Kelli" Frias, Ph.D. of Lubbock, who resigned).

Appointed to the Product Development and Small Business Incubator Board, for a term to expire February 1, 2025, Jack J. "Jody" Goehring, IV of Austin, Texas (Mr. Goehring is being reappointed).

Appointed to the Product Development and Small Business Incubator Board, for a term to expire February 1, 2025, David R. Margrave of San Antonio, Texas (Mr. Margrave is being reappointed).

Appointed to the Product Development and Small Business Incubator Board, for a term to expire February 1, 2025, Hayden Padgett of Plano, Texas (replacing Arun Agarwal of Dallas, whose term expired).

**Appointments for December 3, 2019**

Appointed to the Crime Victims' Institute Advisory Council, for a term to expire January 31, 2020, Matthew L. "Matt" Ferrara, Ph.D. of Austin, Texas (replacing Richard L. "Rick" Reynolds of Austin, whose term expired).

Appointed to the Crime Victims' Institute Advisory Council, for a term to expire January 31, 2021, Janis K. "Jan" Langbein of Dallas, Texas (replacing Ann Marie Matthews of Jourdanton, whose term expired).

Appointed to the Texas Poet Laureate, State Musician and State Artists Committee, for a term to expire October 1, 2021, Leah Gamble Martin of Plano, Texas (replacing Carol A. Hollen of Mineola, whose term expired).

**Appointments for December 4, 2019**

Appointed to the North Texas Tollway Authority Board of Directors, for a term to expire August 31, 2021, Frankie "Lynn" Gravley of Gunter, Texas (Mr. Gravley is being reappointed).

Appointed to the OneStar National Service Commission, for a term to expire March 15, 2022, Daphne D. Brookins of Forest Hill, Texas (Ms. Brookins is being reappointed).

Appointed to the OneStar National Service Commission, for a term to expire March 15, 2022, Annette G. Juba of Austin, Texas (Ms. Juba is being reappointed).

Appointed to the OneStar National Service Commission, for a term to expire March 15, 2022, Michael H. "Mike" Morath of Austin, Texas (Commissioner Morath is being reappointed).

Appointed to the OneStar National Service Commission, for a term to expire March 15, 2022, Girien R. Salazar of Houston, Texas (replacing Kathryn R. Timmerman of Austin, whose term expired).

Appointed to the OneStar National Service Commission, for a term to expire March 15, 2022, Eugene J. "Gene" Seaman of Corpus Christi, Texas (Representative Seaman is being reappointed).

Appointed to the OneStar National Service Commission, for a term to expire March 15, 2022, Kathrine J. "Kate" Williamson of Midland, Texas (Ms. Williamson is being reappointed).

**Appointments for December 5, 2019**

Designated as presiding officer of the Texas Council on Alzheimer's Disease and Related Disorders, for a term to expire at the pleasure of the Governor, Marc I. Diamond, M.D. of Dallas (Dr. Diamond is replacing Rita Hortenstine of Dallas as presiding officer).

Appointed to the Texas Council on Alzheimer's Disease and Related Disorders, for a term to expire August 31, 2025, Laura Fink Defina, M.D. of Richardson, Texas (Dr. DeFina is being reappointed).

Appointed to the Texas Council on Alzheimer's Disease and Related Disorders, for a term to expire August 31, 2025, Angela Turner of Normangee, Texas (replacing Rita Hortenstine of Dallas, whose term expired).

Appointed to the Commission on State Emergency Communications, for a term to expire September 1, 2025, Clinton D. Sawyer of Amherst, Texas (Mayor Sawyer is being reappointed).

**Appointments for December 6, 2019**

Designated as president of the Red River Authority of Texas Board of Directors, for a term to expire at the pleasure of the Governor. Todd W. Boykin of Amarillo.

Appointed to the Red River Authority of Texas Board of Directors, for a term to expire August 11, 2023, Jerry Dan Davis of Wellington, Texas (replacing William W. "Wade" Porter of Canyon, who resigned).

Appointed to the Red River Authority of Texas Board of Directors, for a term to expire August 11, 2025, Mary Lou Bradley of Memphis, Texas (replacing Penny C. Carpenter of Silverton, whose term expired).

Appointed to the Red River Authority of Texas Board of Directors, for a term to expire August 11, 2025, Zackary K. "Zack" Smith of Canyon, Texas (Mr. Smith is being reappointed).

Appointed to the Red River Authority of Texas Board of Directors, for a term to expire August 11, 2025, Stephen A. Thornhill of Denison, Texas (Mr. Thornhill is being reappointed).

Designated as presiding officer of the Texas Commission on Law Enforcement, for a term to expire at the pleasure of the Governor, Kim-

CP Ex-16-0007 of 0030

berley A. "Kim" Lemaux of Arlington (Chief Lemaux is replacing Joel W. Richardson of Canyon as presiding officer).

Appointed to the Texas Commission on Law Enforcement, for a term to expire August 30, 2025, Patricia Garza Burruss of Dallas, Texas (Ms. Burruss is being reappointed).

Appointed to the Texas Commission on Law Enforcement, for a term to expire August 30, 2025, Michael W. "Mike" Griffis of Odessa, Texas (replacing Joel W. Richardson of Canyon, whose term expired).

Appointed to the Texas Commission on Law Enforcement, for a term to expire August 30, 2025, Jason D. Hester of Lago Vista, Texas (Major Hester is being reappointed).

**Appointments for December 10, 2019**

Appointed to the Trinity River Authority Board of Directors, for a term to expire March 15, 2023, Lisa A. Hembry of Dallas, Texas (replacing Christina Melton Crain of Dallas, who resigned).

Appointed to the Trinity River Authority Board of Directors, for a term to expire March 15, 2025, Henry Borbolla, III of Fort Worth, Texas (Mr. Borbolla is being reappointed).

Appointed to the Trinity River Authority Board of Directors, for a term to expire March 15, 2025, Cary "Cole" Camp of Arlington, Texas (replacing Ana Laura Saucedo of Mesquite, whose term expired).

Appointed to the Trinity River Authority Board of Directors, for a term to expire March 15, 2025, Tommy G. "Tom" Fordyce of Huntsville, Texas (Mr. Fordyce is being reappointed).

Appointed to the Trinity River Authority Board of Directors, for a term to expire March 15, 2025, David Blake Leonard of Liberty, Texas (Mr. Leonard is being reappointed).

Appointed to the Trinity River Authority Board of Directors, for a term to expire March 15, 2025, Lewis H. McMahan of Dallas, Texas (replacing James Wyatt Neale of Dallas, whose term expired).

Appointed to the Trinity River Authority Board of Directors, for a term to expire March 15, 2025, Amirali "Amir" Rupani of Dallas, Texas (Mr. Rupani is being reappointed).

Appointed to the Trinity River Authority Board of Directors, for a term to expire March 15, 2025, Carl "Dwayne" Somerville of Mexia, Texas (Mr. Somerville is being reappointed).

Appointed to the Trinity River Authority Board of Directors, for a term to expire March 15, 2025, Brenda K. Walker of Palestine, Texas (replacing Dudley K. Skyrme of Palestine, whose term expired).

**Appointments for December 11, 2019**

Appointed to the Texas Workforce Investment Council, for a term to expire September 1, 2023, Jesse C. Gatewood of Corpus Christi, Texas (replacing Mervin "Paul" Jones of Austin, whose term expired).

Appointed to the Texas Workforce Investment Council, for a term to expire September 1, 2023, Eliu M. "Michael" Hinojosa, Ed.D. of Dallas, Texas (replacing Carmen Olivas Graham of El Paso, whose term expired).

Appointed to the Texas Workforce Investment Council, for a term to expire September 1, 2023, John L. Martin of San Antonio, Texas (replacing Robert Hawkins of Bellmead, whose term expired).

Appointed to the Texas Workforce Investment Council, for a term to expire September 1, 2023, Richard C. "Rick" Rhodes of Austin, Texas (replacing Sharla E. Hotchkiss of Midland, whose term expired).

Appointed to the Texas Workforce Investment Council, for a term to expire September 1, 2025, Mark A. Dunn of Lufkin, Texas (Mr. Dunn is being reappointed).

Appointed to the Texas Workforce Investment Council, for a term to expire September 1, 2025, Thomas C. "Tom" Halbouty of Southlake, Texas (Mr. Halbouty is being reappointed).

Appointed to the Texas Workforce Investment Council, for a term to expire September 1, 2025, Richard M. Rhodes, Ph.D. of Austin, Texas (Dr. Rhodes is being reappointed).

Appointed to the Texas Workforce Investment Council, for a term to expire September 1, 2025, Brandon R. Willis of Beaumont, Texas (replacing Mark Barberena of Fort Worth, whose term expired).

**Appointments for December 16, 2019**

Appointed to the Executive Council of Physical Therapy and Occupational Therapy Examiners, for a term to expire February 1, 2021, Manoranjan "Mano" Mahadeva of Plano, Texas (replacing Arthur "Roger" Matson of Georgetown, whose term expired).

Greg Abbott, Governor

TRD-201904921



Proclamation 41-3703

**TO ALL TO WHOM THESE PRESENTS SHALL COME:**

I, GREG ABBOTT, Governor of the State of Texas, do hereby certify that exceptional drought conditions pose a threat of imminent disaster in Bandera, Blanco, Burnet, Concho, Karnes, Kendall, Kinney, Llano, Maverick, Medina, Real, Uvalde, Val Verde, Zapata, and Zavala counties.

WHEREAS, significantly low rainfall and prolonged dry conditions continue to increase the threat of wildfire across these portions of the state; and

WHEREAS, these drought conditions pose an imminent threat to public health, property, and the economy;

THEREFORE, in accordance with the authority vested in me by Section 418.014 of the Texas Government Code, I do hereby declare a state of disaster in the previously listed counties based on the existence of such threat.

Pursuant to Section 418.017 of the code, I authorize the use of all available resources of state government and of political subdivisions that are reasonably necessary to cope with this disaster.

Pursuant to Section 418.016 of the code, any regulatory statute prescribing the procedures for conduct of state business or any order or rule of a state agency that would in any way prevent, hinder, or delay necessary action in coping with this disaster shall be suspended upon written approval of the Office of the Governor. However, to the extent that the enforcement of any state statute or administrative rule regarding contracting or procurement would impede any state agency's emergency response that is necessary to protect life or property threatened by this declared disaster, I hereby authorize the suspension of such statutes and rules for the duration of this declared disaster.

In accordance with the statutory requirements, copies of this proclamation shall be filed with the applicable authorities.

IN TESTIMONY WHEREOF, I have hereunto signed my name and have officially caused the Seal of State to be affixed at my office in the City of Austin, Texas, this the 12th day of December, 2019.

Greg Abbott, Governor

CP Ex-16-0008 of 0030

♦ ♦ ♦



CP Ex-16-0010 of 0030

# The Attorney General

The *Texas Register* publishes summaries of the following: Requests for Opinions, Opinions, and Open Records Decisions.

An index to the full text of these documents is available on the Attorney General's website at https://www.texas.attorneygeneral.gov/attorney-general-opinions. For information about pending requests for opinions, telephone (512) 463-2110.

An Attorney General Opinion is a written interpretation of existing law. The Attorney General writes opinions as part of his responsibility to act as legal counsel for the State of Texas. Opinions are written only at the request of certain state officials. The Texas Government Code indicates to whom the Attorney General may provide a legal opinion. He may not write legal opinions for private individuals or for any officials other than those specified by statute. (Listing of authorized requestors: https://www.texasattorneygeneral.gov/attorney-general-opinions.)

Requests for Opinions

**RQ-0318-KP**

**Requestor:**

The Honorable Larry Taylor

Chair, Committee on Education

Texas State Senate

Post Office Box 12068

Austin, Texas 78711-2068

Re: Matters related to the Texas Windstorm Insurance Association and its compliance with House Bill 1900 and Senate Bill 615 (RQ-0318-KP)

**Briefs requested by January 10, 2020**

**RQ-0319-KP**

**Requestor:**

The Honorable Lilli A. Hensley

Sterling County Attorney

Post Office Box 88

Sterling City, Texas 76951

Re: Whether a county may call a bond election to fund the construction, repair, improvement, and maintenance of city roads (RQ-0319-KP)

**Briefs requested by January 10, 2020**

**RQ-0320-KP**

**Requestor:**

Mr. Steven C. McCraw

Director

Texas Department of Public Safety

Post Office Box 4087

Austin, Texas 78773-0001

Re: Whether over-the-road buses traveling on interstate highways in Texas are subject to the tandem axle weight limitations established in Transportation Code section 621.101(a)(2) (RQ-0320-KP)

**Briefs requested by January 15, 2020**

**RQ-0321-KP**

**Requestor:**

The Honorable Heather Stebbins

Kerr County Attorney

700 Main Street Suite BA-103

Kerrville, Texas 78028

Re: Whether a hearing on an application for court-ordered mental health services conducted pursuant to section 574.031 of the Health and Safety Code must be recorded by an official court reporter (RQ-0321-KP)

**Briefs requested by January 15, 2020**

**RQ-0322-KP**

**Requestor:**

Mr. Mike Novak

Executive Director

Texas Facilities Commission

Post Office Box 13047

Austin, Texas 78711-3047

Re: Authority of the Texas Facilities Commission and the State Preservation Board in relation to a Bill of Rights monument authorized by House Concurrent Resolution 111, adopted by the Eightieth Legislature (RQ-0322-KP)

**Briefs requested by January 15, 2020**

*For further information, please access the website at www.texasattorneygeneral.gov or call the Opinion Committee at (512) 463-2110.*

TRD-201904852
Ryan L. Bangert
Deputy Attorney General for Legal Counsel
Office of the Attorney General
Filed: December 17, 2019

♦ ♦ ♦

Requests for Opinions

**RQ-0323-KP**

**Requestor:**

The Honorable Roberto Serna

District Attorney

293rd Judicial District

458 Madison Street

Eagle Pass, Texas 78852

Re: Application of article III, section 53 of the Texas Constitution to invoices submitted to a county under an amended service contract for services performed prior to the amendment (RQ-0323-KP)

**Briefs requested by January 16, 2020**

*For further information, please access the website at www.texasattorneygeneral.gov or call the Opinion Committee at (512) 463-2110.*

TRD-201904882
Ryan L. Bangert
Deputy Attorney General for Legal Counsel
Office of the Attorney General
Filed: December 18, 2019

◆     ◆     ◆

CP Ex-16-0012 of 0030

Allison Vordenbaumen Benz, R.Ph., M.S.
Executive Director
Texas State Board of Pharmacy
Earliest possible date of adoption: February 2, 2020
For further information, please call: (512) 305-8010

♦     ♦     ♦

# TITLE 34.  PUBLIC FINANCE

## PART 1.    COMPTROLLER OF PUBLIC ACCOUNTS

### CHAPTER 3.   TAX ADMINISTRATION
### SUBCHAPTER O.   STATE AND LOCAL SALES AND USE TAXES

#### 34 TAC §3.334

The Comptroller of Public Accounts proposes amendments to §3.334, concerning local sales and use taxes.  In the wake of *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018), the amendments provide that remote sellers that are required to collect Texas use tax under §3.286 of this title (relating to Seller's and Purchaser's Responsibilities) should collect local use tax based on the destination location.  The amendments also implement the requirement that a seller located in Texas collects local use tax when the seller ships or delivers a taxable item into a local jurisdiction where those use taxes exceed the local sales tax where the sale is consummated.  The comptroller also implements House Bill 1525 and House Bill 2153, 86th Legislature, 2019. House Bill 1525 establishes local sales and use tax collection responsibilities on marketplace providers.  House Bill 2153 establishes a single local use tax rate that remote sellers may elect to use.  The amendments also clarify provisions concerning fulfillment, temporary places of business of the seller, places of business of the seller receiving more than three orders, traveling salespersons, orders over the Internet, and orders placed in person.

Throughout the section, the comptroller adds or amends rule titles.  The comptroller also amends cross-references accordingly.  The comptroller does not intend to make substantive changes through these additions of and amendments to rule titles and through the amendments to cross-references.  The comptroller also reorganizes this section for clarity and readability.

The comptroller amends the definition of "Comptroller's website" in subsection (a)(4) to provide the correct website address.

The comptroller amends the definition of "engaged in business" in subsection (a)(7) to conform the reference to §3.286 of this title.

The comptroller amends subsection (a)(9) to identify activities that are not included in the definition of the term "fulfill".

The comptroller adds a definition for "Internet order" in new subsection (a)(10) to distinguish between an order placed through the Internet as opposed to an order placed in person at a seller's location as contemplated in Tax Code, §321.203(c) and §323.203(c).  The comptroller has determined that orders placed on a website, through a software application, or other method using the Internet constitute orders over the Internet.  Orders placed by phone call using Voice over Internet Protocol or a mobile device are not considered Internet orders.  The comptroller distinguishes orders through a computer or mobile device of the seller because the use of the Internet by sellers and purchasers to place orders has resulted in confusion as to whether an order is placed in person or over the Internet.  For example, sellers use the Internet to place orders for items that are not in the store.  However, mobile devices have made it possible for purchasers to place online orders at any location, including within a location of the seller.  Subsequent paragraphs are renumbered.

The comptroller adds a definition for "marketplace provider" in new subsection (a)(15) as defined in §3.286 of this title.

The comptroller adds a definition for "order placed in person" in new subsection (a)(16).  Orders placed in person are those orders placed with the seller while the purchaser is physically present at a seller's location and using a seller's system, computer, or other device.  As a seller may use the Internet, a phone, or a catalog to make an order, the definition clarifies that an order is still placed in person regardless of whether the seller uses the Internet, a phone, or a catalog to make the order.  Similarly, as a purchaser may use a personal mobile device to make an order while physically present at a seller's location, the definition excludes Internet orders, which as defined are placed from a purchaser's device.  Subsequent paragraphs are renumbered.

The comptroller amends the definition of "place of business of the seller - general definition" in renumbered subsection (a)(17) to specify that a website, software application, or other method used to place an Internet order is not a place of business of the seller.  Tax Code, §321.002(a)(3)(A) defines "place of business of the retailer" as "an established outlet, office, or location operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items and includes any location at which three or more orders are received by the retailer during a calendar year."  A website, software application, or other method used to place an Internet order is not an established outlet, office, or location operated by the seller and is therefore, excluded from the definition.  The comptroller reflects these changes throughout the section.

The comptroller also amends the definition to delete repetitive language and an example that provides that a home office at which three or more items are sold through an online auction website is a place of business of the seller.  The comptroller deletes a reference to "administrative offices" because the comptroller determines that an administrative office does not meet the definition of a place of business of the seller.

The comptroller also adds to the definition of "place of business of the seller - general definition" that an outlet, office, facility, or any similar location that contracts with a business to process certain orders or invoices is not a place of business of the seller if the comptroller determines that these certain locations are for the sole purpose to avoid tax due or to rebate tax to the contracting location.  This change is made pursuant to the definition "place of business of the retailer" in Tax Code, §321.002(a)(3)(B).

The comptroller adds a definition for "remote seller" in new subsection (a)(19) as defined in §3.286 of this title.  Subsequent paragraphs are renumbered.

The comptroller amends the definition of "temporary place of business of the seller" in renumbered subsection (a)(23) to clarify that a temporary place of business of the seller includes a sale outside the walls of a distribution center, manufacturing plant, storage yard, warehouse, or similar facility of the seller in a parking lot or similar space sharing the same physical address as the

CP Ex-16-0013 of 0030

facility. Sellers may hold sales to the public outside the walls of their facilities on a temporary basis. The comptroller clarifies that these sales constitute temporary places of business of the seller. The comptroller makes these changes throughout the section. Subsequent paragraphs are renumbered.

The comptroller adds new subsection (b), restating the provision of former subsection (e) concerning place of business - special definitions. The new subsection (b) is substantially the same as former subsection (e) but with changes to more closely reflect the definition of "place of business of the retailer" in Tax Code, §321.002(a)(3)(A). A seller does not receive orders at administrative offices that solely serve as the base of operations for a traveling salesperson or that provide administrative support to a traveling salesperson. Moreover, the mere fact that a salesperson is assigned to work from, or work at, a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller does not mean that a seller receives orders at these locations. Therefore, these locations by themselves do not meet the definition of a place of business of the retailer under Tax Code, §321.002(a)(3)(A). The comptroller amends the section to reflect these changes throughout. Therefore, the comptroller no longer includes administrative offices supporting traveling salespersons and distribution centers, manufacturing plants, storage yards, warehouses, or similar facilities operated by a seller at which salespersons are assigned to work in the definition of "place of business of the seller."

In new paragraph (1)(A), the comptroller clarifies that locations operated by a seller must receive three or more orders in a calendar year from persons other than employees, independent contractors and natural persons affiliated with the seller to be considered a place of business of the seller in Texas. In new paragraph (3) the comptroller restates the provisions from former subsection (e) relating to purchasing offices with minor changes for ease of readability.

The comptroller adds new subsection (c) to include the existing provisions of former subsection (h) concerning local sales tax. The new subsection (c) is similar to former subsection (h) but with some changes. New paragraph (1) provides the general sales tax rules as applied to specific situations and combines the provisions related to the consummation of sale rule, as that language appeared in former subsections (h)(1) and (h)(3).

New subparagraph (A) restates the deleted language in former subsection (h)(3)(A) relating to the consummation of sale rule for orders placed in person at a seller's place of business in Texas. The comptroller includes in subparagraph (A) orders placed at a temporary place of business of the seller. The comptroller does not add the provisions found in former subsection (h)(6)(C) because it repeats the general consummation of sale provisions applicable to temporary places of business.

Additionally, throughout new paragraph (1), the comptroller incorporates the language found in former subsection (h)(4) concerning traveling salespersons. Tax Code, §321.002(a)(3)(A) does not support treating administrative offices or other locations that are not places of business of the seller that merely serve as a location from which a traveling salesperson operates as a place of business of the seller. The comptroller makes this change to conform the consummation of sales made by traveling salespersons to Tax Code, §321.203 and §323.203. The comptroller does not incorporate the examples found in former subsection (h)(4) because the examples merely restate the consummation of sale rules.

The comptroller explicitly provides in new subparagraph (A) that orders taken by traveling salespersons are not placed in person at the seller's place of business in Texas. Traveling salespersons typically take orders at the customer's location and the customer's location is not a place of business "operated by the seller" as required by Tax Code, §321.002(a)(3)(A). *See* Comptroller's Decision No. 48,843 (2009) ("According to the plain meaning of the statutory definition, a site must be "operated by the retailer" before it can be considered the retailer's place of business.").

The comptroller adds new subparagraph (B) to include the provision in former subsection (h)(3)(B) concerning orders received at a place of business of the seller in Texas and fulfilled at a location that is not a place of business of the seller with changes.

In new clause (i), the comptroller does not incorporate the phrase "through the Internet" found in former subsection (h)(3)(B). Clause (i) does not apply to orders over the Internet because Internet orders are not received at a place of business of the seller in Texas. The comptroller also includes language concerning traveling salespersons in new clause (i).

In new clause (ii), the comptroller addresses where orders taken by traveling salesperson are considered received. The comptroller clarifies that orders taken by traveling salespersons are not received by the seller at the purchaser's location because the purchaser's location is not a place of business of the seller. *See* Comptroller's Decision No. 48,843 (2009).

The comptroller adds new subparagraph (C) to restate the provision in former subsection (h)(3)(C) concerning orders fulfilled at a place of business of the seller in Texas. The language is the same except for new language addressing traveling salespersons.

The comptroller adds new subparagraph (D) restating the provision in former subsection (h)(3)(D) concerning orders fulfilled within the state at a location that is not a place of business of the seller. The language is the same as it appeared in former subsection (h)(3)(D), except for new language addressing traveling salespersons.

The comptroller adds new subparagraph (E) and includes the provision in former subsection (h)(3)(E) concerning orders received outside of the state and fulfilled outside of the state with changes addressing traveling salespersons operating from a location outside of Texas and remote sellers.

In subparagraph (E) and throughout the section, the comptroller amends the language to implement the *Wayfair* decision. The *Wayfair* decision clarified the substantial nexus requirement established in the United States Supreme Court analysis of the Due Process and Commerce Clauses of the United States Constitution. The Court stated that "{substantial} nexus is established when a taxpayer {or collector} 'avails itself of the substantial privilege of carrying on business' in that jurisdiction." *Wayfair,* 138 S. Ct. at 2099 (quoting *Polar Tankers, Inc. v. City of Valdez,* 557 U.S. 1, 11 (2009)). The Court also reiterated that "States may not impose undue burdens on interstate commerce."

In light of the *Wayfair* decision, the comptroller provides in subparagraph (E) that a remote seller that is required to collect Texas use tax under §3.286(b)(2) must also collect local use tax based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession unless the remote seller elects to collect the single local use tax rate enacted in House Bill 2153. *See* Tax Code, §321.205(c) and §323.205(c).

CP Ex-16-0014 of 0030

The comptroller adds new subparagraph (F) restating the provision in former subsection (h)(3)(F) concerning an exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5) .

The comptroller adds new paragraph (2) and includes the language in former subsection (h)(1) concerning local sales taxes due and local use taxes due without any changes. The comptroller restates the language in former subsection (h)(2) concerning multiple special purpose district taxes and multiple transit authority taxes in paragraph (3) without changes to the language.

The comptroller adds new paragraph (4) to include the language found in former subsection (h)(5) concerning drop shipments, but does not incorporate the examples found in former subsection (h)(5)(A). The comptroller adds new subparagraph (B) restating the language found in former subsection (h)(5)(B) without changes.

The comptroller adds new paragraph (5) to add the language found in former subsection (h)(6) concerning itinerant vendors and vending machines without changes to the language.

The comptroller adds new paragraph (6) to address the consummation of sale for Internet orders. This subsection becomes effective April 1, 2020.

In new subparagraph (A), the comptroller provides the general rule, with certain exceptions, that Internet orders are not received at a place business of the seller in Texas. A website, software application, or other method used to place an Internet order is excluded from the definition of place of business of the seller. Therefore, orders placed over the Internet are not received at a place of business of the seller in Texas.

In new subparagraph (B), the comptroller addresses orders placed using at the seller's device.

In new subparagraph (C), the comptroller addresses Internet orders fulfilled from a place of business of the seller in Texas.

In new subparagraph (D), the comptroller addresses Internet orders fulfilled from a location in Texas that is not a place of business of the seller in Texas.

In new subparagraph (E), the comptroller addresses Internet orders fulfilled from a location outside of the state.

In new subparagraph (F), the comptroller provides a temporary exception from the provisions regarding Internet orders for economic development agreements pursuant to Local Government Code, Chapters 380 and 381 and entered into before September 1, 2019.

The comptroller adds new subsection (d) to include the provisions in former subsection (i), relating to use tax. The comptroller adds new paragraph (1), which includes the language in former subsection (i)(1) concerning general local use tax rules with non-substantive changes for ease of readability.

The comptroller adds new paragraph (2) to include the provisions in former subsection (i)(2) concerning general use tax rules applied to specific situations with changes.

In light of the *Wayfair* decision, the comptroller gives effect to the Tax Code's requirement that sellers engaged in business in the state collect local use tax for sales consummated in Texas and for sales consummated outside Texas based on the local taxing jurisdictions in which a taxable item is first used, stored, or consumed, regardless of the specific local jurisdiction in which

a seller is engaged in business. *See* Tax Code, §§321.205, 322.105, and 323.205.

When a sale is consummated in Texas, a seller is engaged in business in this state through the presence of property or employees in the state. *See* Tax Code, §§151.107, 321.203, and 323.203. Therefore, the language that a seller be engaged in business in a local jurisdiction for sales consummated in Texas is superfluous. Moreover, an engaged in business standard for local use tax does not give effect to the Tax Code's requirement that a seller collect local use tax that is due and creates an opportunity for sellers to avoid collecting local use tax due. *See* Tax Code §§151.103, 321.003, 321.205, 322.108, 323.003, and 323.205. Therefore, the comptroller deletes the "engaged in business" requirement for local use tax throughout the section.

In new paragraph (2), the comptroller implements the *Wayfair* decision by clarifying that the seller is responsible for collecting the local use tax due on the sale based upon the location in this state to which the order is shipped or delivered or at which the purchaser of the item takes possession.

In new subparagraphs (B) and (C), the comptroller also explicitly states that the location of the seller in Texas does not affect the determination of whether the seller is required to collect additional local use tax due. In new clauses (i) and (ii), the comptroller provides two examples to illustrate when a seller is required to collect additional local use taxes.

The comptroller adds new subsection (e) to include the provisions in former subsection (b), relating to the effects of other law, with minor non-substantive changes to the provisions as they appeared in former subsection (b).

The comptroller adds new subsection (f), to include the provisions of former subsection (c), relating to tax rates without changing the provisions as they appeared in former subsection (c).

The comptroller adds new subsection (g) to include the provisions of former subsection (d), relating to jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements, with non-substantive changes made to the language on combined areas for ease of readability.

The comptroller adds new subsection (h) to include the provisions in former subsection (f) concerning places of business and job sites crossed by local taxing jurisdiction boundaries with a change to the title of the subsection to read places of business of the seller. No other changes were made to those provisions.

The comptroller adds new subsection (i). Throughout new subsection (i), the comptroller implements the *Wayfair* decision for local use tax to address sales consummated in Texas and sales consummated outside of Texas, including sales by remote sellers.

In new paragraph (1), the comptroller adds the language found in former subsection (g)(1) with changes. The comptroller explicitly states in paragraph (1) that the location of the seller in Texas does not affect the determination of whether the seller is required to collect additional local use tax due.

In new paragraph (2), the comptroller includes the language in former subsection (g)(2) with changes. The comptroller makes a cross-reference to new subsection (i)(3) of the amendment, which implements House Bill 2153. The comptroller also clarifies that new subsection (i)(2) applies to sales not consummated in Texas. The amendment provides that local use tax is based upon

CP Ex-16-0015 of 0030

the location in this state to which the item is shipped or delivered or at which the purchaser takes possession.

In new paragraph (3), the amendment addresses local use tax for remote sellers and implements the single local use tax rate for remote sellers enacted in House Bill 2153.

New subparagraph (A)(i) provides that a remote seller is required to collect and remit using the combined rate of all applicable local use taxes based on the location to which the item is shipped or delivered or at which the purchaser takes possession. New subparagraph (A)(ii) provides that at the remote seller's election, the remote seller may elect to use the single local use tax rate published in the *Texas Register.*

New subparagraph (B) addresses the single local use tax rate when a remote seller stores tangible personal property in Texas to be sold on a marketplace. The comptroller recognizes that a remote seller selling tangible personal property on a marketplace may not have control of where their tangible personal property is stored. Therefore, to ease the burden on a remote seller, this provision allows the remote seller to elect the single local use tax rate.

New subparagraph (C) addresses notice requirements a remote seller sends to the comptroller of its election and revocation of election to use the single local use tax rate. New clause (i) provides that a remote seller must notify the comptroller of its election to use the single local use tax rate on a form prescribed by the comptroller or may notify the comptroller of the election on its use tax permit application form before being able to use the single local use tax rate. New clause (i) also requires that a remote seller use the single local use tax rate for all its sales of taxable items until the remote seller revokes the election in writing to the comptroller. New clause (ii) addresses the requirements for a remote seller to revoke its election to collect the single local use tax rate by filing a form prescribed by the comptroller by October 1 of the calendar year.

New subparagraph (D)(i) provides the initial single local use tax rate of 1.75%, which is in effect for the period beginning October 1, 2019, and ending December 31, 2019. Subparagraph (D)(ii) provides the initial single local use tax rate of 1.75%, which is in effect for the period beginning January 1, 2020, and ending December 31, 2020.

New subparagraph (E) provides that before the beginning of a calendar year, the comptroller will publish notice of the single local use tax rate that will be in effect for that calendar year in the *Texas Register.*

New subparagraph (F) provides the calculation for the single local use tax rate.

New subparagraph (G) provides that a purchaser may request a refund based on local use taxes paid in a calendar year. The refund is for the difference between the single local use tax rate paid by the purchaser and the amount the purchaser would have paid based on the combined tax rate for all applicable local use taxes. Non-permitted purchasers may request a refund directly from the comptroller on an annual basis without having to meet the requirements in §3.325(a)(1) of this title (relating to Refunds and Payments Under Protest) and the statute of limitation under Tax Code, §111.104.

New subparagraph (H) addresses marketplace providers to provide that a marketplace provider may only use the combined tax rate of all applicable local use taxes when computing the amount of local use tax to collect and remit.

In new paragraph (4), the comptroller restates the language in deleted subsection (g)(4) concerning purchasers responsible for accruing and remitting local taxes if the seller fails to collect without any changes.

In new paragraph (5), the comptroller restates the language in deleted subsection (g)(5) concerning local tax due on the sales price of a taxable item without any changes.

The comptroller adds new paragraph (6) to relieve a purchaser of liability for additional use tax if the purchaser pays local use tax using the single local use tax rate to an eligible remote seller electing to use the single local use tax rate. Paragraph (6) also requires the purchaser to verify on the comptroller's website that a remote seller has elected to use the single local use tax rate. Moreover, paragraph (6) provides that if a remote seller is not listed on the comptroller's website, the purchaser will be liable for additional use tax due.

The comptroller deletes existing subsection (b), relating to the effect of other law, as this information is contained in new subsection (e) with minor, non-substantive changes.

The comptroller deletes existing subsection (c) relating to tax rates, as that information is contained in new subsection (f) without change.

The comptroller deletes existing subsection (d) relating to jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements, as this information is contained in new subsection (g) with non-substantive changes made to the provisions on combined areas for ease of readability.

The comptroller deletes existing subsection (e) relating to place of business - special definitions, as this information is contained in new subsection (b) with changes.

The comptroller deletes existing subsection (f) concerning places of business and job sites crossed by local taxing jurisdiction boundaries, as this information is contained in to new subsection (h) with a change only to the title of the subsection to read places of business of the seller.

The comptroller deletes subsection (g) concerning sellers' and purchasers' responsibilities for collecting or accruing local taxes, as those provisions, except for subsection (g)(3), which was deleted in its entirety, are contained in new subsection (i) with changes.

The comptroller deletes existing subsection (h) concerning local sales tax, as this information is contained in new subsection (c) with changes.

The comptroller deletes existing subsection (i) concerning use tax, as this information is contained in new subsection (d) with changes.

The comptroller adds new subsection (k)(5) to implement House Bill 1525, to address sales of taxable items through marketplace providers. Subsequent paragraphs are renumbered.

The provisions related to remote sellers, single local use tax rate, and marketplace providers take effect October 1, 2019.

Tom Currah, Chief Revenue Estimator, has determined that during the first five years that the proposed amendment is in effect, the amendment: will not create or eliminate a government program; will not require the creation or elimination of employee positions; will not require an increase or decrease in future legislative appropriations to the agency; will not require an increase

CP Ex-16-0016 of 0030

or decrease in fees paid to the agency; will not increase or decrease the number of individuals subject to the rules' applicability; and will not positively or adversely affect this state's economy.

Mr. Currah also has determined that for each year of the first five years the rule is in effect, the proposed amendments would benefit the public by conforming the rule to current statutes. This rule is proposed under Tax Code, Title 2, and does not require a statement of fiscal implications for small businesses or rural communities. The proposed amendments would have no significant fiscal impact on the state government, units of local government, or individuals. There would be no anticipated significant economic cost to the public.

Comments on the proposal may be submitted to Teresa G. Bostick, Director, Tax Policy Division, P.O. Box 13528, Austin, Texas 78711-3528. Comments must be received no later than 30 days from the date of publication of the proposal in the *Texas Register.*

The comptroller proposes this amendment under Tax Code, §111.002 (Comptroller's Rules; Compliance; Forfeiture), which provides the comptroller with the authority to amend rules to reflect changes in the constitution or laws of the United States and judicial interpretations thereof.

The amendments implement Tax Code, §§151.0595 (Single Local Tax Rate for Remote Sellers), 321.203 (Consummation of Sale), and 323.203 (Consummation of Sale), and *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018).

*§3.334. Local Sales and Use Taxes.*

(a) Definitions. The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

(1) Cable system--The system through which a cable service provider delivers cable television or bundled cable service, as those terms are defined in §3.313 of this title (relating to Cable Television Service and Bundled Cable Service).

(2) City--An incorporated city, municipality, town, or village.

(3) City sales and use tax--The tax authorized under Tax Code, §321.101(a), including the additional municipal sales and use tax authorized under Tax Code, §321.101(b), the municipal sales and use tax for street maintenance authorized under Tax Code, §327.003, the Type A Development Corporation sales and use tax authorized under Local Government Code, §504.251, the Type B Development Corporation sales and use tax authorized under Local Government Code, §505.251, a sports and community venue project sales and use tax adopted by a city under Local Government Code, §334.081, and a municipal development corporation sales and use tax adopted by a city under Local Government Code, §379A.081. The term does not include the fire control, prevention, and emergency medical services district sales and use tax authorized under Tax Code, §321.106, or the municipal crime control and prevention district sales and use tax authorized under Tax Code, §321.108.

(4) Comptroller's website--The agency's website concerning local taxes located at: https://comptroller.texas.gov/taxes/sales/ [http://comptroller.texas.gov/taxinfo/local/].

(5) County sales and use tax--The tax authorized under Tax Code, §323.101, including a sports and community venue project sales and use tax adopted by a county under Local Government Code, §334.081. The term does not include the county health services sales and use tax authorized under Tax Code, §324.021, the county landfill and criminal detention center sales and use tax authorized under Tax Code, §325.021, or the crime control and prevention district sales and use tax authorized under Tax Code, §323.105.

(6) Drop shipment--A transaction in which an order is received by a seller at one location, but the item purchased is shipped by the seller from another location, or is shipped by the seller's third-party supplier, directly to a location designated by the purchaser.

(7) Engaged in business--This term has the meaning given in §3.286 of this title (relating to Seller's and Purchaser's Responsibilities[, including Nexus, Permits, Returns and Reporting Periods, and Collection and Exemption Rules]).

(8) Extraterritorial jurisdiction--An unincorporated area that is contiguous to the corporate boundaries of a city as defined in Local Government Code, §42.021

(9) Fulfill--To complete an order by transferring a taxable item directly to a purchaser at a Texas location, or to ship or deliver a taxable item to a location in Texas designated by the purchaser. The term does not include tracking an order, determining shipping costs, managing inventory, or other activities that do not involve the transfer, shipment, or delivery of a taxable item to the purchaser or a location designated by the purchaser.

(10) Internet order--An order placed on a website, software application, or other method using the Internet by a purchaser using a computer or mobile device that does not belong to the seller. Internet order does not include an order placed by phone call using Voice over Internet Protocol or a mobile device.

(11) [(10)] Itinerant vendor--A person who travels to various locations for the purpose of receiving orders and making sales of taxable items and who does not operate a place of business. For example, a person who sells rugs from the back of a truck that the person drives to a different location each day is an itinerant vendor. A person who sells items through vending machines is also an itinerant vendor. A salesperson that operates out of an office, place of business, or other location that provides administrative support to the salesperson is not an itinerant vendor.

(12) [(11)] Kiosk--A small stand-alone area or structure:

(A) that is used solely to display merchandise or to submit orders for taxable items from a data entry device, or both;

(B) that is located entirely within a location that is a place of business of another seller, such as a department store or shopping mall; and

(C) at which taxable items are not available for immediate delivery to a purchaser.

(13) [(12)] Local taxes--Sales and use taxes imposed by any local taxing jurisdiction.

(14) [(13)] Local taxing jurisdiction--Any of the following:

(A) a city that imposes sales and use tax as provided under paragraph (3) of this subsection;

(B) a county that imposes sales and use tax as provided under paragraph (5) of this subsection;

(C) a special purpose district created under the Special District Local Laws Code or other provisions of Texas law that is authorized to impose sales and use tax by the Tax Code or other provisions of Texas law and as governed by the provisions of Tax Code, Chapters 321 or 323 and other provisions of Texas law; or

CP Ex-16-0017 of 0030

(D) a transit authority that imposes sales and use tax as authorized by Transportation Code, Chapters, 451, 452, 453, 457, or 460 and governed by the provisions of Tax Code, Chapter, 322.

(15) Marketplace provider--This term has the meaning given in §3.286 of this title.

(16) Order placed in person--An order placed by a purchaser with the seller while physically present at the seller's place of business on the system, computer, or other device of the seller, regardless of whether the seller uses the Internet, a phone, or a catalog to make the order. The term does not include Internet orders.

(17) [(14)] Place of business of the seller - general definition--An established outlet, office, or location operated by a seller for the purpose of selling taxable items to those other than employees, independent contractors, and natural persons affiliated with the seller and that receives three or more orders for taxable items during the calendar year. Places of business of the seller include, but are not limited to, call centers, showrooms, and clearance centers. [The term also includes any location operated by a seller at which the seller receives three or more orders for taxable items during a calendar year. For example, a home office at which three or more items are sold through an online auction website is a place of business.] A website, software application, or other method used to place an Internet order is not a place of business of the seller. Additional criteria for determining when a location is a place of business of the seller are provided in subsection (b)[(e)] of this section for [administrative offices;] distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices. An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a "place of business of the retailer" if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under this chapter or exists solely to rebate a portion of the tax imposed by this chapter to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under this chapter or solely to rebate a portion of the tax imposed by this chapter if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.

(18) [(15)] Purchasing office--An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business.

(19) Remote Seller--As defined in §3.286 of this title, remote seller is a seller engaged in business in this state whose only activity in the state is:

(A) engaging in regular or systematic solicitation of sales of taxable items in this state by the distribution of catalogs, periodicals, advertising flyers, or other advertising, by means of print, radio, or television media, or by mail, telegraphy, telephone, computer data base, cable, optic, microwave, or other communication system for the purpose of effecting sales of taxable items; or

(B) soliciting orders for taxable items by mail or through other media including the Internet or other media that may be developed in the future.

(20) [(16)] Seller--This term has the meaning given in §3.286 of this title and also refers to any agent or employee of the seller.

(21) [(17)] Special purpose district--A local governmental entity authorized by the Texas legislature for a specific purpose, such as crime control, a local library, emergency services, county health services, or a county landfill and criminal detention center.

(22) [(18)] Storage--This term has the meaning given in §3.346 of this title (relating to Use Tax).

(23) [(19)] Temporary place of business of the seller--A location operated by a seller for a limited period of time for the purpose of selling and receiving orders for taxable items and where the seller has inventory available for immediate delivery to a purchaser. For example, a person who rents a booth at a weekend craft fair or art show to sell and take orders for jewelry, or a person who maintains a facility at a job site to rent tools and equipment to a contractor during the construction of real property, has established a temporary place of business. A temporary place of business of the seller includes a sale outside of a distribution center, manufacturing plant, storage yard, warehouse, or similar facility of the seller in a parking lot or similar space sharing the same physical address as the facility but not within the walls of the facility.

(24) [(20)] Transit authority--A metropolitan rapid transit authority (MTA), advanced transportation district (ATD), regional or subregional transportation authority (RTA), city transit department (CTD), county transit authority (CTA), regional mobility authority (RMA) or coordinated county transportation authority created under Transportation Code, Chapters 370, 451, 452, 453, 457, or 460.

(25) [(21)] Traveling salesperson--A seller, or an agent or employee of a seller, who visits potential purchasers in person to solicit sales, and who does not carry inventory ready for immediate sale, but who may carry samples or perform demonstrations of items for sale.

(26) [(22)] Two percent cap--A reference to the general rule that, except as otherwise provided by Texas law and as explained in this section, a seller cannot collect, and a purchaser is not obligated to pay, more than 2.0% of the sales price of a taxable item in total local sales and use taxes for all local taxing jurisdictions

(27) [(23)] Use--This term has the meaning given in §3.346 of this title.

(28) [(24)] Use tax--A tax imposed on the storage, use or other consumption of a taxable item in this state.

(b) Place of business of the seller - special definitions. In addition to the general definition of the term "place of business of the seller" in subsection (a)(17) of this section, the following rules apply.

(1) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller at which the seller receives three or more orders of taxable items during a calendar year from persons other than employees, independent contractors, and natural persons affiliated with the seller.

(B) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller.

(2) Kiosks. A kiosk is not a place of business of the seller for the purpose of determining where a sale is consummated for local

CP Ex-16-0018 of 0030

tax purposes. A seller who owns or operates a kiosk in Texas is, however, engaged in business in this state as provided in §3.286 of this title.

    (3)    Purchasing offices.

        (A)    A purchasing office is not a place of business of the seller if the purchasing office exists solely to rebate a portion of the local sales and use tax imposed by Tax Code, Chapter 321 or 323 to a business with which it contracts; or if the purchasing office functions or exists to avoid the tax legally due under Tax Code, Chapter 321 or 323. A purchasing office does not exist solely to rebate a portion of the local sales and use tax or to avoid the tax legally due under Tax Code, Chapter 321 or 323 if the purchasing office provides significant business services to the contracting business beyond processing invoices, including logistics management, purchasing, inventory control, or other vital business services.

        (B)    In making a determination under subparagraph (A) of this paragraph, as to whether a purchasing office provides significant business services to the contracting business beyond processing invoices, the comptroller will compare the total value of the other business services to the value of processing invoices. If the total value of the other business services, including logistics management, purchasing, inventory control, or other vital business services, is less than the value of the service to process invoices, then the purchasing office will be presumed not to be a place of business of the seller.

        (C)    If the comptroller determines that a purchasing office is not a place of business of the seller, the sale of any taxable item is deemed to be consummated at the place of business of the seller from whom the purchasing office purchased the taxable item for resale and local sales and use taxes are due according to the following rules.

            *(i)*    When taxable items are purchased from a Texas seller, local sales taxes are due based on the location of the seller's place of business where the sale is deemed to be consummated, as determined in accordance with subsection (c) of this section.

            *(ii)*    When the sale of a taxable item is deemed to be consummated at a location outside of this state, local use tax is due based on the location where the items are first stored, used or consumed by the entity that contracted with the purchasing office in accordance with subsection (d) of this section.

    (c)    Local sales tax. Determining the local taxing jurisdictions to which sales tax is due; consummation of sale.

        (1)    General sales tax rules applied to specific situations. Except for the special rules applicable to remotes sellers in subsection (i)(3) of this section, direct payment permit purchases in subsection (j) of this section, and certain taxable items, including taxable items sold by a marketplace provider, as provided in subsection (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in the state.

        (A)    Order placed in person at a seller's place of business in Texas. Except as described in subparagraph (F) of this paragraph and paragraph (6) of this subsection, for an order placed in person by a purchaser for a taxable item at a seller's place of business in Texas, including at a temporary place of business of the seller, the sale of that item is consummated at that place of business of the seller, regardless of the location where the order is fulfilled. Orders taken by traveling salespersons are not placed in person at the seller's place of business in Texas.

        (B)    Order received at a place of business of the seller in Texas, fulfilled at a location that is not a place of business of the seller.

            *(i)*    Except as provided in paragraph (6) of this subsection, when an order that is placed over the telephone, by any means other than in person, or through a traveling salesperson is received by the seller at a place of business of the seller in Texas, and the seller fulfills the order at a location that is not a place of business of the seller in Texas, such as a warehouse or distribution center, the sale is consummated at the place of business of the seller at which the order for the taxable item is received.

            *(ii)*    Orders taken by traveling salespersons operating out of a place of business of the seller in Texas are received by the seller at the place of business of the seller in Texas from which the traveling salesperson operates. Orders taken by traveling salespersons that are not operating out of a place of business of the seller in Texas are not received by the seller at a place of business of the seller in Texas. Orders taken by traveling salespersons are not received by the seller at the purchaser's location.

        (C)    Order fulfilled at a place of business of the seller in Texas. When an order is placed in person at a location that is not a place of business of the seller in this state, such as a kiosk, when an order is placed through a traveling salesperson, or when an order is placed over the telephone, through the Internet, or by any means other than in person, and the seller fulfills the order at a location that is a place of business of the seller in Texas, the sale is consummated at the place of business of the seller where the order is fulfilled.

        (D)    Order fulfilled within the state at a location that is not a place of business of the seller. When an order is received by a seller at any location other than a place of business of the seller in this state or by a traveling salesperson that does not operate out of a place of business of the seller in Texas, and the seller fulfills the order at a location in Texas that is not a place of business of the seller, then the sale is consummated at the location in Texas to which the order is shipped or delivered, or at which the purchaser of the item takes possession.

        (E)    Order received outside of the state, fulfilled outside of the state. When an order is received by a seller at a location outside of Texas, including orders received by a traveling salesperson operating from a location outside of Texas or by a remote seller, and the order is shipped or delivered into a local taxing jurisdiction from a location outside of the state, the sale is not consummated at a location in Texas. However, local use tax is due based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section. Except as provided in subsection (i)(3) of this section, a remote seller required to collect state use tax under §3.286(b)(2) of this title must also collect local use tax based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession.

        (F)    Exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5). This subparagraph is effective until September 1, 2024. If applicable, the local sales tax due on the sale of a taxable item is based on the location of the qualifying warehouse, which is a place of business of the seller, from which the item is shipped or delivered or at which the purchaser of the item takes possession.

        (2)    Local sales taxes are due to each local taxing jurisdiction in effect at the location where the sale is consummated. Local use tax may also be due if the total amount of local sales taxes due does not reach the two percent cap, and the item purchased is shipped or delivered to a location in one or more different local taxing jurisdictions, as provided in subsection (d) of this section.

CP Ex-16-0019 of 0030

(3) Multiple special purpose district taxes, multiple transit authority sales taxes, or a combination of the two may apply to a single transaction. If the sale of a taxable item is consummated at a location within the boundaries of multiple special purpose districts or transit authorities, local sales tax is owed to each of the jurisdictions in effect at that location. For example, a place of business of the seller located in the city of San Antonio is within the boundaries of both the San Antonio Advanced Transportation District and the San Antonio Metropolitan Transit Authority, and the seller is required to collect sales tax for both transit authorities. Similarly, a place of business of the seller in Flower Mound is located within the boundaries of two special purpose districts, the Flower Mound Crime Control District and the Flower Mound Fire Control District, and the seller is responsible for collecting sales tax for both special purpose districts.

(4) Drop shipments.

(A) When an order for a taxable item is received at a seller's place of business in Texas, or by a traveling salesperson operating out of a place of business in this state, and the item is drop-shipped directly to the purchaser from a third-party supplier, the sale is consummated at, and local sales tax is due based upon, the location of the place of business of the seller where the order is received.

(B) When an order for a taxable item is received by the seller at a location outside of Texas, or by a traveling salesperson operating from a location outside of this state, and the item is drop-shipped directly to the purchaser from a third-party supplier, the item is subject to use tax. See subsection (d) of this section concerning use tax.

(5) Itinerant vendors; vending machines.

(A) Itinerant vendors. Sales made by itinerant vendors are consummated at, and itinerant vendors must collect sales tax based upon, the location where the item is delivered or at which the purchaser of the item takes possession. Itinerant vendors do not have any responsibility to collect use tax.

(B) Vending machines. Sales of taxable items made from a vending machine are consummated at the location of the vending machine. See §3.293 of this title (relating to Food; Food Products; Meals; Food Service) for more information about vending machine sales.

(6) Internet orders. Subparagraphs (A) - (E) of this paragraph become effective April 1, 2020.

(A) General rule. Except as provided in this paragraph, Internet orders are not received at a place of business of the seller in Texas.

(B) Orders placed using the seller's device. When a purchaser places an order for a taxable item with a seller using the Internet on a computer or device of the seller at the seller's place of business in Texas, the sale is consummated at the place of business where the order is placed, regardless of where the order is fulfilled.

(C) Internet order fulfilled from a place of business of the seller in Texas. When a seller fulfills an Internet order at a location that is a place of business of the seller in Texas, the sale is consummated at the place of business of the seller where the order is fulfilled.

(D) Internet order fulfilled from a location in Texas that is not a place of business of the seller in Texas. When a seller fulfills an Internet order at a location in Texas that is not a place of business of the seller in Texas, the sale is consummated at the location in Texas to which the order is shipped or delivered, or at which the purchaser of the item takes possession.

(E) Internet order fulfilled from a location outside of the state. When an Internet order is shipped or delivered into a local taxing jurisdiction from a location outside of Texas, the sale is not consummated at a location in Texas. However, local use tax is due based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section.

(F) Exception for certain economic development agreements. Subparagraphs (A) - (E) of this paragraph do not apply to sales of taxable items for Internet orders made by a seller who has entered into an economic development agreement pursuant to Local Government Code, Chapters 380 and 381 with a local taxing jurisdiction before September 1, 2019. This subparagraph is effective until December 31, 2022.

(d) Local use tax. The provisions addressing the imposition of state use tax in §3.346 of this title also apply to the imposition of local use tax. For example, consistent with §3.346(e) of this title, all taxable items that are shipped or delivered to a location in this state that is within the boundaries of a local taxing jurisdiction are presumed to have been purchased for use in that local taxing jurisdiction as well as presumed to have been purchased for use in the state.

(1) General rules.

(A) When local use taxes are due in addition to local sales taxes as provided by subsection (c) of this section, all applicable use taxes must be collected or accrued in the following order until the two percent cap is reached: city, county, special purpose district, and transit authority. If more than one special purpose district use tax is due, all such taxes are to be collected or accrued before any transit authority use tax is collected or accrued. See subparagraphs (D) and (E) of this paragraph.

(B) If a local use tax cannot be collected or accrued at its full rate without exceeding the two percent cap, the seller cannot collect it, or any portion of it, and the purchaser is not responsible for accruing it.

(C) If a seller collects a local sales tax on an item, or a purchaser accrues a local sales tax on an item, a use tax for the same type of jurisdiction is not due on the same item. For example, after a city sales tax has been collected or accrued for an item, no use tax is due to that same or a different city on that item, but use tax may be due to a county, special purpose district, or transit authority. Similarly, if one or more special purpose district sales taxes have been collected or accrued for an item, no special purpose district use tax is due on that item, and if one or more transit authority sales taxes have been collected or accrued for an item, no transit authority use tax is due on that item.

(D) Collection or accrual of use tax for multiple special purpose districts. If more than one special purpose district use tax is in effect at the location where use of an item occurs, the special purpose district taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all special purpose district taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the district with the earliest effective date would exceed the two percent cap, the tax for that district is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (C) of this paragraph, whether use tax is due for the district that next became effective.

*(i)* If the competing special purpose district taxes became effective on the same date, the special purpose district taxes are due in the order of the earliest date for which the election in which the

CP Ex-16-0020 of 0030

district residents authorized the imposition of sales and use tax by the district was held.

*(ii)* If the elections to impose the local taxes were held on the same date, the special purpose district taxes are due in the order of the earliest date for which the enabling legislation under which each district was created became effective.

(E) Collection or accrual of use tax for multiple transit authorities. If more than one transit authority use tax is in effect at the location where use of an item occurs, and the two percent cap has not been met, the transit authority taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all transit authority taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the authority with the earliest effective date would exceed the two percent cap, the tax for that authority is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (D) of this paragraph, whether use tax is due for the authority that next became effective.

*(i)* If the competing transit authorities became effective on the same date, the transit authority taxes are due in the order of the earliest date for which the election in which the authority residents authorized the imposition of sales and use tax by the authority was held.

*(ii)* If the elections to impose local taxes were held on the same date, the transit authority use taxes are due in the order of the earliest date for which the enabling legislation under which each authority was created became effective.

(2) General use tax rules applied to specific situations. The following fact patterns explain how local use tax is to be collected or accrued and remitted to the comptroller based on, and subject to, the general rules in paragraph (1) of this subsection.

(A) Sale consummated outside the state, item delivered from outside the state or from a location in Texas that is not operated by the seller - local use tax due. Except as provided in subsection (i)(3) of this section, if a sale is consummated outside of this state according to the provisions of subsection (c) of this section, and the item purchased is either shipped or delivered to a location in this state as designated by the purchaser from a location outside of the state, or if the order is drop shipped directly to the purchaser from a third-party supplier, local use tax is owed based upon the location in this state to which the order is shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use tax due on the sale. If the seller does not collect the local use taxes due on the sale, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller according to the provisions in paragraph (1) of this subsection. For example, if an order for a taxable item is received by a seller at a location outside of Texas, and the order is shipped to the purchaser from a location outside of the state, local use tax is due based upon the location to which the order is shipped or delivered or at which the purchaser of the item takes possession.

(B) Sale consummated in Texas outside a local taxing jurisdiction, item delivered into one or more local taxing jurisdictions - local use tax due. If a sale is consummated at a location in Texas that is outside of the boundaries of any local taxing jurisdiction according to the provisions of subsection (c) of this section, and the order is shipped or delivered to the purchaser at a location in this state that is within the boundaries of one or more local taxing jurisdictions, local use tax is due based on the location to which the items are shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use taxes due on the sale, regardless of the location of the seller in Texas. If the seller fails to collect any

local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(C) Sale consummated in any local taxing jurisdictions imposing less than 2.0% in total local taxes - local sales taxes and use taxes due. If a sale is consummated at a location in Texas where the total local sales tax rate imposed by the taxing jurisdictions in effect at that location does not equal 2.0% according to the provisions of subsection (c) of this section, and the item is shipped or delivered to the purchaser at a location in this state that is inside the boundaries of a different local taxing jurisdiction, additional local use tax may be due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the two percent cap. The seller is responsible for collecting any additional local use taxes due on the sale, regardless of the location of the seller in Texas. See subsection (i) of this section. If the seller fails to collect the additional local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

*(i)* Example one - if an order is received in person at a place of business of the seller, such that the sale is consummated at the location where the order is received as provided under subsection (c)(1)(A) of this section, and the local sales tax due on the sale does not meet the two percent cap, additional local use taxes are due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the provisions in paragraph (1) of this subsection.

*(ii)* Example two - if a seller receives an order for a taxable item at a seller's place of business in Texas, and the seller ships or delivers the item from an out-of-state location to a location in this state as designated by the purchaser, local sales tax is due based upon the location of the place of business of the seller where the order is received. If the local sales tax due on the item does not meet the two percent cap, use taxes, subject to the provisions in paragraph (1) of this subsection, are due based upon the location where the items are shipped or delivered or at which the purchaser of the item takes possession.

(e) Effect of other law.

(1) Tax Code, Title 2, Subtitles A (General Provisions) and B (Enforcement and Collection), Tax Code, Chapter 141 (Multistate Tax Compact) and Tax Code, Chapter 151 (Limited Sales, Excise, and Use Tax) apply to transactions involving local taxes. Related sections of this title and comptroller rulings shall also apply with respect to local taxes. This includes authorities such as court cases and federal law that affect whether an item is taxable or is excluded or exempt from taxation.

(2) Permits, exemption certificates, and resale certificates required by Tax Code, Chapter 151, shall also satisfy the requirements for collecting and remitting local taxes, unless otherwise indicated by this section or other sections of this title. For example, see subsection (n) of this section concerning prior contract exemptions.

(3) Any provisions in this section or other sections of this title related to a seller's responsibilities for collecting and remitting local taxes to the comptroller shall also apply to a purchaser if the seller does not collect local taxes that are due. The comptroller may proceed against the seller or purchaser for the local tax owed by either.

(f) Tax rates. Except as otherwise provided by law, no local governmental entity may adopt or increase a sales and use tax if, as a result of the adoption or increase of the tax, the combined rate of all sales and use taxes imposed by local taxing jurisdictions having territory in the local governmental entity would exceed 2.0% at any location within the boundaries of the local governmental entity's jurisdiction. The following are the local tax rates that may be adopted.

CP Ex-16-0021 of 0030

(1) Cities. Cities may impose sales and use tax at a rate of up to 2.0%.

(2) Counties. Counties may impose sales and use tax at rates ranging from 0.5% to 1.5%.

(3) Special purpose districts. Special purpose districts may impose sales and use tax at rates ranging from 0.125% to 2.0%.

(4) Transit authorities. Transit authorities may impose sales and use tax at rates ranging from 0.25% to 1.0%.

(g) Jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements.

(1) Jurisdictional boundaries.

(A) City boundaries. City taxing jurisdictional boundaries cannot overlap one another and a city cannot impose a sales and use tax in an area that is already within the jurisdiction of another city.

(B) County boundaries. County tax applies to all locations within that county.

(C) Special purpose district and transit authority boundaries. Special purpose districts and transit authorities may cross or share boundaries with other local taxing jurisdictions and may encompass, in whole or in part, other local taxing jurisdictions, including cities and counties. A geographic location or address in this state may lie within the boundaries of more than one special purpose district or more than one transit authority.

(D) Extraterritorial jurisdictions. Except as otherwise provided by paragraph (3) of this subsection concerning strategic partnership agreements and subsection (l)(5) of this section concerning the City of El Paso and Fort Bliss, city sales and use tax does not apply to taxable sales that are consummated outside the boundaries of the city, including sales made in a city's extraterritorial jurisdiction. However, an extraterritorial jurisdiction may lie within the boundaries of a special purpose district, transit authority, county, or any combination of the three, and the sales and use taxes for those jurisdictions would apply to those sales.

(2) Combined areas. A combined area is an area where the boundaries of a city overlap the boundaries of one or more other local taxing jurisdictions as a result of an annexation of additional territory by the city, and where, as the result of the imposition of the city tax in the area in addition to the local taxes imposed by the existing taxing jurisdictions, the combined local tax rate would exceed 2.0%. The comptroller shall make accommodations to maintain a 2.0% rate in any combined area by distributing the 2.0% tax revenue generated in these combined areas to the local taxing jurisdictions located in the combined areas as provided in Tax Code, §321.102 or Health and Safety Code, §775.0754. Combined areas are identified on the comptroller's website. Sellers engaged in transactions on which local sales or use taxes are due in a combined area, or persons who must self-accrue and remit tax directly to the comptroller, must use the combined area local code when reporting the tax rather than the codes for the individual city, county, special purpose districts, or transit authorities that make up the combined area.

(3) City tax imposed through strategic partnership agreements.

(A) The governing bodies of a district, as defined in Local Government Code, §43.0751, and a city may enter into a limited-purpose annexation agreement known as a strategic partnership agreement. Under this agreement, the city may impose sales and use tax within all or part of the boundaries of a district. Areas within a district that are annexed for this limited purpose are treated as though they are within the boundaries of the city for purposes of city sales and use tax.

(B) Counties, transit authorities, and special purpose districts may not enter into strategic partnership agreements. Sales and use taxes imposed by those taxing jurisdictions do not apply in the limited-purpose annexed area as part of a strategic partnership agreement between a city and an authorized district. However, a county, special purpose district, or transit authority sales and use tax, or any combination of these three types of taxes, may apply at locations included in a strategic partnership agreement between a city and an authorized district if the tax is imposed in that area by the applicable jurisdiction as allowed under its own controlling authorities.

(C) Prior to September 1, 2011, the term "district" was defined in Local Government Code, §43.0751 as a municipal utility district or a water control and improvement district. The definition was amended effective September 1, 2011, to mean a conservation and reclamation district operating under Water Code, Chapter 49.

(h) Places of business of the seller and job sites crossed by local taxing jurisdiction boundaries.

(1) Places of business of the seller crossed by local taxing jurisdiction boundaries. If a place of business of the seller is crossed by one or more local taxing jurisdiction boundaries so that a portion of the place of business of the seller is located within a taxing jurisdiction and the remainder of the place of business of the seller lies outside of the taxing jurisdiction, tax is due to the local taxing jurisdictions in which the sales office is located. If there is no sales office, sales tax is due to the local taxing jurisdictions in which any cash registers are located.

(2) Job sites.

(A) Residential repair and remodeling; new construction of an improvement to realty. When a contractor is improving real property under a separated contract, and the job site is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on any separately stated charges for taxable items incorporated into the real property must be allocated to the local taxing jurisdictions based on the total square footage of the real property improvement located within each jurisdiction, including the square footage of any standalone structures that are part of the construction, repair, or remodeling project. For more information about tax due on materials used at residential and new construction job sites, refer to §3.291 of this title (relating to Contractors).

(B) Nonresidential real property repair and improvement. When taxable services are performed to repair, remodel, or restore nonresidential real property, including a pipeline, transmission line, or parking lot, that is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on the taxable services, including materials and any other charges connected to the services performed, must be allocated among the local taxing jurisdictions based upon the total mileage or square footage, as appropriate, of the repair, remodeling, or restoration project located in each jurisdiction. For more information about tax due on materials used at nonresidential real property repair and remodeling job sites, refer to §3.357 of this title (relating to Nonresidential Real Property Repair, Remodeling, and Restoration; Real Property Maintenance).

(i) Sellers' and purchasers' responsibilities for collecting or accruing local taxes.

(1) Sale consummated in Texas; seller responsible for collecting local sales taxes and applicable local use taxes. When a sale of a taxable item is consummated at a location in Texas as provided by subsection (c) of this section, the seller must collect each local sales tax in effect at the location. If the total rate of local sales tax due on the sale

CP Ex-16-0022 of 0030

does not reach the two percent cap, and the seller ships or delivers the item into another local taxing jurisdiction, then the seller is required to collect additional local use taxes due, if any, based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession, regardless of the location of the seller in Texas. For more information regarding local use taxes, refer to subsection (d) of this section.

(2) Out-of-state sale; seller engaged in business in Texas. Except as provided in paragraph (3) of this subsection, when a sale is not consummated in Texas, a seller who is engaged in business in this state is required to collect and remit local use taxes due, if any, on orders of taxable items shipped or delivered at the direction of the purchaser into a local taxing jurisdiction in this state based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section.

(3) Local use tax rate for remote sellers.

(A) A remote seller required to collect and remit one or more local use taxes in connection with a sale of a taxable item must compute the amount using:

(i) the combined tax rate of all applicable local use taxes based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession; or

(ii) at the remote seller's election, the single local use tax rate published in the *Texas Register*.

(B) A remote seller that is storing tangible personal property in Texas to be used for fulfillment at a facility of a marketplace provider that has certified that it will assume the rights and duties of a seller with respect to the tangible personal property, as provided for in §3.286 of this title, may elect the single local use tax rate under subparagraph (A)(ii) of this paragraph.

(C) Notice to the comptroller of election and revocation of election.

(i) Before using the single local use tax rate, a remote seller must notify the comptroller of its election using a form prescribed by the comptroller. A remote seller may also notify the comptroller of the election on its use tax permit application form. The remote seller must use the single local use tax rate for all of its sales of taxable items until the election is revoked as provided in clause (ii) of this subparagraph.

(ii) A remote seller may revoke its election by filing a form prescribed by the comptroller. If the comptroller receives the notice by October 1, the revocation will be effective January 1 of the following year. If the comptroller receives the notice after October 1, the revocation will be effective January 1 of the year after the following year. For example, a remote seller must notify the comptroller by October 1, 2020, for the revocation to be effective January 1, 2021. If the comptroller receives the revocation on November 1, 2020, the revocation will be effective January 1, 2022.

(D) Single local use tax rate.

(i) The single local use tax rate in effect for the period beginning October 1, 2019, and ending December 31, 2019, is 1.75%.

(ii) The single local use tax rate in effect for the period beginning January 1, 2020, and ending December 31, 2020, is 1.75%.

(E) Annual publication of single local use tax rate. Before the beginning of a calendar year, the comptroller will publish notice of the single local use tax rate in the *Texas Register* that will be in effect for that calendar year.

(F) Calculating the single local use tax rate. The single local use tax rate effective in a calendar year is equal to the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year. As soon as practicable after the end of a state fiscal year, the comptroller must determine the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year by:

(i) dividing the total amount of net local sales and use taxes remitted to the comptroller during the state fiscal year by the total amount of net state sales and use tax remitted to the comptroller during the state fiscal year;

(ii) multiplying the amount computed under clause (i) of this subparagraph by the rate provided in Tax Code, §151.051; and

(iii) rounding the amount computed under clause (ii) of this subparagraph to the nearest .0025.

(G) Direct refund. A purchaser may request a refund based on local use taxes paid in a calendar year for the difference between the single local use tax rate paid by the purchaser and the amount the purchaser would have paid based on the combined tax rate for all applicable local use taxes. Notwithstanding the refund requirements under §3.325(a)(1) of this title (relating to Refunds and Payments Under Protest), a non-permitted purchaser may request a refund directly from the comptroller for the tax paid in the previous calendar year, no earlier than January 1 of the following calendar year within the statute of limitation under Tax Code, 111.104 (Refunds).

(H) Marketplace providers. Notwithstanding subparagraph (A) of this paragraph, marketplace providers may not use the single local use tax rate and must compute the amount of local use tax to collect and remit using the combined tax rate of all applicable local use taxes.

(4) Purchaser responsible for accruing and remitting local taxes if seller fails to collect.

(A) If a seller does not collect the state sales tax, any applicable local sales taxes, or both, on a sale of a taxable item that is consummated in Texas, then the purchaser is responsible for filing a return and paying the tax. The local sales taxes due are based on the location in this state where the sale is consummated as provided in subsection (c) of this section.

(B) A purchaser who buys an item for use in Texas from a seller who does not collect the state use tax, any applicable local use taxes, or both, is responsible for filing a return and paying the tax. The local use taxes due are based on the location where the item is first stored, used, or consumed by the purchaser.

(C) For more information about how to report and pay use tax directly to the comptroller, see §3.286 of this title.

(5) Local tax is due on the sales price of a taxable item, as defined in Tax Code, §151.007, in the report period in which the taxable item is purchased or the period in which the taxable item is first stored, used, or otherwise consumed in a local taxing jurisdiction.

(6) A purchaser is not liable for additional local use tax if the purchaser pays local use tax using the rate elected by an eligible remote seller according to paragraph (3) of this subsection. The remote seller must be identified on the comptroller's website as electing to use the single local use tax rate. A purchaser must verify that the remote seller is listed on the comptroller's website. If the remote seller is not

CP Ex-16-0023 of 0030

listed on the comptroller's website, the purchaser will be liable for additional use tax due in accordance to paragraph (4) of this subsection.

[(b) Effect of other law.]

[(1) Tax Code, Title 2, Subtitles A (General Provisions) and B (Enforcement and Collection), Tax Code, Chapter 141 (Multistate Tax Compact) and Tax Code, Chapter 151 (Limited Sales, Excise, and Use Tax) apply to transactions involving local taxes. Related sections of this title and comptroller rulings shall also apply with respect to local taxes. This includes authorities such as court cases and federal law that affect whether an item is taxable or is excluded or exempt from taxation.]

[(2) Permits, exemption certificates, and resale certificates required by Tax Code, Chapter 151, shall also satisfy the requirements for collecting and remitting local taxes, unless otherwise indicated by this section or other sections of this title. For example, see subsection (n) of this section concerning prior contract exemptions.]

[(3) Any provisions in this section or other sections of this title related to a seller's responsibilities for collecting and remitting local taxes to the comptroller shall also apply to a purchaser if the seller does not collect local taxes that are due. The comptroller may proceed against the seller or purchaser for the local tax owed by either.]

[(c) Tax rates. Except as otherwise provided by law, no local governmental entity may adopt or increase a sales and use tax if, as a result of the adoption or increase of the tax, the combined rate of all sales and use taxes imposed by local taxing jurisdictions having territory in the local governmental entity would exceed 2.0% at any location within the boundaries of the local governmental entity's jurisdiction. The following are the local tax rates that may be adopted.]

[(1) Cities. Cities may impose sales and use tax at a rate of up to 2.0%.]

[(2) Counties. Counties may impose sales and use tax at rates ranging from 0.5% to 1.5%.]

[(3) Special purpose districts. Special purpose districts may impose sales and use tax at rates ranging from 0.125% to 2.0%.]

[(4) Transit authorities. Transit authorities may impose sales and use tax at rates ranging from 0.25% to 1.0%.]

[(d) Jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements.]

[(1) Jurisdictional boundaries.]

[(A) City boundaries. City taxing jurisdictional boundaries cannot overlap one another and a city cannot impose a sales and use tax in an area that is already within the jurisdiction of another city.]

[(B) County boundaries. County tax applies to all locations within that county.]

[(C) Special purpose district and transit authority boundaries. Special purpose districts and transit authorities may cross or share boundaries with other local taxing jurisdictions and may encompass, in whole or in part, other local taxing jurisdictions, including cities and counties. A geographic location or address in this state may lie within the boundaries of more than one special purpose district or more than one transit authority.]

[(D) Extraterritorial jurisdictions. Except as otherwise provided by paragraph (3) of this subsection concerning strategic partnership agreements and subsection (l)(5) of this section concerning the City of El Paso and Fort Bliss, city sales and use tax does not apply to taxable sales that are consummated outside the boundaries of the city, including sales made in a city's extraterritorial jurisdiction. However,

an extraterritorial jurisdiction may lie within the boundaries of a special purpose district, transit authority, county, or any combination of the three, and the sales and use taxes for those jurisdictions would apply to those sales.]

[(2) Combined areas. A combined area is an area where the boundaries of a city overlap the boundaries of one or more other local taxing jurisdictions as a result of an annexation of additional territory by the city, and where, as the result of the imposition of the city tax in the area in addition to the local taxes imposed by the existing taxing jurisdictions, the combined local tax rate would exceed 2.0%. The comptroller shall make accommodations to maintain a 2.0% rate in any combined area. Sellers engaged in transactions on which local sales or use taxes are due in a combined area, or persons who must self-accrue and remit tax directly to the comptroller, must use the combined area local code when reporting the tax rather than the codes for the individual city, county, special purpose districts, or transit authorities that make up the combined area. The comptroller shall distribute the tax revenue generated in these combined areas to the local taxing jurisdictions located in the combined areas as provided in Tax Code, §321.102 or Health and Safety Code, §775.0754. Combined areas are identified on the comptroller's website.]

[(3) City tax imposed through strategic partnership agreements.]

[(A) The governing bodies of a district, as defined in Local Government Code, §43.0751, and a city may enter into a limited-purpose annexation agreement known as a strategic partnership agreement. Under this agreement, the city may impose sales and use tax within all or part of the boundaries of a district. Areas within a district that are annexed for this limited purpose are treated as though they are within the boundaries of the city for purposes of city sales and use tax.]

[(B) Counties, transit authorities, and special purpose districts may not enter into strategic partnership agreements. Sales and use taxes imposed by those taxing jurisdictions do not apply in the limited-purpose annexed area as part of a strategic partnership agreement between a city and an authorized district. However, a county, special purpose district, or transit authority sales and use tax, or any combination of these three types of taxes, may apply at locations included in a strategic partnership agreement between a city and an authorized district if the tax is imposed in that area by the applicable jurisdiction as allowed under its own controlling authorities.]

[(C) Prior to September 1, 2011, the term "district" was defined in Local Government Code, §43.0751 as a municipal utility district or a water control and improvement district. The definition was amended effective September 1, 2011, to mean a conservation and reclamation district operating under Water Code, Chapter 49.]

[(e) Place of business - special definitions. In addition to the general definition of the term "place of business" in subsection (a)(14) of this section, the following rules apply.]

[(1) Administrative offices supporting traveling salespersons. Any outlet, office, or location operated by a seller that serves as a base of operations for a traveling salesperson or that provides administrative support to a traveling salesperson is a place of business.]

[(2) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.]

[(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller at which the seller receives three or more orders for taxable items during the calendar year is a place of business.]

CP Ex-16-0024 of 0030

[(B)   If a salesperson who receives three or more orders for taxable items within a calendar year is assigned to work from, or to work at, a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the facility is a place of business.]

[(C)   If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller.]

[(3)   Kiosks. A kiosk is not a place of business for the purpose of determining where a sale is consummated for local tax purposes. A seller who owns or operates a kiosk in Texas is, however, engaged in business in this state as provided in §3.286 of this title.]

[(4)   Purchasing offices.]

[(A)   A purchasing office is not a place of business if the purchasing office exists solely to rebate a portion of the local sales and use tax imposed by Tax Code, Chapter 321 or 323 to a business with which it contracts; or if the purchasing office functions or exists to avoid the tax legally due under Tax Code, Chapter 321 or 323. A purchasing office does not exist solely to rebate a portion of the local sales and use tax or to avoid the tax legally due under Tax Code, Chapter 321 or 323 if the purchasing office provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.]

[(B)   When the comptroller determines that a purchasing office is not a place of business, the sale of any taxable item is deemed to be consummated at the place of business of the seller from whom the purchasing office purchased the taxable item for resale and local sales and use taxes are due according to the following rules.]

*[(i)   When taxable items are purchased from a Texas seller, local sales taxes are due based on the location of the seller's place of business where the sale is deemed to be consummated, as determined in accordance with subsection (h) of this section.]*

*[(ii)   When the sale of a taxable item is deemed to be consummated at a location outside of this state, local use tax is due based on the location where the items are first stored, used or consumed by the entity that contracted with the purchasing office in accordance with subsection (i) of this section.]*

[(C)   In making a determination under subparagraph (A) of this paragraph, as to whether a purchasing office provides significant business services to the contracting business, the comptroller will look to the books and records of the purchasing office to determine whether the total value of the business services provided to the contracting business equals or exceeds the total value of processing invoices. If the total value of the business services provided, including logistics management, purchasing, inventory control, or other vital business services, is less than the total value of the service to process invoices, then the purchasing office will be presumed not to be a place of business of the seller.]

[(f)   Places of business and job sites crossed by local taxing jurisdiction boundaries.]

[(1)   Places of business crossed by local taxing jurisdiction boundaries. If a place of business is crossed by one or more local taxing jurisdiction boundaries so that a portion of the place of business is located within a taxing jurisdiction and the remainder of the place of business lies outside of the taxing jurisdiction, tax is due to the local taxing jurisdictions in which the sales office is located. If there is no sales office, sales tax is due to the local taxing jurisdictions in which any cash registers are located.]

[(2)   Job sites.]

[(A)   Residential repair and remodeling; new construction of an improvement to realty. When a contractor is improving real property under a separated contract, and the job site is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on any separately stated charges for taxable items incorporated into the real property must be allocated to the local taxing jurisdictions based on the total square footage of the real property improvement located within each jurisdiction, including the square footage of any standalone structures that are part of the construction, repair, or remodeling project. For more information about tax due on materials used at residential and new construction job sites, refer to §3.291 of this title (relating to Contractors).]

[(B)   Nonresidential real property repair and improvement. When taxable services are performed to repair, remodel, or restore nonresidential real property, including a pipeline, transmission line, or parking lot, that is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on the taxable services, including materials and any other charges connected to the services performed, must be allocated among the local taxing jurisdictions based upon the total mileage or square footage, as appropriate, of the repair, remodeling, or restoration project located in each jurisdiction. For more information about tax due on materials used at nonresidential real property repair and remodeling job sites, refer to §3.357 of this title (relating to Nonresidential Real Property Repair, Remodeling, and Restoration; Real Property Maintenance).]

[(g)   Sellers' and purchasers' responsibilities for collecting or accruing local taxes.]

[(1)   Sale consummated in Texas; seller responsible for collecting local sales taxes and applicable local use taxes. When a sale of a taxable item is consummated at a location in Texas as provided by subsection (h) of this section, the seller must collect each local sales tax in effect at the location except as provided in paragraph (3) of this subsection. If the total rate of local sales tax due on the sale does not reach the two percent cap, and the seller ships or delivers the item into another local taxing jurisdiction in which the seller is engaged in business, then the seller is required to collect additional local use taxes due, if any, based on the location to which the item is shipped or delivered. For more information regarding local use taxes, refer to subsection (i) of this section.]

[(2)   Out-of-state sale; seller engaged in business in Texas. A seller who is engaged in business in this state is required to collect and remit local use taxes due, if any, on orders of taxable items shipped or delivered at the direction of the purchaser into a local taxing jurisdiction in this state in which the seller is engaged in business.]

[(3)   A seller is only required to collect local sales or use taxes for a local taxing jurisdiction in which the seller is engaged in business.]

[(4)   Purchaser responsible for accruing and remitting local taxes if seller fails to collect.]

[(A)   If a seller does not collect the state sales tax, any applicable local sales taxes, or both on a sale of a taxable item that is consummated in Texas, then the purchaser is responsible for filing a return and paying the tax. The local sales taxes due are based on the location in this state where the sale is consummated as provided in subsection (h) of this section.]

CP Ex-16-0025 of 0030

[(B)    A purchaser who buys an item for use in Texas from a seller who does not collect the state use tax, any applicable local use taxes, or both, is responsible for filing a return and paying the tax. The local use taxes due are based on the location where the item is first stored, used, or consumed by the purchaser.]

[(C)    For more information about how to report and pay use tax directly to the comptroller, see §3.286 of this title.]

[(5)    Local tax is due on the sales price of a taxable item, as defined in Tax Code, §151.007, in the report period in which the taxable item is purchased or the period in which the taxable item is first stored, used, or otherwise consumed in a local taxing jurisdiction.]

[(h)    Local sales tax. Determining the local taxing jurisdictions to which sales tax is due; consummation of sale.]

[(1)    General rule. Except for the special rules applicable to direct payment permit purchases and certain taxable items as provided in subsections (j) and (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. Local sales taxes are due to each local taxing jurisdiction in effect at the location where the sale is consummated. Local use tax may also be due if the total amount of local sales taxes due does not reach the two percent cap, and the item purchased is shipped or delivered to a location in one or more different local taxing jurisdictions, as provided in subsection (i) of this section.]

[(2)    Multiple special purpose district taxes, multiple transit authority sales taxes, or a combination of the two may apply to a single transaction. If the sale of a taxable item is consummated at a location within the boundaries of multiple special purpose districts or transit authorities, local sales tax is owed to each of the jurisdictions in effect at that location. For example, a place of business located in the city of San Antonio is within the boundaries of both the San Antonio Advanced Transportation District and the San Antonio Metropolitan Transit Authority, and the seller is required to collect sales tax for both transit authorities. Similarly, a place of business in Flower Mound is located within the boundaries of two special purpose districts, the Flower Mound Crime Control District and the Flower Mound Fire Control District, and the seller is responsible for collecting sales tax for both special purpose districts.]

[(3)    Consummation of sale. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state.]

[(A)    Order placed in person at a seller's place of business in Texas. When a purchaser places an order for a taxable item in person at a seller's place of business in Texas, the sale of that item is consummated at that place of business, regardless of the location where the order is fulfilled, except in the limited circumstances described in subparagraph (F) of this paragraph, concerning qualifying economic development agreements.]

[(B)    Order received at a place of business in Texas, fulfilled at a location that is not a place of business. When an order that is placed over the telephone, through the Internet, or by any means other than in person is received by the seller at a place of business in Texas, and the seller fulfills the order at a location that is not a place of business of the seller in Texas, such as a warehouse or distribution center, the sale is consummated at the place of business at which the order for the taxable item is received.]

[(C)    Order fulfilled at a place of business in Texas. When an order is placed in person at a location that is not a place of business of the seller in this state, such as a kiosk, or when an order is placed over the telephone, through the Internet, or by any means other than in person, and the seller fulfills the order at a location that is a place of business in Texas, the sale is consummated at the place of business where the order is fulfilled.]

[(D)    Order fulfilled within the state at a location that is not a place of business. When an order is received by a seller at any location other than a place of business of the seller in this state, and the seller fulfills the order at a location in Texas that is not a place of business of the seller, then the sale is consummated at the location in Texas to which the order is shipped or delivered, or the location where it is transferred to the purchaser.]

[(E)    Order received outside of the state, fulfilled outside of the state. When an order is received by a seller at a location outside of Texas, and the order is shipped or delivered into a local taxing jurisdiction from a location outside of the state, the sale is not consummated at a location in Texas. However, local use tax is due based upon the location in this state to which the item is shipped or delivered or at which possession of the item is taken by the purchaser as provided in subsection (i) of this section.]

[(F)    Exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5). This subparagraph is effective until September 1, 2024. If applicable, the local sales tax due on the sale of a taxable item is based on the location of the qualifying warehouse, which is a place of business of the seller, from which the item is shipped or delivered or at which the purchaser takes possession of the item.]

[(4)    Orders received by traveling salespersons. Orders taken by traveling salespersons are received by the seller at the administrative office or other place of business from which the traveling salesperson operates, and such sales are consummated at the location indicated in paragraph (3) of this subsection. For example, if a traveling salesperson who operates out of a place of business of a seller in Texas takes an order for a taxable item, and the order is fulfilled at a location that is not a place of business of the seller in this state, the sale is consummated at the place of business from which the salesperson operates, in accordance with paragraph (3)(B) of this subsection. Similarly, if a traveling salesperson takes an order for a taxable item, and the order is fulfilled at a place of business of the seller in this state, the sale is consummated at the location of the place of business where the order is fulfilled, in accordance with paragraph (3)(C) of this subsection.]

[(5)    Drop shipments.]

[(A)    When an order for a taxable item is received at a seller's place of business in Texas, or by a traveling salesperson operating out of a place of business in this state, and the item is drop-shipped directly to the purchaser from a third-party supplier, the sale is consummated at, and local sales tax is due based upon, the location of the place of business where the order is received. When an order for a taxable item is received by a seller at one location, but shipped by the seller to the purchaser from a different location, the sale is consummated at, and local sales tax is due based upon, the location designated in paragraph (3) of this subsection. If the local sales taxes due based on the location of the seller's place of business at which the sale is consummated equal less than 2.0%, additional local use tax may be due based upon the location in this state to which the purchased item is shipped or delivered or at which possession of the item is taken by the purchaser as provided in subsection (i) of this section.]

[(B)    When an order for a taxable item is received by the seller at a location outside of Texas, or by a traveling salesperson operating from a location outside of this state, and the item is drop-shipped directly to the purchaser from a third-party supplier, the item

CP Ex-16-0026 of 0030

is subject to use tax. See subsection (i) of this section concerning use tax.]

[(6) Itinerant vendors; vending machines; temporary places of business.]

[(A) Itinerant vendors. Sales made by itinerant vendors are consummated at, and itinerant vendors must collect sales tax based upon, the location where the item is delivered or where the purchaser takes possession of the item. Itinerant vendors do not have any responsibility to collect use tax.]

[(B) Vending machines. Sales of taxable items made from a vending machine are consummated at the location of the vending machine. See §3.293 of this title (relating to Food; Food Products; Meals; Food Service) for more information about vending machine sales.]

[(C) Temporary places of business.]

[(i) Item transferred to purchaser at time of sale. When a seller operates a temporary place of business, and items purchased are transferred to the purchasers at the time of sale, the sales are consummated at, and local sales tax is due based upon, the location of the temporary place of business.]

[(ii) Order accepted at temporary place of business prior to June 19, 2009. If a seller received an order at a temporary place of business prior to June 19, 2009, and the order was fulfilled at another place of business of the seller in this state, the sale was consummated at, and local sales taxes are due based upon, the location of the place of business where the order was fulfilled and not the temporary location where the order was received.]

[(iii) Order accepted at temporary place of business on or after June 19, 2009. When a seller receives an order in person at a temporary place of business and the order is fulfilled at another location, the sale is consummated at, and local sales taxes are due based upon, the location of the temporary place of business where the order was received.]

[(i) Use tax. The provisions addressing the imposition of state use tax in §3.346 of this title also apply to the imposition of local use tax. For example, consistent with §3.346(e) of this title, all taxable items that are shipped or delivered to a location in this state that is within the boundaries of a local taxing jurisdiction are presumed to have been purchased for use in that local taxing jurisdiction as well as presumed to have been purchased for use in the state.]

[(1) General rules.]

[(A) When local use taxes are due in addition to local sales taxes as provided by subsection (h) of this section, all applicable use taxes must be collected or accrued in the following order until the two percent cap is reached: city, county, special purpose district, and transit authority. If more than one special purpose district use tax is due, all such taxes are to be collected or accrued before any transit authority use tax is collected or accrued. See subparagraphs (D) and (E) of this paragraph.]

[(B) If a local use tax cannot be collected or accrued at its full rate without exceeding the two percent cap, the seller cannot collect it, or any portion of it, and the purchaser is not responsible for accruing it.]

[(C) If a seller collects a local sales tax on an item, or a purchaser accrues a local sales tax on an item, a use tax for the same type of jurisdiction is not due on the same item. For example, once a city sales tax has been collected or accrued for an item, no use tax is due to that same or a different city on that item, but use tax may be due

to a county, special purpose district, or transit authority. Similarly, if one or more special purpose district sales taxes have been collected or accrued for an item, no special purpose district use tax is due on that item, and if one or more transit authority sales taxes have been collected or accrued for an item, no transit authority use tax is due on that item.]

[(D) Collection or accrual of use tax for multiple special purpose districts. If more than one special purpose district use tax is in effect at the location where use of an item occurs, the special purpose district taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all special purpose district taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the district with the earliest effective date would exceed the two percent cap, the tax for that district is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (C) of this paragraph, whether use tax is due for the district that next became effective.]

[(i) If the competing special purpose districts became effective on the same date, the special purpose district taxes are due in the order of the earliest date for which the election in which the district residents authorized the imposition of sales and use tax by the district was held.]

[(ii) If the elections to impose the local taxes were held on the same date, the special purpose district taxes are due in the order of the earliest date for which the enabling legislation under which each district was created became effective.]

[(E) Collection or accrual of use tax for multiple transit authorities. If more than one transit authority use tax is in effect at the location where use of an item occurs, and the two percent cap has not been met, the transit authority taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all transit authority taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the authority with the earliest effective date would exceed the two percent cap, the tax for that authority is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (D) of this paragraph, whether use tax is due for the authority that next became effective.]

[(i) If the competing transit authorities became effective on the same date, the transit authority taxes are due in the order of the earliest date for which the election in which the authority residents authorized the imposition of sales and use tax by the authority was held.]

[(ii) If the elections to impose local taxes were held on the same date, the transit authority use taxes are due in the order of the earliest date for which the enabling legislation under which each authority was created became effective.]

[(2) General use tax rules applied to specific situations. The following fact patterns explain how local use tax is to be collected or accrued and remitted to the comptroller based on, and subject to, the general rules in paragraph (1) of this subsection.]

[(A) Sale consummated outside the state, item delivered from outside the state or from a location in Texas that is not operated by the seller - local use tax due. If a sale is consummated outside of this state according to the provisions of subsection (h) of this section, and the item purchased is either shipped or delivered to a location in this state as designated by the purchaser from a location outside of the state, or if the order is drop shipped directly to the purchaser from a third-party supplier, local use tax is owed based upon the location in this state to which the order is shipped or delivered. If the seller is en-

CP Ex-16-0027 of 0030

gaged in business in the local taxing jurisdiction into which the order is shipped or delivered, the seller is responsible for collecting the local use tax due on the sale. If the seller does not collect the local use taxes due on the sale, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller according to the provisions in paragraph (1) of this subsection. For example, if an order for a taxable item is received by a seller at a location outside of Texas, and the order is shipped to the purchaser from a location outside of the state, local use tax is due based upon the location to which the order is shipped or delivered.]

[(B) Sale consummated in Texas outside a local taxing jurisdiction, item delivered into one or more local taxing jurisdictions - local use tax due. If a sale is consummated at a location in Texas that is outside of the boundaries of any local taxing jurisdiction according to the provisions of subsection (h) of this section, and the order is shipped or delivered to the purchaser at a location in this state that is within the boundaries of one or more local taxing jurisdictions, local use tax is due based on the location to which the items are shipped or delivered. If the seller is engaged in business in the local taxing jurisdiction where the items are shipped or delivered, the seller is responsible for collecting the local use taxes due. If the seller fails to collect any local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller. For example, if a seller uses its own delivery vehicle to transport a taxable item from a place of business that is outside the boundaries of a local taxing jurisdiction to a delivery location designated by a purchaser that is inside the boundaries of a local taxing jurisdiction, the seller is responsible for collecting the local use taxes due based on the location to which the items are delivered.]

[(C) Sale consummated in any local taxing jurisdictions imposing less than 2.0% in total local taxes - local sales taxes, and possibly use taxes, due. If a sale is consummated at a location in Texas where the total local sales tax rate imposed by the taxing jurisdictions in effect at that location does not equal or exceed 2.0% according to the provisions of subsection (h) of this section, and the item is shipped or delivered to the purchaser at a location in this state that is inside the boundaries of a different local taxing jurisdiction, additional local use tax may be due based on the location to which the order is shipped or delivered, subject to the two percent cap. If the seller is engaged in business in the local taxing jurisdiction into which the order is shipped or delivered, the seller is responsible for collecting any additional local use taxes due. See subsection (g) of this section. If the seller fails to collect the additional local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller. For example, if an order is received in person at a place of business of the seller, such that the sale is consummated at the location where the order is received as provided under subsection (h)(3)(A) of this section, and the local sales tax due on the sale does not meet the two percent cap, additional local use taxes may be due based on the location to which the order is shipped or delivered, subject to the provisions in paragraph (1) of this subsection. Or, if a purchaser places an order for a taxable item at a seller's place of business in Texas, and the seller ships or delivers the item from an out-of-state location to a location in this state as designated by the purchaser, local sales tax is due based upon the location of the place of business where the order is received. If the local sales tax due on the item does not meet the two percent cap, use tax, subject to the provisions in paragraph (1) of this subsection, is due based upon the location where the items are shipped or delivered.]

(j) Items purchased under a direct payment permit.

(1) When taxable items are purchased under a direct payment permit, local use tax is due based upon the location where the permit holder first stores the taxable items, except that if the taxable items are not stored, then local use tax is due based upon the location where the taxable items are first used or otherwise consumed by the permit holder.

(2) If, in a local taxing jurisdiction, storage facilities contain taxable items purchased under a direct payment exemption certificate and at the time of storage it is not known whether the taxable items will be used in Texas, then the taxpayer may elect to report the use tax either when the taxable items are first stored in Texas or are first removed from inventory for use in Texas, as long as use tax is reported in a consistent manner. See also §3.288(i) of this title (relating to Direct Payment Procedures and Qualifications) and §3.346(g) of this title.

(3) If local use tax is paid on stored items that are subsequently removed from Texas before they are used, the tax may be recovered in accordance with the refund and credit provisions of §3.325 of this title [(relating to Refunds and Payments Under Protest)] and §3.338 of this title (relating to Multistate Tax Credits and Allowance of Credit for Tax Paid to Suppliers).

(k) Special rules for certain taxable goods and services. Sales of the following taxable goods and services are consummated at, and local tax is due based upon, the location indicated in this subsection.

(1) Amusement services. Local tax is due based upon the location where the performance or event occurs. For more information on amusement services, refer to §3.298 of this title (relating to Amusement Services).

(2) Cable services. When a service provider uses a cable system to provide cable television or bundled cable services to customers, local tax is due as provided for in §3.313 of this title. When a service provider uses a satellite system to provide cable services to customers, no local tax is due on the service in accordance with the Telecommunications Act of 1996, §602.

(3) Florists. Local sales tax is due on all taxable items sold by a florist based upon the location where the order is received, regardless of where or by whom delivery is made. Local use tax is not due on deliveries of taxable items sold by florists. For example, if the place of business of the florist where an order is taken is not within the boundaries of any local taxing jurisdiction, no local sales tax is due on the item and no local use tax is due regardless of the location of delivery. If a Texas florist delivers an order in a local taxing jurisdiction at the instruction of an unrelated florist, and if the unrelated florist did not take the order within the boundaries of a local taxing jurisdiction, local use tax is not due on the delivery. For more information about florists' sales and use tax obligations, refer to §3.307 of this title (relating to Florists).

(4) Landline telecommunications services. Local taxes due on landline telecommunications services are based upon the location of the device from which the call or other transmission originates. If the seller cannot determine where the call or transmission originates, local taxes due are based on the address to which the service is billed. For more information, refer to §3.344 of this title (relating to Telecommunications Services).

(5) Marketplace provider sales. Local taxes are due on sales of taxable items through a marketplace provider based on the location in this state to which the item is shipped or delivered or at which the purchaser takes possession. For more information, refer to §3.286 of this title.

(6) [(5)] Mobile telecommunications services. Local taxes due on mobile telecommunications services are based upon the location of the customer's place of primary use as defined in §3.344(a)(8) of this title, and local taxes are to be collected as indicated in §3.344(h) of this title.

CP Ex-16-0028 of 0030

(7) [(6)] Motor vehicle parking and storage. Local taxes are due based on the location of the space or facility where the vehicle is parked. For more information, refer to §3.315 of this title (relating to Motor Vehicle Parking and Storage).

(8) [(7)] Natural gas and electricity. Any local city and special purpose taxes due are based upon the location where the natural gas or electricity is delivered to the purchaser. As explained in subsection (l)(1) of this section, residential use of natural gas and electricity is exempt from all county sales and use taxes and all transit authority sales and use taxes, most special purpose district sales and use taxes, and many city sales and use taxes. A list of the cities and special purpose districts that do impose, and those that are eligible to impose, local sales and use tax on residential use of natural gas and electricity is available on the comptroller's website. For more information, also refer to §3.295 of this title (relating to Natural Gas and Electricity).

(9) [(8)] Nonresidential real property repair and remodeling services. Local taxes are due on services to remodel, repair, or restore nonresidential real property based on the location of the job site where the remodeling, repair, or restoration is performed. See also subsection (h)(2)(B) [(f)(2)(B)] of this section and §3.357 of this title.

(10) [(9)] Residential real property repair and remodeling and new construction of a real property improvement performed under a separated contract. When a contractor constructs a new improvement to realty pursuant to a separated contract or improves residential real property pursuant to a separated contract, the sale is consummated at the job site at which the contractor incorporates taxable items into the customer's real property. See also subsection (h)(2)(A) [(f)(2)(A)] of this section and §3.291 of this title.

(11) [(10)] Waste collection services. Local taxes are due on garbage or other solid waste collection or removal services based on the location at which the waste is collected or from which the waste is removed. For more information, refer to §3.356 of this title (relating to Real Property Service).

(l) Special exemptions and provisions applicable to individual jurisdictions.

(1) Residential use of natural gas and electricity.

(A) Mandatory exemptions from local sales and use tax. Residential use of natural gas and electricity is exempt from most local sales and use taxes. Counties, transit authorities, and most special purpose districts are not authorized to impose sales and use tax on the residential use of natural gas and electricity. Pursuant to Tax Code, §321.105, any city that adopted a local sales and use tax effective October 1, 1979, or later is prohibited from imposing tax on the residential use of natural gas and electricity. See §3.295 of this title.

(B) Imposition of tax allowed in certain cities. Cities that adopted local sales tax prior to October 1, 1979, may, in accordance with the provisions in Tax Code, §321.105, choose to repeal the exemption for residential use of natural gas and electricity. The comptroller's website provides a list of cities that impose tax on the residential use of natural gas and electricity, as well as a list of those cities that do not currently impose the tax, but are eligible to do so.

(C) Effective January 1, 2010, a fire control, prevention, and emergency medical services district organized under Local Government Code, Chapter 344 that imposes sales tax under Tax Code, §321.106, or a crime control and prevention district organized under Local Government Code, Chapter 363 that imposes sales tax under Tax Code, §321.108, that is located in all or part of a municipality that imposes a tax on the residential use of natural gas and electricity as provided under Tax Code, §321.105 may impose tax on residential use of natural gas and electricity at locations within the district. A list of the special purpose districts that impose tax on residential use of natural gas and electricity and those districts eligible to impose the tax that do not currently do so is available on the comptroller's website.

(2) Telecommunication services. Telecommunications services are exempt from all local sales taxes unless the governing body of a city, county, transit authority, or special purpose district votes to impose sales tax on these services. However, since 1999, under Tax Code, §322.109(d), transit authorities created under Transportation Code, Chapter 451 cannot repeal the exemption unless the repeal is first approved by the governing body of each city that created the local taxing jurisdiction. The local sales tax is limited to telecommunications services occurring between locations within Texas. See §3.344 of this title. The comptroller's website provides a list of local taxing jurisdictions that impose tax on telecommunications services.

(3) Emergency services districts.

(A) Authority to exclude territory from imposition of emergency services district sales and use tax. Pursuant to the provisions of Health and Safety Code, §775.0751(c-1), an emergency services district wishing to enact a sales and use tax may exclude from the election called to authorize the tax any territory in the district where the sales and use tax is then at 2.0%. The tax, if authorized by the voters eligible to vote on the enactment of the tax, then applies only in the portions of the district included in the election. The tax does not apply to sales made in the excluded territories in the district and sellers in the excluded territories should continue to collect local sales and use taxes for the local taxing jurisdictions in effect at the time of the election under which the district sales and use tax was authorized as applicable.

(B) Consolidation of districts resulting in sales tax sub-districts. Pursuant to the provisions of Health and Safety Code, §775.018(f), if the territory of a district proposed under Health and Safety Code, Chapter 775 overlaps with the boundaries of another district created under that chapter, the commissioners court of each county and boards of the counties in which the districts are located may choose to create a consolidated district in the overlapping territory. If two districts that want to consolidate under Health and Safety Code, §775.024 have different sales and use tax rates, the territory of the former districts located within the consolidated area will be designated as sub-districts and the sales tax rate within each sub-district will continue to be imposed at the rate the tax was imposed by the former district that each sub-district was part of prior to the consolidation.

(4) East Aldine Management District.

(A) Special sales and use tax zones within district; separate sales and use tax rate. As set out in Special District Local Laws Code, §3817.154(e) and (f), the East Aldine Management District board may create special sales and use tax zones within the boundaries of the District and, with voter approval, enact a special sales and use tax rate in each zone that is different from the sales and use tax rate imposed in the rest of the district.

(B) Exemptions from special zone sales and use tax. The sale, production, distribution, lease, or rental of; and the use, storage, or other consumption within a special sales and use tax zone of; a taxable item sold, leased, or rented by the entities identified in clauses (i) - (vi) of this subparagraph are exempt from the special zone sales and use tax. State and all other applicable local taxes apply unless otherwise exempted by law. The special zone sales and use tax exemption applies to:

(i) a retail electric provider as defined by Utilities Code, §31.002;

(ii) an electric utility or a power generation company as defined by Utilities Code, §31.002;

CP Ex-16-0029 of 0030

*(iii)* a gas utility as defined by Utilities Code, §101.003 or §121.001, or a person who owns pipelines used for transportation or sale of oil or gas or a product or constituent of oil or gas;

*(iv)* a person who owns pipelines used for the transportation or sale of carbon dioxide;

*(v)* a telecommunications provider as defined by Utilities Code, §51.002; or

*(vi)* a cable service provider or video service provider as defined by Utilities Code, §66.002.

(5) Imposition of city sales tax and transit tax on certain military installations; El Paso and Fort Bliss. Pursuant to Tax Code, §321.1045 (Imposition of Sales and Use Tax in Certain Federal Military Installations), for purposes of the local sales and use tax imposed under Tax Code, Chapter 321, the city of El Paso includes the area within the boundaries of Fort Bliss to the extent it is in the city's extraterritorial jurisdiction. However, the El Paso transit authority does not include Fort Bliss. See Transportation Code, §453.051 concerning the Creation of Transit Departments.

(m) Restrictions on local sales tax rebates and other economic incentives. Pursuant to Local Government Code, §501.161, Section 4A and 4B development corporations may not offer to provide economic incentives, such as local sales tax rebates authorized under Local Government Code, Chapters 380 or 381, to persons whose business consists primarily of purchasing taxable items using resale certificates and then reselling those same items to a related party. A related party means a person or entity which owns at least 80% of the business enterprise to which sales and use taxes would be rebated as part of an economic incentive.

(n) Prior contract exemptions. The provisions of §3.319 of this title (relating to Prior Contracts) concerning definitions and exclusions apply to prior contract exemptions.

(1) Certain contracts and bids exempt. No local taxes are due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of any local tax if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of any local tax if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(2) Annexations. Any annexation of territory into an existing local taxing jurisdiction is also a basis for claiming the exemption provided by this subsection.

(3) Local taxing jurisdiction rate increase; partial exemption for certain contracts and bids. When an existing local taxing jurisdiction raises its sales and use tax rate, the additional amount of tax that would be due as a result of the rate increase is not due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of the tax rate increase if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of the tax rate increase if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(4) Three-year statute of limitations.

(A) The exemption in paragraph (1) of this subsection and the partial exemption in paragraph (3) of this subsection have no effect after three years from the date the adoption or increase of the tax takes effect in the local taxing jurisdiction.

(B) The provisions of §3.319 of this title apply to this subsection to the extent they are consistent.

(C) Leases. Any renewal or exercise of an option to extend the time of a lease or rental contract under the exemptions provided by this subsection shall be deemed to be a new contract and no exemption will apply.

(5) Records. Persons claiming the exemption provided by this subsection must maintain records which can be verified by the comptroller or the exemption will be lost.

(6) Exemption certificate. An identification number is required on the prior contract exemption certificates furnished to sellers. The identification number should be the person's 11-digit Texas taxpayer number or federal employer's identification (FEI) number.

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on December 18, 2019.

TRD-201904910
William Hamner
Special Counsel for Tax Administration
Comptroller of Public Accounts
Earliest possible date of adoption: February 2, 2020
For further information, please call: (512) 475-2220

♦ ♦ ♦

# TITLE 37. PUBLIC SAFETY AND CORRECTIONS

## PART 6. TEXAS DEPARTMENT OF CRIMINAL JUSTICE

## CHAPTER 161. COMMUNITY JUSTICE ASSISTANCE DIVISION ADMINISTRATION

### 37 TAC §161.21

The Texas Board of Criminal Justice proposes amendments to §161.21, concerning the Role of the Judicial Advisory Council. The amendments are proposed in conjunction with a proposed rule review of §161.21 as published in another section of the *Texas Register.* The proposed amendments specify that functions of the Judicial Advisory Council include reviewing proposed changes to Texas Department of Criminal Justice (TDCJ) Community Justice Assistance Division (CJAD) standards and making recommendations to the TDCJ CJAD director. The proposed amendments also make minor grammatical updates.

Jerry McGinty, Chief Financial Officer for the Texas Department of Criminal Justice, has determined that for each year of the first five years the rule will be in effect, enforcing or administering the rule will not have foreseeable implications related to costs or revenues for state or local government.

CP Ex-16-0030 of 0030

TAB
F



*Volume 45 Number 21*　　　　　*May 22, 2020*　　　　　*Pages 3389 - 3544*

D-1-GN-21-003198

**TRIAL EXHIBIT**

**CP Ex-23**

CP Ex-23-0001 of 0032



a section of the
Office of the Secretary of State
P.O. Box 12887
Austin, Texas 78711
(512) 463-5561
FAX (512) 463-5569

https://www.sos.texas.gov
register@sos.texas.gov

*Texas Register,* **(ISSN 0362-4781, USPS 12-0090),** is published weekly (52 times per year) for $340.00 ($502.00 for first class mail delivery) by Matthew Bender & Co., Inc., 3 Lear Jet Lane Suite 104, P. O. Box 1710, Latham, NY 12110.

Material in the *Texas Register* is the property of the State of Texas. However, it may be copied, reproduced, or republished by any person without permission of the *Texas Register* director, provided no such republication shall bear the legend *Texas Register* or "Official" without the written permission of the director.

The *Texas Register* is published under the Government Code, Title 10, Chapter 2002. Periodicals Postage Paid at Easton, MD and at additional mailing offices.

**POSTMASTER:** Send address changes to the *Texas Register,* 4810 Williamsburg Road, Unit 2, Hurlock, MD 21643.

*Secretary of State -* Ruth R. Hughs

*Director -* Robert Sumners

*Editor-in-Chief -* Jill S. Ledbetter

*Editors*
Liz Cordell
Eddie Feng
Belinda Kirk
Cecilia Mena
Joy L. Morgan
Breanna Mutschler
Barbara Strickland

# IN THIS ISSUE

## GOVERNOR

Appointments................................................................3395

Proclamation 41-3732....................................................3395

Proclamation 41-3733....................................................3396

Proclamation 41-3734....................................................3397

Proclamation 41-3735....................................................3397

## ATTORNEY GENERAL

Requests for Opinions.....................................................3399

Opinions......................................................................3399

## EMERGENCY RULES

### DEPARTMENT OF STATE HEALTH SERVICES

STANDARD OF CARE

25 TAC §448.911..........................................................3403

## PROPOSED RULES

### CREDIT UNION DEPARTMENT

CHARTERING, OPERATIONS, MERGERS, LIQUIDATIONS

7 TAC §91.708.............................................................3405

### STATE PRESERVATION BOARD

RULES AND REGULATIONS OF THE BOARD

13 TAC §111.13............................................................3406

### TEXAS DEPARTMENT OF LICENSING AND REGULATION

MOTOR FUEL METERING AND QUALITY

16 TAC §§97.1 - 97.3 ....................................................3412

16 TAC §§97.20 - 97.28 .................................................3414

16 TAC §§97.40 - 97.43 .................................................3415

16 TAC §§97.50 - 97.60 .................................................3416

16 TAC §§97.70 - 97.74 .................................................3417

16 TAC §97.80.............................................................3418

### TEXAS EDUCATION AGENCY

PLANNING AND ACCOUNTABILITY

19 TAC §97.1005..........................................................3418

BUDGETING, ACCOUNTING, AND AUDITING

19 TAC §109.23............................................................3422

### TEXAS BOARD OF ARCHITECTURAL EXAMINERS

REGISTERED INTERIOR DESIGNERS

22 TAC §5.183.............................................................3423

### TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

CONTROL OF AIR POLLUTION FROM VISIBLE EMISSIONS AND PARTICULATE MATTER

30 TAC §111.209..........................................................3425

### COMPTROLLER OF PUBLIC ACCOUNTS

STATEWIDE PROCUREMENT AND SUPPORT SERVICES

34 TAC §20.25.............................................................3429

34 TAC §20.81.............................................................3433

## WITHDRAWN RULES

### TEXAS HISTORICAL COMMISSION

HISTORIC SITES

13 TAC §16.3...............................................................3435

### TEXAS MEDICAL BOARD

MEDICAL RECORDS

22 TAC §165.7.............................................................3435

STANDING DELEGATION ORDERS

22 TAC §§193.5, 193.13, 193.17, 193.21 .........................3435

### TEXAS DEPARTMENT OF INSURANCE

PROPERTY AND CASUALTY INSURANCE

28 TAC §5.9502...........................................................3435

### TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

COAL COMBUSTION RESIDUALS WASTE MANAGEMENT

30 TAC §352.291..........................................................3435

30 TAC §352.1401........................................................3436

## ADOPTED RULES

### CREDIT UNION DEPARTMENT

CHARTERING, OPERATIONS, MERGERS, LIQUIDATIONS

7 TAC §91.1003............................................................3437

7 TAC §91.6001............................................................3437

7 TAC §91.6003............................................................3437

7 TAC §91.6004............................................................3438

7 TAC §91.6006............................................................3438

7 TAC §91.6010............................................................3438

7 TAC §91.6014............................................................3438

### TEXAS EDUCATION AGENCY

STATE ADOPTION AND DISTRIBUTION OF INSTRUCTIONAL MATERIALS

19 TAC §66.1403..........................................................3439

CP Ex-23-0003 of 0032

ASSESSMENT

19 TAC §101.1003................................................3439

STUDENT ATTENDANCE

19 TAC §129.1049................................................3440

**TEXAS COMMISSION ON ENVIRONMENTAL QUALITY**

PUBLIC NOTICE

30 TAC §39.651....................................................3441

GENERAL AIR QUALITY RULES

30 TAC §101.601..................................................3442

APPLICATIONS PROCESSING

30 TAC §281.19....................................................3445

WATER RIGHTS, PROCEDURAL

30 TAC §295.158..................................................3448

WATER RIGHTS, SUBSTANTIVE

30 TAC §297.1......................................................3456

30 TAC §§297.41 - 297.43 ...................................3457

UNDERGROUND INJECTION CONTROL

30 TAC §§331.2, 331.7, 331.9...............................3461

30 TAC §331.131..................................................3461

30 TAC §§331.262 - 331.267 ................................3461

UNDERGROUND INJECTION CONTROL

30 TAC §331.19....................................................3462

COAL COMBUSTION RESIDUALS WASTE MANAGEMENT

30 TAC §§352.1 - 352.6 .......................................3492

30 TAC §§352.101, 352.111, 352.121, 352.131, 352.141 .............3493

30 TAC §§352.201, 352.211, 352.221, 352.231, 352.241, 352.251, 352.261, 352.271, 352.281, 352.301, 352.311...............................3493

30 TAC §§352.401, 352.411, 352.421, 352.431, 352.441, 352.451, 352.461, 352.471, 352.481 ................................3494

30 TAC §§352.601, 352.611, 352.621, 352.631, 352.641 .............3494

30 TAC §§352.701, 352.711, 352.721, 352.731, 352.741 .............3495

30 TAC §§352.801, 352.811, 352.821, 352.831, 352.841, 352.851 ................................3495

30 TAC §§352.901, 352.902, 352.911, 352.931, 352.941, 352.951, 352.961, 352.971, 352.981, 352.991 ............................3496

30 TAC §352.1101, §352.1111 ..............................3497

30 TAC §§352.1200, 352.1201, 352.1211, 352.1221, 352.1231, 352.1241 ................................3497

30 TAC §§352.1301, 352.1311, 352.1321 .....................3498

30 TAC §352.1421, §352.1431................................3499

**COMPTROLLER OF PUBLIC ACCOUNTS**

TAX ADMINISTRATION

34 TAC §3.334.....................................................3499

PROPERTY TAX ADMINISTRATION

34 TAC §9.103.....................................................3518

34 TAC §9.103.....................................................3518

***RULE REVIEW***

**Proposed Rule Reviews**

Department of Information Resources..........................................3523

Texas Board of Physical Therapy Examiners ...............................3523

**Adopted Rule Reviews**

Department of Information Resources..........................................3523

Credit Union Department..............................................................3524

***IN ADDITION***

**Department of Aging and Disability Services**

Correction of Error.....................................................................3525

**Office of the Attorney General**

Texas Health and Safety Code and Texas Water Code Settlement Notice........................................................................................3525

**State Bar of Texas**

Committee on Disciplinary Rules and Referenda Proposed Rule Changes: Rule 13.05, Texas Rules of Disciplinary Procedure ......3525

**Office of Consumer Credit Commissioner**

Notice of Rate Ceilings..............................................................3528

**Court of Criminal Appeals**

Availability of Grant Funds ........................................................3528

**Texas Education Agency**

Correction of Error.....................................................................3529

Notice of Correction: Request for Applications (RFA) Concerning the 2020-2021 School Action Fund - Implementation Grant Program 3529

Notice of Correction: Request for Applications (RFA) Concerning the 2020-2021 School Action Fund - Planning Grant Program...........3529

**Texas Commission on Environmental Quality**

Agreed Orders............................................................................3529

Amended Notice of Application and Public Hearing for an Air Quality Standard Permit for a Concrete Batch Plant With Enhanced Controls: Proposed Air Quality Registration Number 159751......................3532

Amended Notice of Application and Public Hearing for an Air Quality Standard Permit for a Concrete Batch Plant With Enhanced Controls: Proposed Air Quality Registration Number 159968......................3533

Correction of Error.....................................................................3534

Notice of Opportunity to Comment on a Shutdown/Default Order of an Administrative Enforcement Action ...........................................3534

CP Ex-23-0004 of 0032

Notice of Opportunity to Comment on Agreed Orders of Administrative Enforcement Actions ...............................................................3535

Notice of Opportunity to Comment on Default Orders of Administrative Enforcement Actions ..............................................................3536

Notice of Opportunity to Comment on Settlement of Environmental Claims under the Texas Health and Safety Code...........................3536

Notice of Public Hearing on Assessment of Administrative Penalties and Requiring Certain Actions of SHRISHUBH, LLC Dba Super Food Mart: SOAH Docket No. 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; TCEQ Docket No. 2017-0898-PST-E ...........................................................................3537

Notice of Public Hearing on Assessment of Administrative Penalties and Requiring Certain Actions of Star Container Company Inc.: SOAH Docket No. 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; TCEQ Docket No. 2019-0679-IHW-E 3538

Notice of Public Hearing on Proposed Revisions to 30 TAC Chapter 111 and to the State Implementation Plan.....................................3538

Notice of Water Quality Application ............................................3539

Second Amended Notice of Hearing (to Change Hearing Date and Location) Lealco, Inc.: SOAH Docket No. 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; TCEQ Docket No. 2018-1759-MSW; Proposed Permit No. 2398 .......................3539

**Texas Ethics Commission**

List of Late Filers .........................................................................3540

**General Land Office**

Notice and Opportunity to Comment on the Coastal Management Program Section 309 Assessment and Strategies Draft Report...........3540

**Texas Department of Housing and Community Affairs**

Notice and Confirmation of Virtual Public Hearings on the Draft 2021 Low Income Home Energy Assistance Program State Plan ..........3541

**Texas State Library and Archives Commission**

Correction of Error........................................................................3542

**Panhandle Regional Planning Commission**

Legal Notice..................................................................................3542

**Texas Water Development Board**

Applications April 2020.................................................................3543

**Workforce Solutions for the Heart of Texas**

Request for Proposal (RFP #13200102) Operation and Management of the Heart of Texas Workforce Center System................................3543

CP Ex-23-0005 of 0032



# THE GOVERNOR

As required by Government Code, §2002.011(4), the *Texas Register* publishes executive orders issued by the Governor of Texas. Appointments and proclamations are also published. Appointments are published in chronological order. Additional information on documents submitted for publication by the Governor's Office can be obtained by calling (512) 463-1828.

Appointments

**Appointments for May 11, 2020**

Appointed to the Crime Victims' Institute Advisory Council, for a term to expire January 31, 2021, James M. Mosley of Borger, Texas (replacing Anahid E. "Ana" Estevez of Amarillo, whose term expired).

Appointed to the Crime Victims' Institute Advisory Council, for a term to expire January 31, 2022, Matthew L. "Matt" Ferrara, Ph.D. of Austin, Texas (Dr. Ferrara is being reappointed).

Appointed to the Crime Victims' Institute Advisory Council, for a term to expire January 31, 2022, Michael S. "Shawn" Kennington of Pittsburg, Texas (Mr. Kennington is being reappointed).

Appointed to the Crime Victims' Institute Advisory Council, for a term to expire January 31, 2022, Lindsay M. Kinzie of Fort Worth, Texas (replacing Jeffrey L. "Jeff" Oldham of Austin, whose term expired).

Appointed to the Crime Victims' Institute Advisory Council, for a term to expire January 31, 2022, Eugene P. "Gene" Pack of Houston, Texas (Mr. Pack is being reappointed).

Appointed to the Crime Victims' Institute Advisory Council, for a term to expire January 31, 2022, Jeffery D. "JD" Robertson of Wimberley, Texas (Major Robertson is being reappointed).

Appointed to the Crime Victims' Institute Advisory Council, for a term to expire January 31, 2022, Andrea Sparks of Austin, Texas (Ms. Sparks is being reappointed).

Appointed to the Crime Victims' Institute Advisory Council, for a term to expire January 31, 2022, Hector L. Villarreal of Alice, Texas (Mr. Villarreal is being reappointed).

Appointed to the Governing Board of the Texas Indigent Defense Commission, for a term to expire February 1, 2022, Valerie Covey of Georgetown, Texas (Ms. Covey is being reappointed).

Appointed to the Governing Board of the Texas Indigent Defense Commission, for a term to expire February 1, 2022, Richard A. Evans of Bandera, Texas (Mr. Evans is being reappointed).

Appointed to the Governing Board of the Texas Indigent Defense Commission, for a term to expire February 1, 2022, Mary K. "Missy" Medary of Corpus Christi, Texas (Ms. Medary is being reappointed).

Appointed as presiding officer of the Hidalgo County Regional Mobility Authority, for a term to expire February 1, 2022, Samuel D. "David" Deanda, Jr. of Mission, Texas (Mr. Deanda is being reappointed).

Appointed to the State Board for Educator Certification, for a term to expire February 1, 2025, Julia F. Moore of Pflugerville, Texas (replacing Laurie Kuper Bricker of Houston, whose term expired).

Appointed to the State Board for Educator Certification, for a term to expire February 1, 2025, Wanda H. "Jean" Streepey of Dallas, Texas (replacing Jill H. Druesedow of Haskell, whose term expired).

Greg Abbott, Governor

TRD-202001867



Proclamation 41-3732

**TO ALL TO WHOM THESE PRESENTS SHALL COME:**

WHEREAS, I, Greg Abbott, Governor of Texas, issued a disaster proclamation on March 13, 2020, certifying under Section 418.014 of the Texas Government Code that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all counties in the State of Texas; and

WHEREAS, on April 12, 2020, I issued a proclamation renewing the disaster declaration for all counties in Texas; and

WHEREAS, the Commissioner of the Texas Department of State Health Services (DSHS), Dr. John Hellerstedt, has determined that COVID-19 represents a public health disaster within the meaning of Chapter 81 of the Texas Health and Safety Code, and renewed that determination on April 17, 2020; and

WHEREAS, the Governor has issued executive orders and suspensions of Texas laws in response to COVID-19, aimed at protecting the health and safety of Texans and ensuring an effective response to this disaster; and

WHEREAS, Section 41.001(a)(2) of the Texas Election Code provides that a general or special election in this state shall be held on a uniform election date, and the next uniform election date is occurring on May 2, 2020; and

WHEREAS, on March 18, 2020, the Governor suspended Sections 41.0052(a) and (b) of the Texas Election Code and Section 49.103 of the Texas Water Code to the extent necessary to allow political subdivisions that would otherwise hold elections on May 2, 2020, to move their general and special elections for 2020 only to the next uniform election date, occurring on November 3, 2020; and

WHEREAS, on March 20, 2020, the Governor issued a proclamation postponing the runoff primary election date to July 14, 2020, in response to the COVID-19 disaster, and early voting by personal appearance for the runoff primary election begins on July 6, 2020, in accordance with Section 85.001(b) of the Texas Election Code; and

WHEREAS, Section 41.007(d) of the Texas Election Code provides that no other election may be held on the date of a primary election; and

WHEREAS, Section 41.008 of the Texas Election Code provides that an election held on a date not permitted is void; and

WHEREAS, Section 85.001(a) of the Texas Election Code provides that the period for early voting by personal appearance begins on the 17th day before election day and continues through the fourth day before election day; and

WHEREAS, Texas law provides that the Midland County Hospital District may hold an election on the question of whether to adopt, change the rate of, or abolish a program to sustain the district on a uniform

CP Ex-23-0007 of 0032

election date as authorized by Section 41.001(a) of the Texas Election Code; and

WHEREAS, the Midland County Hospital District ordered a special election on the question of whether to adopt a program to sustain the district, and such election was scheduled for May 2, 2020; and

WHEREAS, Section 41.0011 of the Texas Election Code provides that a special election may be held as an emergency election before the appropriate uniform election date if a political subdivision asks the Governor for permission to do so and the Governor determines that an emergency exists; and

WHEREAS, the Midland County Hospital District desires to order a special election as an emergency election on the question of whether to adopt a program to sustain the district pursuant to Section 41.0011 of the Texas Election Code because holding this election at a later date would result in dire consequences for the community, including threatening the district's ability to provide adequate health care to patients in response to the COVID-19 disaster; and

WHEREAS, the Midland County Hospital District has asked the Governor for permission to hold an election on the question of whether to adopt a program to sustain the district prior to November 3, 2020; and

WHEREAS, an emergency exists under Section 41.0011 of the Texas Election Code due to the circumstances presented by the COVID-19 disaster and because the Midland County Hospital District is not able to wait until November 3, 2020, to hold a special election to adopt a program to sustain the district; and

WHEREAS, pursuant to Section 418.016 of the Texas Government Code, the Governor has the express authority to suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business or the orders or rules of a state agency if strict compliance with the provisions, orders, or rules would in any way prevent, hinder, or delay necessary action in coping with a disaster.

NOW, THEREFORE, I, Greg Abbott, Governor of Texas, under the authority vested in me by the Constitution and laws of the State of Texas, do hereby suspend Sections 41.007(d) and 41.008 of the Texas Election Code to the extent necessary to allow the Midland County Hospital District to order its special election to occur on July 14, 2020, as an emergency election on the question of whether to adopt a program to sustain the district pursuant to Section 41.0011(b) of the Texas Election Code. I further suspend Section 85.001(a) of the Texas Election Code to the extent necessary to allow early voting by personal appearance for the special election to begin not earlier than Monday, July 6, 2020, and to run concurrently with the early voting period for the runoff primary election.

The authority ordering the election under Section 3.004 of the Texas Election Code is the authority authorized to make the decision to postpone its election in accordance with this proclamation.

Early voting by personal appearance shall begin on Monday, July 6, 2020, in accordance with Section 85.001(d) of the Texas Election Code so that it runs concurrently with the early voting period for the runoff primary election.

IN TESTIMONY WHEREOF, I have hereto signed my name and have officially caused the Seal of State to be affixed at my office in the City of Austin, Texas, this the 8th day of May, 2020.

Greg Abbott, Governor

TRD-202001872

♦          ♦          ♦

Proclamation 41-3733

**TO ALL TO WHOM THESE PRESENTS SHALL COME:**

WHEREAS, I, Greg Abbott, Governor of Texas, issued a disaster proclamation on March 13, 2020, certifying under Section 418.014 of the Texas Government Code that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all counties in the State of Texas; and

WHEREAS, on April 12, 2020, I issued a proclamation renewing the disaster declaration for all counties in Texas; and

WHEREAS, the Commissioner of the Texas Department of State Health Services (DSHS), Dr. John Hellerstedt, has determined that COVID-19 represents a public health disaster within the meaning of Chapter 81 of the Texas Health and Safety Code, and renewed that determination on April 17, 2020; and

WHEREAS, I have issued executive orders, proclamations, and suspensions of Texas laws in response to the COVID-19 disaster, aimed at protecting the health and safety of Texans and ensuring an effective response to this disaster; and

WHEREAS, I issued a proclamation on March 16, 2020, ordering a special election on July 14, 2020, to fill the vacancy in Texas State Senate District No. 14; and

WHEREAS, on March 20, 2020, I issued a proclamation postponing the runoff primary election date from May 26, 2020, to July 14, 2020; and

WHEREAS, I also issued a proclamation suspending Sections 41.0052(a) and (b) of the Texas Election Code and Section 49.103 of the Texas Water Code to the extent necessary to allow political subdivisions that would otherwise hold elections on May 2, 2020, to move their general and special elections for 2020 only to the next uniform election date, occurring on November 3, 2020; and

WHEREAS, I subsequently issued proclamations on April 2, April 6, April 8, and May 8, 2020, authorizing certain political subdivisions to call emergency special elections on July 14, 2020; and

WHEREAS, Texas law provides that eligible voters have a right to cast a vote in person; and

WHEREAS, as counties across Texas prepare for the upcoming elections on July 14, 2020, and establish procedures for eligible voters to exercise their right to vote in person, it is necessary that election officials implement health protocols to conduct elections safely and to protect election workers and voters; and

WHEREAS, in order to ensure that elections proceed efficiently and safely when Texans go to the polls to cast a vote in person during early voting or on election day, it is necessary to increase the number of days in which polling locations will be open during the early voting period, such that election officials can implement appropriate social distancing and safe hygiene practices; and

WHEREAS, Section 85.001(a) of the Texas Election Code provides that the period for early voting by personal appearance begins 17 days before election day; and

WHEREAS, Section 85.001(b) of the Texas Election Code provides that the period for early voting for a runoff primary election begins 10 days before election day; and

WHEREAS, in consultation with the Texas Secretary of State, it has become apparent that strict compliance with the statutory requirements relating to the duration of early voting contained in Sections 85.001(a) and 85.001(b) of the Texas Election Code would prevent, hinder, or delay necessary action in coping with the COVID-19 disaster; and

CP Ex-23-0008 of 0032

WHEREAS, pursuant to Section 418.016 of the Texas Government Code, the Governor has the express authority to suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business or the orders or rules of a state agency if strict compliance with the provisions, orders, or rules would in any way prevent, hinder, or delay necessary action in coping with a disaster.

NOW, THEREFORE, I, Greg Abbott, Governor of Texas, under the authority vested in me by the Constitution and laws of the State of Texas, do hereby suspend Sections 85.001(a) and 85.001(b) of the Texas Election Code to the extent necessary to require that, for any election ordered or authorized to occur on July 14, 2020, early voting by personal appearance shall begin on Monday, June 29, 2020, and shall continue through the fourth day before election day, excluding any legal state or federal holidays. I further amend the proclamations issued on April 2, April 6, April 8, and May 8, 2020, authorizing emergency special elections, and the proclamation issued on March 16, 2020, ordering a special election to fill the vacancy in Texas State Senate District No. 14, so as to require that for each of these elections to be held on July 14, 2020, early voting by personal appearance shall begin on Monday, June 29, 2020, in accordance with the above suspension.

The Secretary of State shall take notice of this proclamation and shall transmit a copy of this order immediately to every County Judge of this state and all appropriate writs will be issued and all proper proceedings will be followed to the end that said elections may be held and their results proclaimed in accordance with law.

IN TESTIMONY WHEREOF, I have hereto signed my name and have officially caused the Seal of State to be affixed at my office in the City of Austin, Texas, this the 11th day of May, 2020.

Greg Abbott, Governor

TRD-202001882



Proclamation 41-3734

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

WHEREAS, I, Greg Abbott, Governor of Texas, issued a disaster proclamation on March 13, 2020, certifying under Section 418.014 of the Texas Government Code that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all counties in the State of Texas; and

WHEREAS, the Commissioner of the Texas Department of State Health Services, Dr. John Hellerstedt, has determined that COVID-19 represents a public health disaster within the meaning of Chapter 81 of the Texas Health and Safety Code; and

WHEREAS, I have issued executive orders and suspensions of Texas laws in response to COVID-19, aimed at protecting the health and safety of Texans and ensuring an effective response to this disaster; and

WHEREAS, on April 12, 2020, I issued a proclamation renewing the disaster declaration for all Texas counties; and

WHEREAS, a state of disaster continues to exist in all counties due to COVID-19;

NOW, THEREFORE, in accordance with the authority vested in me by Section 418.014 of the Texas Government Code, I do hereby renew the disaster proclamation for all counties in Texas.

Pursuant to Section 418.017, I authorize the use of all available resources of state government and of political subdivisions that are reasonably necessary to cope with this disaster.

Pursuant to Section 418.016, any regulatory statute prescribing the procedures for conduct of state business or any order or rule of a state agency that would in any way prevent, hinder, or delay necessary action in coping with this disaster shall be suspended upon written approval of the Office of the Governor. However, to the extent that the enforcement of any state statute or administrative rule regarding contracting or procurement would impede any state agency's emergency response that is necessary to cope with this declared disaster, I hereby suspend such statutes and rules for the duration of this declared disaster for that limited purpose.

In accordance with the statutory requirements, copies of this proclamation shall be filed with the applicable authorities.

IN TESTIMONY WHEREOF, I have hereunto signed my name and have officially caused the Seal of State to be affixed at my office in the City of Austin, Texas, this the 12th day of May, 2020.

Greg Abbott, Governor

TRD-202001897



Proclamation 41-3735

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

WHEREAS, I, Greg Abbott, Governor of the State of Texas, issued a disaster proclamation on August 23, 2017, certifying that Hurricane Harvey posed a threat of imminent disaster for Aransas, Austin, Bee, Brazoria, Calhoun, Chambers, Colorado, DeWitt, Fayette, Fort Bend, Galveston, Goliad, Gonzales, Harris, Jackson, Jefferson, Jim Wells, Karnes, Kleberg, Lavaca, Liberty, Live Oak, Matagorda, Nueces, Refugio, San Patricio, Victoria, Waller, Wharton, and Wilson counties; and

WHEREAS, the disaster proclamation of August 23, 2017, was subsequently amended on August 26, August 27, August 28, and September 14 to add the following counties to the disaster proclamation: Angelina, Atascosa, Bastrop, Bexar, Brazos, Burleson, Caldwell, Cameron, Comal, Grimes, Guadalupe, Hardin, Jasper, Kerr, Lee, Leon, Madison, Milam, Montgomery, Newton, Orange, Polk, Sabine, San Augustine, San Jacinto, Trinity, Tyler, Walker, Washington, and Willacy; and

WHEREAS, on September 20, 2017, and in each subsequent month effective through today, I issued proclamations renewing the disaster declaration for all counties listed above; and

WHEREAS, due to the catastrophic damage caused by Hurricane Harvey, a state of disaster continues to exist in those same counties;

NOW, THEREFORE, in accordance with the authority vested in me by Section 418.014 of the Texas Government Code, I do hereby renew the disaster proclamation for the 60 counties listed above.

Pursuant to Section 418.017 of the code, I authorize the use of all available resources of state government and of political subdivisions that are reasonably necessary to cope with this disaster.

Pursuant to Section 418.016 of the code, any regulatory statute prescribing the procedures for conduct of state business or any order or rule of a state agency that would in any way prevent, hinder, or delay necessary action in coping with this disaster shall be suspended upon written approval of the Office of the Governor. However, to the extent that the enforcement of any state statute or administrative rule regarding contracting or procurement would impede any state agency's emergency response that is necessary to protect life or property threatened by this declared disaster, I hereby authorize the suspension of such statutes and rules for the duration of this declared disaster.

CP Ex-23-0009 of 0032

In accordance with the statutory requirements, copies of this proclamation shall be filed with the applicable authorities.

IN TESTIMONY WHEREOF, I have hereunto signed my name and have officially caused the Seal of State to be affixed at my office in the City of Austin, Texas, this the 12th day of May, 2020.

Greg Abbott, Governor

TRD-202001896

♦    ♦    ♦

CP Ex-23-0010 of 0032

# THE ATTORNEY GENERAL

The *Texas Register* publishes summaries of the following: Requests for Opinions, Opinions, and Open Records Decisions.

An index to the full text of these documents is available on the Attorney General's website at https://www.texas.attorneygeneral.gov/attorney-general-opinions. For information about pending requests for opinions, telephone (512) 463-2110.

An Attorney General Opinion is a written interpretation of existing law. The Attorney General writes opinions as part of his responsibility to act as legal counsel for the State of Texas. Opinions are written only at the request of certain state officials. The Texas Government Code indicates to whom the Attorney General may provide a legal opinion. He may not write legal opinions for private individuals or for any officials other than those specified by statute. (Listing of authorized requestors: https://www.texasattorneygeneral.gov/attorney-general-opinions.)

Requests for Opinions

**RQ-0353-KP**

**Requestor:**

Mr. Rakesh Pandey

Montgomery County Auditor

501 North Thompson, Suite 205

Conroe, Texas 77301

Re: Calculation of the minimum salary of a county court at law judge with twelve or more years of accrued service under section 25.0005(a) of the Government Code (RQ-0353-KP)

**Briefs requested by June 5, 2020**

*For further information, please access the website at www.texasattorneygeneral.gov or call the Opinion Committee at (512) 463-2110.*

TRD-202001876
Lesley French
General Counsel
Office of the Attorney General
Filed: May 12, 2020

♦        ♦        ♦

Opinions

**Opinion No. KP-0302**

The Honorable Larry Taylor

Chair, Committee on Education

Texas State Senate

Post Office Box 12068

Austin, Texas 78711-2068

Re: Matters related to the Texas Windstorm Insurance Association and its compliance with House Bill 1900 and Senate Bill 615 (RQ-0318-KP)

**S U M M A R Y**

Section 2210.453 of the Insurance Code requires the Association to maintain total available loss funding in an amount not less than the probable maximum loss for a catastrophe year with a probability of one in 100. Pursuant to House Bill 1900, which became effective June 10, 2019, any costs of the reinsurance or alternative financing mechanisms in excess of the probable maximum loss must be paid by assessments on the Association's members. To the extent the Association purchased reinsurance for the 2019 storm season prior to June 10, 2019, subsection 2210.453(d) would not apply to such purchases.

Section 2210.1052 of the Insurance Code requires the Association's Board to provide notice to member insurers if an assessment may be imposed due to an ultimate loss estimate for an occurrence as determined by the chief financial officer or chief actuary. If the first opportunity for the Board to provide the requisite notice to member insurers about an assessment is at a regularly-scheduled Board meeting, it is unlikely a court would require the Board to call an emergency meeting in addition to the regularly-scheduled meeting in order to provide the requisite notice.

A grant of authority to three or more persons as a public body confers the authority on a majority of the number of members fixed by statute. Vacancies on the Board do not impair the Board's ability to take action, so long as the Board satisfies the quorum requirement.

**Opinion No. KP-0303**

The Honorable Clint T. Griffin

Schleicher County Attorney

Post Office Box 506

Eldorado, Texas 76936

Re: Authority of a county sheriff to donate forfeiture funds under Code of Criminal Procedure article 59.06 to a nonprofit entity providing office space for mental health services, drug counseling services, and services for the victims of domestic abuse (RQ-0317-KP)

**S U M M A R Y**

Article 59.06, subdivision (d-2) of the Code of Criminal Procedure authorizes a county sheriff to donate a portion of forfeiture funds to an entity that assists in the provision of services specified in the article. Pursuant to article III, subsection 52(a) of the Constitution, a donation or other expenditure must satisfy a three-part test: (1) the predominant purpose of the expenditure is to serve a public purpose, (2) the expenditure includes sufficient controls to ensure that the public purpose is carried out, and (3) the public entity receives return benefit. A court would likely find that the sheriff of Schleicher County may donate civil forfeiture funds to a nonprofit entity providing office space to entities providing one or more of the services specified in article 59.06, subdivision (d-2) of the Code of Criminal Procedure provided the sheriff determines that the expenditure is statutorily authorized and comports

CP Ex-23-0011 of 0032

with the three-part test under article III, subsection 52(a) of the Texas Constitution.

**Opinion No. KP-0304**

The Honorable Matthew A. Mills

Hood County Attorney

1200 West Pearl Street

Granbury, Texas 76048

Re: Whether, when operating under a local disaster declaration, local governments may commandeer private property under Government Code section 418.108 (RQ-0342-KP)

**S U M M A R Y**

Section 418.108 of the Government Code authorizes the presiding officer of the governing body of a political subdivision to declare a local state of disaster and grants local authorities certain powers to respond to the disaster. Section 418.108 does not authorize a county judge, a mayor of a municipality, or any other local government official to commandeer private property to respond to a disaster.

**Opinion No. KP-0305**

The Honorable Briscoe Cain

Chair, House Select Committee on Driver's License Issuance & Renewal

Texas House of Representatives

Post Office Box 2910

Austin, Texas 78768-2910

Re: Extension of driver's license expiration dates due to COVID-19 and its effect on firearms purchases (RQ-0346-KP)

**S U M M A R Y**

In the context of the COVID-19 pandemic and the declared state of disaster in Texas, the Governor suspended provisions of the driver's license regulations regarding license expiration dates. A Texas driver's license that on its face lists an expiration date of March 13, 2020, or later is not expired under the Governor's suspension of laws and related DPS guidance until 60 days after the DPS provides further public notice that normal Driver's License operations have resumed.

Treating the driver's license as if it has no expiration date or adding a period of 60 days to the expiration date shown on the face of the driver's license are not advisable solutions for purposes of the ATF Form 4473 required in a transfer of firearms. The federal Bureau of Alcohol, Tobacco, Firearms, and Explosives regulates and enforces federal laws regarding such transfers, and any guidance provided by this office on the issue is not binding on the ATF. We therefore leave it to the ATF to determine the appropriateness of any entry on ATF Form 4473.

**Opinion No. KP-0306**

The Honorable Dan Flynn

Chair, House Committee on Defense & Veterans' Affairs

Texas House of Representatives

Post Office Box 2910

Austin, Texas 78768-2910

Re: Authority of a county judge to issue emergency orders regulating the business of pawnshops during a declared disaster (RQ-0347-KP)

**S U M M A R Y**

Section 371.005 of the Finance Code provides that the Legislature has exclusive authority regarding the operation of pawnshops. A local official lacks authority to rewrite state law that the Legislature has expressly removed from local control. A court would likely find that the portions of Dallas County's order purporting to regulate pawnshops by limiting the fees those businesses can charge and changing the length of time they must hold pledged goods are invalid and unenforceable.

After declaring a state of disaster in Texas due to COVID-19, the Governor issued Executive Order GA-21, which "supersedes any conflicting order issued by local officials in response to the COVID-19 disaster, but only to the extent that such a local order restricts essential services or reopened services allowed" under the executive order. Operating a pawnshop provides essential lending services. Thus, Executive Order GA-21 prohibits a political subdivision from issuing a conflicting local order that restricts the operation of pawnshops. Whether a local order may limit the number of customers inside the premises of a pawnshop is a fact question. However, to the extent a pawnshop can operate under DSHS guidelines and consistent CDC recommendations with more than one customer on the premises at a time, a local order that purports to limit the occupancy of the premises to only one customer at a time, without regard to the size of the premises, conflicts with Executive Order GA-21 and, therefore, is superseded.

**Opinion No. KP-0307**

The Honorable Mayes Middleton

Co-Chair, Joint Interim Committee to Study a Coastal Barrier System

Texas House of Representatives

Post Office Box 2910

Austin, Texas 78768-2910

Re: Procedures for conducting appraisal review board hearings during the COVID-19 disaster (RQ-0351-KP)

**S U M M A R Y**

Subsection 41.41(a) of the Tax Code entitles a property owner to protest the determination of the appraised value of the owner's property, in addition to other adverse determinations made by a chief appraiser. Subsection 45.45(n) of the Tax Code gives property owners a right to appear in person at a protest hearing. Subsection 41.45(o) of the Tax Code and title 34, subsection 9.805(d) of the Texas Administrative Code do not allow appraisal review boards to require protest hearings be conducted by videoconference in lieu of in-person hearings when requested by a property owner.

Subsection 41.461(a)(3) of the Tax Code requires a chief appraiser to deliver a copy of the protest hearing procedures to property owners initiating a protest. The appraisal district does not satisfy this requirement by only posting the protest procedures on the appraisal district website.

Subsection 41.12(a) of the Tax Code requires an appraisal review board, among other things, to approve the appraisal records by July 20. No later than the date it does so, the board must also deliver written notice to a property owner of any change in the records ordered by the board pursuant to subsection 41.11(a) that will result in an increase in the tax liability of the property owner. The board's failure to deliver notice to a property owner required by section 41.11 nullifies the change in the records to the extent the change is applicable to that property owner. However, the nullification is limited to that subsection and does not apply to all failures to give notice required by the Property Tax Code.

**Opinion No. KP-0308**

The Honorable Dade Phelan

CP Ex-23-0012 of 0032

Chair, Committee on State Affairs

Texas House of Representatives

Post Office Box 2910

Austin, Texas 78768-2910

Re: Whether a local governmental entity under an emergency declaration has the authority to prevent an owner of a second home from occupying that property or limiting occupancy of housing based on length of the occupancy's term (RQ-0352-KP)

**S U M M A R Y**

The Texas and United States Constitutions prohibit government action that unlawfully discriminates on the basis of residence. They also ensure citizens receive due process and that the government does not act arbitrarily. To the extent a local ordinance restricting access to or limiting occupancy of private property exceeds these boundaries, it is unconstitutional.

In addition, the Governor declared a state of disaster in Texas due to COVID-19 on March 13, 2020, and issued executive orders related to the provision of essential services. Executive Order GA-21 supersedes any conflicting order issued by local officials in response to the COVID-19 disaster to the extent that such a local order restricts essential services, such as obtaining residential housing. GA-21 therefore prohibits a local governmental entity, acting under the authority of its emergency powers, from issuing an order that limits occupancy of housing based on length of the occupancy's term.

*For further information, please access the website at www.texasattorneygeneral.gov or call the Opinion Committee at (512) 463-2110.*

TRD-202001875
Lesley French
General Counsel
Office of the Attorney General
Filed: May 12, 2020

♦　　　♦　　　♦

(a)    The commission adopts by reference 40 Code of Federal Regulations §257.107 (Publicly accessible Internet site requirements) as amended through the April 17, 2015, issue of the *Federal Register* (80 FR 21301), subject to the additions and modifications in this section.

(b)    The website required by subsection (a) of this section must be a publicly accessible website.

(c)    The owner or operator shall post on the publicly accessible website, upon submittal to or receipt from the executive director or the chief clerk for the active life of the coal combustion residuals unit through the completion of the post-closure care period:

(1)    a complete copy of the current issued effective registration;

(2)    a complete copy of all applications submitted under this chapter, including any revisions;

(3)    a copy of public notice the owner or operator is required to publish under this chapter;

(4)    a copy of a draft registration prepared by the executive director;

(5)    a copy of the compliance summary prepared by the executive director; and

(6)    a copy of any other document regarding and/or summarizing the executive director's review of or initial decision on an application submitted under this chapter.

(d)    The owner or operator must notify the United States Environmental Protection Agency and the executive director, in a manner prescribed by each agency, within 14 days of any changes to the URL for the publicly accessible website.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on May 8, 2020.

TRD-202001825
Robert Martinez
Director, Environmental Law Division
Texas Commission on Environmental Quality
Effective date: May 28, 2020
Proposal publication date: December 13, 2019
For further information, please call: (512) 239-6087

♦    ♦    ♦

## SUBCHAPTER L.    APPENDICES

### 30 TAC §352.1421, §352.1431

Statutory Authority

The new rules are adopted under Texas Water Code (TWC), §5.102, which provides the commission the power to perform any acts necessary and convenient to the exercise of its jurisdiction and powers as provided by the TWC and other laws; TWC, §5.103, which provides the commission with the authority to adopt any rules necessary to carry out its powers and duties under the TWC and other laws of this state; TWC, §5.105, which authorizes the commission to establish and approve all general policy of the commission by rule; Texas Health and Safety Code (THSC), Solid Waste Disposal Act, §361.017 and §361.024, which authorize the commission to regulate industrial

solid waste and municipal hazardous waste and to adopt rules consistent with the general intent and purposes of the THSC; and THSC, §361.090, which allows the commission to adopt rules to control the collection, handling, storage, processing, and disposal of industrial solid waste to protect the property of others, public property and rights-of-way, groundwater, and other rights requiring protection.

The adopted new rules implement THSC, §§361.017, 361.024, and 361.090.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on May 8, 2020.

TRD-202001826
Robert Martinez
Director, Environmental Law Division
Texas Commission on Environmental Quality
Effective date: May 28, 2020
Proposal publication date: December 13, 2019
For further information, please call: (512) 239-6087

♦    ♦    ♦

# TITLE 34.  PUBLIC FINANCE

# PART 1.    COMPTROLLER OF PUBLIC ACCOUNTS

## CHAPTER 3.    TAX ADMINISTRATION
## SUBCHAPTER O.    STATE AND LOCAL SALES AND USE TAXES

### 34 TAC §3.334

The Comptroller of Public Accounts adopts amendments to §3.334, concerning local sales and use taxes, with changes to the proposed text as published in the January 3, 2020, issue of the *Texas Register* (45 TexReg 98). The rule will be republished.

In the wake of *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018), the amendments provide that remote sellers that are required to collect Texas use tax under §3.286 of this title (relating to Seller's and Purchaser's Responsibilities) should collect local use tax based on the destination location. The amendments also implement the requirement that a seller located in Texas collects local use tax when the seller ships or delivers a taxable item into a local jurisdiction where those use taxes exceed the local sales tax where the sale is consummated.

The comptroller also implements House Bill 1525 and House Bill 2153, 86th Legislature, 2019. House Bill 1525 establishes local sales and use tax collection responsibilities on marketplace providers. House Bill 2153 establishes a single local use tax rate that remote sellers may elect to use.

The amendments also provide additional guidance on determining whether an order is received at a place of business of the seller, and clarify the rules for determining the consummation of sales.

Throughout the section, the comptroller makes non-substantive changes by adding or amending rule titles and cross-references.

CP Ex-23-0014 of 0032

The comptroller also reorganizes this section for clarity and readability.

The comptroller received requests to extend the comment period from the Round Rock Chamber of Commerce; the City of Coppell; the City of San Marcos; the City of Humble; the City of Frisco; the City of Irving; Jennifer May, on behalf of the City of Sugar Land; James Harris, on behalf of members of the Coalition for Appropriate Sales Tax Law Enactment ("CASTLE") (the cities of Coppell, Farmers Branch, Humble, Grand Prairie, Lancaster, San Marcos, Kilgore, and Lewisville); Robert Camareno, on behalf of the City of New Braunfels; Chuck Bailey; Texas State Senators Charles Schwertner, MD, Donna Campbell, MD, Nathan Johnson, Kirk Watson, Larry Taylor, and Brandon Creighton; and Texas State Representatives James Talarico and John H. Bucy, III.

The comptroller extended the 30-day public comment period another 60 days, for a total of 90 days.

The comptroller also received requests to hold a public hearing under Government Code, §2001.029(b)(2) (Public Comment), from Senators Schwertner, MD, Campbell, MD, Johnson, Watson, Taylor, and Creighton; Representatives Talarico and Bucy; and the cities of Sugar Land, San Marcos, Humble, New Braunfels, Round Rock, and Coppell. The comptroller held a public hearing on February 4, 2020. Additionally, the City of Coppell, the City of Round Rock, Ms. May and Mr. Camareno also requested a second public hearing, which the comptroller denied because all parties received additional time until April 3, 2020, to review and provide comments on the amendments.

The cities of Sugar Land and Grand Prairie inquired about additional time to comment because of the COVID-19 pandemic. John Kroll, HMWK, LLC; Stephen Sheets, on behalf of the City of Round Rock; Mr. Harris; and Jeff Moseley commented that the timing of the implementation of the rule will exacerbate the cities' fiscal and budgetary issues due to the current COVID-19 pandemic. The comptroller denied this request because interested parties had notice of these amendments prior to the pandemic, and the comptroller had already granted an extension to provide comments. Interested parties also had additional opportunities to provide comments during the public hearing and an interim hearing before the Texas House of Representatives, Committee on Ways and Means on February 5, 2020 (the Ways and Means hearing).

During the public comment period, the comptroller received comments in writing and orally.

The City of San Marcos commented that it did not have time to conduct a thorough review of the businesses that will be impacted by the proposed changes, and requested the comptroller postpone adopting the changes at least for two years, if not indefinitely. The comptroller denies this request.

The comptroller received support from multiple city mayors, local economic development corporations, and state legislators. Generally, the commenters supported the provisions concerning the sourcing of sales of Internet orders, which will ensure that cities receive their fair share of local sales and use tax revenues. The commenters stated that a large majority of Texas cities and rural communities are losing revenue they need to provide services to their taxpayers that make Internet purchases. Commenters also stated that the proposed rule as a whole reflects the legislature's intent in passing House Bill 1525.

The commenters were: Cathy Bennett, on behalf of the City of Ivanhoe; Steve Presley, on behalf of the City of Palestine; D. Dale Fowler, on behalf of the Victoria Economic Development Corporation; Scott Cain, on behalf of the City of Cleburne; Texas State Representative Travis Clardy; Texas State Representative Oscar Longoria; Texas State Representative Ken King; Polo Narvaez, on behalf of the City of Los Fresnos; Bob F. Brown and Keith Wright, on behalf of the City of Lufkin; Keith Patridge, on behalf of the McAllen Economic Development Corporation; Texas State Representative Keith Bell; Jerry Phillips and Frankie Davis, on behalf of the City of Kermit; Jose G. Solis, Rick Salinas, Tony Chavez, Albert Cavazos, Maggie Quilantan, and Avelardo Mireles, on behalf of the City of Lyford; Jeff Underwood, on behalf of the City of Alton; Steve Peña, on behalf of the City of Alton Development Corporation; Robert Salinas, on behalf of the City of Alamo; Texas State Senator Charles Perry; Texas State Senator Eddie Lucio, Jr.; Texas State Representative Armando "Mando" Martinez; Patrick McNulty, on behalf of the City of South Padre Island; Marie McDermott, on behalf of the Economic Development Corporation of Weslaco; Texas State Representative Sergio Muñoz, Jr.; Brenda Enriquez, on behalf of the Greater Mission Chamber of Commerce; David Suarez, on behalf of the City of Weslaco; Texas State Representative Trent Ashby; Roxanne M. Ray, on behalf of the South Padre Island Chamber of Commerce; Darla Lapeyre, on behalf of the South Padre Island Economic Development Corporation; Texas State Senator Robert L. Nichols; Texas State Senator Peter Flores; Texas State Senator Lois Kolkhorst; Texas State Representative Kyle Kacal; Texas State Senator Juan "Chuy" Hinojosa; Mario Lozoya and Graham Sevier-Shultz, on behalf of the Greater Brownsville Incentives Corporation; Texas State Representative Geanie Morrison; Texas State Representative Ernest J. Bailes, IV; Texas State Senator Dawn Buckingham; Texas State Representative Cody Harris; Richard Newton, on behalf of the City of Colleyville; Texas State Representative Ben Leman; Andrew Smith, on behalf of the City of Hillsboro; Brad Pingel, on behalf of the City of Pampa; Michael Dyson, on behalf of the City of Rollingwood; City Council for the City of Rowlett; Noe Ronnie Larralde, on behalf of the Edinburg Chamber of Commerce; Sergio Contreras, on behalf of the Rio Grande Valley Partnership; Susette McNeel, on behalf of GeoInvoice, Inc.; Eddie Treviño, Jr., on behalf of the Texas Border Coalition; Benjamin Gomez, on behalf of the City of San Benito; Texas State Representative Eddie Lucio, III; Texas State Representative R.D. "Bobby" Guerra; Daniel Silva, on behalf of the Mission Economic Development Corporation; Kenneth Jones, Jr., on behalf of the Lower Rio Grande Valley Development Council; Rose Benavidez, on behalf of the Starr County Industrial Foundation; Dalinda Guillen, on behalf of the Rio Grande City Economic Development Corporation; and Tina O'Jibway, on behalf of Texas State Senator Robert Nichols.

John Kennedy commented on behalf of the Texas Taxpayers and Research Association that the association has some members who support the amendment as proposed; however, it also has members for which the amendment creates additional confusion and compliance costs.

The comptroller amends the definition of "Comptroller's website" in subsection (a)(4) to provide the correct website address.

The comptroller amends the definition of "engaged in business" in subsection (a)(7) to conform the reference to §3.286 of this title.

The comptroller amends subsection (a)(9) to identify activities that are not included in the definition of the term "fulfill." Mr.

CP Ex-23-0015 of 0032

Sheets and Cindy Olson Bourland, on behalf of the City of Round Rock, commented that change to the definition is not a clarification because the words "fulfill" and "fulfillment" do not appear in Chapter 321 and that sales are taxed where they are "consummated," not "fulfilled." Mr. Sheets proposed to add a new sentence to the definition stating that "except for sales under section (b)(1)(C), where a sale is consummated does not depend on where a sale is fulfilled."

Ms. May commented that the definition of "fulfill" is clear for tangible personal property, but it is unclear how it applies to intangible items such as access to research on online platforms. She requested further clarification in the section for how services such as information services are fulfilled.

The comptroller declines to make the suggested changes. The definition gives effect to Tax Code, §321.203 (Consummation of Sale) and the comptroller will consider addressing consummation of certain services at a later date.

The proposed rule added a definition for "Internet order" in new subsection (a)(10) to distinguish between an order placed through the Internet as opposed to an order placed in person at a seller's location as contemplated in Tax Code, §321.203(c) and §323.203(c). The comptroller received comments regarding this definition. Commenters stated that the definition of "Internet order" will create confusion and requested that the comptroller's office make revisions to clearly define what constitutes an "Internet order."

During the Ways and Means hearing, Texas State Representative Erin Zwiener requested clarification regarding orders received over cellular phones. Mr. Kennedy made similar comments and requested clarification on the treatment of email orders. Ms. Olson Bourland and Bob Scott requested clarifications on Voice over Internet Protocol (VoIP) and whether that constitutes an Internet order.

Mr. Kennedy also requested that the comptroller define the term "order" to clarify when an order is received. Brian Pannell, on behalf of Dell Technologies, made similar comments and also requested clarification concerning purchase orders.

Mr. Sheets commented that the comptroller should define the word "Internet" as found in Tax Code, §151.00393 (Internet), which provides that the Internet is used to "communicate information." He commented that the concept of an "Internet order" does not appear in Chapter 321 of the Tax Code and that it is nothing more than one of many tools for communicating information, no different than the US Postal Service and telephone land lines. Mr. Kroll and Mr. Harris echoed these comments. Mr. Sheets proposed a revised Internet order definition.

Both, Mr. Camareno and Mr. Kroll, commented that the amendment is unclear whether an Internet order can cease to be an Internet order. Mr. Camareno commented that there are times when an Internet order involves human interaction to fulfill an order, and other times when it is automated. Additionally, Mr. Kroll; Craig Morgan, on behalf of the City of Round Rock; Mr. Camareno; Mr. Kennedy; Kyle Kasner; and Karen Hunt, on behalf of the City of Coppell, requested that the amendment be revised to adequately address business-to-business transactions through the Internet because those orders are fundamentally different from business-to-consumer transactions. Mr. Kroll stated that the definition also causes issues when businesses lease computers from a seller because under the property tax rules, the seller retains ownership of the leased computer.

David Edmonson, on behalf of TechNet, and Mr. Pannell commented that rather than choosing specific points in the sales process and giving them more weight than others (thus creating loopholes for sellers and purchasers to use to their advantage), an alternative approach might be the creation of a composite of selling activities test similar to the one used by the state of Illinois to help identify the local sales tax that is most appropriate.

The comptroller declines to make this revision because the creation of a composite of selling activities test is not within the comptroller's rulemaking authority. A composite of selling activities test would require a legislative change because it is not supported by Tax Code, Chapters 321 and 323.

Additionally, in response to these comments, the comptroller is deleting the proposed definition of "Internet order" and the provisions for consummation of sales for Internet orders.

The comptroller amends the definition of "itinerant vendor" in subsection (a)(10) to clarify that an itinerant vendor is a seller who does not have a place of business in the state as provided in Tax Code, §321.203(e)(1). The comptroller also removes the example of an itinerant vendor concerning a person who sells rugs because it is no longer necessary. The comptroller also clarifies that a salesperson operating out of a place of business is not an itinerant vendor. The comptroller deletes from the definition "office" or "other location that provides administrative support to the salesperson" because those do not meet the definition of a place of business of the seller in Tax Code, §321.002(a)(3)(A) (Definitions).

The comptroller adds a definition for "marketplace provider" in new subsection (a)(14) as defined in §3.286 of this title.

The comptroller adds a definition for "order placed in person" in new subsection (a)(15). Orders placed in person are those orders placed with the seller while the purchaser is physically present at a seller's place of business, regardless of how the seller subsequently enters the order. Subsequent paragraphs are renumbered.

Mr. Kroll proposed defining the term as "an order placed by a purchaser with the seller while physically present at the seller's place of business." The comptroller agrees to make the revision for clarity.

The comptroller amends the definition of "place of business of the seller - general definition" in renumbered subsection (a)(16). Tax Code, §321.002(a)(3)(A) defines "place of business of the retailer" as "an established outlet, office, or location operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items and includes any location at which three or more orders are received by the retailer during a calendar year." The reference to the retailer's "agent or employee" indicates that sales personnel must be at the site, and this requirement has been added to the definition.

In addition, the amended definition clarifies that the term does not include a computer server, an Internet protocol address, a domain name, a website, or a software application. Many sellers house their computer servers at a co-location facility or rent computer server space at a managed hosting site. But an ordinary person would not consider the physical locations of these computer servers to be places of business of the seller. Similarly, an ordinary person would not perceive an Internet protocol address, a domain name, or a website as an "established outlet, office, or location" so as to constitute a place of business. The comptroller reflects these changes throughout the section.

CP Ex-23-0016 of 0032

The comptroller also deletes the reference to call centers, showrooms, and clearance centers because those facilities are places of business of the seller only if sales personnel of the seller receive three or more orders during a calendar year at those facilities. The amendment deletes the former example regarding a home office at which items are sold through an online auction website because the example is addressed by new language regarding orders received through a shopping website. The comptroller also amends the definition to delete repetitive language. The comptroller deletes a reference to "administrative offices" because the comptroller determines that an administrative office does not meet the definition of a place of business of the seller under Tax Code, §321.002(a)(3)(A).

The comptroller also adds to the definition of "place of business of the seller - general definition" that an outlet, office, facility, or any similar location that contracts with a business to process certain orders or invoices is not a place of business of the seller if the comptroller determines that these certain locations are for the sole purpose of avoiding tax due or of rebating tax to the contracting location. This change is made pursuant to the definition of "place of business of the retailer" in Tax Code, §321.002(a)(3)(B).

Paul Voelker, on behalf of the City of Richardson; George Kelemen, on behalf of the Texas Retailers Association; and Mr. Harris expressed concerns with the definition of a place of business. Specifically, Mr. Harris stated that the definition is not consistent with the statute or the decision in *Combs v. City of Webster,* 311 S.W.3d 85 (Tex. App. Austin 2009, pet. denied). He also stated that it contradicts the statutory definition. Mr. Harris and Mr. Kelemen requested that the comptroller revise the definition to restate the statutory language. Mr. Voelker requested that no revisions be made to the current definition. Rudy Durham, on behalf of the City of Lewisville, commented that the place of business definition needs to be updated to keep up with changes in technology. The comptroller declines to make the requested revisions because the amended definition gives effect to the statutory language.

The comptroller adds a definition for "remote seller" in new subsection (a)(18) as defined in §3.286 of this title. Subsequent paragraphs are renumbered.

The comptroller amends the definition of "temporary place of business of the seller" in renumbered subsection (a)(22) to clarify that a temporary place of business of the seller includes a sale outside the walls of a distribution center, manufacturing plant, storage yard, warehouse, or similar facility of the seller in a parking lot or similar space sharing the same physical address as the facility. Sellers may hold sales to the public outside the walls of their facilities on a temporary basis. The comptroller clarifies that these sales constitute temporary places of business of the seller. The comptroller makes these changes throughout the section. Subsequent paragraphs are renumbered.

The comptroller deletes the definition of "traveling salesperson" in subsection (a)(21) because the comptroller will treat traveling salespersons as seller's agents or employees as referenced in Tax Code, §321.002(a)(3)(A). Subsequent paragraphs are renumbered.

The comptroller adds new subsection (b), determining the place of business of a seller. Subsection (b) revises and expands the provisions of former subsection (e) concerning place of business - special definitions.

Former subsection (e)(1) addressed administrative offices supporting traveling salespersons, and former subsection (e)(2) addressed distribution centers, manufacturing plants, and other facilities. In new subsection (b), the comptroller no longer includes administrative offices supporting a traveling salesperson, and distribution centers, manufacturing plants, storage yards, warehouses, or similar facilities operated by a seller at which salespersons are assigned to work in the determination of "place of business of the seller." A seller does not receive orders at administrative offices that solely serve as the base of operations for a salesperson, or that provide administrative support to a salesperson. Moreover, the mere fact that a salesperson is assigned to work from, or work at, a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller does not mean that a seller receives orders at these locations. These locations by themselves do not meet the definition of a place of business of the retailer under Tax Code, §321.002(a)(3)(A). The comptroller amends the section to reflect these changes throughout.

Brady Olsen, Tom Hart, and Andrew Fortune, on behalf of the City of Grand Prairie, and Mr. Voelker commented that their cities anticipate losses of sales tax revenues. Mr. Olsen, Mr. Hart, and Mr. Fortune commented the amendment will negatively impact their city's Local Government Code, Chapter 380 agreements (Chapter 380 agreements) due to removing traveling salesperson from the definition of a place of business.

Mr. Kasner commented that business-to-business warehouses and distribution centers often rely heavily on traveling salespersons who are based at those locations. Mr. Kasner requested that the comptroller define "sales office" and contrast it to an "administrative office" that supports traveling salespersons. Mr. Kroll made a similar request.

The comptroller declines to reinsert the omitted provisions because subsection (b) gives effect to Tax Code, §321.002(a)(3)(A) that requires administrative offices and sales offices to independently meet the statutory definition of a place of business. However, new paragraph (4), discussed below, will allow a transition period for these facilities until September 30, 2021.

In new paragraph (1)(A), the comptroller clarifies that locations must be operated by a seller for the purpose of receiving orders and receive three or more orders in a calendar year from persons other than employees, independent contractors, and natural persons affiliated with the seller to be considered a place of business of the seller in Texas. In new paragraph (3), the comptroller restates the provisions from former subsection (e) relating to purchasing offices with minor changes for ease of readability.

Mr. Kroll commented that the language "other than employees, independent contractors, and natural persons affiliated with the seller" contradicts the language in Senate Bill 1533, 83rd Legislature, 2013, as that statute did not impose a related persons test and that bill does not support the new language regarding purchasing offices in paragraph (3). Ms. May requested clarity related to a traveling salesperson working on a campus (group of business buildings that house sales persons, call centers, fulfillment warehouses, and administrative offices) but not in the same building as a place of business. She recommended changing the word "building" to "campus" to avoid confusion. The comptroller declines to make these suggested changes because the clarification gives effect to the statute's definition of a place of business.

CP Ex-23-0017 of 0032

The comptroller adds new paragraph (4) for orders received by sales personnel who are not at a place of business of the seller, and new paragraph (5) for orders not received by sales personnel. The comptroller makes these changes in response to commenters' requests for guidance on how to treat orders received by telephone, including VoIP and cellular phone, facsimile, and email.

In the past, orders were typically received at fixed locations, such as orders received in person at the seller's facility, orders received by mail order to the seller's facility, and orders received through landline telephone calls to the seller's facility. Some orders were received by traveling salespersons, and former paragraph (4) applied Tax Code, §321.203(d)(2) to these orders so that the orders were consummated "at the place of business from which the retailer's agent or employee who took the order operates," even though the order may have been actually received by the traveling salesperson at a different location. With the expansion of modern telecommunication techniques, it has become more commonplace for sales personnel who are not traveling salespersons to receive orders when they are not at the seller's place of business, such as orders received by cellular telephone and by email. Accordingly, new paragraph (4) expands the application of Tax Code, §321.203(d)(2) to these orders so that an order received by a salesperson who is not at a place of business of the seller in Texas will be treated as being received at the location from which the salesperson operates. This treatment will result in a more uniform application of the consummation statutes and will facilitate the ability of taxpayers and auditors to determine the location where an order is received.

Paragraph (4) clarifies that the order will be treated as being received at a place of business only if the location out of which the salesperson operates independently meets the requirement for being a place of business of the seller. In addition, to transition from the former rule to the current rule, the comptroller will temporarily expand the definition of "place of business of the seller" for these orders to include an outlet, office, or location operated by the seller that serves as a base of operations or that provides administrative support to the salesperson, until September 30, 2021.

New paragraph (5) addresses orders not received by sales personnel, such as orders received through a shopping website or shopping software application. The comptroller cannot apply the consummation principals of Tax Code, §321.203(d)(2) to these types of orders because that provision is limited to orders received by an "agent or employee."

Instead, these orders will be treated as being received at locations that are not places of business of the seller. This treatment is consistent with the concept that a "place of business" requires the presence of personnel to receive the order. Computer servers, Internet protocol addresses, and automated telephone ordering systems would not ordinarily be called "places of business" of the seller. The comptroller has concluded that the legislature could not have intended that the receipt of an order by an automated mechanical device would make the device an "established outlet, office or location operated by the retailer."

Also, this treatment of orders not received by sales personnel is required to promote uniformity and ease of administration for taxpayers and auditors. Website orders can be received at multiple physical addresses -- any locations that have Internet access. A website order is sent to an Internet protocol ("IP") address. An IP address is the address of the device receiving the order, such as a computer server. An IP address is not a physical address.

Websites may use dynamic IP addresses that are assigned by the network upon connection and that change over time. The public IP address of a website may simply be routing orders to different, private IP addresses. Load balancers may change the IP addresses that communicate with customers. Conversely, multiple web sites may be hosted at a single IP address.

The computer server receiving an order placed through a shopping website may belong to the seller or it may belong to a third party. The computer server may be situated on the seller's premises, it may be situated at a co-location facility operated by a third party, or it may be situated at a web hosting facility operated by a third party. The computer server may be one of multiple servers that serve the same website from different physical addresses as part of a cloud distribution network. The computer server may route the order to multiple other servers for load balancing purposes. Conversely, a single computer server may serve multiple websites. Also, the seller may or may not know the physical address of the server receiving the order. The best way to treat these orders consistently and coherently is to treat them uniformly as being received at locations that are not places of business of the seller.

Because the former rule did not explicitly address orders not received by sales personnel, the comptroller is applying paragraph (5) prospectively to orders received after September 30, 2021.

The comptroller adds new subsection (c) to incorporate and reorganize many of the provisions of former subsection (h) concerning consummation of a sale. It reorganizes the general consummation rules stated in former paragraph (3) and applies the general consummation rules to specific situations that were previously addressed in other paragraphs of former subsection (h).

Subsection (c), like former paragraph (3) that it replaces, does not differentiate based on the number of places of business of the seller in the state. Subsection (c) states that the consummation principles of the subsection apply to all sellers, regardless of whether they have no place of business, a single place of business, or multiple places of businesses in the state.

Mr. Sheets commented that the rule should include a special provision for sellers with a single place of business in Texas based on Tax Code, §321.203(b). The comment stated that "all taxable sales of the retailer are consummated at the one place of business."

Tax Code, §321.203(b) describes the consummation principles for a seller that has only one place of business in the state. But those principles are consistent with the treatment of other sellers and do not require special treatment in the rule.

Tax Code, §321.203 as a whole establishes a hierarchy among places of business involved in a transaction. If an order is fulfilled from a place of business of the seller in Texas, the sale is consummated at that location even if the order is received at another place of business in Texas (except for orders received in person). Conversely, an order is consummated at the place of business of the seller in Texas where it is received only if the order was not fulfilled from a place of business in Texas (except for orders received in person). Adopted subsection (c) reflects this hierarchy.

The statutory provision in Tax Code, §321.203(b), for a seller with a single place of business in Texas, is a recognition that the hierarchy is not required in that circumstance. The outcome will be the same regardless of whether the order is received, fulfilled, or received and fulfilled from that place of business, and regard-

CP Ex-23-0018 of 0032

less of whether the order is placed at that location in person - the sale will be consummated at that place of business.

Tax Code, §321.203(b) cannot be interpreted to mean that all sales are consummated at the seller's single place of business in Texas, even if that place of business did not receive the order, did not fulfill the order, and did not serve as the location where the order was delivered to the customer. To consummate a sale and to impose local sales tax in a jurisdiction that had nothing to do with a transaction would be an absurd and possibly unconstitutional reading of the statute.

Mr. Harris commented that the proposed subsection (c)(1) was inconsistent with Chapter 321 because Chapter 321 explicitly ties consummation of sales to the place of business where orders are "received," not where they are "placed." He commented that to the extent that the amendment relies on placement to determine where a sale is consummated, the section contradicts Chapter 321. He requests that any reference to placement of orders, other than orders placed in person or orders placed with a retailer's supplier, should be deleted.

The comptroller agrees that other than orders placed in person, the consummation of sales is tied to the place of business where the order is received, if not fulfilled by a place of business of the seller in Texas. The comptroller makes revisions to clarify and clear up any confusion by the use of the term "placed."

New paragraph (1) provides the consummation of sale rules for orders received at a place of business of the seller in Texas.

New subparagraph (A) provides the consummation of sale rules for orders placed in person, and includes a reference to orders placed at a temporary place of business of the seller, in lieu of the provision found in former subparagraph (h)(6)(C) regarding temporary places of business. Subparagraph (B) provides the consummation of sale rules for orders not placed in person.

New paragraph (2) provides the consummation of sale rules for orders not received at a place of business of the seller in Texas. New subparagraph (A) provides the consummation rule for an order fulfilled at a place of the seller in Texas. New subparagraph (B) provides the consummation rule for an order not fulfilled from a place of business of the seller in Texas.

In light of the *Wayfair* decision, the comptroller provides in clause (ii) that a remote seller that is required to collect Texas use tax under §3.286(b)(2) must also collect local use tax based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession unless the remote seller elects to collect the single local use tax rate enacted in House Bill 2153. *See* Tax Code, §321.205(c) (Use Tax: Municipality in which Use Occurs) and §323.205(c) (Use Tax: County in which Use Occurs).

New paragraph (3) restates the provision in former subsection (h)(3)(F) concerning an exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5) (Consummation of Sale).

Jeffrey Moore, Brown & Hofmeister L.L.P, commented that paragraph (3) runs afoul of Article I, Section 16 of the Constitution of the State of Texas (Bills of Attainder; Ex Post Facto or Retroactive Laws; Impairing Obligation of Contracts). Mr. Moore suggests that the comptroller revise the effective date of the provision until the end of the existing term of the agreement.

The comptroller declines to make this revision because paragraph (3) merely restates the language in former subsection (h)(3)(F), which was adopted in 2014. This subsection implements Senate Bill 997, 83rd Legislature, 2013 (codified at Tax Code, §321.203(c-4) and (c-5)). Moreover, Tax Code, §321.203(c-5) explicitly provides an expiration date of September 1, 2024.

The comptroller deletes former subsection (h)(4) concerning traveling salespersons. The place of business of a traveling salesperson is determined under subsection (b)(4) - orders received by sales personnel who are not at a place of business of the seller when they receive the order.

The comptroller adds new paragraph (4) and includes the language in former subsection (h)(1) concerning local sales taxes due and local use taxes due without any changes. The comptroller restates the language in former subsection (h)(2) concerning multiple special purpose district taxes and multiple transit authority taxes in paragraph (5) without changes to the language.

The comptroller deletes the language found in former subsection (h)(5) concerning drop shipments because these provisions are redundant and the general consummation rules cover these types of orders.

The comptroller adds new paragraph (6) to add the language found in former subsection (h)(6) concerning itinerant vendors and vending machines without changes to the language.

The proposed rule contained a special provision in subsection (c)(6) for Internet orders. The adopted rule deletes this provision. However, the comments regarding the proposed rule for Internet orders may have some relevance to subsection (b)(5), discussed above, regarding orders not received by sales personnel. Accordingly, the comptroller has considered these comments and summarizes them below.

The comptroller received comments concerning Internet orders from Mr. Camareno; the Board of Directors for the Coppell Chamber of Commerce; Mr. Edmonson; Steven Taplits, on behalf of Bed Bath & Beyond; Mr. Voelker; Mr. Kasner; Mr. Olsen; Mr. Hart; Mr. Morgan; Mr. Sheets; Ms. Olson Bourland; Jerry Stratton; Jenna Armstrong, on behalf of the Lake Houston Area Chamber of Commerce; Jack Roberts; G. Brint Ryan, on behalf of Ryan LLC; Doug Duffie, Doug Duffie, LLC; Adina Christian, on behalf of her client; Mr. Kelemen; Mr. Moseley; Ms. May; Jane Hughson, on behalf of the City of San Marcos; David Howard; Linda Howard; Mr. Moore; Mr. Harris; Mr. Kroll; Mr. Pannell; Dan Butcher, Clark Hill Strasburger; Ms. Hunt; Jason Ball, on behalf of the Round Rock Chamber of Commerce; Michael Rollins, on behalf of the Austin Chamber of Commerce; Chris Hillman, on behalf of the City of Irving; Gary Thomas, on behalf of the Dallas Area Rapid Transit; the Honorable US Representative John Carter, on behalf of Round Rock and many other communities; Mr. Durham; Joshua Selleck, on behalf of the City of Kilgore; Kristi Carlson, on behalf of Best Buy Co., Inc.; John Torigian, on behalf of HD Supply; TJ Gilmore and David Erb, on behalf of the City of Lewisville; Michael Land, on behalf of the City of Coppell; Michael Meek, on behalf of the Greater New Braunfels Chamber of Commerce; Mr. Kennedy; John Christian, on behalf of Ryan LLC; Mr. Harris; Heather Hurlbert, on behalf of the City of San Marcos; Mr. Scott; Jared Werner, on behalf of the City of New Braunfels; Mr. Fortune; and Kenneth Welch.

Mr. Kelemen; Ms. Hunt; Mr. Land; the Board of Directors for the Coppell Chamber of Commerce; Mr. Camareno; Representa-

CP Ex-23-0019 of 0032

tive Zwiener; Representative Talarico; Mr. Morgan; Mr. Sheets; Ms. Olson Bourland; Mr. Voelker; Mr. Durham; Mr. Gilmore; Mr. Ball; Mr. Olsen; Mr. Hart; Mr. Fortune; Ms. Hurlbert; Ms. Hughson; Ms. Armstrong; Mr. Hillman; Mr. Ryan; Ms. Christian; Mr. Duffie; Mr. Howard; Ms. Howard; US Representative Carter; Mr. Scott; Ms. Carlson; Mr. Torigian; and Mr. Kasner stated that the proposed provision regarding Internet orders will have a negative impact on city sales and use tax revenues which will force many of the cities to increase property taxes, reduce core services, and curtail economic development. Mr. Sheets, Mr. Fortune, Mr. Olsen, Mr. Hart, Mr. Morgan, Ms. Hunt, Mr. Harris, and Mr. Durham commented that the amendment will cause a downgrade to city bond ratings.

Ms. Hurlbert stated that the proposed provisions related to Internet orders will narrow what qualifies for rebates under Chapter 380 agreements. She is also concerned about the revenue loss from businesses that do not have Chapter 380 agreements that will be grandfathered under the amendment.

At the Ways and Means hearing, Ms. Hunt expressed concern that under the comptroller's definition many businesses in the City of Coppell will no longer be considered places of business under the amended provisions.

Mr. Selleck commented that the City of Kilgore has a large number of business-to-business transactions that are sourced to the city; but will, in the future, automate their ordering systems. He is concerned that the city will lose those revenues.

Mr. Fortune, Mr. Olsen, and Mr. Hart commented that the proposed provisions related to Internet orders will impact business-to-business transactions. Mr. Gilmore commented that the amendment will redistribute sales tax from less prosperous communities to their more prosperous neighbors. Mr. Voelker commented that the City of Richardson is concerned about losing sales tax because companies have sourced all of their sales to the city as it is where their employee base, sales force, and call center staff are located, and it is where their product orders are received and processed.

Representative Talarico, Mr. Morgan, Mr. Sheets, Ms. Hurlbert, Mr. Gilmore, Mr. Durham, Mr. Meek, the Board of Directors for the Coppell Chamber of Commerce, Mr. Ball, Ms. Armstrong, Mr. Rollins, Mr. Moseley, US Representative Carter, Ms. Carlson, Ms. Olson Bourland, Mr. Howard, Ms. Howard, Mr. Taplits, Mr. Torigian, Mr. Harris, Mr. Scott, and Mr. Camareno made comments on the impact that the proposed provisions on Internet orders will have on Chapter 380 agreements.

Commenters believe the proposed grandfather provisions violate the Constitution of the State of Texas because they impair existing contracts. Specifically, Mr. Moore commented that the proposed subparagraph (F) runs afoul of Article I, Section 16 of the Constitution of the State of Texas. Texas State Representative Jim Murphy and Ms. Olson Bourland made similar comments.

Mr. Moore suggests that the comptroller revise the provision to grandfather existing agreements entered into before September 1, 2019, to the end of their existing term. Mr. Roberts, Mr. Bailey, Mr. Taplits, Ms. Carlson, Mr. Durham, Mr. Kelemen, Mr. Butcher, Mr. Torigian and Mr. Rollins made a similar request. Mr. Roberts, Mr. Bailey, Mr. Duffie, Mr. Camareno, Mr. Scott, Mr. Taplits, Mr. Torigian, and Mr. Butcher also support extending the grandfather clause from a range of five to 20 years.

Mr. Kroll, Mr. Scott, Ms. Hurlbert, and Representative Murphy commented that cities without Chapter 380 agreements will have to source sales from Internet orders immediately and feel the impact. However, cities with Chapter 380 agreements will benefit because of the delayed implementation.

Texas State Representative Drew Springer commented that rural Texas is specifically hit hard because the cities are losing local tax revenue, which are hit harder as more cities execute Chapter 380 agreements. He further commented that the definition of a place of business as it relates to three or more orders is too broad, which can cause gamesmanship in the context of 380 agreements. Mr. Presley also does not think it is appropriate that cities need to support businesses in other cities.

Representative Springer also commented that Chapter 380 agreements were established long before the proliferation of Internet sales and the *Wayfair* decision and since these changes, he thinks it necessary to address Internet orders with the amendment.

In response to the comments, the comptroller is delaying the implementation of subsection (b)(5), regarding orders not received by sales personnel until October 1, 2021, giving interested parties an opportunity to seek a legislative change.

Additionally, Representative Springer commented that the lack of a detailed list of all Chapter 380 agreements kept in a central location creates a challenge for obtaining information on the agreements because a lot of agreements are very protected.

Commenters requested data and an analysis to determine the impact the amendment will have on their communities, and information on Chapter 380 agreements. The commenters were: Texas State Representative Sheryl Cole, Representative Zweiner, Mr. Fortune, Mr. Olsen, Mr. Hart, Ms. May, Mr. Land, Ms. Hunt, Mr. Voelker, Mr. Scott, and Mr. Hillman. Mr. Fortune asked that the House Ways and Means committee request additional analysis on the amendment's provisions.

Mr. Voelker and Mr. Scott requested that the comptroller gather information across the state regarding Chapter 380 and Chapter 381 agreements to fully understand how the agreements are being used. Mr. Voelker also requested that the comptroller perform an impact analysis to determine how the changes will affect local sales tax collections and existing businesses. Mr. Scott made similar requests.

Mr. Ryan commented that he does not believe the amendment complies with Texas Government Code, §2001.024 (Content of Notice), which requires specific content in the notice of a proposed rule, relating to the fiscal impact of such amendment. Mr. Ryan believes that a fiscal note detailing the fiscal implication for small business in reprogramming software, the shifting of local tax among jurisdictions, the upending of pre-existing Chapter 380 or 381 agreements, and the economic cost to the public is required. Mr. Christian and Mr. Harris agreed. Mr. Harris, additionally, stated that the comptroller did not give adequate notice when reversing a policy as required under federal case law. Mr. Morgan commented that the fiscal impact statement contradicts the known impact to the City of Round Rock. Mr. Sheets and Ms. Olson Bourland made similar comments. Ms. Hunt made similar comments relating to the City of Coppell.

Mr. Morgan; Ms. Hunt; Mr. Land; Mr. Sheets; Representative Talarico; Representative Zwiener; US Representative Carter; Mr. Voelker; Mr. Morgan; the Board of Directors for the Coppell Chamber of Commerce; Mr. Christian; Mr. Ryan; Ms. Christian;

CP Ex-23-0020 of 0032

Mr. Scott; Mr. Camareno; Mr. Gilmore; Mr. Erb; Mr. Meek; the Board of Directors for the Round Rock Chamber of Commerce; Mr. Kasner; Mr. Torigian; Mr. Kroll; Mr. Moore; and Mr. Harris requested that the comptroller solely implement the provisions in House Bills 1525 and 2153 and the *Wayfair* decision. Mr. Kroll and Mr. Harris provided draft amendments to accomplish the objective.

Ms. Hunt requested that the comptroller withdraw the amendment as proposed and republish only the language required to implement House Bill 1525 and House Bill 2153 based on the staggering effects of the COVID-19 pandemic on public health and the economy. Ms. Olson Bourland and the Board of Directors for the Coppell Chamber of Commerce had similar comments.

Mr. Butcher, Mr. Ball, Ms. Armstrong, US Representative Carter, Ms. Christian, Mr. Harris, Mr. Erb, Mr. Kroll, Mr. Camareno, Ms. Olson Bourland, Mr. Durham, Mr. Kelemen, Ms. Carlson, Mr. Harris, Mr. Sheets, and Mr. Pannell stated that the amendment is improper because it goes beyond the scope of the *Wayfair* decision, House Bill 1525, and House Bill 2153, and beyond the comptroller's authority.

Ms. Hunt, Mr. Land, the Board of Directors for the Coppell Chamber of Commerce, Mr. Sheets, Representative Talarico, Mr. Gilmore, Mr. Erb, Representative Zwiener, Representative Murphy, Mr. Meek, Mr. Camareno, Mr. Pannell, Mr. Taplits, Mr. Harris, Mr. Hillman, Mr. Ball, and Mr. Selleck further requested that the comptroller leave the remaining issues for the legislature to decide in future sessions. Ms. Hunt and Mr. Land asked that the Ways and Means Committee request that the comptroller only implement House Bills 1525 and 2153.

Mr. Ryan, Mr. Christian, Mr. Harris, and Mr. Torigian opined that the legislature has accepted the comptroller's long-standing administration of local sales taxes without regard to the technology used by the customer to submit an order and that the comptroller cannot make changes without a statutory change. Mr. Harris commented that in *Combs v. City of Webster,* the Court stated that "whether {a} result involves 'fair' tax policy is a question for the legislature."

Mr. Presley commented that the way the comptroller has proposed changes has given the legislature adequate time to address the issue. Representative Leman commented that it is a part of the comptroller's function to provide clarifications when needed in a timely manner so that we can have a successful economy.

The comptroller declines to make revisions based on these comments. The comptroller has broad rulemaking authority under Tax Code, §§111.002 (Comptroller's Rules; Compliance; Forfeiture); 321.306 (Comptroller's Rules); and 323.306 (Comptroller's Rules). There is ambiguity in the consummation rule as evidenced by the questions that the comptroller received. There are situations in which the same fact pattern results in sourcing by companies in different manners. The comptroller's changes provide clear guidance to address these situations. The comptroller conducted a statewide fiscal impact analysis as required under the Administrative Procedures Act. The comptroller declines to only implement House Bills 1525 and 2153 and the *Wayfair* decision. The comptroller delays the implementation of subsection (b)(5), regarding orders not received by sales personnel, until October 1, 2021, giving interested parties time to seek a legislative change.

Mr. Kelemen, Mr. Morgan, Mr. Sheets, Ms. Olson Bourland, Mr. Ryan, Mr. Christian, Mr. Harris, Mr. Camareno, Mr. Pannell, Ms. Carlson, and Mr. Kroll stated that the amendment conflicts with the statute or is not supported by law. Also, Mr. Morgan, Mr. Sheets, and Ms. Olson Bourland commented that the statute and the legislative intent require origin-based sourcing. Mr. Morgan commented that the legislature has always concluded that origin-based sourcing is the most effective method to allocate resources.

Mr. Ryan, Mr. Christian, Mr. Harris, Mr. Kroll, Mr. Camareno, and Mr. Pannell commented that Chapter 321 makes no distinction based on the technology used by the customer to communicate an order except when made in person.

Mr. Harris commented that concluding that Internet orders are not received anywhere is at odds with the comptroller's long-standing position that Internet orders are received at a location in Texas.

He commented that treating Internet orders for taxable items differently from non-Internet orders violates Tax Code, §321.002(a)(3) and §321.203. He commented that in the *City of Webster,* the comptroller stated that Internet orders can be received at a place of business. He further stated that Chapter 321 already provides the rules for Internet orders. Mr. Sheets and Ms. Olson Bourland made similar remarks.

Ms. Olson Bourland stated numerous reasons that she believes the amendment is contrary to law, including that the amendment is unconstitutional and contradicts comptroller's guidelines and letter rulings. She also commented that the comptroller is judicially estopped from asserting that pertinent portions of the Tax Code are ambiguous.

She commented that the term "fulfillment" does not appear in the statute, but instead contains the term "consummate," which means offer, acceptance, and payment of an item. Mr. Sheets proposed to revise the rule to provide that Internet orders are treated the same as orders submitted and received by other means of communication. He also proposed that when making orders through the Internet or by any other means of communication, the sale is consummated where the order is received, regardless of where the order is fulfilled. Mr. Kelemen made a similar request for revision.

In response to these comments, the comptroller deleted the proposed language regarding Internet orders.

Representative Talarico, Representative Zwiener, Mr. Sheets, Mr. Morgan, Ms. Olson Bourland, Mr. Ryan, and Mr. Ball stated that origin-based sales tax has been applied across the board to all transactions. Ms. Olson Bourland further stated that the amendment completely upends the framework by making Internet orders destination-sourced for purposes of local sales tax.

Mr. Ryan commented that local taxes default to the place of delivery to the customer only when there is no place of business of the seller to which taxes should be allocated.

Mr. Sheets commented that Tax Code, §321.203(b) states that if a retailer has only one place of business, all of a retailer's sales of taxable items are consummated at that place of business, except as provided in subsection (e). Mr. Sheets proposed language to that effect. Mr. Sheets commented that if the comptroller applies the Internet order rule to a seller with a single place of business in the state, the amendment is illegal. Ms. Carlson and Mr. Butcher had similar requests.

CP Ex-23-0021 of 0032

Representative Talarico commented that sales tax is based on the business, not on the consumer, and thus, it should apply to purchases over the phone or online. Mr. Stratton commented that he supports an origin-based sales tax system because it is "simpler to calculate, harder to pass the buck on, and more protective of our privacy." However, Mr. Presley commented that all transactions other than the customer showing up at the business should be based on destination.

The comptroller declines to make revisions based on these comments. For the reasons previously stated, the comptroller is deleting the provisions regarding Internet orders, and is adopting provisions regarding orders placed in person, and those not placed in person.

Mr. Kelemen, Mr. Kennedy, Mr. Kroll, Mr. Pannell, Mr. Land, Ms. Hurlbert, Mr. Edmonson, Mr. Ryan, Ms. Christian, Mr. Duffie, Mr. Harris, Ms. Olson Bourland, the Board of Directors for the Coppell Chamber of Commerce, and the Round Rock Chamber of Commerce commented that the proposed provision for Internet orders will place additional administrative compliance burdens on sellers which will force them to update their software within a short timeframe.

Mr. Pannell commented that the amendment will create an undue burden on Texas retailers as they will be required to calculate and collect tax based on the method of communication through which their customers choose to submit orders. Mr. Edmonson, Mr. Kroll, Mr. Land, Mr. Torigian, Mr. Ryan, Ms. Christian, Mr. Duffie, Mr. Harris, and the Board of Directors for the Coppell Chamber of Commerce made similar comments.

The comptroller declines to make revisions based on these comments because taxpayers already must keep records of sales, and such a burden is inherent in the consummation statutes (like the burden of identifying a particular place of business that receives an order when a business has multiple places of business). Taxpayers will also have time to update their systems under the extended implementation date.

Mr. Ryan, Mr. Christian, Ms. Olson Bourland, Mr. Butcher, Mr. Harris, and Mr. Kroll commented that the proposed provisions regarding Internet orders violate the Internet Tax Freedom Act because they discriminate against the Internet.

The provisions do not impose a tax on or discriminate against the Internet, and therefore, do not violate the Internet Tax Freedom Act.

Mr. Ryan commented that sellers are at risk of class action lawsuits for failing to notify their customers that they may pay a higher amount of tax depending on the method the customer uses to place the order. Mr. Ryan adds that sellers are also at risk if they are unable to distinguish between Internet orders and other orders when calculating local taxes.

Mr. Kelemen; Mr. Hillman; Mr. Olsen; Mr. Land; Ms. Hurlbert; Mr. Camareno; Mr. Voelker; Ms. May; Mr. Scott; Mr. Kennedy; Ms. Olson Bourland; Mr. Durham; Mr. Harris; and Teresa Wiley, on behalf of Sysco, Inc., requested that the comptroller delay the implementation date to provide additional time for entities to comply with the provisions on Internet orders and traveling salespersons. In response to these comments, the comptroller has deleted the proposed provision regarding Internet orders, and delayed the implementation of subsections (b)(4) and (b)(5) regarding orders received by sales personnel when they are not at a place of business of the seller and orders not received by sales personnel to October 1, 2021.

The comptroller adds new subsection (d) to include the provisions in former subsection (i), relating to use tax. The comptroller adds new paragraph (1), which includes the language in former subsection (i)(1) concerning general local use tax rules with non-substantive changes for ease of readability.

The comptroller adds new paragraph (2) to include the provisions in former subsection (i)(2) concerning general use tax rules applied to specific situations with changes.

In light of the *Wayfair* decision, the comptroller gives effect to the Tax Code's requirement that sellers engaged in business in the state collect local use tax for sales consummated in Texas and for sales consummated outside Texas based on the local taxing jurisdictions in which a taxable item is first used, stored, or consumed, regardless of the specific local jurisdiction in which a seller is engaged in business. *See* Tax Code, §§321.205, 322.105 (Use Tax: Where Use Occurs), and 323.205.

When a sale is consummated in Texas, a seller is engaged in business in this state through the presence of property or employees in the state. *See* Tax Code, §§151.107 (Retailer Engaged in Business in this State), 321.203, and 323.203. Therefore, the language that a seller be engaged in business in a local jurisdiction for sales consummated in Texas is superfluous. Moreover, an engaged in business standard for local use tax does not give effect to the Tax Code's requirement that a seller collect local use tax that is due and creates an opportunity for sellers to avoid collecting local use tax due. *See* Tax Code §§151.103(Collection by Retailer; Purchaser's Receipt), 321.003 (Other Portions of Tax Applicable), 321.205, 322.108 (Certain Provisions of Municipal Sales and Use Tax Applicable), 323.003(Other Portions of Tax Applicable), and 323.205. Therefore, the comptroller deletes the "engaged in business" requirement for local use tax throughout the section.

In new paragraph (2), the comptroller implements the *Wayfair* decision by clarifying that the seller is responsible for collecting the local use tax due on the sale based upon the location in this state to which the order is shipped or delivered or at which the purchaser of the item takes possession.

In new subparagraphs (B) and (C), the comptroller also explicitly states that the location of the seller in Texas does not affect the determination of whether the seller is required to collect additional local use tax due. In new clauses (i) and (ii), the comptroller provides two examples to illustrate when a seller is required to collect additional local use taxes.

The comptroller adds new subsection (e) to include the provisions in former subsection (b), relating to the effects of other law, with minor non-substantive changes to the provisions as they appeared in former subsection (b).

The comptroller adds new subsection (f), to include the provisions of former subsection (c), relating to tax rates without changing the provisions as they appeared in former subsection (c).

The comptroller adds new subsection (g) to include the provisions of former subsection (d), relating to jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements, with non-substantive changes made to the language on combined areas for ease of readability.

The comptroller adds new subsection (h) to include the provisions in former subsection (f) concerning places of business and job sites crossed by local taxing jurisdiction boundaries with a

CP Ex-23-0022 of 0032

change to the title of the subsection to read places of business of the seller. No other changes were made to those provisions.

The comptroller adds new subsection (i). Throughout new subsection (i), the comptroller implements the *Wayfair* decision for local use tax to address sales consummated in Texas and sales consummated outside of Texas, including sales by remote sellers.

In new paragraph (1), the comptroller adds the language found in former subsection (g)(1) with changes. The comptroller explicitly states in paragraph (1) that the location of the seller in Texas does not affect the determination of whether the seller is required to collect additional local use tax due.

In new paragraph (2), the comptroller includes the language in former subsection (g)(2) with changes. The comptroller makes a cross-reference to new subsection (i)(3) of the amendment, which implements House Bill 2153. The comptroller also clarifies that new subsection (i)(2) applies to sales not consummated in Texas. The amendment provides that local use tax is based upon the location in this state to which the item is shipped or delivered or at which the purchaser takes possession.

In new paragraph (3), the amendment addresses local use tax for remote sellers and implements the single local use tax rate for remote sellers enacted in House Bill 2153.

New subparagraph (A)(i) provides that a remote seller is required to collect and remit using the combined rate of all applicable local use taxes based on the location to which the item is shipped or delivered or at which the purchaser takes possession. New subparagraph (A)(ii) provides that at the remote seller's election, the remote seller may elect to use the single local use tax rate published in the *Texas Register.*

New subparagraph (B) addresses the single local use tax rate when a remote seller stores tangible personal property in Texas to be sold on a marketplace. The comptroller recognizes that a remote seller selling tangible personal property on a marketplace may not have control of where their tangible personal property is stored. Therefore, to ease the burden on a remote seller, this provision allows the remote seller to elect the single local use tax rate.

New subparagraph (C) addresses notice requirements a remote seller sends to the comptroller of its election and revocation of election to use the single local use tax rate. New clause (i) provides that a remote seller must notify the comptroller of its election to use the single local use tax rate on a form prescribed by the comptroller or may notify the comptroller of the election on its use tax permit application form before being able to use the single local use tax rate. New clause (i) also requires that a remote seller use the single local use tax rate for all its sales of taxable items until the remote seller revokes the election in writing to the comptroller. New clause (ii) addresses the requirements for a remote seller to revoke its election to collect the single local use tax rate by filing a form prescribed by the comptroller by October 1 of the calendar year.

New subparagraph (D)(i) provides the initial single local use tax rate of 1.75%, which is in effect for the period beginning October 1, 2019, and ending December 31, 2019. Subparagraph (D)(ii) provides the initial single local use tax rate of 1.75%, which is in effect for the period beginning January 1, 2020, and ending December 31, 2020.

New subparagraph (E) provides that before the beginning of a calendar year, the comptroller will publish notice of the single local use tax rate that will be in effect for that calendar year in the *Texas Register.*

New subparagraph (F) provides the calculation for the single local use tax rate.

New subparagraph (G) provides that a purchaser may request a refund based on local use taxes paid in a calendar year. The refund is for the difference between the single local use tax rate paid by the purchaser and the amount the purchaser would have paid based on the combined tax rate for all applicable local use taxes. Non-permitted purchasers may request a refund directly from the comptroller on an annual basis without having to meet the requirements in §3.325(a)(1) of this title (relating to Refunds and Payments Under Protest) and the statute of limitation under Tax Code, §111.104 (Refunds).

New subparagraph (H) addresses marketplace providers and states that a marketplace provider may only use the combined tax rate of all applicable local use taxes when computing the amount of local use tax to collect and remit.

In new paragraph (4), the comptroller restates the language in deleted subsection (g)(4) concerning purchasers responsible for accruing and remitting local taxes if the seller fails to collect without any changes.

In new paragraph (5), the comptroller restates the language in deleted subsection (g)(5) concerning local tax due on the sales price of a taxable item without any changes.

The comptroller adds new paragraph (6) to relieve a purchaser of liability for additional use tax if the purchaser pays local use tax using the single local use tax rate to an eligible remote seller electing to use the single local use tax rate. Paragraph (6) also requires the purchaser to verify on the comptroller's website that a remote seller has elected to use the single local use tax rate. Moreover, paragraph (6) provides that if a remote seller is not listed on the comptroller's website, the purchaser will be liable for additional use tax due.

Mr. Edmonson commented that TechNet believes that paragraph (6) will create an undue burden on the buyer to verify if the remote seller is registered with the comptroller. He commented that the state should pursue the seller, not the buyer. The comptroller declines to make a revision based on this comment.

The comptroller deletes existing subsection (b), relating to the effect of other law, as this information is contained in new subsection (e) with minor, non-substantive changes.

The comptroller deletes existing subsection (c) relating to tax rates, as that information is contained in new subsection (f) without change.

The comptroller deletes existing subsection (d) relating to jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements, as this information is contained in new subsection (g) with non-substantive changes made to the provisions on combined areas for ease of readability.

The comptroller deletes existing subsection (e) relating to place of business - special definitions, as this information is contained in new subsection (b) with changes.

The comptroller deletes existing subsection (f) concerning places of business and job sites crossed by local taxing jurisdiction boundaries, as this information is contained in new

CP Ex-23-0023 of 0032

subsection (h) with a change only to the title of the subsection to read places of business of the seller.

The comptroller deletes subsection (g) concerning sellers' and purchasers' responsibilities for collecting or accruing local taxes, as those provisions, except for subsection (g)(3), which was deleted in its entirety, are contained in new subsection (i) with changes.

The comptroller deletes existing subsection (h) concerning local sales tax, as this information is contained in new subsection (c) with changes.

The comptroller deletes existing subsection (i) concerning use tax, as this information is contained in new subsection (d) with changes.

The comptroller adds new subsection (k)(5) to implement House Bill 1525, to address sales of taxable items through marketplace providers. Subsequent paragraphs are renumbered.

Mr. Kroll commented that House Bill 1525 could be interpreted to only source third-party marketplace seller transactions to destination. He commented that the provision should be amended to ensure that all taxable sales made via a marketplace, either by the marketplace provider itself or on behalf of a marketplace seller, should be sourced to destination. He suggested language to that effect. The comptroller declines to make this revision because House Bill 1525 is specific to the sales made by marketplace providers on behalf of marketplace sellers. It does not provide for sourcing on the marketplace provider's own sales. Additionally, amending §3.286 of this title in this section is not appropriate.

The provisions related to remote sellers, the single local use tax rate, and marketplace providers took effect October 1, 2019.

Joe Strong, on behalf of Microsoft, made comments pertaining to marketplace providers and marketplace sellers, registration, good faith, and information requirements, which are addressed in §3.286 of this title and not this amendment. Mr. Howard and Ms. Howard commented that they strongly disagree with the amendment.

Mr. Pannell requested guidance on the information that will be audited by the comptroller and the penalties for incorrect application of local tax. Mr. Kroll commented that the comptroller does not have any training or audit materials for this rule, so it appears businesses will not face compliance scrutiny under audit. The comptroller declines to make revisions based on this comment because this section addresses local sales and use tax administration. The comptroller will provide audit guidelines regarding this section in the appropriate audit materials.

Ms. May urged that the amendment continue to designate purchasing offices as places of business if it is deemed that they do not exist solely to avoid or rebate sales tax. The comptroller did not make any amendments to the definition of purchasing offices.

The comptroller adopts this amendment under Tax Code, §111.002 (Comptroller's Rules; Compliance; Forfeiture), which provides the comptroller with the authority to amend rules to reflect changes in the constitution or laws of the United States and judicial interpretations thereof.

The amendments implement Tax Code, §§151.0595 (Single Local Tax Rate for Remote Sellers), 321.203, and 323.203, and *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018).

§3.334.   *Local Sales and Use Taxes.*

(a)   Definitions.  The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

(1)   Cable system--The system through which a cable service provider delivers cable television or bundled cable service, as those terms are defined in §3.313 of this title (relating to Cable Television Service and Bundled Cable Service).

(2)   City--An incorporated city, municipality, town, or village.

(3)   City sales and use tax--The tax authorized under Tax Code, §321.101(a), including the additional municipal sales and use tax authorized under Tax Code, §321.101(b), the municipal sales and use tax for street maintenance authorized under Tax Code, §327.003, the Type A Development Corporation sales and use tax authorized under Local Government Code, §504.251, the Type B Development Corporation sales and use tax authorized under Local Government Code, §505.251, a sports and community venue project sales and use tax adopted by a city under Local Government Code, §334.081, and a municipal development corporation sales and use tax adopted by a city under Local Government Code, §379A.081.  The term does not include the fire control, prevention, and emergency medical services district sales and use tax authorized under Tax Code, §321.106, or the municipal crime control and prevention district sales and use tax authorized under Tax Code, §321.108.

(4)   Comptroller's website--The agency's website concerning local taxes located at: https://comptroller.texas.gov/taxes/sales/.

(5)   County sales and use tax--The tax authorized under Tax Code, §323.101, including a sports and community venue project sales and use tax adopted by a county under Local Government Code, §334.081.  The term does not include the county health services sales and use tax authorized under Tax Code, §324.021, the county landfill and criminal detention center sales and use tax authorized under Tax Code, §325.021, or the crime control and prevention district sales and use tax authorized under Tax Code, §323.105.

(6)   Drop shipment--A transaction in which an order is received by a seller at one location, but the item purchased is shipped by the seller from another location, or is shipped by the seller's third-party supplier, directly to a location designated by the purchaser.

(7)   Engaged in business--This term has the meaning given in §3.286 of this title (relating to Seller's and Purchaser's Responsibilities).

(8)   Extraterritorial jurisdiction--An unincorporated area that is contiguous to the corporate boundaries of a city as defined in Local Government Code, §42.021.

(9)   Fulfill--To complete an order by transferring a taxable item directly to a purchaser at a Texas location, or to ship or deliver a taxable item to a location in Texas designated by the purchaser.  The term does not include tracking an order, determining shipping costs, managing inventory, or other activities that do not involve the transfer, shipment, or delivery of a taxable item to the purchaser or a location designated by the purchaser.

(10)   Itinerant vendor--A seller who travels to various locations for the purpose of receiving orders and making sales of taxable items and who has no place of business in this state.  A person who sells items through vending machines is also an itinerant vendor.  A salesperson that operates out of a place of business in this state is not an itinerant vendor.

(11)   Kiosk--A small stand-alone area or structure:

CP Ex-23-0024 of 0032

(A) that is used solely to display merchandise or to submit orders for taxable items from a data entry device, or both;

(B) that is located entirely within a location that is a place of business of another seller, such as a department store or shopping mall; and

(C) at which taxable items are not available for immediate delivery to a purchaser.

(12) Local taxes--Sales and use taxes imposed by any local taxing jurisdiction.

(13) Local taxing jurisdiction--Any of the following:

(A) a city that imposes sales and use tax as provided under paragraph (3) of this subsection;

(B) a county that imposes sales and use tax as provided under paragraph (5) of this subsection;

(C) a special purpose district created under the Special District Local Laws Code or other provisions of Texas law that is authorized to impose sales and use tax by the Tax Code or other provisions of Texas law and as governed by the provisions of Tax Code, Chapters 321 or 323 and other provisions of Texas law; or

(D) a transit authority that imposes sales and use tax as authorized by Transportation Code, Chapters, 451, 452, 453, 457, or 460 and governed by the provisions of Tax Code, Chapter, 322.

(14) Marketplace provider--This term has the meaning given in §3.286 of this title.

(15) Order placed in person--An order placed by a purchaser with the seller while physically present at the seller's place of business regardless of how the seller subsequently enters the order.

(16) Place of business of the seller - general definition--An established outlet, office, or location operated by a seller for the purpose of selling taxable items to those other than employees, independent contractors, and natural persons affiliated with the seller, where sales personnel of the seller receive three or more orders for taxable items during the calendar year. The term does not include a computer server, Internet protocol address, domain name, website, or software application. Additional criteria for determining when a location is a place of business of the seller are provided in subsection (b) of this section for distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices. An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a place of business of the seller if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or exists solely to rebate a portion of the tax imposed by those chapters to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or solely to rebate a portion of the tax imposed by those chapters if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.

(17) Purchasing office--An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business.

(18) Remote Seller--As defined in §3.286 of this title, a remote seller is a seller engaged in business in this state whose only activity in the state is:

(A) engaging in regular or systematic solicitation of sales of taxable items in this state by the distribution of catalogs, periodicals, advertising flyers, or other advertising, by means of print, radio, or television media, or by mail, telegraphy, telephone, computer data base, cable, optic, microwave, or other communication system for the purpose of effecting sales of taxable items; or

(B) soliciting orders for taxable items by mail or through other media including the Internet or other media that may be developed in the future.

(19) Seller--This term has the meaning given in §3.286 of this title and also refers to any agent or employee of the seller.

(20) Special purpose district--A local governmental entity authorized by the Texas legislature for a specific purpose, such as crime control, a local library, emergency services, county health services, or a county landfill and criminal detention center.

(21) Storage--This term has the meaning given in §3.346 of this title (relating to Use Tax).

(22) Temporary place of business of the seller--A location operated by a seller for a limited period of time for the purpose of selling and receiving orders for taxable items and where the seller has inventory available for immediate delivery to a purchaser. For example, a person who rents a booth at a weekend craft fair or art show to sell and take orders for jewelry, or a person who maintains a facility at a job site to rent tools and equipment to a contractor during the construction of real property, has established a temporary place of business. A temporary place of business of the seller includes a sale outside of a distribution center, manufacturing plant, storage yard, warehouse, or similar facility of the seller in a parking lot or similar space sharing the same physical address as the facility but not within the walls of the facility.

(23) Transit authority--A metropolitan rapid transit authority (MTA), advanced transportation district (ATD), regional or subregional transportation authority (RTA), city transit department (CTD), county transit authority (CTA), regional mobility authority (RMA) or coordinated county transportation authority created under Transportation Code, Chapters 370, 451, 452, 453, 457, or 460.

(24) Two percent cap--A reference to the general rule that, except as otherwise provided by Texas law and as explained in this section, a seller cannot collect, and a purchaser is not obligated to pay, more than 2.0% of the sales price of a taxable item in total local sales and use taxes for all local taxing jurisdictions.

(25) Use--This term has the meaning given in §3.346 of this title.

(26) Use tax--A tax imposed on the storage, use or other consumption of a taxable item in this state.

(b) Determining the place of business of a seller.

(1) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller for the purpose of selling taxable items where sales personnel of the seller receive three or more orders for taxable items during the calendar year from persons

CP Ex-23-0025 of 0032

other than employees, independent contractors, and natural persons affiliated with the seller is a place of business of the seller.

(B) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller.

(2) Kiosks. A kiosk is not a place of business of the seller for the purpose of determining where a sale is consummated for local tax purposes. A seller who owns or operates a kiosk in Texas is, however, engaged in business in this state as provided in §3.286 of this title.

(3) Purchasing offices.

(A) A purchasing office is not a place of business of the seller if the purchasing office exists solely to rebate a portion of the local sales and use tax imposed by Tax Code, Chapters 321, 322, or 323 to a business with which it contracts; or if the purchasing office functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323. A purchasing office does not exist solely to rebate a portion of the local sales and use tax or to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323 if the purchasing office provides significant business services to the contracting business beyond processing invoices, including logistics management, purchasing, inventory control, or other vital business services.

(B) In making a determination under subparagraph (A) of this paragraph, as to whether a purchasing office provides significant business services to the contracting business beyond processing invoices, the comptroller will compare the total value of the other business services to the value of processing invoices. If the total value of the other business services, including logistics management, purchasing, inventory control, or other vital business services, is less than the value of the service to process invoices, then the purchasing office will be presumed not to be a place of business of the seller.

(C) If the comptroller determines that a purchasing office is not a place of business of the seller, the sale of any taxable item is deemed to be consummated at the place of business of the seller from whom the purchasing office purchased the taxable item for resale and local sales and use taxes are due according to the following rules.

(i) When taxable items are purchased from a Texas seller, local sales taxes are due based on the location of the seller's place of business where the sale is deemed to be consummated, as determined in accordance with subsection (c) of this section.

(ii) When the sale of a taxable item is deemed to be consummated at a location outside of this state, local use tax is due based on the location where the items are first stored, used or consumed by the entity that contracted with the purchasing office in accordance with subsection (d) of this section.

(4) Orders received by sales personnel who are not at a place of business of the seller in Texas when they receive the order, including orders received by mail, telephone, including Voice over Internet Protocol and cellular phone calls, facsimile, and email. This type of order is treated as being received at the location from which the salesperson operates, that is, the principal fixed location where the salesperson conducts work-related activities. The location from which a salesperson operates will be a place of business of the seller only if the location meets the definition of a "place of business of a seller" in subsection (a)(16) of this section on its own, without regard to the orders imputed to that location by this paragraph. Orders received prior to October 1, 2021, may also be treated as being received at the outlet, office, or location operated by the seller that serves as a base of operations or that provides administrative support to the salesperson,

and these locations will be treated as places of business of the seller for purposes of subsection (c) of this section.

(5) Orders not received by sales personnel, including orders received by a shopping website or shopping software application. Effective October 1, 2021, these orders are received at locations that are not places of business of the seller.

(c) Local sales tax - Consummation of sale - determining the local taxing jurisdictions to which sales tax is due. Except for the special rules applicable to remote sellers in subsection (i)(3) of this section, direct payment permit purchases in subsection (j) of this section, and certain taxable items, including taxable items sold by a marketplace provider, as provided in subsection (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in the state.

(1) Consummation of sale - order received at a place of business of the seller in Texas.

(A) Order placed in person. Except as provided by paragraph (3) of this subsection, when an order for a taxable item is placed in person at a seller's place of business in Texas, including at a temporary place of business of the seller in Texas, the sale of that item is consummated at that place of business of the seller, regardless of the location where the order is fulfilled.

(B) Order not placed in person.

(i) Order fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

(ii) Order not fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a location that is not a place of business of the seller in Texas, the sale is consummated at the place of business where the order is received.

(2) Consummation of sale - order not received at a place of business of the seller in Texas.

(A) Order fulfilled at a place of business of the seller in Texas. When an order is received at a location that is not a place of business of the seller in Texas or is received outside of Texas, and is fulfilled from a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

(B) Order not fulfilled from a place of business of the seller in Texas.

(i) Order fulfilled in Texas. When an order is received at a location that is not a place of business of the seller in Texas and is fulfilled from a location in Texas that is not a place of business of the seller, the sale is consummated at the location in Texas to which the order is shipped or delivered, or at which the purchaser of the item takes possession.

(ii) Order not fulfilled in Texas. When an order is received by a seller at a location outside of Texas or by a remote seller, and is fulfilled from a location outside of Texas, the sale is not consummated in Texas. However, local use tax is due based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section. Except as provided in subsection (i)(3) of this section, a

remote seller required to collect state use tax under §3.286(b)(2) of this title must also collect local use tax based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession.

(3) Exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5). This paragraph is effective until September 1, 2024. If applicable, the local sales tax due on the sale of a taxable item is based on the location of the qualifying warehouse, which is a place of business of the seller, from which the item is shipped or delivered or at which the purchaser of the item takes possession.

(4) Local sales taxes are due to each local taxing jurisdiction with sales tax in effect where the sale is consummated. Local use tax may also be due if the total amount of local sales taxes due does not reach the two percent cap, and the item purchased is shipped or delivered to a location in one or more different local taxing jurisdictions, as provided in subsection (d) of this section.

(5) Multiple special purpose district taxes, multiple transit authority sales taxes, or a combination of the two may apply to a single transaction. If the sale of a taxable item is consummated at a location within the boundaries of multiple special purpose districts or transit authorities, local sales tax is owed to each of the jurisdictions in effect at that location. For example, a place of business of the seller located in the city of San Antonio is within the boundaries of both the San Antonio Advanced Transportation District and the San Antonio Metropolitan Transit Authority, and the seller is required to collect sales tax for both transit authorities. Similarly, a place of business of the seller in Flower Mound is located within the boundaries of two special purpose districts, the Flower Mound Crime Control District and the Flower Mound Fire Control District, and the seller is responsible for collecting sales tax for both special purpose districts.

(6) Itinerant vendors; vending machines.

(A) Itinerant vendors. Sales made by itinerant vendors are consummated at, and itinerant vendors must collect sales tax based upon, the location where the item is delivered or at which the purchaser of the item takes possession. Itinerant vendors do not have any responsibility to collect use tax.

(B) Vending machines. Sales of taxable items made from a vending machine are consummated at the location of the vending machine. See §3.293 of this title (relating to Food; Food Products; Meals; Food Service) for more information about vending machine sales.

(d) Local use tax. The provisions addressing the imposition of state use tax in §3.346 of this title also apply to the imposition of local use tax. For example, consistent with §3.346(e) of this title, all taxable items that are shipped or delivered to a location in this state that is within the boundaries of a local taxing jurisdiction are presumed to have been purchased for use in that local taxing jurisdiction as well as presumed to have been purchased for use in the state.

(1) General rules.

(A) When local use taxes are due in addition to local sales taxes as provided by subsection (c) of this section, all applicable use taxes must be collected or accrued in the following order until the two percent cap is reached: city, county, special purpose district, and transit authority. If more than one special purpose district use tax is due, all such taxes are to be collected or accrued before any transit authority use tax is collected or accrued. See subparagraphs (D) and (E) of this paragraph.

(B) If a local use tax cannot be collected or accrued at its full rate without exceeding the two percent cap, the seller cannot collect it, or any portion of it, and the purchaser is not responsible for accruing it.

(C) If a seller collects a local sales tax on an item, or a purchaser accrues a local sales tax on an item, a use tax for the same type of jurisdiction is not due on the same item. For example, after a city sales tax has been collected or accrued for an item, no use tax is due to that same or a different city on that item, but use tax may be due to a county, special purpose district, or transit authority. Similarly, if one or more special purpose district sales taxes have been collected or accrued for an item, no special purpose district use tax is due on that item, and if one or more transit authority sales taxes have been collected or accrued for an item, no transit authority use tax is due on that item.

(D) Collection or accrual of use tax for multiple special purpose districts. If more than one special purpose district use tax is in effect at the location where use of an item occurs, the special purpose district taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all special purpose district taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the district with the earliest effective date would exceed the two percent cap, the tax for that district is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (C) of this paragraph, whether use tax is due for the district that next became effective.

(i) If the competing special purpose district taxes became effective on the same date, the special purpose district taxes are due in the order of the earliest date for which the election in which the district residents authorized the imposition of sales and use tax by the district was held.

(ii) If the elections to impose the local taxes were held on the same date, the special purpose district taxes are due in the order of the earliest date for which the enabling legislation under which each district was created became effective.

(E) Collection or accrual of use tax for multiple transit authorities. If more than one transit authority use tax is in effect at the location where use of an item occurs, and the two percent cap has not been met, the transit authority taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all transit authority taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the authority with the earliest effective date would exceed the two percent cap, the tax for that authority is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (D) of this paragraph, whether use tax is due for the authority that next became effective.

(i) If the competing transit authorities became effective on the same date, the transit authority taxes are due in the order of the earliest date for which the election in which the authority residents authorized the imposition of sales and use tax by the authority was held.

(ii) If the elections to impose local taxes were held on the same date, the transit authority use taxes are due in the order of the earliest date for which the enabling legislation under which each authority was created became effective.

(2) General use tax rules applied to specific situations. The following fact patterns explain how local use tax is to be collected or accrued and remitted to the comptroller based on, and subject to, the general rules in paragraph (1) of this subsection.

CP Ex-23-0027 of 0032

(A) Sale consummated outside the state, item delivered from outside the state or from a location in Texas that is not operated by the seller - local use tax due. Except as provided in subsection (i)(3) of this section, if a sale is consummated outside of this state according to the provisions of subsection (c) of this section, and the item purchased is either shipped or delivered to a location in this state as designated by the purchaser from a location outside of the state, or if the order is drop shipped directly to the purchaser from a third-party supplier, local use tax is owed based upon the location in this state to which the order is shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use tax due on the sale. If the seller does not collect the local use taxes due on the sale, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller according to the provisions in paragraph (1) of this subsection. For example, if an order for a taxable item is received by a seller at a location outside of Texas, and the order is shipped to the purchaser from a location outside of the state, local use tax is due based upon the location to which the order is shipped or delivered or at which the purchaser of the item takes possession.

(B) Sale consummated in Texas outside a local taxing jurisdiction, item delivered into one or more local taxing jurisdictions - local use tax due. If a sale is consummated at a location in Texas that is outside of the boundaries of any local taxing jurisdiction according to the provisions of subsection (c) of this section, and the order is shipped or delivered to the purchaser at a location in this state that is within the boundaries of one or more local taxing jurisdictions, local use tax is due based on the location to which the items are shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use taxes due on the sale, regardless of the location of the seller in Texas. If the seller fails to collect any local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(C) Sale consummated in any local taxing jurisdictions imposing less than 2.0% in total local taxes - local sales taxes and use taxes due. If a sale is consummated at a location in Texas where the total local sales tax rate imposed by the taxing jurisdictions in effect at that location does not equal 2.0% according to the provisions of subsection (c) of this section, and the item is shipped or delivered to the purchaser at a location in this state that is inside the boundaries of a different local taxing jurisdiction, additional local use tax may be due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the two percent cap. The seller is responsible for collecting any additional local use taxes due on the sale, regardless of the location of the seller in Texas. See subsection (i) of this section. If the seller fails to collect the additional local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

*(i)* Example one - if an order is received in person at a place of business of the seller, such that the sale is consummated at the location where the order is received as provided under subsection (c)(1)(A) of this section, and the local sales tax due on the sale does not meet the two percent cap, additional local use taxes are due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the provisions in paragraph (1) of this subsection.

*(ii)* Example two - if a seller receives an order for a taxable item at a seller's place of business in Texas, and the seller ships or delivers the item from an out-of-state location to a location in this state as designated by the purchaser, local sales tax is due based upon the location of the place of business of the seller where the order is received. If the local sales tax due on the item does not meet the two percent cap, use taxes, subject to the provisions in paragraph (1) of this

subsection, are due based upon the location where the items are shipped or delivered or at which the purchaser of the item takes possession.

(e) Effect of other law.

(1) Tax Code, Title 2, Subtitles A (General Provisions) and B (Enforcement and Collection), Tax Code, Chapter 141 (Multistate Tax Compact) and Tax Code, Chapter 151 (Limited Sales, Excise, and Use Tax) apply to transactions involving local taxes. Related sections of this title and comptroller rulings shall also apply with respect to local taxes. This includes authorities such as court cases and federal law that affect whether an item is taxable or is excluded or exempt from taxation.

(2) Permits, exemption certificates, and resale certificates required by Tax Code, Chapter 151, shall also satisfy the requirements for collecting and remitting local taxes, unless otherwise indicated by this section or other sections of this title. For example, see subsection (n) of this section concerning prior contract exemptions.

(3) Any provisions in this section or other sections of this title related to a seller's responsibilities for collecting and remitting local taxes to the comptroller shall also apply to a purchaser if the seller does not collect local taxes that are due. The comptroller may proceed against the seller or purchaser for the local tax owed by either.

(f) Tax rates. Except as otherwise provided by law, no local governmental entity may adopt or increase a sales and use tax if, as a result of the adoption or increase of the tax, the combined rate of all sales and use taxes imposed by local taxing jurisdictions having territory in the local governmental entity would exceed 2.0% at any location within the boundaries of the local governmental entity's jurisdiction. The following are the local tax rates that may be adopted.

(1) Cities. Cities may impose sales and use tax at a rate of up to 2.0%.

(2) Counties. Counties may impose sales and use tax at rates ranging from 0.5% to 1.5%.

(3) Special purpose districts. Special purpose districts may impose sales and use tax at rates ranging from 0.125% to 2.0%.

(4) Transit authorities. Transit authorities may impose sales and use tax at rates ranging from 0.25% to 1.0%.

(g) Jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements.

(1) Jurisdictional boundaries.

(A) City boundaries. City taxing jurisdictional boundaries cannot overlap one another and a city cannot impose a sales and use tax in an area that is already within the jurisdiction of another city.

(B) County boundaries. County tax applies to all locations within that county.

(C) Special purpose district and transit authority boundaries. Special purpose districts and transit authorities may cross or share boundaries with other local taxing jurisdictions and may encompass, in whole or in part, other local taxing jurisdictions, including cities and counties. A geographic location or address in this state may lie within the boundaries of more than one special purpose district or more than one transit authority.

(D) Extraterritorial jurisdictions. Except as otherwise provided by paragraph (3) of this subsection concerning strategic partnership agreements and subsection (l)(5) of this section concerning the City of El Paso and Fort Bliss, city sales and use tax does not apply to taxable sales that are consummated outside the boundaries of the city, including sales made in a city's extraterritorial jurisdiction. However,

CP Ex-23-0028 of 0032

an extraterritorial jurisdiction may lie within the boundaries of a special purpose district, transit authority, county, or any combination of the three, and the sales and use taxes for those jurisdictions would apply to those sales.

(2) Combined areas. A combined area is an area where the boundaries of a city overlap the boundaries of one or more other local taxing jurisdictions as a result of an annexation of additional territory by the city, and where, as the result of the imposition of the city tax in the area in addition to the local taxes imposed by the existing taxing jurisdictions, the combined local tax rate would exceed 2.0%. The comptroller shall make accommodations to maintain a 2.0% rate in any combined area by distributing the 2.0% tax revenue generated in these combined areas to the local taxing jurisdictions located in the combined areas as provided in Tax Code, §321.102 or Health and Safety Code, §775.0754. Combined areas are identified on the comptroller's website. Sellers engaged in transactions on which local sales or use taxes are due in a combined area, or persons who must self-accrue and remit tax directly to the comptroller, must use the combined area local code when reporting the tax rather than the codes for the individual city, county, special purpose districts, or transit authorities that make up the combined area.

(3) City tax imposed through strategic partnership agreements.

(A) The governing bodies of a district, as defined in Local Government Code, §43.0751, and a city may enter into a limited-purpose annexation agreement known as a strategic partnership agreement. Under this agreement, the city may impose sales and use tax within all or part of the boundaries of a district. Areas within a district that are annexed for this limited purpose are treated as though they are within the boundaries of the city for purposes of city sales and use tax.

(B) Counties, transit authorities, and special purpose districts may not enter into strategic partnership agreements. Sales and use taxes imposed by those taxing jurisdictions do not apply in the limited-purpose annexed area as part of a strategic partnership agreement between a city and an authorized district. However, a county, special purpose district, or transit authority sales and use tax, or any combination of these three types of taxes, may apply at locations included in a strategic partnership agreement between a city and an authorized district if the tax is imposed in that area by the applicable jurisdiction as allowed under its own controlling authorities.

(C) Prior to September 1, 2011, the term "district" was defined in Local Government Code, §43.0751 as a municipal utility district or a water control and improvement district. The definition was amended effective September 1, 2011, to mean a conservation and reclamation district operating under Water Code, Chapter 49.

(h) Places of business of the seller and job sites crossed by local taxing jurisdiction boundaries.

(1) Places of business of the seller crossed by local taxing jurisdiction boundaries. If a place of business of the seller is crossed by one or more local taxing jurisdiction boundaries so that a portion of the place of business of the seller is located within a taxing jurisdiction and the remainder of the place of business of the seller lies outside of the taxing jurisdiction, tax is due to the local taxing jurisdictions in which the sales office is located. If there is no sales office, sales tax is due to the local taxing jurisdictions in which any cash registers are located.

(2) Job sites.

(A) Residential repair and remodeling; new construction of an improvement to realty. When a contractor is improving real property under a separated contract, and the job site is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on any separately stated charges for taxable items incorporated into the real property must be allocated to the local taxing jurisdictions based on the total square footage of the real property improvement located within each jurisdiction, including the square footage of any standalone structures that are part of the construction, repair, or remodeling project. For more information about tax due on materials used at residential and new construction job sites, refer to §3.291 of this title (relating to Contractors).

(B) Nonresidential real property repair and improvement. When taxable services are performed to repair, remodel, or restore nonresidential real property, including a pipeline, transmission line, or parking lot, that is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on the taxable services, including materials and any other charges connected to the services performed, must be allocated among the local taxing jurisdictions based upon the total mileage or square footage, as appropriate, of the repair, remodeling, or restoration project located in each jurisdiction. For more information about tax due on materials used at nonresidential real property repair and remodeling job sites, refer to §3.357 of this title (relating to Nonresidential Real Property Repair, Remodeling, and Restoration; Real Property Maintenance).

(i) Sellers' and purchasers' responsibilities for collecting or accruing local taxes.

(1) Sale consummated in Texas; seller responsible for collecting local sales taxes and applicable local use taxes. When a sale of a taxable item is consummated at a location in Texas as provided by subsection (c) of this section, the seller must collect each local sales tax in effect at the location. If the total rate of local sales tax due on the sale does not reach the two percent cap, and the seller ships or delivers the item into another local taxing jurisdiction, then the seller is required to collect additional local use taxes due, if any, based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession, regardless of the location of the seller in Texas. For more information regarding local use taxes, refer to subsection (d) of this section.

(2) Out-of-state sale; seller engaged in business in Texas. Except as provided in paragraph (3) of this subsection, when a sale is not consummated in Texas, a seller who is engaged in business in this state is required to collect and remit local use taxes due, if any, on orders of taxable items shipped or delivered at the direction of the purchaser into a local taxing jurisdiction in this state based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section.

(3) Local use tax rate for remote sellers.

(A) A remote seller required to collect and remit one or more local use taxes in connection with a sale of a taxable item must compute the amount using:

(i) the combined tax rate of all applicable local use taxes based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession; or

(ii) at the remote seller's election, the single local use tax rate published in the *Texas Register*.

(B) A remote seller that is storing tangible personal property in Texas to be used for fulfillment at a facility of a marketplace provider that has certified that it will assume the rights and duties of a seller with respect to the tangible personal property, as provided for in §3.286 of this title, may elect the single local use tax rate under subparagraph (A)(ii) of this paragraph.

CP Ex-23-0029 of 0032

(C)     Notice to the comptroller of election and revocation of election.

(i)     Before using the single local use tax rate, a remote seller must notify the comptroller of its election using a form prescribed by the comptroller. A remote seller may also notify the comptroller of the election on its use tax permit application form. The remote seller must use the single local use tax rate for all of its sales of taxable items until the election is revoked as provided in clause (ii) of this subparagraph.

(ii)     A remote seller may revoke its election by filing a form prescribed by the comptroller. If the comptroller receives the notice by October 1, the revocation will be effective January 1 of the following year. If the comptroller receives the notice after October 1, the revocation will be effective January 1 of the year after the following year. For example, a remote seller must notify the comptroller by October 1, 2020, for the revocation to be effective January 1, 2021. If the comptroller receives the revocation on November 1, 2020, the revocation will be effective January 1, 2022.

(D)     Single local use tax rate.

(i)     The single local use tax rate in effect for the period beginning October 1, 2019, and ending December 31, 2019, is 1.75%.

(ii)     The single local use tax rate in effect for the period beginning January 1, 2020, and ending December 31, 2020, is 1.75%.

(E)     Annual publication of single local use tax rate. Before the beginning of a calendar year, the comptroller will publish notice of the single local use tax rate in the *Texas Register* that will be in effect for that calendar year.

(F)     Calculating the single local use tax rate. The single local use tax rate effective in a calendar year is equal to the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year. As soon as practicable after the end of a state fiscal year, the comptroller must determine the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year by:

(i)     dividing the total amount of net local sales and use taxes remitted to the comptroller during the state fiscal year by the total amount of net state sales and use tax remitted to the comptroller during the state fiscal year;

(ii)     multiplying the amount computed under clause (i) of this subparagraph by the rate provided in Tax Code, §151.051; and

(iii)     rounding the amount computed under clause (ii) of this subparagraph to the nearest .0025.

(G)     Direct refund. A purchaser may request a refund based on local use taxes paid in a calendar year for the difference between the single local use tax rate paid by the purchaser and the amount the purchaser would have paid based on the combined tax rate for all applicable local use taxes. Notwithstanding the refund requirements under §3.325(a)(1) of this title (relating to Refunds and Payments Under Protest), a non-permitted purchaser may request a refund directly from the comptroller for the tax paid in the previous calendar year, no earlier than January 1 of the following calendar year within the statute of limitation under Tax Code, 111.104 (Refunds).

(H)     Marketplace providers. Notwithstanding subparagraph (A) of this paragraph, marketplace providers may not use the single local use tax rate and must compute the amount of local use tax

to collect and remit using the combined tax rate of all applicable local use taxes.

(4)     Purchaser responsible for accruing and remitting local taxes if seller fails to collect.

(A)     If a seller does not collect the state sales tax, any applicable local sales taxes, or both, on a sale of a taxable item that is consummated in Texas, then the purchaser is responsible for filing a return and paying the tax. The local sales taxes due are based on the location in this state where the sale is consummated as provided in subsection (c) of this section.

(B)     A purchaser who buys an item for use in Texas from a seller who does not collect the state use tax, any applicable local use taxes, or both, is responsible for filing a return and paying the tax. The local use taxes due are based on the location where the item is first stored, used, or consumed by the purchaser.

(C)     For more information about how to report and pay use tax directly to the comptroller, see §3.286 of this title.

(5)     Local tax is due on the sales price of a taxable item, as defined in Tax Code, §151.007, in the report period in which the taxable item is purchased or the period in which the taxable item is first stored, used, or otherwise consumed in a local taxing jurisdiction.

(6)     A purchaser is not liable for additional local use tax if the purchaser pays local use tax using the rate elected by an eligible remote seller according to paragraph (3) of this subsection. The remote seller must be identified on the comptroller's website as electing to use the single local use tax rate. A purchaser must verify that the remote seller is listed on the comptroller's website. If the remote seller is not listed on the comptroller's website, the purchaser will be liable for additional use tax due in accordance to paragraph (4) of this subsection.

(j)     Items purchased under a direct payment permit.

(1)     When taxable items are purchased under a direct payment permit, local use tax is due based upon the location where the permit holder first stores the taxable items, except that if the taxable items are not stored, then local use tax is due based upon the location where the taxable items are first used or otherwise consumed by the permit holder.

(2)     If, in a local taxing jurisdiction, storage facilities contain taxable items purchased under a direct payment exemption certificate and at the time of storage it is not known whether the taxable items will be used in Texas, then the taxpayer may elect to report the use tax either when the taxable items are first stored in Texas or are first removed from inventory for use in Texas, as long as use tax is reported in a consistent manner. See also §3.288(i) of this title (relating to Direct Payment Procedures and Qualifications) and §3.346(g) of this title.

(3)     If local use tax is paid on stored items that are subsequently removed from Texas before they are used, the tax may be recovered in accordance with the refund and credit provisions of §3.325 of this title and §3.338 of this title (relating to Multistate Tax Credits and Allowance of Credit for Tax Paid to Suppliers).

(k)     Special rules for certain taxable goods and services. Sales of the following taxable goods and services are consummated at, and local tax is due based upon, the location indicated in this subsection.

(1)     Amusement services. Local tax is due based upon the location where the performance or event occurs. For more information on amusement services, refer to §3.298 of this title (relating to Amusement Services).

(2)     Cable services. When a service provider uses a cable system to provide cable television or bundled cable services to cus-

CP Ex-23-0030 of 0032

tomers, local tax is due as provided for in §3.313 of this title. When a service provider uses a satellite system to provide cable services to customers, no local tax is due on the service in accordance with the Telecommunications Act of 1996, §602.

(3) Florists. Local sales tax is due on all taxable items sold by a florist based upon the location where the order is received, regardless of where or by whom delivery is made. Local use tax is not due on deliveries of taxable items sold by florists. For example, if the place of business of the florist where an order is taken is not within the boundaries of any local taxing jurisdiction, no local sales tax is due on the item and no local use tax is due regardless of the location of delivery. If a Texas florist delivers an order in a local taxing jurisdiction at the instruction of an unrelated florist, and if the unrelated florist did not take the order within the boundaries of a local taxing jurisdiction, local use tax is not due on the delivery. For more information about florists' sales and use tax obligations, refer to §3.307 of this title (relating to Florists).

(4) Landline telecommunications services. Local taxes due on landline telecommunications services are based upon the location of the device from which the call or other transmission originates. If the seller cannot determine where the call or transmission originates, local taxes due are based on the address to which the service is billed. For more information, refer to §3.344 of this title (relating to Telecommunications Services).

(5) Marketplace provider sales. Local taxes are due on sales of taxable items through a marketplace provider based on the location in this state to which the item is shipped or delivered or at which the purchaser takes possession. For more information, refer to §3.286 of this title.

(6) Mobile telecommunications services. Local taxes due on mobile telecommunications services are based upon the location of the customer's place of primary use as defined in §3.344(a)(8) of this title, and local taxes are to be collected as indicated in §3.344(h) of this title.

(7) Motor vehicle parking and storage. Local taxes are due based on the location of the space or facility where the vehicle is parked. For more information, refer to §3.315 of this title (relating to Motor Vehicle Parking and Storage).

(8) Natural gas and electricity. Any local city and special purpose taxes due are based upon the location where the natural gas or electricity is delivered to the purchaser. As explained in subsection (l)(1) of this section, residential use of natural gas and electricity is exempt from all county sales and use taxes and all transit authority sales and use taxes, most special purpose district sales and use taxes, and many city sales and use taxes. A list of the cities and special purpose districts that do impose, and those that are eligible to impose, local sales and use tax on residential use of natural gas and electricity is available on the comptroller's website. For more information, also refer to §3.295 of this title (relating to Natural Gas and Electricity).

(9) Nonresidential real property repair and remodeling services. Local taxes are due on services to remodel, repair, or restore nonresidential real property based on the location of the job site where the remodeling, repair, or restoration is performed. See also subsection (h)(2)(B) of this section and §3.357 of this title.

(10) Residential real property repair and remodeling and new construction of a real property improvement performed under a separated contract. When a contractor constructs a new improvement to realty pursuant to a separated contract or improves residential real property pursuant to a separated contract, the sale is consummated at the job site at which the contractor incorporates taxable items into the customer's real property. See also subsection (h)(2)(A) of this section and §3.291 of this title.

(11) Waste collection services. Local taxes are due on garbage or other solid waste collection or removal services based on the location at which the waste is collected or from which the waste is removed. For more information, refer to §3.356 of this title (relating to Real Property Service).

(l) Special exemptions and provisions applicable to individual jurisdictions.

(1) Residential use of natural gas and electricity.

(A) Mandatory exemptions from local sales and use tax. Residential use of natural gas and electricity is exempt from most local sales and use taxes. Counties, transit authorities, and most special purpose districts are not authorized to impose sales and use tax on the residential use of natural gas and electricity. Pursuant to Tax Code, §321.105, any city that adopted a local sales and use tax effective October 1, 1979, or later is prohibited from imposing tax on the residential use of natural gas and electricity. See §3.295 of this title.

(B) Imposition of tax allowed in certain cities. Cities that adopted local sales tax prior to October 1, 1979, may, in accordance with the provisions in Tax Code, §321.105, choose to repeal the exemption for residential use of natural gas and electricity. The comptroller's website provides a list of cities that impose tax on the residential use of natural gas and electricity, as well as a list of those cities that do not currently impose the tax, but are eligible to do so.

(C) Effective January 1, 2010, a fire control, prevention, and emergency medical services district organized under Local Government Code, Chapter 344 that imposes sales tax under Tax Code, §321.106, or a crime control and prevention district organized under Local Government Code, Chapter 363 that imposes sales tax under Tax Code, §321.108, that is located in all or part of a municipality that imposes a tax on the residential use of natural gas and electricity as provided under Tax Code, §321.105 may impose tax on residential use of natural gas and electricity at locations within the district. A list of the special purpose districts that impose tax on residential use of natural gas and electricity and those districts eligible to impose the tax that do not currently do so is available on the comptroller's website.

(2) Telecommunication services. Telecommunications services are exempt from all local sales taxes unless the governing body of a city, county, transit authority, or special purpose district votes to impose sales tax on these services. However, since 1999, under Tax Code, §322.109(d), transit authorities created under Transportation Code, Chapter 451 cannot repeal the exemption unless the repeal is first approved by the governing body of each city that created the local taxing jurisdiction. The local sales tax is limited to telecommunications services occurring between locations within Texas. See §3.344 of this title. The comptroller's website provides a list of local taxing jurisdictions that impose tax on telecommunications services.

(3) Emergency services districts.

(A) Authority to exclude territory from imposition of emergency services district sales and use tax. Pursuant to the provisions of Health and Safety Code, §775.0751(c-1), an emergency services district wishing to enact a sales and use tax may exclude from the election called to authorize the tax any territory in the district where the sales and use tax is then at 2.0%. The tax, if authorized by the voters eligible to vote on the enactment of the tax, then applies only in the portions of the district included in the election. The tax does not apply to sales made in the excluded territories in the district and sellers in the excluded territories should continue to collect local sales and use taxes

CP Ex-23-0031 of 0032

for the local taxing jurisdictions in effect at the time of the election under which the district sales and use tax was authorized as applicable.

(B) Consolidation of districts resulting in sales tax sub-districts. Pursuant to the provisions of Health and Safety Code, §775.018(f), if the territory of a district proposed under Health and Safety Code, Chapter 775 overlaps with the boundaries of another district created under that chapter, the commissioners court of each county and boards of the counties in which the districts are located may choose to create a consolidated district in the overlapping territory. If two districts that want to consolidate under Health and Safety Code, §775.024 have different sales and use tax rates, the territory of the former districts located within the consolidated area will be designated as sub-districts and the sales tax rate within each sub-district will continue to be imposed at the rate the tax was imposed by the former district that each sub-district was part of prior to the consolidation.

(4) East Aldine Management District.

(A) Special sales and use tax zones within district; separate sales and use tax rate. As set out in Special District Local Laws Code, §3817.154(e) and (f), the East Aldine Management District board may create special sales and use tax zones within the boundaries of the District and, with voter approval, enact a special sales and use tax rate in each zone that is different from the sales and use tax rate imposed in the rest of the district.

(B) Exemptions from special zone sales and use tax. The sale, production, distribution, lease, or rental of; and the use, storage, or other consumption within a special sales and use tax zone of; a taxable item sold, leased, or rented by the entities identified in clauses (i) - (vi) of this subparagraph are exempt from the special zone sales and use tax. State and all other applicable local taxes apply unless otherwise exempted by law. The special zone sales and use tax exemption applies to:

*(i)* a retail electric provider as defined by Utilities Code, §31.002;

*(ii)* an electric utility or a power generation company as defined by Utilities Code, §31.002;

*(iii)* a gas utility as defined by Utilities Code, §101.003 or §121.001, or a person who owns pipelines used for transportation or sale of oil or gas or a product or constituent of oil or gas;

*(iv)* a person who owns pipelines used for the transportation or sale of carbon dioxide;

*(v)* a telecommunications provider as defined by Utilities Code, §51.002; or

*(vi)* a cable service provider or video service provider as defined by Utilities Code, §66.002.

(5) Imposition of city sales tax and transit tax on certain military installations; El Paso and Fort Bliss. Pursuant to Tax Code, §321.1045 (Imposition of Sales and Use Tax in Certain Federal Military Installations), for purposes of the local sales and use tax imposed under Tax Code, Chapter 321, the city of El Paso includes the area within the boundaries of Fort Bliss to the extent it is in the city's extraterritorial jurisdiction. However, the El Paso transit authority does not include Fort Bliss. See Transportation Code, §453.051 concerning the Creation of Transit Departments.

(m) Restrictions on local sales tax rebates and other economic incentives. Pursuant to Local Government Code, §501.161, Section 4A and 4B development corporations may not offer to provide economic incentives, such as local sales tax rebates authorized under Local Government Code, Chapters 380 or 381, to persons whose business consists primarily of purchasing taxable items using resale certificates and then reselling those same items to a related party. A related party means a person or entity which owns at least 80% of the business enterprise to which sales and use taxes would be rebated as part of an economic incentive.

(n) Prior contract exemptions. The provisions of §3.319 of this title (relating to Prior Contracts) concerning definitions and exclusions apply to prior contract exemptions.

(1) Certain contracts and bids exempt. No local taxes are due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of any local tax if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of any local tax if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(2) Annexations. Any annexation of territory into an existing local taxing jurisdiction is also a basis for claiming the exemption provided by this subsection.

(3) Local taxing jurisdiction rate increase; partial exemption for certain contracts and bids. When an existing local taxing jurisdiction raises its sales and use tax rate, the additional amount of tax that would be due as a result of the rate increase is not due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of the tax rate increase if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of the tax rate increase if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(4) Three-year statute of limitations.

(A) The exemption in paragraph (1) of this subsection and the partial exemption in paragraph (3) of this subsection have no effect after three years from the date the adoption or increase of the tax takes effect in the local taxing jurisdiction.

(B) The provisions of §3.319 of this title apply to this subsection to the extent they are consistent.

(C) Leases. Any renewal or exercise of an option to extend the time of a lease or rental contract under the exemptions provided by this subsection shall be deemed to be a new contract and no exemption will apply.

(5) Records. Persons claiming the exemption provided by this subsection must maintain records which can be verified by the comptroller or the exemption will be lost.

(6) Exemption certificate. An identification number is required on the prior contract exemption certificates furnished to sellers. The identification number should be the person's 11-digit Texas taxpayer number or federal employer's identification (FEI) number.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on May 11, 2020.

TAB
G

The Comptroller of Public Accounts proposes new §1.200, concerning state employee family leave pool. The new section will be located in Chapter 1, new Subchapter C, Administration.

The new section implements House Bill 2063, 87th Legislature, R.S., 2021, which enacted Government Code, §§661.021 - 661.028 (State Employee Family Leave Pool).

Proposed §1.200 creates a process for the Comptroller's State Employee Family Leave Pool. Subsection (a) outlines the establishment and purpose, which is to provide eligible employees more flexibility in bonding with and caring for children during a child's first year following birth, adoption, or foster placement, and caring for a seriously ill family member or the employee, including pandemic-related illnesses or complications caused by a pandemic. Subsection (b) outlines guidelines for the program, provides for designation of a pool administrator, describes the responsibilities of the pool administrator, and provides that the operation of the family leave pool shall be consistent with Government Code, Chapter 661, Subchapter A-1.

Brad Reynolds, Chief Revenue Estimator, has determined that during the first five years that the proposed new rule is in effect, the rule: will not create or eliminate a government program; will not require the creation or elimination of employee positions; will not require an increase or decrease in future legislative appropriations to the agency; will not require an increase or decrease in fees paid to the agency; will not increase or decrease the number of individuals subject to the rule's applicability; and will not positively or adversely affect this state's economy.

Mr. Reynolds also has determined that the proposed new rule would have no significant fiscal impact on the state government, units of local government, or individuals. The proposed new rule would benefit the public by implementing the rule regarding state employee family leave pool. There would be no significant anticipated economic cost to the public. The proposed new rule would have no fiscal impact on small businesses or rural communities.

Comments on the proposal may be submitted to Yadira Gibson, Senior Legal Counsel to Human Resources, Texas Comptroller of Public Accounts, P.O. Box 13528, Austin, Texas 78711 or to the email address: Yadi.Gibson@cpa.texas.gov. Comments must be received no later than 30 days from the date of publication of the proposal in the *Texas Register*.

This new section is proposed under Government Code, §661.022(c), which requires the governing body of each state agency to adopt rules and prescribe procedures relating to the operation of the state employee family leave pool.

The new section implements Government Code, §§661.021 - 661.028 (State Employee Family Leave Pool)

*§1.200.    State Employee Family Leave Pool.*

(a)    Establishment and Purpose. In accordance with Government Code, Chapter 661, Subchapter A-1 (State Employee Family Leave Pool), the comptroller establishes the Employee Family Leave Pool program to provide eligible employees more flexibility in bonding with and caring for children during a child's first year following birth, adoption, or foster placement, and caring for a seriously ill family member or the employee, including pandemic-related illnesses or complications caused by a pandemic.

(b)    Guidelines.

(1)    Under the Employee Family Leave Pool, an agency employee may voluntarily transfer sick leave or vacation leave earned by the employee to the family leave pool, and employees may apply for leave time under the family leave pool.

(2)    The comptroller or deputy comptroller shall designate a pool administrator.

(3)    The pool administrator will develop procedures and forms as necessary for the administration of the family leave pool.

(4)    Operation of the family leave pool shall be consistent with Government Code, Chapter 661, Subchapter A-1.

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on September 12, 2022.

TRD-202203667
Victoria North
General Counsel for Fiscal and Agency Affairs
Comptroller of Public Accounts
Earliest possible date of adoption: October 23, 2022
For further information, please call: (512) 475-2220



# CHAPTER 3.    TAX ADMINISTRATION
# SUBCHAPTER O.    STATE AND LOCAL SALES AND USE TAXES

**34 TAC §3.334**

The Comptroller of Public Accounts proposes amendments to §3.334, concerning local sales and use taxes.

*Background.*

The comptroller's local sales and use tax rulemaking process began in 2018, when several issues arose regarding local sales and use tax. The United States Supreme Court issued a decision in South Dakota v. Wayfair, Inc., 138 S. Ct. 2080 (June 21, 2018), which appeared to expand the states' authority to impose use tax collection obligations on remote sellers. In addition, as the comptroller began to receive inquiries regarding the legitimacy of various local tax revenue-sharing schemes, it became apparent that the comptroller's existing rule was inadequate to explain the comptroller's interpretation of the local sales and use tax consummation statutes.

Before proposing the rule amendments, the comptroller consulted with various organizations, including the Texas Municipal League, the City of Round Rock, the City of Coppell, and the City of Carrollton. The comptroller was aware that cities had conflicting concerns. Some were concerned that other cities were siphoning off sales tax revenue under various revenue-sharing schemes with vendors, while other cities were concerned that their revenue-sharing agreements with vendors would be in jeopardy. Again, it became clear that the comptroller's existing rule did not provide adequate guidance to resolve these concerns.

The comptroller published a notice of proposed rulemaking in the January 3, 2020, issue of the *Texas Register*. After the publication of the notice of proposed rulemaking, the comptroller extended the 30-day public comment period to 90 days. In addition, the comptroller held a public hearing on February 4, 2020. The comptroller scrutinized the comments, made some changes, and



D-1-GN-21-003198

**TRIAL EXHIBIT**

**CP Ex-31**

rejected others. The comptroller published the final rule in the May 22, 2020, issue of the *Texas Register.*

The Cities of Round Rock, Coppell, DeSoto, Humble, and Carrollton then challenged the validity of the 2020 rule amendments. The litigation has been consolidated in Cause No. D-1-GN-21-003198, City of Coppell, Texas, et al. v. Glenn Hegar, in the 201st District Court of Travis County Texas.

The district court found that the comptroller failed to substantially comply with one or more of the procedural requirements for the notice of proposed rule (Government Code, §2001.024) when the comptroller adopted §3.334(b)(5). The court remanded §3.334(b)(5) to give the comptroller the opportunity to either revise or readopt it through established procedure. Accordingly, the comptroller is proposing to revise §3.334(b)(5) and other portions of the rule, with an explanation that augments the explanation in the notice of proposed rulemaking published in the January 3, 2020, issue of the *Texas Register* (45 TexReg 98) and the order adopting amendments to §3.334 published in the May 22, 2020, issue of the *Texas Register* (45 TexReg 3499).

*Proposed amendments*

The comptroller proposes to amend subsection (a)(9) to make the language more consistent with Tax Code, §321.203(c-1):

(9) Fulfill--To complete an order by transferring possession of a taxable item to a purchaser, or to ship or deliver a taxable item to a location designated by the purchaser. The term does not include receiving or tracking an order, determining shipping costs, managing inventory, or other activities that do not involve the transfer, shipment, or delivery of a taxable item to the purchaser or to a location designated by the purchaser.

The comptroller proposes to amend the definition of "place of business of the seller" in subsection (a)(16):

(16) Place of business of the seller - general definition--A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller. An "established outlet, office, or location" requires staffing by one or more sales personnel. The term does not include a computer server, Internet protocol address, domain name, website, or software application. The "purpose" element of the definition may be established by proof that sales personnel of the seller received three or more orders for taxable items at the facility during the calendar year. ...

The definition of "place of business of the seller" comes into play in determining where a local sale or use is consummated. The consummation standards are not all "origin-based." Possible outcomes include consummation at the place of business where the order was received, consummation at the place of business from which the order was shipped or delivered, consummation at the location to which the item is shipped or delivered, and consummation at the first point in the state where the item is stored, used, or consumed. Tax Code, §321.203 and §321.205. The location of the consummation can be affected by whether an order is received at a "place of business of the seller" in Texas, and whether the seller ships or delivers the item from a "place of business of the seller" in Texas.

The consummation standards for municipal sales and use taxes are in Tax Code, §321.203 for sales tax and Tax Code, §321.205 for use tax. Other local sales and use tax statutes have similar standards. See, Tax Code, Chapter 322 (special purpose taxing authority sales and use tax) and Chapter 323 (county sales and use tax).

The rule uses "place of business of the seller," while the statute uses "place of business of the retailer." See Tax Code, §321.002(3)(A). The terms "seller" and "retailer" are synonymous for sales and use tax purposes. Tax Code, §151.008. The current rule and the proposed rule use "place of business of the seller" rather than "place of business of the retailer" to avoid potential confusion over the term "retailer." The term "retailer" is statutorily defined to include both retailers and wholesalers, as those terms are commonly used. Tax Code, §151.008.

The statute defines "place of business of the retailer" with 82 words:

"Place of business of the retailer" means an established outlet, office, or location operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items and includes any location at which three or more orders are received by the retailer during a calendar year. A warehouse, storage yard, or manufacturing plant is not a "place of business of the retailer" unless at least three orders are received by the retailer during the calendar year at the warehouse, storage yard, or manufacturing plant.

The definition is narrower than the ordinary meaning of the phrase. The definition includes the concept of receiving orders for taxable items, which could exclude locations ordinarily considered to be places of business, such as executive offices. Additionally, a location is not a "place of business" simply because it receives orders. If that were the case, the legislature could have defined the phrase with those very words, which can be counted on one hand.

Against this backdrop, the comptroller proposes to amend the definition of "place of business of the seller" in subsection (a)(16).

The first sentence of the proposed definition states: "A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller." This definition tracks the statutory definition, but adds a qualifier from the existing rule definition, which would allow a facility to make in-house courtesy sales without becoming a place of business.

In the *City of Webster* litigation, the court of appeals stated: "we do not determine whether a place of business must be 'an established outlet, office, or location operated by the retailer or the retailer's agent or employee,' *see id.,* as appellees do not raise this issue." *Combs v. City of Webster,* 311 S.W.3d 85, 96 at n. 7 (Tex. App.-Austin 2009, pet. Denied). The first sentence of the proposed definition is worded in the imperative to clearly answer that unanswered question. The comptroller interprets the statute to mean that a place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items.

The second sentence states: "An 'established outlet, office, or location' requires staffing by one or more sales personnel." This requirement is based on several rules of statutory construction. Every word of a statute, including each word in the phrase "established outlet, office, or location," should have meaning. *Amarillo v. Martin,* 971 426, 430 (Tex. 1998). If the word "location" is given its broadest application, it would subsume the words "outlet" and "office," rendering them meaningless. Therefore, the rule of "ejusdem generis" should apply, in which general words

CP Ex-31-0002 of 0017

are not to be construed in their widest meaning, but are limited to persons or things of the same kind or class as those expressly mentioned. *Stanford v. Butler,* 181 S.W.2d 269 (Tex. 1944). Thus, a "location" should be a facility that is similar to an "outlet" or "office."

The term "outlet" implies the presence of sales personnel, particularly in the sales tax context. Each retail store is considered to be an "outlet" for reporting sales tax.

In the abstract, there could be many types of "offices." But in the context of "receiving orders," the term implies a sales office.

Thus, to provide something of a bright-line test for buyers, sellers, and auditors to follow, the rule provides that an "established outlet, office, or location" requires staffing by one or more sales personnel. *See, Perry Homes v. Strayhorn,* 108 S.W.3d 444, 448 (Tex. App.- Austin 2003, no pet.) (example of bright line rule); *DuPont Photomasks, Inc. v. Strayhorn,* 219 S.W.3d 414, 422 (Tex. App.-Austin 2006, pet. Denied) (example of bright line rule).

This interpretation of the statute is confirmed by legislative history. The Texas Legislature added the definition of "place of business of the retailer" in 1979. 66th Legislature, R.S., Ch. 624, Art. 1, §3 (SB 582). During that session of the legislature, a House Study Group analysis stated that the "bill is necessary to protect the state from possible consequences of the pending court suits." The analysis specifically referenced "Dunigan Tool and Supply v. Bullock" as one of those suits. The analysis is available at the Legislative Reference Library website at https://lrl.texas.gov/scanned/hroBillAnalyses/66-0/SB582.pdf.

In the *Dunigan* litigation, retail stores took orders that were fulfilled from a warehouse. The comptroller wanted to source the local tax to the retail stores, but the district court and the court of appeals sourced the local tax to the warehouse, declaring the warehouse to be a place of business. *Bullock v. Dunigan Tool & Supply Co.,* 588 S.W.2d 633 (Tex. Civ. App.- Austin, Sept. 6, 1979, writ ref'd n.r.e.).

The 1979 House Study Group bill analysis states that the bill was intended to protect the state from the consequences of the *Dunnigan* litigation. Thus, the legislative intent was that a fulfillment warehouse without sales personnel would not be a "place of business."

The legislative intent was further confirmed by the subsequent October 2, 1980, Interim Report of the House Ways and Means Committee, which was produced by the City of Coppell during the litigation. The committee was considering whether to allow the recently adopted statutory definition of "place of business" to expire. The committee described the consequence: "The location of sale would no longer be tied to permitted outlets, salesmen's locations, or sales offices." Interim Report at 20. These words confirm the comptroller's current interpretation that the definition of a "place of business" requires staffing by one or more sales personnel: "location" was intended to mean "salesmen's locations" and "office" was intended to mean "sales office."

In the subsequent legislative session, the legislature did not allow the "place of business" definition to expire, and instead, made it permanent. 67th Legislature, R.S., Ch. 838 §1 (H.B. 1838). The 1979 definition and its legislative history remain in place today. And, the comptroller's interpretation of "place of business," which tracks the legislative history, is a longstanding one. In 1985, the comptroller adopted the proposal for decision in Comptroller's Decision No. 15,654 (1985), which stated:

But it seems to the administrative law judge that the legislature was amending the law if not entirely in reaction to the then-pending case of *Bullock v. Dunigan Tool & Supply Co.,* 588 S.W.2d 633 (Tex. Civ. App.-Texarkana, writ ref'd n.r.e.), at least partly in reaction to that case. And if that be so, then the legislature did not want warehousing and storage facilities (many of which are outside city limits) to be the places where sales were consummated for local sales tax purposes unless orders were actually received there by personnel working there, but wanted the office location out of which the salesman operated to be the place where the sales were consummated.

The City of Coppell and others have advanced a contrary explanation regarding fulfillment warehouses that has superficial appeal: a warehouse cannot fulfill an order unless the warehouse has "received" the order, and therefore a fulfillment warehouse is inherently a "place of business." In the abstract, this argument may seem like a reasonable interpretation of the word "received." But not in context. When the words of the rather lengthy statutory definition are considered, and when the legislative history is considered, the legislature intended the opposite - a fulfillment warehouse is not automatically a "place of business" simply because orders have to be forwarded to the warehouse for fulfillment.

The third sentence in the proposed definition of "place of business" states: "The term does not include a computer server, Internet protocol address, domain name, website, or software application." This sentence is consistent with the concept that a "place of business" requires the presence of personnel to receive the order. Even a broad, every-day usage of the term "place of business" does not include computer servers, Internet protocol addresses, and automated telephone ordering systems. Many sellers house their computer servers at a co-location facility or rent computer server space at a managed hosting site. An ordinary person would not consider the physical locations of these computer servers to be places of business of the seller. Similarly, an ordinary person would not perceive an Internet protocol address, a domain name, or a website as an "established outlet, office, or location" so as to constitute a place of business in ordinary usage. And, in this statutory context, which is narrower than ordinary usage, the comptroller has concluded that the legislature could not have intended that the receipt of an order by an automated mechanical device would make the device an "established outlet, office or location operated by the retailer."

The treatment of computer servers, while new to the rule in 2020, is not new to the comptroller. Comptroller Letter Ruling (STAR Accession No.) 200510723L (2005) stated:

The location of the server does not create a "place of business" for purposes of local Tax Collection.

And Comptroller Letter Ruling (STAR Accession No.) 200605592L (2006) similarly stated:

The location of the server does not create a "place of business" for purposes of local tax collection.

And Comptroller Letter Ruling (STAR Accession No.) 201906015L (2019) similarly stated:

COMPANY operates **************'s online marketplace (Website) and various apps used by Texas customers to make online orders. ... Orders placed on the Website or through COMPANY's apps and processed and routed by servers are not received at a place of business.

The fourth sentence of the proposed definition of "place of business of the seller" states: "The 'purpose' element of the definition may be established by proof that sales personnel of the seller received three or more orders for taxable items at the facility during the calendar year." The sentence conforms the rule to the statute, as explained in *Combs v. City of Webster,* 311 S.W.3d 85, 96 (Tex. App.-Austin 2009, pet. denied). In that opinion, the court stated that the statutory "phrase 'and includes' can reasonably be interpreted to indicate that the 'for the purpose of' phrase and the 'three or more orders' phrase are alternate methods of satisfying the statutory definition."

Finally, in addition to being the most reasonable interpretation of the statute, the proposed definition of "place of business of the seller" is a practical interpretation that will facilitate uniformity and ease of administration for taxpayers and auditors. Website orders can be received at multiple physical addresses - any locations that have Internet access. A website order is sent to an Internet protocol ("IP") address. An IP address is not a permanent physical address. It is a series of numbers assigned to a device, such as a computer server. Websites may use dynamic IP addresses that are assigned by the network upon connection and that change over time. The public IP address of a website may simply be routing orders to different, private IP addresses. Load balancers may change the IP addresses that communicate with customers. Conversely, multiple web sites may be hosted at a single IP address.

The computer server receiving an order may belong to the seller or it may belong to a third party. The computer server may be situated on the seller's premises, it may be situated at a co-location facility operated by a third party, or it may be situated at a web hosting facility operated by a third party. The computer server may be one of multiple servers that serve the same website from different physical addresses as part of a cloud distribution network. The computer server may route the order to multiple other servers for load balancing purposes. Conversely, a single computer server may serve multiple websites. Also, the seller may or may not know the physical address of the server receiving the order. The physical locations of computer servers that receive website orders are often random, variable, and uncertain. The best way to treat computer servers consistently and coherently is to uniformly recognize that they are not "established" places of business of the seller.

In conclusion, regarding the proposed definition of "place of business of the seller," the comptroller is under no illusions that the definition will eliminate all ambiguities. In many instances, the determination of whether or not particular facilities have "sales personnel" will have to be made on a case-by-case basis. But the rule makes clear that mere hardware installations, or other facilities that do not use any personnel, are not "places of business of the seller." To that extent, the rule will help taxpayers understand how the comptroller interprets and intends to apply the statute.

The comptroller proposes to amend subsection (b)(1)(A) regarding distribution centers, manufacturing plants, storage yards, warehouses, or similar facilities to add the sentence: "The forwarding of previously received orders to the facility for fulfilment does not make the facility a place of business."

Subsection (b)(1)(A) is an application of the definition of "place of business of the seller" in subsection (a)(16). The explanation of subsection (a)(16) is also applicable to subsection (b)(1)(A).

The comptroller proposes to amend subsections (b)(4) and (b)(5) for stylistic reasons and to more clearly state the comptroller's application of the definition of place of business of the seller from subsection (a)(16):

(4) An order that is received by a salesperson who is not at a place of business of the seller when the salesperson receives the order is treated as being received at the location from which the salesperson operates. Examples include orders that a salesperson receives by mail, telephone, including Voice over Internet Protocol and cellular phone calls, facsimile, and email while traveling. The location from which the salesperson operates is the principal fixed location where the salesperson conducts work-related activities. The location from which a salesperson operates will be a place of business of the seller only if the location meets the definition of a "place of business of a seller" in subsection (a)(16) of this section on its own, without regard to the orders imputed to that location by this subsection.

(5) An order that is not received by a salesperson is received at a location that is not a place of business of the seller. Examples are orders received by a computer server through a shopping cart software program and orders received by an automated telephone ordering system.

The examples have been moved from the headings to separate sentences in both subsections (b)(4) and (b)(5), and labeled as examples. The new examples in subsection (b)(5) are more precise examples than the former examples of "a shopping website or shopping software application."

Subsection (b)(5) is an application of the definition of "place of business of the seller" in subsection (a)(16). The explanation of subsection (a)(16) is also applicable to subsection (b)(5).

The comptroller proposes to amend subsection (c)(2)(B)(ii) to make the language more consistent with Tax Code, §321.205(c):

(ii) Order not fulfilled in Texas. When an order is received by a seller at a location that is not a place of business of the seller in Texas, and is fulfilled from a location outside of Texas, the sale is not consummated in Texas. However, a use is considered to be consummated at the first point in this state where the item is stored, used, or consumed after the interstate transit has ceased. A taxable item delivered to a point in this state is presumed to be for storage, use, or consumption at that point until the contrary is established. Local use tax should be collected as provided in subsection (d) of this section. Except as provided in subsection (i)(3) of this section, a remote seller required to collect state use tax under §3.286(b)(2) of this title must also collect local use tax.

*Sourcing of local tax*

It has been alleged that the proposed rule would result in a wholesale policy change from origin sourcing to destination sourcing for website orders. However, there cannot be a wholesale policy change because the consummation statutes for website orders are not inherently origin-based in the first place. Marketplace sales made through marketplaces are consummated at destination. Tax Code, §321.203(e-1). And there are other circumstances in which website orders do not use origin sourcing. Website orders fulfilled from a place of business of the seller in Texas are consummated at the place of business where the order is fulfilled. Tax Code, §321.203(c-1). Website orders received outside of Texas and fulfilled from a location in Texas other than a place of business of the seller are consummated at destination. Tax Code, §321.203(c). Website orders that are

CP Ex-31-0004 of 0017

received outside of Texas and fulfilled from outside of Texas are consummated at destination. Tax Code, §321.205(c). And, amusement services, which may be delivered over the Internet, are sourced to destination. Tax Code, §321.203(h).

Rather than being a wholesale change in sourcing, the proposed rule is an articulation of the pre-existing comptroller interpretation of "place of business of the retailer" as defined by the legislature. The definition requires the presence of sales personnel to receive orders, and if there are no sales personnel involved, such as an automated website order received by a computer server, the order is received at a location that is not a "place of business." And, that interpretation of "place of business" does not mean that every website sale is sourced to destination, since some will be sourced to the place of business of the seller where the order is fulfilled.

It has also been alleged that the proposed subsection (b)(5) will change the way that Texas retailers with one place of business in Texas will source local tax. However, in most instances, subsection (b)(5) will not change the way that Texas retailers with one place of business in Texas will source local tax.

If orders are received by Internet servers located outside the state, local tax will be sourced the same regardless of the text of subsection (b)(5). Except for the application of special rules for remote sellers in subsection (i)(3), direct payment permit purchases in subsection (j), and certain taxable items, including taxable items sold by a marketplace provider, as provided in subsection (k), the sale will be consummated at the place of business of the seller in Texas from which the order is fulfilled, or if not, the a sale will be consummated, or a use will be consummated at the location in Texas to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d). See §3.334(c), (c)(2), (j) and (k) and Tax Code, §321.203(b), (c-1), (e), (e-1), (f), (g), (g-1), (g-2), (g-3), (h), (i), (j), (k), (n) and §321.205(c).

If orders are placed in person at the place of business of the seller in Texas, local tax will be sourced the same regardless of the text of subsection (b)(5). Except for the application of special rules for direct payment permit purchases in subsection (j), and certain taxable items, including taxable items sold by a marketplace provider, as provided in subsection (k), the sale will be consummated at the single place of business of the seller in Texas where the order was received. See §3.334(c), (c)(1)(A), (j), and (k) and Tax Code, §321.203(b), (c), (e-1), (f), (g), (g-1), (g-2), (g-3), (h), (i), (j), (k), and (n).

If orders are received by sales personnel of the retailer at the place of business of the seller in Texas, but the orders are not placed in person by the buyer, local tax will be sourced the same regardless of the text of subsection (b)(5). Except for the application of special rules for direct payment permit purchases in subsection (j), and certain taxable items as provided in subsection (k), the sale will be consummated at the single place of business of the seller in Texas where the order was received. See §3.334(c), (c)(1)(B)(i), (c)(1)(B)(ii), (j), and (k) and Tax Code, §321.203(b), (c-1), (d), (f), (g), (g-1), (g-2), (g-3), (h), (i), (j), (k), and (n).

If orders are received by sales personnel of the retailer who are not at the place of business of the seller in Texas when they receive the orders, but who operate out of the place of business of the seller in Texas, local tax will be sourced the same regardless of the text of subsection (b)(5). Except for the application of special rules for direct payment permit purchases in subsec-

tion (j), and certain taxable items as provided in subsection (k), the sale will be consummated at the single place of business of the seller in Texas out of which the sales personnel operate. See §3.334(b)(4), (c), (c)(1)(B)(i), (c)(1)(B)(ii), (j), and (k) and Tax Code, §321.203(b), (c-1), (d), (f), (g), (g-1), (g-2), (g-3), (h), (i), (j), (k), and (n).

If orders are received by sales personnel of the retailer who are not at the place of business of the seller in Texas when they receive the orders, and who do not operate out of the place of business of the seller in Texas, local tax will be sourced the same regardless of the text of subsection (b)(5). Except for the application of special rules for direct payment permit purchases in subsection (j), and certain taxable items as provided in subsection (k), the sale will be consummated at the place of business of the seller in Texas from which the order is fulfilled, or if not, the sale will be consummated, or a use will be consummated at the location in Texas to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d). See §3.334(c), (c)(2), (j) and (k) and Tax Code, §321.203(b), (c-1), (e), (f), (g), (g-1), (g-2), (g-3), (h), (i), (j), (k), (n) and §321.205(c).

If the orders are not received by sales personnel, such as orders received by an automated shopping website operated by the retailer, but the orders are fulfilled at the single place of business of the seller in Texas, local tax will be sourced the same regardless of the text of subsection (b)(5). Except for the application of special rules for direct payment permit purchases in subsection (j) of this section, and certain taxable items as provided in subsection (k) of this section, the sale will be consummated at the single place of business of the seller in Texas from which the orders are fulfilled. See §3.334(c), (c)(2)(A), (j) and (k), and Tax Code, §321.203(b), (c-1), (f), (g), (g-1), (g-2), (g-3), (h), (i), (j), (k), and (n).

If the orders are not received by sales personnel, such as orders received by an automated shopping website operated by the retailer, and the orders are shipped or delivered or the purchaser takes possession in the same jurisdiction in which the retailer's single place of business in Texas is located, local tax will be sourced the same regardless of the text of subsection (b)(5). Except for the application of special rules for direct payment permit purchases in subsection (j) of this section, and certain taxable items as provided in subsection (k) of this section, the sale or use will be consummated in the jurisdiction where the single place of business of the seller is located. See §3.334(c), (c)(2)(A), (c)(2)(B)(i), (c)(2)(B)(ii), (j) and (k), and Tax Code, §321.203(b), (c-1), (e), (f), (g), (g-1), (g-2), (g-3), (h), (i), (j), (k), and (n) and §321.205(c).

If the orders are received by a shopping website operated by a marketplace provider, or the orders are received by any other physical medium operated by a marketplace provider such as catalogs and stores, local tax will be sourced the same regardless of the text of subsection (b)(5). Except for the application of special rules for direct payment permit purchases in subsection (j), and certain taxable items as provided in subsection (k), the sale will be consummated at the location in Texas state to which the item is shipped or delivered or at which possession is taken by the purchaser. See §3.334(k)(5), (j) and (k), and Tax Code, §321.203(e-1), (f), (g), (g-1), (g-2), (g-3), (h), (i), (j), (k), and (n).

If orders are received from purchasers with direct pay permits, local tax will be sourced the same regardless of the text of subsection (b)(5). A use will be consummated, and local use tax will be due based upon the location where the permit holder first

CP Ex-31-0005 of 0017

stores or otherwise uses the item. See §3.334(j) and Tax Code, §321.205(d).

If the purchasers issue resale exemption certificates, subsection (b)(5) will have no effect because the transactions will not be subject to local tax.

If orders are for the sale of exempt items, subsection (b)(5) will have no effect because the transactions will not be subject to local tax.

If the orders are for the sale of items to exempt entities, subsection (b)(5) will have no effect because the transactions will not be subject to local tax.

If the orders are for the sale of natural gas or electricity, local tax will be sourced the same regardless of the text of subsection (b)(5). The sale will be consummated at the point of delivery to the consumer. See §3.334(k)(8) and Tax Code, §321.203(f).

If the orders are for the sale of amusement services, local tax will be sourced the same regardless of the text of subsection (b)(5). The sale will be consummated where the performance or event occurs. See §3.334(k)(1) and Tax Code, §321.203(h).

If the orders are for the sale of cable television service, local tax, if any, will be sourced the same regardless of the text of subsection (b)(5). The sale will be consummated at the point of delivery to the consumer. See §3.334(k)(2), §3.313, and Tax Code, §321.203(j).

If the orders are for the sale of landline telecommunications service, local tax will be sourced the same regardless of the text of subsection (b)(5). The sale will be consummated at the location of the device from which the call or other transmission originates, or the billing address. See §3.334(k)(4) and Tax Code, §321.203(g-1).

If the orders are for the sale of mobile telecommunication services, local tax will be sourced the same regardless of the text of subsection (b)(5). The sale will be consummated at the primary place of use. See §3.334(k)(6) and Tax Code, §321.203(g).

If the orders are for the sale of garbage or other solid waste collection or removal, local tax will be sourced the same regardless of the text of subsection (b)(5). The sale will be consummated at location from which the waste is collected or removed. See §3.334(k)(11) and Tax Code, §321.203(k).

If the orders are for the remodeling, repair, or restoration of nonresidential real property, local tax will be sourced the same regardless of the text of subsection (b)(5). The sale will be consummated at the job site. See §3.334(k)(9) and Tax Code, §321.203(n).

In one circumstance, subsection (b)(5) of §3.334 might change the way Texas retailers with one place of business in Texas will source local sales tax. Prior to the 2020 amendment, §3.334(h)(3) provided in pertinent part (emphasis added):

(3) Consummation of sale. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state.

(A) Order placed in person at a seller's place of business in Texas. When a purchaser places an order for a taxable item in person at a seller's place of business in Texas, the sale of that item is consummated at that place of business, regardless of the location where the order is fulfilled, except in the limited

circumstances described in subparagraph (F) of this paragraph, concerning qualifying economic development agreements.

(B) Order received at a place of business in Texas, fulfilled at a location that is not a place of business. When an order that is placed over the telephone, through the Internet, or by any means other than in person is received by the seller at a place of business in Texas, and the seller fulfills the order at a location that is not a place of business of the seller in Texas, such as a warehouse or distribution center, the sale is consummated at the place of business at which the order for the taxable item is received.

(C) Order fulfilled at a place of business in Texas. When an order is placed in person at a location that is not a place of business of the seller in this state, such as a kiosk, or when an order is placed over the telephone, through the Internet, or by any means other than in person, and the seller fulfills the order at a location that is a place of business in Texas, the sale is consummated at the place of business where the order is fulfilled.

(D) Order fulfilled within the state at a location that is not a place of business. When an order is received by a seller at any location other than a place of business of the seller in this state, and the seller fulfills the order at a location in Texas that is not a place of business of the seller, then the sale is consummated at the location in Texas to which the order is shipped or delivered, or the location where it is transferred to the purchaser.

(E) Order received outside of the state, fulfilled outside of the state. When an order is received by a seller at a location outside of Texas, and the order is shipped or delivered into a local taxing jurisdiction from a location outside of the state, the sale is not consummated at a location in Texas. However, local use tax is due based upon the location in this state to which the item is shipped or delivered or at which possession of the item is taken by the purchaser as provided in subsection (i) of this section.

Former subsection (h)(3)(B) did not distinguish between website orders received by sales personnel, such as emails, and website orders not received by sales personnel, such as automated shopping cart orders. If a taxpayer relied solely on the rule and did not review the hearings decisions and letter rulings available on the comptroller's STAR system, a taxpayer might conclude that an automated order placed through the Internet could be received at a place of business, whereas proposed subsection (b)(5) explicitly states that orders not received by sales personnel are received at locations that are not places of business of the seller. Thus, under the former rule, if a retailer had a computer server at a single location that was a place of business of the seller in Texas; and if the retailer had no other location in Texas where the retailer received orders; and if the orders were not fulfilled at the place of business of the seller in Texas; and if the orders were not delivered to the same jurisdiction in which they were received; and if the orders were not received from purchasers with direct pay permits; and if the orders were not received from exempt purchasers; and if the purchasers did not issue resale exemption certificates; and if the orders were not for the sale exempt items, natural gas or electricity, amusement services, cable television service, landline telecommunications service, mobile telecommunication services, garbage or other solid waste collection or removal, or the remodeling, repair, or restoration of nonresidential real property; and if the orders were received by the retailer's computer server located at its single place of business in Texas and not by a marketplace provider, then the rule might lead the taxpayer to conclude that the sale would be consummated at the retailer's single place of business

CP Ex-31-0006 of 0017

in Texas where the computer server was located. If all of these conditions were met under the 2020 version of the rule (which is carried forward in this proposed rulemaking), the sale would be consummated under subsection (c)(2)(B)(i) at the location in Texas to which the orders are shipped or delivered, or at which the purchasers take possession.

*Fiscal note*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the rule will be in effect.

There will be no additional estimated cost to the state and to local governments expected as a result of enforcing or administering the proposed rule. The proposed amendments explain the manner in which the comptroller intends to apply the consummation statutes. The explanation should lead to greater taxpayer compliance, and less audit resources required to enforce or administer the rule.

There will be no estimated reductions in costs to the state and to local governments as a result of enforcing or administering the rule amendments. Local governments do not administer the tax, and the comptroller will not be reducing the size of its audit staff as a result of the rule.

There could be loss or increase in revenue to individual local governments as a result of enforcing or administering the rule due to increased compliance with the consummation statutes. A revenue loss to one local government will often but not always be a revenue gain to others. Amounts for individual local governments cannot be estimated.

In general, due both to the number of taxing jurisdictions and lack of pertinent, detailed information regarding the specific circumstances of the myriad businesses reporting local sales and use taxes, estimation of fiscal effects of a proposed law or rule, whether of dollar amounts or merely sign of change, on an individual jurisdiction by jurisdiction basis is infeasible of execution. However, with respect to this rulemaking, it may be noted that some cities with Local Government Code, Chapter 380 agreements involving rebates of local sales and use tax revenues to certain businesses have asserted that the clarifications provided by the rule will result in changes in sourcing and reporting of local taxes by those businesses, with consequent reductions in revenue subject to the agreements, though their assessments of such have not been verified by the comptroller.

Generally, the cities have not provided the data from which they have calculated their asserted lost revenue, have not identified the vendors that would change their method of reporting, and have not identified the circumstances that would require those vendors to change their methods of reporting as a result of the rule. The significance of the assertions cannot be verified.

An exception is the City of San Marcos. During the 2020 rulemaking, the City of San Marcos filed comments claiming that the proposed rule would cause the city to lose $7-8 million in local sales tax revenue generated by a Best Buy call center, with the net effect of economic development incentive revenue loss estimated at $3.4 million, presumably because the balance of the local sales tax would have been rebated to Best Buy under a Chapter 380 agreement. Best Buy also filed comments stating that it created a subsidiary called Best Buy Texas.com LLC and sourced the local tax for all of its Internet and telephone sales to the City of San Marcos. This would mean that if a resident of the City of Houston placed an Internet order from Houston and picked up the item at a Best Buy outlet in Houston, Best Buy would collect local sales tax for the City of San Marcos. However, it appears that the Best Buy website was actually operated by a different Best Buy affiliate, which would make it a marketplace provider as defined in Tax Code, §151.0242(a)(2). Under the marketplace statute, local tax is sourced to the location where the item is shipped or delivered or at which possession is taken by the purchaser. Thus, any loss to the City of San Marcos of local sales tax revenue from the sale to the Houston resident would be the result of compliance with the marketplace statute. And the loss of tax revenue would not be attributable to the rule. The loss resulting from compliance with the statute would occur without regard to whether the proposed rule was adopted.

The City of Round Rock identified Dell as an entity that would change its method of reporting. The comptroller does not have sufficient current information about the company or other affiliates to determine whether the company is or is not complying with the consummation statutes, former consummation rule, the consummation rule adopted in 2020, or the proposed consummation rule.

Most other cities have not identified specific taxpayers or the circumstances that would enable verification of their claims.

Nevertheless, it is conceivable that the clarifications proposed in the rule will cause some vendors to recognize their noncompliance and change their reporting methods, and that these changes could cause shifts in tax revenue between local jurisdictions.

*Public benefits and costs*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the rule will be in effect.

The public will benefit from greater clarity regarding the consummation standards, making compliance easier.

There are no probable additional economic costs to a person required to comply with the rule. There is undoubtedly a burden associated with collecting and remitting local tax. But the burden is imposed by the statute. It is conceivable that the rule may cause some vendors to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase. And if vendors change from multiple-location reporting to single-location reporting, their compliance burden may diminish.

*Government growth impact statement*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the rule will be in effect: The amendment: will not create or eliminate a government program; will not require the creation or elimination of employee positions; will not require an increase or decrease in future legislative appropriations to the comptroller; will not require an increase or decrease in fees paid to the comptroller; will not create a new regulation; will not expand, limit, or repeal an existing regulation; will not increase or decrease the number of individuals subject to the rule's applicability; and will not positively or adversely affect this state's economy.

*Local employment impact statement*

For the first five years that the rule will be in effect, the effect on local economies and employment, if any, cannot be determined. To the extent that the proposed rule leads to greater awareness

and compliance with the local tax consummation standards, some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions. Whether a change in local tax revenue might increase or decrease the provision of local government services to an extent that would affect local economic activity or employment would depend on discretionary actions of the governing body or the electorate of an affected jurisdiction, and cannot be determined.

*Fiscal implications for small businesses and rural communities*

A statement of fiscal implications for small businesses or rural communities is not required by Government Code, Chapter 2006 if the rule is proposed under Tax Code, Title 2. In this instance, the rule is proposed under both Title 2 (State Taxation) and Title 3 (Local Taxation). The comptroller has determined that the rule will not have an adverse economic effect on small businesses, micro-businesses, or rural communities.

During the 2020 rulemaking, the comptroller received comments that the proposed rule would increase compliance costs of small businesses that would have to switch from origin sourcing to destination sourcing. However, the rule does not cause that result for a small business that has all of its operations under one roof. A small business that does not sell through a marketplace and that has all of its operations at a single location, including sales and fulfillment, will be a "place of business" under the statute, under the 2020 version of the rule, and under the proposed rule. Non-marketplace orders fulfilled from that location will continue to be consummated at that location pursuant to §3.334(c)(1) or (c)(2)(A). Sales of a small business that are through a marketplace are already subject to destination sourcing.

It is conceivable that the rule may cause some vendors, small or large, to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase. And if vendors change from multiple-location reporting to single-location reporting, their compliance burden may diminish.

And, to the extent that the vendors have been reaching the two percent ceiling on local taxes by over-collecting city sales taxes, and the vendors begin correctly reporting, unincorporated rural communities may actually benefit from increased collection of county use tax and special purpose use tax. See Tax Code, §321.205(b) and §3.334(d)(1).

*Public hearing*

The comptroller will hold a hearing to take public comments, on Monday, October 17, 2022, at 9:00 a.m. in Room 170 of the Stephen F. Austin Building, 1700 Congress Ave., Austin, Texas 78701. Interested persons may sign up to testify beginning at 8:30 a.m. and testimony will be heard on a first come first serve basis. All persons will have 10 minutes to present their testimony and shall also provide their testimony in writing prior to their oral testimony.

*Comments*

Comments on the proposal may be submitted to Jennifer Burleson, Director, Tax Policy Division, P.O. Box 13528, Austin, Texas 78711-3528 or to the email address: tp.rule.comments@cpa.texas.gov. Comments must be received no later than 30 days from the date of publication of the proposal in the *Texas Register.*

*Statutory or other authority under which the rule is proposed to be adopted*

Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture); 321.306 (Comptroller's Rules); 322.203 (Comptroller's Rules); 323.306 (Comptroller's Rules) authorize the comptroller to adopt rules to implement the tax statutes.

*Sections or articles of the code affected*

Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; Tax Code, Chapter 323.

*§3.334.    Local Sales and Use Taxes.*

(a)    Definitions. The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

(1)    Cable system--The system through which a cable service provider delivers cable television or bundled cable service, as those terms are defined in §3.313 of this title (relating to Cable Television Service and Bundled Cable Service).

(2)    City--An incorporated city, municipality, town, or village.

(3)    City sales and use tax--The tax authorized under Tax Code, §321.101(a), including the additional municipal sales and use tax authorized under Tax Code, §321.101(b), the municipal sales and use tax for street maintenance authorized under Tax Code, §327.003, the Type A Development Corporation sales and use tax authorized under Local Government Code, §504.251, the Type B Development Corporation sales and use tax authorized under Local Government Code, §505.251, a sports and community venue project sales and use tax adopted by a city under Local Government Code, §334.081, and a municipal development corporation sales and use tax adopted by a city under Local Government Code, §379A.081. The term does not include the fire control, prevention, and emergency medical services district sales and use tax authorized under Tax Code, §321.106, or the municipal crime control and prevention district sales and use tax authorized under Tax Code, §321.108.

(4)    Comptroller's website--The comptroller's [agency's] website concerning local taxes located at: https://comptroller.texas.gov/taxes/sales/.

(5)    County sales and use tax--The tax authorized under Tax Code, §323.101, including a sports and community venue project sales and use tax adopted by a county under Local Government Code, §334.081. The term does not include the county health services sales and use tax authorized under Tax Code, §324.021, the county landfill and criminal detention center sales and use tax authorized under Tax Code, §325.021, or the crime control and prevention district sales and use tax authorized under Tax Code, §323.105.

(6)    Drop shipment--A transaction in which an order is received by a seller at one location, but the item purchased is shipped by the seller from another location, or is shipped by the seller's third-party supplier, directly to a location designated by the purchaser.

(7)    Engaged in business--This term has the meaning given in §3.286 of this title (relating to Seller's and Purchaser's Responsibilities).

(8)    Extraterritorial jurisdiction-An unincorporated area that is contiguous to the corporate boundaries of a city as defined in Local Government Code, §42.021.

(9)    Fulfill--To complete an order by transferring possession of a taxable item [directly] to a purchaser [at a Texas

CP Ex-31-0008 of 0017

location], or to ship or deliver a taxable item to a location [in Texas] designated by the purchaser. The term does not include receiving or tracking an order, determining shipping costs, managing inventory, or other activities that do not involve the transfer, shipment, or delivery of a taxable item to the purchaser or a location designated by the purchaser.

(10) Itinerant vendor--A seller who travels to various locations for the purpose of receiving orders and making sales of taxable items and who has no place of business in this state. A person who sells items through vending machines is also an itinerant vendor. A salesperson that operates out of a place of business in this state is not an itinerant vendor.

(11) Kiosk--A small stand-alone area or structure:

(A) that is used solely to display merchandise or to submit orders for taxable items from a data entry device, or both;

(B) that is located entirely within a location that is a place of business of another seller, such as a department store or shopping mall; and

(C) at which taxable items are not available for immediate delivery to a purchaser.

(12) Local taxes--Sales and use taxes imposed by any local taxing jurisdiction.

(13) Local taxing jurisdiction--Any of the following:

(A) a city that imposes sales and use tax as provided under paragraph (3) of this subsection;

(B) a county that imposes sales and use tax as provided under paragraph (5) of this subsection;

(C) a special purpose district created under the Special District Local Laws Code or other provisions of Texas law that is authorized to impose sales and use tax by the Tax Code or other provisions of Texas law and as governed by the provisions of Tax Code, Chapters 321 or 323 and other provisions of Texas law; or

(D) a transit authority that imposes sales and use tax as authorized by Transportation Code, Chapters, 451, 452, 453, 457, or 460 and governed by the provisions of Tax Code, Chapter, 322.

(14) Marketplace provider--This term has the meaning given in §3.286 of this title.

(15) Order placed in person--An order placed by a purchaser with the seller while physically present at the seller's place of business regardless of how the seller subsequently enters the order.

(16) Place of business of the seller- general definition--A place of business of the seller must be an [An] established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons [selling taxable items to those] other than employees, independent contractors, and natural persons affiliated with the seller. An "established outlet, office, or location" requires staffing by one or more sales personnel.[, where sales personnel of the seller receive three or more orders for taxable items during the calendar year.] The term does not include a computer server, Internet protocol address, domain name, website, or software application. The "purpose" element of the definition may be established by proof that the sales personnel of the seller receive three or more orders for taxable items at the facility during the calendar year. Additional criteria for determining when a location is a place of business of the seller are provided in subsection (b) of this section for distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices. An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a place of business of the seller if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or exists solely to rebate a portion of the tax imposed by those chapters to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or solely to rebate a portion of the tax imposed by those chapters if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.

(17) Purchasing office--An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business.

(18) Remote Seller--As defined in §3.286 of this title, a remote seller is a seller engaged in business in this state whose only activity in the state is:

(A) engaging in regular or systematic solicitation of sales of taxable items in this state by the distribution of catalogs, periodicals, advertising flyers, or other advertising, by means of print, radio, or television media, or by mail, telegraphy, telephone, computer data base, cable, optic, microwave, or other communication system for the purpose of effecting sales of taxable items; or

(B) soliciting orders for taxable items by mail or through other media including the Internet or other media that may be developed in the future.

(19) Seller--This term has the meaning given in §3.286 of this title and also refers to any agent or employee of the seller.

(20) Special purpose district--A local governmental entity authorized by the Texas legislature for a specific purpose, such as crime control, a local library, emergency services, county health services, or a county landfill and criminal detention center.

(21) Storage--This term has the meaning given in §3.346 of this title (relating to Use Tax).

(22) Temporary place of business of the seller--A location operated by a seller for a limited period of time for the purpose of selling and receiving orders for taxable items and where the seller has inventory available for immediate delivery to a purchaser. For example, a person who rents a booth at a weekend craft fair or art show to sell and take orders for jewelry, or a person who maintains a facility at a job site to rent tools and equipment to a contractor during the construction of real property, has established a temporary place of business. A temporary place of business of the seller includes a sale outside of a distribution center, manufacturing plant, storage yard, warehouse, or similar facility of the seller in a parking lot or similar space sharing the same physical address as the facility but not within the walls of the facility.

(23) Transit authority--A metropolitan rapid transit authority (MTA), advanced transportation district (ATD), regional or subregional transportation authority (RTA), city transit department (CTD), county transit authority (CTA), regional mobility authority (RMA) or coordinated county transportation authority created under Transportation Code, Chapters 370, 451, 452, 453, 457, or 460.

CP Ex-31-0009 of 0017

(24) Two percent cap--A reference to the general rule that, except as otherwise provided by Texas law and as explained in this section, a seller cannot collect, and a purchaser is not obligated to pay, more than 2.0% of the sales price of a taxable item in total local sales and use taxes for all local taxing jurisdictions.

(25) Use--This term has the meaning given in §3.346 of this title.

(26) Use tax--A tax imposed on the storage, use or other consumption of a taxable item in this state.

(b) Determining the place of business of a seller.

(1) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller for the purpose of selling taxable items where sales personnel of the seller receive three or more orders for taxable items during the calendar year from persons other than employees, independent contractors, and natural persons affiliated with the seller is a place of business of the seller. The forwarding of previously received orders to the facility for fulfilment does not make the facility a place of business.

(B) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller.

(2) Kiosks. A kiosk is not a place of business of the seller for the purpose of determining where a sale is consummated for local tax purposes. A seller who owns or operates a kiosk in Texas is, however, engaged in business in this state as provided in §3.286 of this title.

(3) Purchasing offices.

(A) A purchasing office is not a place of business of the seller if the purchasing office exists solely to rebate a portion of the local sales and use tax imposed by Tax Code, Chapters 321, 322, or 323 to a business with which it contracts; or if the purchasing office functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323. A purchasing office does not exist solely to rebate a portion of the local sales and use tax or to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323 if the purchasing office provides significant business services to the contracting business beyond processing invoices, including logistics management, purchasing, inventory control, or other vital business services.

(B) In making a determination under subparagraph (A) of this paragraph, as to whether a purchasing office provides significant business services to the contracting business beyond processing invoices, the comptroller will compare the total value of the other business services to the value of processing invoices. If the total value of the other business services, including logistics management, purchasing, inventory control, or other vital business services, is less than the value of the service to process invoices, then the purchasing office will be presumed not to be a place of business of the seller.

(C) If the comptroller determines that a purchasing office is not a place of business of the seller, the sale of any taxable item is deemed to be consummated at the place of business of the seller from whom the purchasing office purchased the taxable item for resale and local sales and use taxes are due according to the following rules.

(i) When taxable items are purchased from a Texas seller, local sales taxes are due based on the location of the seller's place of business where the sale is deemed to be consummated, as determined in accordance with subsection (c) of this section.

(ii) When the sale of a taxable item is deemed to be consummated at a location outside of this state, local use tax is due based on the location where the items are first stored, used or consumed by the entity that contracted with the purchasing office in accordance with subsection (d) of this section.

(4) An order that is received by a salesperson who is not at a place of business of the seller when the salesperson receives the order is treated as being received at the location from which the salesperson operates. Examples include orders that a salesperson receives [Orders received by sales personnel who are not at a place of business of the seller in Texas when they receive the order, including orders received] by mail, telephone, including Voice over Internet Protocol and cellular phone calls, facsimile, and email while traveling. The [This type of order is treated as being received at the] location from which the salesperson operates[, that] is[,] the principal fixed location where the salesperson conducts work-related activities. The location from which a salesperson operates will be a place of business of the seller only if the location meets the definition of a "place of business of a seller" in subsection (a)(16) of this section on its own, without regard to the orders imputed to that location by this paragraph. [Orders received prior to October 1, 2021, may also be treated as being received at the outlet, office, or location operated by the seller that serves as a base of operations or that provides administrative support to the salesperson, and these locations will be treated as places of business of the seller for purposes of subsection (c) of this section.]

(5) An order that is not received by a salesperson is received at a location that is not a place of business of the seller. Examples are orders received by a computer server through a shopping cart software program and orders received by an automated telephone ordering system. [Orders not received by sales personnel, including orders received by a shopping website or shopping software application. Effective October 1, 2021, these orders are received at locations that are not places of business of the seller.]

(c) Local sales tax- Consummation of sale - determining the local taxing jurisdictions to which sales tax is due. Except for the special rules applicable to remote sellers in subsection (i)(3) of this section, direct payment permit purchases in subsection (j) of this section, and certain taxable items, including taxable items sold by a marketplace provider, as provided in subsection (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in the state.

(1) Consummation of sale- order received at a place of business of the seller in Texas.

(A) Order placed in person. Except as provided by paragraph (3) of this subsection, when an order for a taxable item is placed in person at a seller's place of business in Texas, including at a temporary place of business of the seller in Texas, the sale of that item is consummated at that place of business of the seller, regardless of the location where the order is fulfilled.

(B) Order not placed in person.

(i) Order fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

CP Ex-31-0010 of 0017

*(ii)* Order not fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a location that is not a place of business of the seller in Texas, the sale is consummated at the place of business where the order is received.

(2) Consummation of sale- order not received at a place of business of the seller in Texas.

(A) Order fulfilled at a place of business of the seller in Texas. When an order is received at a location that is not a place of business of the seller in Texas or is received outside of Texas, and is fulfilled from a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

(B) Order not fulfilled from a place of business of the seller in Texas.

*(i)* Order fulfilled in Texas. When an order is received at a location that is not a place of business of the seller in Texas and is fulfilled from a location in Texas that is not a place of business of the seller, the sale is consummated at the location in Texas to which the order is shipped or delivered, or at which the purchaser of the item takes possession.

*(ii)* Order not fulfilled in Texas. When an order is received by a seller at a location <u>that is not a place of business of the seller in Texas</u> [outside of Texas or by a remote seller], and is fulfilled from a location outside of Texas, the sale is not consummated in Texas. However, <u>a use is considered to be consummated at the first point in this state where the item is stored, used, or consumed after the interstate transit has ceased. A taxable item delivered to a point in this state is presumed to be used for storage, use, or consumption at that point until the contrary is established. Local use tax should be collected as provided in subsection (d) of this section.</u> [local use tax is due based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section.] Except as provided in subsection (i)(3) of this section, a remote seller required to collect state use tax under §3.286(b)(2) of this title must also collect local use tax [based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession].

(3) Exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5). This paragraph is effective September 1, 2024. If applicable, the local sales tax due on the sale of a taxable item is based on the location of the qualifying warehouse, which is a place of business of the seller, from which the item is shipped or delivered or at which the purchaser of the item takes possession.

(4) Local sales taxes are due to each local taxing jurisdiction with sales tax in effect where the sale is consummated. Local use tax may also be due if the total amount of local sales taxes due does not reach the two percent cap, and the item purchased is shipped or delivered to a location in one or more different local taxing jurisdictions, as provided in subsection (d) of this section.

(5) Multiple special purpose district taxes, multiple transit authority sales taxes, or a combination of the two may apply to a single transaction. If the sale of a taxable item is consummated at a location within the boundaries of multiple special purpose districts or transit authorities, local sales tax is owed to each of the jurisdictions in effect at that location. For example, a place of business of the seller located in the city of San Antonio is within the boundaries of both the San Antonio Advanced Transportation District and the San Antonio Metropolitan Transit Authority, and the seller is required to collect sales tax for both

transit authorities. Similarly, a place of business of the seller in Flower Mound is located within the boundaries of two special purpose districts, the Flower Mound Crime Control District and the Flower Mound Fire Control District, and the seller is responsible for collecting sales tax for both special purpose districts.

(6) Itinerant vendors; vending machines.

(A) Itinerant vendors. Sales made by itinerant vendors are consummated at, and itinerant vendors must collect sales tax based upon, the location where the item is delivered or at which the purchaser of the item takes possession. Itinerant vendors do not have any responsibility to collect use tax.

(B) Vending machines. Sales of taxable items made from a vending machine are consummated at the location of the vending machine. See §3.293 of this title (relating to Food; Food Products; Meals; Food Service) for more information about vending machine sales.

(d) Local use tax. The provisions addressing the imposition of state use tax in §3.346 of this title also apply to the imposition of local use tax. For example, consistent with §3.346(e) of this title, all taxable items that are shipped or delivered to a location in this state that is within the boundaries of a local taxing jurisdiction are presumed to have been purchased for use in that local taxing jurisdiction as well as presumed to have been purchased for use in the state.

(1) General rules.

(A) When local use taxes are due in addition to local sales taxes as provided by subsection (c) of this section, all applicable use taxes must be collected or accrued in the following order until the two percent cap is reached: city, county, special purpose district, and transit authority. If more than one special purpose district use tax is due, all such taxes are to be collected or accrued before any transit authority use tax is collected or accrued. See subparagraphs (D) and (E) of this paragraph.

(B) If a local use tax cannot be collected or accrued at its full rate without exceeding the two percent cap, the seller cannot collect it, or any portion of it, and the purchaser is not responsible for accruing it.

(C) If a seller collects a local sales tax on an item, or a purchaser accrues a local sales tax on an item, a use tax for the same type of jurisdiction is not due on the same item. For example, after a city sales tax has been collected or accrued for an item, no use tax is due to that same or a different city on that item, but use tax may be due to a county, special purpose district, or transit authority. Similarly, if one or more special purpose district sales taxes have been collected or accrued for an item, no special purpose district use tax is due on that item, and if one or more transit authority sales taxes have been collected or accrued for an item, no transit authority use tax is due on that item.

(D) Collection or accrual of use tax for multiple special purpose districts. If more than one special purpose district use tax is in effect at the location where use of an item occurs, the special purpose district taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all special purpose district taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the district with the earliest effective date would exceed the two percent cap, the tax for that district is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (C) of this paragraph, whether use tax is due for the district that next became effective.

CP Ex-31-0011 of 0017

*(i)* If the competing special purpose district taxes became effective on the same date, the special purpose district taxes are due in the order of the earliest date for which the election in which the district residents authorized the imposition of sales and use tax by the district was held.

*(ii)* If the elections to impose the local taxes were held on the same date, the special purpose district taxes are due in the order of the earliest date for which the enabling legislation under which each district was created became effective.

*(E)* Collection or accrual of use tax for multiple transit authorities. If more than one transit authority use tax is in effect at the location where use of an item occurs, and the two percent cap has not been met, the transit authority taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all transit authority taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the authority with the earliest effective date would exceed the two percent cap, the tax for that authority is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A)- (D) of this paragraph, whether use tax is due for the authority that next became effective.

*(i)* If the competing transit authorities became effective on the same date, the transit authority taxes are due in the order of the earliest date for which the election in which the authority residents authorized the imposition of sales and use tax by the authority was held.

*(ii)* If the elections to impose local taxes were held on the same date, the transit authority use taxes are due in the order of the earliest date for which the enabling legislation under which each authority was created became effective.

(2) General use tax rules applied to specific situations. The following fact patterns explain how local use tax is to be collected or accrued and remitted to the comptroller based on, and subject to, the general rules in paragraph (1) of this subsection.

(A) Sale consummated outside the state, item delivered from outside the state or from a location in Texas that is not operated by the seller - local use tax due. Except as provided in subsection (i)(3) of this section, if a sale is consummated outside of this state according to the provisions of subsection (c) of this section, and the item purchased is either shipped or delivered to a location in this state as designated by the purchaser from a location outside of the state, or if the order is drop shipped directly to the purchaser from a third-party supplier, local use tax is owed based upon the location in this state to which the order is shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use tax due on the sale. If the seller does not collect the local use taxes due on the sale, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller according to the provisions in paragraph (1) of this subsection. For example, if an order for a taxable item is received by a seller at a location outside of Texas, and the order is shipped to the purchaser from a location outside of the state, local use tax is due based upon the location to which the order is shipped or delivered or at which the purchaser of the item takes possession.

(B) Sale consummated in Texas outside a local taxing jurisdiction, item delivered into one or more local taxing jurisdictions - local use tax due. If a sale is consummated at a location in Texas that is outside of the boundaries of any local taxing jurisdiction according to the provisions of subsection (c) of this section, and the order is shipped or delivered to the purchaser at a location in this state that is within the boundaries of one or more local taxing jurisdictions, local use tax is due based on the location to which the items are shipped or delivered

or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use taxes due on the sale, regardless of the location of the seller in Texas. If the seller fails to collect any local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(C) Sale consummated in any local taxing jurisdictions imposing less than 2.0% in total local taxes - local sales taxes and use taxes due. If a sale is consummated at a location in Texas where the total local sales tax rate imposed by the taxing jurisdictions in effect at that location does not equal 2.0% according to the provisions of subsection (c) of this section, and the item is shipped or delivered to the purchaser at a location in this state that is inside the boundaries of a different local taxing jurisdiction, additional local use tax may be due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the two percent cap. The seller is responsible for collecting any additional local use taxes due on the sale, regardless of the location of the seller in Texas. See subsection (i) of this section. If the seller fails to collect the additional local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

*(i)* Example one - if an order is received in person at a place of business of the seller, such that the sale is consummated at the location where the order is received as provided under subsection (c)(1)(A) of this section, and the local sales tax due on the sale does not meet the two percent cap, additional local use taxes are due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the provisions in paragraph (1) of this subsection.

*(ii)* Example two - if a seller receives an order for a taxable item at a seller's place of business in Texas, and the seller ships or delivers the item from an out-of-state location to a location in this state as designated by the purchaser, local sales tax is due based upon the location of the place of business of the seller where the order is received. If the local sales tax due on the item does not meet the two percent cap, use taxes, subject to the provisions in paragraph (1) of this subsection, are due based upon the location where the items are shipped or delivered or at which the purchaser of the item takes possession.

(e) Effect of other law.

(1) Tax Code, Title 2, Subtitles A (General Provisions) and B (Enforcement and Collection), Tax Code, Chapter 141 (Multistate Tax Compact) and Tax Code, Chapter 151 (Limited Sales, Excise, and Use Tax) apply to transactions involving local taxes. Related sections of this title and comptroller rulings shall also apply with respect to local taxes. This includes authorities such as court cases and federal law that affect whether an item is taxable or is excluded or exempt from taxation.

(2) Permits, exemption certificates, and resale certificates required by Tax Code, Chapter 151, shall also satisfy the requirements for collecting and remitting local taxes, unless otherwise indicated by this section or other sections of this title. For example, see subsection (n) of this section concerning prior contract exemptions.

(3) Any provisions in this section or other sections of this title related to a seller's responsibilities for collecting and remitting local taxes to the comptroller shall also apply to a purchaser if the seller does not collect local taxes that are due. The comptroller may proceed against the seller or purchaser for the local tax owed by either.

(f) Tax rates. Except as otherwise provided by law, no local governmental entity may adopt or increase a sales and use tax if, as a result of the adoption or increase of the tax, the combined rate of all sales and use taxes imposed by local taxing jurisdictions having territory in

CP Ex-31-0012 of 0017

the local governmental entity would exceed 2.0% at any location within the boundaries of the local governmental entity's jurisdiction. The following are the local tax rates that may be adopted.

(1) Cities. Cities may impose sales and use tax at a rate of up to 2.0%.

(2) Counties. Counties may impose sales and use tax at rates ranging from 0.5% to 1.5%.

(3) Special purpose districts. Special purpose districts may impose sales and use tax at rates ranging from 0.125% to 2.0%.

(4) Transit authorities. Transit authorities may impose sales and use tax at rates ranging from 0.25% to 1.0%.

(g) Jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements.

(1) Jurisdictional boundaries.

(A) City boundaries. City taxing jurisdictional boundaries cannot overlap one another and a city cannot impose a sales and use tax in an area that is already within the jurisdiction of another city.

(B) County boundaries. County tax applies to all locations within that county.

(C) Special purpose district and transit authority boundaries. Special purpose districts and transit authorities may cross or share boundaries with other local taxing jurisdictions and may encompass, in whole or in part, other local taxing jurisdictions, including cities and counties. A geographic location or address in this state may lie within the boundaries of more than one special purpose district or more than one transit authority.

(D) Extraterritorial jurisdictions. Except as otherwise provided by paragraph (3) of this subsection concerning strategic partnership agreements and subsection (l)(5) of this section concerning the City of El Paso and Fort Bliss, city sales and use tax does not apply to taxable sales that are consummated outside the boundaries of the city, including sales made in a city's extraterritorial jurisdiction. However, an extraterritorial jurisdiction may lie within the boundaries of a special purpose district, transit authority, county, or any combination of the three, and the sales and use taxes for those jurisdictions would apply to those sales.

(2) Combined areas. A combined area is an area where the boundaries of a city overlap the boundaries of one or more other local taxing jurisdictions as a result of an annexation of additional territory by the city, and where, as the result of the imposition of the city tax in the area in addition to the local taxes imposed by the existing taxing jurisdictions, the combined local tax rate would exceed 2.0%. The comptroller shall make accommodations to maintain a 2.0% rate in any combined area by distributing the 2.0% tax revenue generated in these combined areas to the local taxing jurisdictions located in the combined areas as provided in Tax Code, §321.102 or Health and Safety Code, §775.0754. Combined areas are identified on the comptroller's website. Sellers engaged in transactions on which local sales or use taxes are due in a combined area, or persons who must self-accrue and remit tax directly to the comptroller, must use the combined area local code when reporting the tax rather than the codes for the individual city, county, special purpose districts, or transit authorities that make up the combined area.

(3) City tax imposed through strategic partnership agreements.

(A) The governing bodies of a district, as defined in Local Government Code, §43.0751, and a city may enter into a limited-purpose annexation agreement known as a strategic partnership agreement. Under this agreement, the city may impose sales and use tax within all or part of the boundaries of a district. Areas within a district that are annexed for this limited purpose are treated as though they are within the boundaries of the city for purposes of city sales and use tax.

(B) Counties, transit authorities, and special purpose districts may not enter into strategic partnership agreements. Sales and use taxes imposed by those taxing jurisdictions do not apply in the limited-purpose annexed area as part of a strategic partnership agreement between a city and an authorized district. However, a county, special purpose district, or transit authority sales and use tax, or any combination of these three types of taxes, may apply at locations included in a strategic partnership agreement between a city and an authorized district if the tax is imposed in that area by the applicable jurisdiction as allowed under its own controlling authorities.

(C) Prior to September 1, 2011, the term "district" was defined in Local Government Code, §43.0751 as a municipal utility district or a water control and improvement district. The definition was amended effective September 1, 2011, to mean a conservation and reclamation district operating under Water Code, Chapter 49.

(h) Places of business of the seller and job sites crossed by local taxing jurisdiction boundaries.

(1) Places of business of the seller crossed by local taxing jurisdiction boundaries. If a place of business of the seller is crossed by one or more local taxing jurisdiction boundaries so that a portion of the place of business of the seller is located within a taxing jurisdiction and the remainder of the place of business of the seller lies outside of the taxing jurisdiction, tax is due to the local taxing jurisdictions in which the sales office is located. If there is no sales office, sales tax is due to the local taxing jurisdictions in which any cash registers are located.

(2) Job sites.

(A) Residential repair and remodeling; new construction of an improvement to realty. When a contractor is improving real property under a separated contract, and the job site is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on any separately stated charges for taxable items incorporated into the real property must be allocated to the local taxing jurisdictions based on the total square footage of the real property improvement located within each jurisdiction, including the square footage of any standalone structures that are part of the construction, repair, or remodeling project. For more information about tax due on materials used at residential and new construction job sites, refer to §3.291 of this title (relating to Contractors).

(B) Nonresidential real property repair and improvement. When taxable services are performed to repair, remodel, or restore nonresidential real property, including a pipeline, transmission line, or parking lot, that is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on the taxable services, including materials and any other charges connected to the services performed, must be allocated among the local taxing jurisdictions based upon the total mileage or square footage, as appropriate, of the repair, remodeling, or restoration project located in each jurisdiction. For more information about tax due on materials used at nonresidential real property repair and remodeling job sites, refer to §3.357 of this title (relating to Nonresidential Real Property Repair, Remodeling, and Restoration; Real Property Maintenance).

(i) Sellers' and purchasers' responsibilities for collecting or accruing local taxes.

(1) Sale consummated in Texas; seller responsible for collecting local sales taxes and applicable local use taxes. When a sale

CP Ex-31-0013 of 0017

of a taxable item is consummated at a location in Texas as provided by subsection (c) of this section, the seller must collect each local sales tax in effect at the location. If the total rate of local sales tax due on the sale does not reach the two percent cap, and the seller ships or delivers the item into another local taxing jurisdiction, then the seller is required to collect additional local use taxes due, if any, based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession, regardless of the location of the seller in Texas. For more information regarding local use taxes, refer to subsection (d) of this section.

(2) Out-of-state sale; seller engaged in business in Texas. Except as provided in paragraph (3) of this subsection, when a sale is not consummated in Texas, a seller who is engaged in business in this state is required to collect and remit local use taxes due, if any, on orders of taxable items shipped or delivered at the direction of the purchaser into a local taxing jurisdiction in this state based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section.

(3) Local use tax rate for remote sellers.

(A) A remote seller required to collect and remit one or more local use taxes in connection with a sale of a taxable item must compute the amount using:

(i) the combined tax rate of all applicable local use taxes based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession; or

(ii) at the remote seller's election, the single local use tax rate published in the *Texas Register.*

(B) A remote seller that is storing tangible personal property in Texas to be used for fulfillment at a facility of a marketplace provider that has certified that it will assume the rights and duties of a seller with respect to the tangible personal property, as provided for in §3.286 of this title, may elect the single local use tax rate under subparagraph (A)(ii) of this paragraph.

(C) Notice to the comptroller of election and revocation of election.

(i) Before using the single local use tax rate, a remote seller must notify the comptroller of its election using a form prescribed by the comptroller. A remote seller may also notify the comptroller of the election on its use tax permit application form. The remote seller must use the single local use tax rate for all of its sales of taxable items until the election is revoked as provided in clause (ii) of this subparagraph.

(ii) A remote seller may revoke its election by filing a form prescribed by the comptroller. If the comptroller receives the notice by October 1, the revocation will be effective January 1 of the following year. If the comptroller receives the notice after October 1, the revocation will be effective January 1 of the year after the following year. For example, a remote seller must notify the comptroller by October 1, 2020, for the revocation to be effective January 1, 2021. If the comptroller receives the revocation on November 1, 2020, the revocation will be effective January 1, 2022.

(D) Single local use tax rate.

(i) The single local use tax rate in effect for the period beginning October 1, 2019, and ending December 31, 2019, is 1.75%.

(ii) The single local use tax rate in effect for the period beginning January 1, 2020, and ending December 31, 2020, is 1.75%.

(E) Annual publication of single local use tax rate. Before the beginning of a calendar year, the comptroller will publish notice of the single local use tax rate in the Texas Register that will be in effect for that calendar year.

(F) Calculating the single local use tax rate. The single local use tax rate effective in a calendar year is equal to the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year. As soon as practicable after the end of a state fiscal year, the comptroller must determine the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year by:

(i) dividing the total amount of net local sales and use taxes remitted to the comptroller during the state fiscal year by the total amount of net state sales and use tax remitted to the comptroller during the state fiscal year;

(ii) multiplying the amount computed under clause (i) of this subparagraph by the rate provided in Tax Code, §151.051; and

(iii) rounding the amount computed under clause (ii) of this subparagraph to the nearest .0025.

(G) Direct refund. A purchaser may request a refund based on local use taxes paid in a calendar year for the difference between the single local use tax rate paid by the purchaser and the amount the purchaser would have paid based on the combined tax rate for all applicable local use taxes. Notwithstanding the refund requirements under §3.325(a)(1) of this title (relating to Refunds and Payments Under Protest), a non-permitted purchaser may request a refund directly from the comptroller for the tax paid in the previous calendar year, no earlier than January 1 of the following calendar year within the statute of limitation under Tax Code, 111.104 (Refunds).

(H) Marketplace providers. Notwithstanding subparagraph (A) of this paragraph, marketplace providers may not use the single local use tax rate and must compute the amount of local use tax to collect and remit using the combined tax rate of all applicable local use taxes.

(4) Purchaser responsible for accruing and remitting local taxes if seller fails to collect.

(A) If a seller does not collect the state sales tax, any applicable local sales taxes, or both, on a sale of a taxable item that is consummated in Texas, then the purchaser is responsible for filing a return and paying the tax. The local sales taxes due are based on the location in this state where the sale is consummated as provided in subsection (c) of this section.

(B) A purchaser who buys an item for use in Texas from a seller who does not collect the state use tax, any applicable local use taxes, or both, is responsible for filing a return and paying the tax. The local use taxes due are based on the location where the item is first stored, used, or consumed by the purchaser.

(C) For more information about how to report and pay use tax directly to the comptroller, see §3.286 of this title.

(5) Local tax is due on the sales price of a taxable item, as defined in Tax Code, §151.007, in the report period in which the taxable item is purchased or the period in which the taxable item is first stored, used, or otherwise consumed in a local taxing jurisdiction.

CP Ex-31-0014 of 0017

(6)    A purchaser is not liable for additional local use tax if the purchaser pays local use tax using the rate elected by an eligible remote seller according to paragraph (3) of this subsection. The remote seller must be identified on the comptroller's website as electing to use the single local use tax rate. A purchaser must verify that the remote seller is listed on the comptroller's website. If the remote seller is not listed on the comptroller's website, the purchaser will be liable for additional use tax due in accordance to paragraph (4) of this subsection.

(j)    Items purchased under a direct payment permit.

(1)    When taxable items are purchased under a direct payment permit, local use tax is due based upon the location where the permit holder first stores the taxable items, except that if the taxable items are not stored, then local use tax is due based upon the location where the taxable items are first used or otherwise consumed by the permit holder.

(2)    If, in a local taxing jurisdiction, storage facilities contain taxable items purchased under a direct payment exemption certificate and at the time of storage it is not known whether the taxable items will be used in Texas, then the taxpayer may elect to report the use tax either when the taxable items are first stored in Texas or are first removed from inventory for use in Texas, as long as use tax is reported in a consistent manner. See also §3.288(i) of this title (relating to Direct Payment Procedures and Qualifications) and §3.346(g) of this title.

(3)    If local use tax is paid on stored items that are subsequently removed from Texas before they are used, the tax may be recovered in accordance with the refund and credit provisions of §3.325 of this title and §3.338 of this title (relating to Multistate Tax Credits and Allowance of Credit for Tax Paid to Suppliers).

(k)    Special rules for certain taxable goods and services. Sales of the following taxable goods and services are consummated at, and local tax is due based upon, the location indicated in this subsection.

(1)    Amusement services. Local tax is due based upon the location where the performance or event occurs. For more information on amusement services, refer to §3.298 of this title (relating to Amusement Services).

(2)    Cable services. When a service provider uses a cable system to provide cable television or bundled cable services to customers, local tax is due as provided for in §3.313 of this title. When a service provider uses a satellite system to provide cable services to customers, no local tax is due on the service in accordance with the Telecommunications Act of 1996, §602.

(3)    Florists. Local sales tax is due on all taxable items sold by a florist based upon the location where the order is received, regardless of where or by whom delivery is made. Local use tax is not due on deliveries of taxable items sold by florists. For example, if the place of business of the florist where an order is taken is not within the boundaries of any local taxing jurisdiction, no local sales tax is due on the item and no local use tax is due regardless of the location of delivery. If a Texas florist delivers an order in a local taxing jurisdiction at the instruction of an unrelated florist, and if the unrelated florist did not take the order within the boundaries of a local taxing jurisdiction, local use tax is not due on the delivery. For more information about florists' sales and use tax obligations, refer to §3.307 of this title (relating to Florists).

(4)    Landline telecommunications services. Local taxes due on landline telecommunications services are based upon the location of the device from which the call or other transmission originates. If the seller cannot determine where the call or transmission originates, local taxes due are based on the address to which the service is billed.

For more information, refer to §3.344 of this title (relating to Telecommunications Services).

(5)    Marketplace provider sales. Local taxes are due on sales of taxable items through a marketplace provider based on the location in this state to which the item is shipped or delivered or at which the purchaser takes possession. For more information, refer to §3.286 of this title.

(6)    Mobile telecommunications services. Local taxes due on mobile telecommunications services are based upon the location of the customer's place of primary use as defined in §3.344(a)(8) of this title, and local taxes are to be collected as indicated in §3.344(h) of this title.

(7)    Motor vehicle parking and storage. Local taxes are due based on the location of the space or facility where the vehicle is parked. For more information, refer to §3.315 of this title (relating to Motor Vehicle Parking and Storage).

(8)    Natural gas and electricity. Any local city and special purpose taxes due are based upon the location where the natural gas or electricity is delivered to the purchaser. As explained in subsection (l)(1) of this section, residential use of natural gas and electricity is exempt from all county sales and use taxes and all transit authority sales and use taxes, most special purpose district sales and use taxes, and many city sales and use taxes. A list of the cities and special purpose districts that do impose, and those that are eligible to impose, local sales and use tax on residential use of natural gas and electricity is available on the comptroller's website. For more information, also refer to §3.295 of this title (relating to Natural Gas and Electricity).

(9)    Nonresidential real property repair and remodeling services. Local taxes are due on services to remodel, repair, or restore nonresidential real property based on the location of the job site where the remodeling, repair, or restoration is performed. See also subsection (h)(2)(B) of this section and §3.357 of this title.

(10)    Residential real property repair and remodeling and new construction of a real property improvement performed under a separated contract. When a contractor constructs a new improvement to realty pursuant to a separated contract or improves residential real property pursuant to a separated contract, the sale is consummated at the job site at which the contractor incorporates taxable items into the customer's real property. See also subsection (h)(2)(A) of this section and §3.291 of this title.

(11)    Waste collection services. Local taxes are due on garbage or other solid waste collection or removal services based on the location at which the waste is collected or from which the waste is removed. For more information, refer to §3.356 of this title (relating to Real Property Service).

(l)    Special exemptions and provisions applicable to individual jurisdictions.

(1)    Residential use of natural gas and electricity.

(A)    Mandatory exemptions from local sales and use tax. Residential use of natural gas and electricity is exempt from most local sales and use taxes. Counties, transit authorities, and most special purpose districts are not authorized to impose sales and use tax on the residential use of natural gas and electricity. Pursuant to Tax Code, §321.105, any city that adopted a local sales and use tax effective October 1, 1979, or later is prohibited from imposing tax on the residential use of natural gas and electricity. See §3.295 of this title.

(B)    Imposition of tax allowed in certain cities. Cities that adopted local sales tax prior to October 1, 1979, may, in accordance with the provisions in Tax Code, §321.105, choose to repeal the exemp-

tion for residential use of natural gas and electricity. The comptroller's website provides a list of cities that impose tax on the residential use of natural gas and electricity, as well as a list of those cities that do not currently impose the tax, but are eligible to do so.

(C) Effective January 1, 2010, a fire control, prevention, and emergency medical services district organized under Local Government Code, Chapter 344 that imposes sales tax under Tax Code, §321.106, or a crime control and prevention district organized under Local Government Code, Chapter 363 that imposes sales tax under Tax Code, §321.108, that is located in all or part of a municipality that imposes a tax on the residential use of natural gas and electricity as provided under Tax Code, §321.105 may impose tax on residential use of natural gas and electricity at locations within the district. A list of the special purpose districts that impose tax on residential use of natural gas and electricity and those districts eligible to impose the tax that do not currently do so is available on the comptroller's website.

(2) Telecommunication services. Telecommunications services are exempt from all local sales taxes unless the governing body of a city, county, transit authority, or special purpose district votes to impose sales tax on these services. However, since 1999, under Tax Code, §322.109(d), transit authorities created under Transportation Code, Chapter 451 cannot repeal the exemption unless the repeal is first approved by the governing body of each city that created the local taxing jurisdiction. The local sales tax is limited to telecommunications services occurring between locations within Texas. See §3.344 of this title. The comptroller's website provides a list of local taxing jurisdictions that impose tax on telecommunications services.

(3) Emergency services districts.

(A) Authority to exclude territory from imposition of emergency services district sales and use tax. Pursuant to the provisions of Health and Safety Code, §775.0751(c-1), an emergency services district wishing to enact a sales and use tax may exclude from the election called to authorize the tax any territory in the district where the sales and use tax is then at 2.0%. The tax, if authorized by the voters eligible to vote on the enactment of the tax, then applies only in the portions of the district included in the election. The tax does not apply to sales made in the excluded territories in the district and sellers in the excluded territories should continue to collect local sales and use taxes for the local taxing jurisdictions in effect at the time of the election under which the district sales and use tax was authorized as applicable.

(B) Consolidation of districts resulting in sales tax sub-districts. Pursuant to the provisions of Health and Safety Code, §775.018(f), if the territory of a district proposed under Health and Safety Code, Chapter 775 overlaps with the boundaries of another district created under that chapter, the commissioners court of each county and boards of the counties in which the districts are located may choose to create a consolidated district in the overlapping territory. If two districts that want to consolidate under Health and Safety Code, §775.024 have different sales and use tax rates, the territory of the former districts located within the consolidated area will be designated as sub-districts and the sales tax rate within each sub-district will continue to be imposed at the rate the tax was imposed by the former district that each sub-district was part of prior to the consolidation.

(4) East Aldine Management District.

(A) Special sales and use tax zones within district; separate sales and use tax rate. As set out in Special District Local Laws Code, §3817.154(e) and (f), the East Aldine Management District board may create special sales and use tax zones within the boundaries of the District and, with voter approval, enact a special sales and use tax rate in each zone that is different from the sales and use tax rate imposed in the rest of the district.

(B) Exemptions from special zone sales and use tax. The sale, production, distribution, lease, or rental of; and the use, storage, or other consumption within a special sales and use tax zone of; a taxable item sold, leased, or rented by the entities identified in clauses (i)- (vi) of this subparagraph are exempt from the special zone sales and use tax. State and all other applicable local taxes apply unless otherwise exempted by law. The special zone sales and use tax exemption applies to:

(i) a retail electric provider as defined by Utilities Code, §31.002;

(ii) an electric utility or a power generation company as defined by Utilities Code, §31.002;

(iii) a gas utility as defined by Utilities Code, §101.003 or §121.001, or a person who owns pipelines used for transportation or sale of oil or gas or a product or constituent of oil or gas;

(iv) a person who owns pipelines used for the transportation or sale of carbon dioxide;

(v) a telecommunications provider as defined by Utilities Code, §51.002; or

(vi) a cable service provider or video service provider as defined by Utilities Code, §66.002.

(5) Imposition of city sales tax and transit tax on certain military installations; El Paso and Fort Bliss. Pursuant to Tax Code, §321.1045 (Imposition of Sales and Use Tax in Certain Federal Military Installations), for purposes of the local sales and use tax imposed under Tax Code, Chapter 321, the city of El Paso includes the area within the boundaries of Fort Bliss to the extent it is in the city's extraterritorial jurisdiction. However, the El Paso transit authority does not include Fort Bliss. See Transportation Code, §453.051 concerning the Creation of Transit Departments.

(m) Restrictions on local sales tax rebates and other economic incentives. Pursuant to Local Government Code, §501.161, Section 4A and 4B development corporations may not offer to provide economic incentives, such as local sales tax rebates authorized under Local Government Code, Chapters 380 or 381, to persons whose business consists primarily of purchasing taxable items using resale certificates and then reselling those same items to a related party. A related party means a person or entity which owns at least 80% of the business enterprise to which sales and use taxes would be rebated as part of an economic incentive.

(n) Prior contract exemptions. The provisions of §3.319 of this title (relating to Prior Contracts) concerning definitions and exclusions apply to prior contract exemptions.

(1) Certain contracts and bids exempt. No local taxes are due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of any local tax if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of any local tax if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(2) Annexations. Any annexation of territory into an existing local taxing jurisdiction is also a basis for claiming the exemption provided by this subsection.

CP Ex-31-0016 of 0017

(3)   Local taxing jurisdiction rate increase; partial exemption for certain contracts and bids. When an existing local taxing jurisdiction raises its sales and use tax rate, the additional amount of tax that would be due as a result of the rate increase is not due on the sale, use, storage, or other consumption in this state of taxable items used:

(A)   for the performance of a written contract executed prior to the effective date of the tax rate increase if the contract may not be modified because of the tax; or

(B)   pursuant to the obligation of a bid or bids submitted prior to the effective date of the tax rate increase if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(4)   Three-year statute of limitations.

(A)   The exemption in paragraph (1) of this subsection and the partial exemption in paragraph (3) of this subsection have no effect after three years from the date the adoption or increase of the tax takes effect in the local taxing jurisdiction.

(B)   The provisions of §3.319 of this title apply to this subsection to the extent they are consistent.

(C)   Leases. Any renewal or exercise of an option to extend the time of a lease or rental contract under the exemptions provided by this subsection shall be deemed to be a new contract and no exemption will apply.

(5)   Records. Persons claiming the exemption provided by this subsection must maintain records which can be verified by the comptroller or the exemption will be lost.

(6)   Exemption certificate. An identification number is required on the prior contract exemption certificates furnished to sellers. The identification number should be the person's 11-digit Texas taxpayer number or federal employer's identification (FEI) number.

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on September 9, 2022.

TRD-202203623
Jenny Burleson
Director, Tax Policy Division
Comptroller of Public Accounts
Earliest possible date of adoption: October 23, 2022
For further information, please call: (512) 475-2220

♦   ♦   ♦

# CHAPTER 16.   BROADBAND DEVELOPMENT

# SUBCHAPTER B.   BROADBAND DEVELOPMENT PROGRAM

## 34 TAC §§16.30 - 16.46

The Comptroller of Public Accounts proposes new §16.30, concerning definitions, §16.31, concerning notice of funds availability, §16.32, concerning federal funding; conflict with laws, rules, regulations, or guidance, §16.33, concerning designated area eligibility, §16.34, concerning designated area reclassification, §16.35, concerning program eligibility requirements, §16.36, concerning application process generally, §16.37, concerning overlapping applications or project areas,

§16.38, concerning special rule for overlapping project areas in noncommercial applications, §16.39, concerning application requirements, §16.40, concerning evaluation criteria, §16.41, concerning application protest process, §16.42, concerning awards; grant agreement, §16.43, concerning reporting, §16.44, concerning records retention; audit, §16.45, concerning failure to perform, and §16.46, concerning forms; notices. These new sections implement the Texas Broadband Development Office. The new sections will be located in Chapter 16 (Broadband Development), new Subchapter B (Broadband Development Program).

The proposal is to comply with Government Code, Chapter 490I, which was enacted by House Bill 5, 87th Legislature, R.S., 2021. Government Code, §490I.0109, permits the comptroller to adopt rules regarding the Texas Broadband Development Office as necessary to implement that chapter.

Section 16.30 provides definitions.

Section 16.31 provides that the office shall publish a notice of funds availability.

Section 16.32 establishes that the office may establish eligibility and program requirements and preferences and make award decisions in compliance with state or federal law, rule, regulation, or guidance applicable to the type of funding to the extent necessary to avoid a conflict between the relevant law, rule, regulation, or guidance and this subchapter.

Section 16.33 describes designated area eligibility requirements in compliance with state and federal law, rule, regulation and guidance.

Section 16.34 establishes the process for petitioning for designated area reclassification.

Section 16.35 describes program eligibility requirements.

Section 16.36 describes the application process.

Section 16.37 establishes criteria for overlapping project areas.

Section 16.38 establishes an application amendment process for applications from noncommercial broadband service providers that contain project areas that overlap with project areas in applications from commercial broadband service providers.

Section 16.39 establishes application requirements.

Section 16.40 establishes criteria the office shall use to evaluate applications and provides preferences the office may use to make award decisions.

Section 16.41 establishes an application protest process.

Section 16.42 provides award decisions will be made at the sole discretion of the office, requires awards to be used only for certain specified purposes, and establishes a timeline for grant recipients to negotiate and sign grant agreements.

Section 16.43 provides requirements for the submission of reports and documentation by a grant recipient.

Section 16.44 provides records retention requirements and describes requirements for providing records, documentation, or other information required by the office and authorizes the office, upon reasonable notice, to audit the activities of a grant recipient as necessary to ensure that grant funds are used for the intended purpose of the reimbursement award and that the grant recipient has complied with the terms, conditions, and requirements of the grant.

CP Ex-31-0017 of 0017

TAB

H

The department has determined that the rule as proposed will not affect rural communities, as it does not directly regulate any rural community.

The department has not drafted a local employment impact statement under the Administrative Procedures Act, §2001.022, as the agency has determined that the rule as proposed will not impact local economies.

The department has determined that Government Code, §2001.0225 (Regulatory Analysis of Major Environmental Rules), does not apply to the proposed rule.

The department has determined that there will not be a taking of private real property, as defined by Government Code, Chapter 2007, as a result of the proposed rule.

In compliance with the requirements of Government Code, §2001.0221, the department has prepared the following Government Growth Impact Statement (GGIS). The rule as proposed, if adopted, will not create a government program; not result in an increase or decrease in the number of full-time equivalent employee needs; not result in a need for additional General Revenue funding; not affect the amount of any fee; create a new regulation (to prohibit "canned" hunting of mountain lions and establish trapping rules); not expand an existing regulation; neither increase nor decrease the number of individuals subject to regulation; and not positively or adversely affect the state's economy.

Comments on the proposed rule may be submitted to Richard Heilbrun, Texas Parks and Wildlife Department, 4200 Smith School Road, Austin, Texas 78744; (512) 389-8104; email: richard.heilbrun@tpwd.texas.gov or via the department website at www.tpwd.texas.gov.

The new rule is proposed under the authority of Parks and Wildlife Code, §67.004, which requires the commission by regulation to establish any limits on the taking, possession, propagation, transportation, importation, exportation, sale, or offering for sale of nongame fish or wildlife that the department considers necessary to manage the species.

The proposed new rule affects Parks and Wildlife Code, Chapter 67.

*§65.950.   Mountain Lions (Puma concolor).*

(a)   In this section "captivity" means the state of being held under control, or kept caged, penned, or trapped.

(b)   No person in this state may:

(1)   hunt a mountain lion that is in captivity;

(2)   release a mountain lion from captivity for purposes of:

(A)   being hunted;

(B)   training dogs;

(3)   allow a live mountain lion to be captured in a trap or snare for more than 36 hours; or

(4)   conduct, promote, assist, or advertise an activity prohibited by this subsection.

(c)   This section does not:

(1)   prohibit a person from humanely dispatching a lawfully trapped mountain lion; or

(2)   apply to the use of snares designed to break away or disassemble with 285 pounds of force or less.

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on April 8, 2024.

TRD-202401417
James Murphy
General Counsel
Texas Parks and Wildlife Department
Earliest possible date of adoption: May 19, 2024
For further information, please call: (512) 389-4775



# TITLE 34. PUBLIC FINANCE

# PART 1.   COMPTROLLER OF PUBLIC ACCOUNTS

## CHAPTER 3.   TAX ADMINISTRATION
## SUBCHAPTER O.   STATE AND LOCAL SALES AND USE TAXES

### 34 TAC §3.334

The Comptroller of Public Accounts proposes the repeal of §3.334, concerning local sales and use taxes. The comptroller repeals existing §3.334 to replace it with new §3.334.  The repeal of §3.334 will be effective the date the new §3.334 takes effect.

*Brief explanation of the proposed rulemaking.*

It has been called to the comptroller's attention that the October 27, 2023 notice of proposed rulemaking did not contain a statement of fiscal implications for small businesses or rural communities as required by Government Code, Chapter 2006. See (48 TexReg 6340) (October 27, 2023). Therefore, the comptroller is proposing to repeal the adopted rule as proposed in the October 27, 2023 notice of proposed rulemaking.  The comptroller is simultaneously proposing to readopt the text of the rule effective on January 5, 2024, with amendments, under the same number and title, with the repeal to be effective as of the date of the adopted rule.

*Fiscal note.*

Brad Reynolds, Chief Revenue Estimator, has determined that repeal of the current rule is of no consequence apart from facilitation of adoption of a new substitute §3.334 and has no fiscal implications in and of itself.  The fiscal implications of the repeal are the same as the fiscal implication of the proposed new substitute §3.334. The statements in this fiscal note are supplemented by the additional statements in the preamble to the proposed new §3.334, which the comptroller will propose to adopt concurrently with this proposed repeal.

Brad Reynolds has determined the following for each year of the first five years that the proposed repeal and the substitute new rule will be in effect.

*The additional estimated cost to the state and to local governments expected as a result of enforcing or administering the rule.*

There will be no additional estimated cost to the state and to local governments expected as a result of enforcing or administering the proposed repeal of the existing rule and concurrent new rule.



D-1-GN-21-003198

**TRIAL EXHIBIT**

## CP Ex-38

The proposed amendments explain the manner in which the comptroller intends to apply the consummation statutes. The explanation should lead to greater taxpayer compliance, and less audit resources required to enforce or administer the rule.

*The estimated reductions in costs to the state and to local governments as a result of enforcing or administering the rule.*

There will be no estimated reductions in costs to the state and to local governments as a result of enforcing or administering the proposed repeal of the existing rule and the concurrent new rule. Local governments do not administer the tax, and the comptroller will not be reducing the size of its audit staff as a result of the rule.

*The estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule, and the foreseeable implications relating to cost or revenues of the state or local governments.*

Change in sourcing of transactions subject to local sales taxation could result in net change in sales tax revenue of local taxing entities generally, which may be significant for some jurisdictions. Most, but not all, reductions in taxable transactions sourced to some jurisdictions would be increases in taxable transactions sourced to other jurisdictions. If the comptroller repeals the existing rule and concurrently adopts the proposed new rule, it is estimated that there could be a $28.5 million reduction in aggregate local sales tax levies sourced to unincorporated areas without local sales tax or with cumulative local county and special district tax rates less than the cumulative local rates that applied at the locations where the taxable transactions were formerly sourced. A $28.5 million reduction in aggregate local tax levies would result in reduced state service charge revenue of $570,000.

Reliable estimates of net changes in revenue for each of the 1,759 local sales taxing jurisdictions that might stem from compliance with the proposed repeal of the existing rule and concurrent adoption of new rule cannot feasibly be produced by the comptroller.

*Public benefits and costs.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the existing rule will be repealed and the proposed new rule will be in effect.

The public will benefit from greater clarity regarding the consummation standards, making compliance easier.

There may be additional economic costs to a person required to comply with the proposed repeal of the existing rule and adoption of the new rule. The rule may cause some vendors to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase. And if vendors change from multiple-location reporting to single-location reporting, their compliance burden may diminish.

*Local employment impact statement.*

For the first five years that the existing rule will be repealed and the proposed new rule will be in effect, the effect on local economies and employment, if any, cannot be determined. To the extent that the repeal of the existing rule and the proposed new rule leads to greater awareness and compliance with the local tax consummation standards, some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions. Whether a change in local tax revenue might increase or decrease the provision of local government services to an extent that would affect local economic activity or employment would depend on discretionary actions of the governing body or the electorate of an affected jurisdiction, and cannot be determined.

*Government growth impact statement.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the existing rule will be repealed and the proposed new rule will be in effect: the amendment will not create or eliminate a government program; will not require the creation or elimination of employee positions; will not require an increase or decrease in future legislative appropriations to the comptroller; will not require an increase or decrease in fees paid to the comptroller; will not create a new regulation; will increase the number of individuals subject to the rule's applicability because sellers without a physical presence in a local tax jurisdiction will be required to collect local use tax if they are required to collect state use tax; and will not positively or adversely affect this state's economy.

*Economic impact statement and regulatory flexibility analysis.*

A "rural community" is a municipality with a population of less than 25,000. The comptroller estimates that there are 1,098 such rural communities, of which 1,017 impose a sales tax and may have revenue affected by compliance with the rule.

A "small business" is a legal entity, including a corporation, partnership, or sole proprietorship, that: (A) is formed for the purpose of making a profit; (B) is independently owned and operated; and (C) has fewer than 100 employees or less than $6 million in annual gross receipts. The Comptroller estimates that there are 470,000 businesses with fewer than 100 employees, and 377,000 businesses with annual gross receipts less than $6 million; the sum of these two estimates would overstate the number of small businesses, as many businesses would be expected to have both fewer than 100 employees and less than $6 million in annual gross receipts.

To the extent that the repeal of the existing rule and the adoption of the proposed new rule leads to greater awareness and compliance with the local tax consummation standards, some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions. As previously explained, the comptroller does not have sufficient data on the business operations of each business to identify and quantify the businesses and transactions that might be affected, and the positive or negative revenue impact on each tax jurisdiction.

It is conceivable that repeal of the existing rule and adoption of the proposed new rule may cause some vendors, small or large, to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase.

The repeal of the existing rule and the adoption of the proposed new rule will expand the local tax collection obligations of remote sellers - out-of-state sellers that collect state use tax must also collect local sales tax. The expansion of the remote seller local tax collection obligation may benefit small businesses in Texas by reducing the perception of customers that purchases from out-of-state sellers are preferable because out-of-state sellers charge less sales or use tax than the small businesses in Texas.

The proposed new rule adds subsection (b)(6):

"If a small business or a micro-business operates a single location out of which it conducts all of its business activities, the

CP Ex-38-0002 of 0018

comptroller will presume that the location is a place of business of the seller."

To the extent that repeal of the existing rule facilitates the adoption of the proposed new rule, the repeal will simplify the collection of local sales tax for many small businesses and micro-businesses.

*Public hearing*

The comptroller will hold a hearing to take public comments, on May 9, 2024, at 9:00 a.m. in Room 2.034 of the Barbara Jordan Building, 1601 Congress Avenue, Austin, Texas 78701. Interested persons may sign up to testify beginning at 8:30 a.m. and testimony will be heard on a first come first serve basis beginning at 9:00 a.m. All persons will have 10 minutes to present their testimony and shall also provide their testimony in writing prior to their oral testimony.

*Comments*

You may submit comments on the proposal to Jenny Burleson, Director, Tax Policy Division, P.O. Box 13528 Austin, Texas 78711 or to the email address: tp.rule.comments@cpa.texas.gov. The comptroller must receive your comments no later than 30 days from the date of publication of the proposal in the *Texas Register*.

*Statement of the statutory or other authority under which the rulemaking is proposed.*

The repeal is proposed under Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture), 321.306 (Comptroller's Rules), 322.203 (Comptroller's Rules), and 323.306 (Comptroller's Rules), which authorize the comptroller to adopt rules to implement the tax statutes.

*Sections or articles of the code affected.*

The repeal affects Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; and Tax Code, Chapter 323.

*§3.334. Local Sales and Use Taxes.*
The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on April 8, 2024.

TRD-202401426
Jenny Burleson
Director, Tax Policy Division
Comptroller of Public Accounts
Earliest possible date of adoption: May 19, 2024
For further information, please call: (512) 475-2220

♦    ♦    ♦

## 34 TAC §3.334

The Comptroller of Public Accounts proposes new §3.334, concerning local sales and use taxes. The comptroller proposes new §3.334 to readopt the text of existing §3.334 proposed for repeal, with the addition of paragraph (b)(6).

*Brief explanation of the proposed rule.*

In January 2020, the comptroller initiated a rulemaking to update its local sales and use tax rule. The comptroller subsequently adopted amendments in 2020, 2023, and 2024. (49 TexReg 53) (January 5, 2024), (48 TexReg 391) (January 27, 2023), (45 TexReg 3499) (May 22, 2020). The amendments implemented House Bill 1525, 86th Legislature, 2019, which placed local sales and use tax collection responsibilities on marketplace providers. The amendments also implemented House Bill 2153, 86th Legislature, 2019, which set a single local use tax rate that remote sellers may elect to use. The amendments also expanded the local sales tax collection responsibilities of sellers based on the United States Supreme Court decision in *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018). These amendments have been noncontroversial.

The rulemaking made other revisions to the text, which are now the subject of litigation in Cause No. D-1-GN-21-003198, *City of Coppell, Texas, et al. v. Glenn Hegar,* in the 201st District Court of Travis County Texas. The Plaintiff cities claim that the agency did not comply with the rulemaking procedures in Government Code, §2001.024 and Government Code, Chapter 2006. The purpose of this rulemaking is to address those claims by proposing the readoption of the rule, with amendments, and a more complete statement of the elements required by Government Code, §2001.024 and Government Code, Chapter 2006.

The comptroller proposes to add the following definitions:

"Micro-business--a legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has not more than 20 employees."

"Small business--a legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has fewer than 100 employees or less than $6 million in annual gross receipts."

The definition of "independently owned and operated business" is taken from the Attorney General of Texas' Government Code Chapter 2006 Small Businesses and Rural Communities Impact Guidelines updated in December 2017.

The definitions of "micro-business" and "small business" are taken from Government Code, Chapter 2006.

The comptroller further proposes to add subsection (b)(6):

"If a small business seller or a micro-business seller operates a single location out of which it conducts all of its business activities, the comptroller will presume that the location is a place of business of the seller."

*Fiscal note.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the rule will be in effect. The fiscal note considers the effect of the prior 2020, 2023, and 2024 amendments to the rule, as well as the amendments in this proposal.

*The additional estimated cost to the state and to local governments expected as a result of enforcing or administering the rule.*

There will be no additional estimated cost to the state and to local governments expected as a result of enforcing or administering the proposed rule. The proposed amendments explain the man-

CP Ex-38-0003 of 0018

ner in which the comptroller intends to apply the consummation statutes. The explanation should lead to greater taxpayer compliance, and less audit resources required to enforce or administer the rule.

*The estimated reductions in costs to the state and to local governments as a result of enforcing or administering the rule.*

There will be no estimated reductions in costs to the state and to local governments as a result of enforcing or administering the rule amendments. Local governments do not administer the tax, and the comptroller will not be reducing the size of its audit staff as a result of the rule.

*The estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule, and the foreseeable implications relating to cost or revenues of the state or local governments.*

Change in sourcing of transactions subject to local sales taxation could result in net change in sales tax revenue of local taxing entities generally, with the net change quite significant for some jurisdictions. Most, but not all, reductions in taxable transactions sourced to some jurisdictions would be increases in taxable transactions sourced to other jurisdictions. But to the extent that transactions previously sourced within an incorporated municipality would be sourced to an unincorporated area without a cumulative local tax rate levied by municipal (pursuant to a limited purpose annexation agreement), county, and/or special purpose taxing authorities commensurate with the cumulative local tax rate levied by the municipal, county, and/or special purpose taxing authorities applicable where the transactions were formerly sourced, there would be a reduction in aggregate local sales tax levies and consequent reduction in state service charge revenues under §§ 321.503, 322.303, and 323.503, Tax Code.

For reasons further discussed, reliable estimates of net changes in revenue by individual jurisdictions for the 1,759 local sales taxing jurisdictions that might stem from compliance with the rule cannot feasibly be produced by the comptroller. Even if the requisite audits of potentially affected sales tax permittees in every jurisdiction could be timely performed to support such estimation, the sales tax permittees are not static entities. It would not be plausible to assume that those who currently source local tax to a location that is not a place of business as defined in the rule would not adjust their operations to qualify such locations as places of business and consequently not be obligated to change the sourcing of local tax.

Plaintiff cities allege that portions of the proposed rule are invalid, that the proposed rule "dramatically" or "fundamentally" changes the former rule, that compliance with the proposed rule will require vendors to change to existing reporting methods, and that the changes to existing reporting methods will result in the loss of revenue to the cities.

One consultant estimated that the City of Carrollton would have a likely net loss of $1.1 to $2 million; that the City of Coppell would have a likely net loss of $18.8 million of $30.8 million, that the City of DeSoto would have a likely net loss of $5.1 million, that the City of Farmers Branch would have a likely net loss of $600,000 to $1.8 million, and the City of Humble would have a likely net loss of $5.6 million. The consultant did not provide the comptroller with data to support these calculations and he declined to identify the vendors that he predicted would have to change their reporting methods.

The comptroller does not have sufficient data to verify these calculations or to make similar estimates for other jurisdictions. The agency does have data regarding the amount of sales tax receipts that that a vendor reports to local jurisdictions. But, that data does not prove that the vendor is incorrectly reporting, that the vendor would change its reporting as a result of the rule amendments, or that specific jurisdictions would gain or lose tax revenue as a result of the rule amendments. Those determinations would require an understanding of the business operations of the vendor to determine which business locations were "places of business" for purposes of local tax sourcing. Then, the comptroller would have to examine individual transactions to determine the location where the orders were received, the location where the orders were fulfilled, and the location where the order was delivered, since all three locations are potential sourcing locations. Then, the comptroller would have to compare that information with how the vendor has been reporting local tax on each transaction, identify the circumstances, if any, that would require the vendor to change its methods of reporting as a result of the rule, and determine the dollar value for each transaction. The comptroller does not have sufficient information on the individual vendors to make this determination.

The consultant's explanation of his methodology confirms that the comptroller does not have sufficient data on hand, and that the comptroller could not reasonably acquire the necessary data to perform a study for every jurisdiction. The consultant identified and researched the "top tier" taxpayers for the cities in his study, and then conducted research to determine who they were selling to and whether any sales were made other than through websites. The research ranged from interviews with local employees, to passive research on web pages, job postings, certificate of occupancy maps/filings, and in some instances, purchases were made as well as physical visits to the taxpayer's locations. From this research, the consultant identified "suspect" taxpayers and estimated the value of their shipment outside of the city. In doing this work, the consultant estimated that he spent forty hours per jurisdiction. The comptroller does not have the time or resources to conduct what is essentially an audit of the tens of thousands of permitted taxpayers to identify noncompliant taxpayers and then estimate the extent of their noncompliance.

With the exception of the City of Round Rock, the Plaintiff cities have alleged that their jurisdictions have a particular type of taxpayer that is primarily affected - "fulfillment centers" that ship orders to customers. According to the cities, the fulfillment centers are sourcing local tax to the cities in which they are located, pursuant to Tax Code, §321.203(c-1)(1), which provides that a sale is consummated at the place of business of the retailer from which the retailer ships or delivers the item. For subsection (c-1)(1) to apply, a fulfillment center has to be a "place of business of the retailer" for local sales tax sourcing purposes. The term "place of business of the retailer" (hereinafter "place of business") is defined by Tax Code, §321.002(a)(3)(A) to include a location at which three or more orders are received during a calendar year.

The Plaintiff cities contend that the fulfillment centers are properly sourcing local tax to the cities in which they are located because every fulfillment center is automatically a "place of business." The theory is that a fulfillment center is automatically a "place of business" because it has to "receive" orders as a necessary prerequisite to fulfilling the orders, and a fulfillment center can be expected to "receive" three or more orders in a calendar year.

CP Ex-38-0004 of 0018

Subsection (c)(7) of the proposed rule now explicitly states that the location where an order is "received" for purposes of local sales tax sourcing is the location where the order is *initially* received. Therefore, under the proposed rule, a fulfillment center that processes orders forwarded from another location is not automatically a "place of business" for local tax sourcing. The Plaintiff cities contend that if the fulfillment centers in their jurisdiction begin sourcing local sales tax to other cities, they will lose millions of dollars in tax revenue.

The merits of the conflicting interpretations are discussed in the preambles of the previous rulemakings. The issue here is the effect on local tax revenue, and whether the comptroller can reliably estimate the effect on cities, individually or collectively. The estimates of the Plaintiff cities and the fulfillment centers in those cities cannot be reliably projected to other cities. The comptroller does not have data to identify the "fulfillment centers" in any particular jurisdiction or statewide - it is not a characteristic that is reported to the agency.

And, even if agency could identify "fulfillment centers" from its data, the agency could not assume that the fulfillment centers in other cities are sourcing local tax like the Plaintiff cities' fulfillment centers purportedly are sourcing. For reasons enumerated to the Revenue Estimating Division by agency counsel, it is comptroller's opinion that a fulfillment center could reasonably reach a different conclusion, and conclude that it was not automatically a "place of business" for local tax sourcing purposes, as claimed by the Plaintiff cities.

First, the text of former §3.334(h)(3) indicated that a fulfillment center is not automatically a "place of business" for local sourcing (emphasis added):

"(3) Consummation of sale. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state.

...

(B) Order received at a place of business in Texas, fulfilled at a location that is not a place of business. When an order that is placed over the telephone, through the Internet, or by any means other than in person is received by the seller at a place of business in Texas, and the seller *fulfills the order at a location that is not a place of business of the seller in Texas, such as a warehouse or distribution center,* the sale is consummated at the place of business at which the order for the taxable item is received.

...

(D) Order fulfilled within the state at a location that is not a place of business. When an order is received by a seller at any location other than a place of business of the seller in this state, and the seller *fulfills the order at a location in Texas that is not a place of business of the seller,* then the sale is consummated at the location in Texas to which the order is shipped or delivered, or the location where it is transferred to the purchaser."

(41 TexReg 260, 265) (2016) (former 34 Tex. Admin. Code §3.334(h)(3), emphasis added); (39 TexReg 9597, 9606) (2014) (former 34 Tex. Admin. Code §3.334(h)(3), emphasis added).

Second, the consummation rules in former §3.334(h)(3) were augmented with an explicit provision for fulfillment centers, which the former rule referred to as "distribution centers" (emphasis added):

"(2) *Distribution centers,* manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A *distribution center,* manufacturing plant, storage yard, warehouse, or similar facility operated by a seller at which the seller receives three or more orders for taxable items during the calendar year is a place of business.

(B) If a salesperson who receives three or more orders for taxable items within a calendar year is assigned to work from, or to work at, a *distribution center,* manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, *then* the facility is a place of business.

(C) If a location that is a place of business of the seller, such as a sales office, is in the same building as a *distribution center,* manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, *then* the entire facility is a place of business of the seller."

(41 TexReg 260, 263) (2016) (former 34 Tex. Admin. Code §3.334(e)(2), emphasis added); (39 TexReg 9597, 9605) (2014) (former 34 Tex. Admin. Code §3.334(e)(2), emphasis added).

If a distribution center were automatically a "place of business" for local tax sourcing as the Plaintiff cities contend, subparagraphs (B) and (C) would not be required - there would be no need for a salesperson or a sales office to "then" make the distribution center a "place of business" for local tax sourcing purposes.

Third, in addition to its rule, the comptroller distributed Publication 94-105, sometimes called the "Local Sales and Use Tax Bulletin - Guidelines for Collecting Local Sales and Use Tax," or "Tax Topics - Guidelines of Collecting Local Sales and Use Tax" (Guidelines). These Guidelines were posted on the comptroller's website and indexed in the comptroller's State Tax Automated Research System. Since at least 2007, the Guidelines referred to a "location within the state that is not a place of business (such as a warehouse or distribution center)." *E.g.,* STAR Accession No. 200902596L (February 2009). The Guidelines were intended as a general guide and not as a comprehensive resource. But, an ordinary reader would not walk away with the impression that a taxpayer's fulfillment center was automatically a "place of business" for purposes of local tax sourcing.

Fourth, in 2016, the comptroller rewrote the Guidelines to be even more specific regarding fulfillment centers: "The warehouse from which the person ships those items is not a place of business, unless the warehouse separately qualifies as a place of business." STAR Accession No. 201606995L (June 1, 2016).

And, fifth, in 2019, a comptroller letter ruling discussed fulfillment centers, referring to the former rule, then in effect: "Scenario One: Taxpayer Retailer operates fulfillment centers in Texas that are not open to the public. ... When an order is received at a location that is not a place of business and is *fulfilled in Texas at a location that is not a place of business,* the sale is consummated at the location in Texas to which the order is shipped. *See* §3.334(h)(3)(D). For Scenario One, local sales and use tax is due based on the location where the order is delivered." STAR Accession No. 201906015L (June 13, 2019) (emphasis added).

If the Plaintiff cities and their consultant's study are right about how the various fulfillment centers in their cities reported local tax, those fulfillment centers must have either disregarded the comptroller's prior written guidance, overlooked the guidance, or interpreted the guidance as being the opposite of what the comptroller intended. But, it cannot be assumed that fulfillment

CP Ex-38-0005 of 0018

centers in other cities have also disregarded, overlooked, or interpreted the prior rulings in such a way that they will have to change their reporting as a result of the proposed rule. So, even if the comptroller could identify the permitted locations that are fulfillment centers, the revenue implications of the proposed rule cannot be reliably extrapolated from the study conducted on behalf of the Plaintiff cities.

Furthermore, the cities' calculations of revenue loss assume the proposed rule would force fulfillment centers to begin sourcing local tax to other cities, when that is not the case. The Legislature set a low threshold for a location to be a "place of business" for local tax sourcing - the receipt of three or more orders during a calendar year. A fulfillment center that is not a "place of business" under the proposed rule could easily become one by directly receiving three or more orders. The Plaintiff cities have alleged that it is easier to source local tax to one jurisdiction than to source to many. So, a fulfillment warehouse would have an incentive to become a "place of business." And, a fulfillment center with a tax sharing agreement with a city would have an even greater incentive to make the minor adjustments required to become a "place of business," so as to maintain the return on its revenue sharing agreement. Therefore, even if the potential tax revenue loss from fulfillment centers could be reliably measured, it is unreasonable to assume that no fulfillment center would take remedial efforts to continue its sourcing procedures.

The City of Round Rock has asserted claims that are different from or in addition to the claims of the other Plaintiff cities. The City has suggested that the proposed rule will radically change the way that Texas retailers with one place of business in Texas will source local tax. However, for enumerated reasons, agency counsel advises that it should be assumed that in most instances, the proposed rule will not change the sourcing of products sold by Texas retailers with one place of business in Texas.

First, the proposed rule does not change the comptroller's previous application of the statute, which does not recognize special treatment for vendors with a "single place of business" for purposes of local tax sourcing. Proposed subsection (c) states in relevant part:

"The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas."

The language in the proposed rule has the same effect as the language in the prior 2014 and 2016 versions of the rule - no special treatment for vendors with a single "place of business":

"The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state."

(41 TexReg 260, 265) (2016) (former 34 Tex. Admin. Code §3.334(h)(3); (39 TexReg 9597, 9606) (2014) (former 34 Tex. Admin. Code §3.334(h)(3)).

Second, the proposed rule should have little impact on most businesses that are a single place of business in the ordinary sense of the word - *i.e.,* all operations are conducted at a single location. If orders are received and fulfilled in a single facility, local sales tax will continue to be sourced to that location. A typical example would be a retail store.

The City of Round Rock suggests that a single facility that conducts all transactions through automated shopping cart software may be affected, since a software application does not constitute a "place of business." However, the threshold for becoming a "place of business" is very low, including the receipt by sales personnel of three or more orders per year. If a vendor occasionally engages with a customer directly, such as by telephone or email, as the final step in receiving an order under subsection (c)(7), the vendor's location should be a "place of business" for local tax sourcing, even if orders are ordinarily processed by the vendor's automated software. To ease the burden on auditors, and on small businesses and micro-businesses that operate out of a single location, proposed subsection (b)(6) presumes that is the case.

Third, sales made by through a marketplace by a seller with a single place of business will not be affected because those orders are sourced to destination by Tax Code, §321.203(e-1).

The City of Round Rock claims that Dell Technologies has a single place of business in the city and suggests that Dell is sourcing all of its local sales tax collections to the City of Round Rock. The city further claims that it will lose a significant amount of local sales tax revenue under the proposed rule. However, when the comptroller served third party discovery on Dell to understand how Dell's current business operations would be affected by the proposed rule, both Round Rock and Dell objected. Dell insisted that the inquiry should only be "conducted under the applicable sections of the Texas Tax Code" in Chapter 111 -- in other words, an audit.

This discovery dispute illustrates the impracticability of preparing a revenue impact estimate for the City of Round Rock - it would require the audit of Dell and any other vendors from whom the city thinks there will be a revenue loss. A local sales tax audit of Dell would have to examine all the business locations of Dell to determine which, if any of the locations were a "place of business" for local tax sourcing purposes. And, if the comptroller verified that Dell in fact operated a single "place of business" in Texas, the comptroller would still have to audit the sourcing of Dell's sales to determine which sales were compliant and which sales were noncompliant with the proposed rule. For example, Dell purports to have a sales force in Round Rock. Assuming that orders generated by that sales force are received in Round Rock and not fulfilled from a "place of business" elsewhere in Texas, those sales would still be sourced to Round Rock. And, any orders fulfilled from Dell's "place of business" in Round Rock would still be sourced to Round Rock. And, any orders delivered in Round Rock would still be sourced to Round Rock. Therefore, to meaningfully determine the revenue impact of the proposed rule on the City of Round Rock, the comptroller would have to thoroughly audit Dell and any other vendors from whom Round Rock thinks there will be a revenue loss.

Repeating this audit exercise on a jurisdiction-by-jurisdiction basis across the state is infeasible. Audits are not quick or easy. Considerable time and effort is required to acquire and analyze taxpayer data. Taxpayers are understandably reluctant to furnish confidential business data. And, the data varies in degree of accessibility. The average duration of an audit in fiscal year 2023 was 450 days, and the average number auditor hours spent on an audit was 80.5 hours.

It is also possible that an audit of Dell or other vendors would identify noncompliance with sourcing provisions that are not involved in the disputed rulemaking. For example, if Dell were sourcing marketplace sales to the City of Round Rock rather than

CP Ex-38-0006 of 0018

to the delivery location specified by statute, Dell would have to change its sourcing methods and the City of Round Rock would suffer a revenue loss. But, that revenue loss should be attributed to the marketplace statute enacted by the Legislature, not the proposed comptroller rule.

This possibility is real. During the 2020 rulemaking, the City of San Marcos filed comments claiming that the proposed rule would cause the city to lose $7-8 million in local sales tax revenue generated by a Best Buy call center, with the net effect of economic development incentive revenue loss estimated at $3.4 million. Best Buy also filed comments stating that it created a subsidiary called Best Buy Texas.com LLC and sourced the local tax for all of its Internet and telephone sales to the City of San Marcos. This would mean that if a resident of the City of Houston placed an online order from Houston and picked up the item at an affiliated Best Buy Stores outlet in Houston, Best Buy Texas.com LLC would collect local sales tax for the City of San Marcos. However, it appears that the Best Buy website was actually operated by a different Best Buy affiliate, which would make it a marketplace provider as defined in Tax Code, §151.0242(a)(2). Under the marketplace statute, local tax is sourced to the location where the item is shipped or delivered or at which possession is taken by the purchaser. Thus, any loss to the City of San Marcos of local sales tax revenue from the sale to the Houston resident would be the result of compliance with the marketplace statute. And the loss of tax revenue would not be attributable to the rule. The loss resulting from compliance with the statute would occur without regard to whether the proposed rule was adopted.

The comptroller has considered various other comments of the Plaintiff cities and others to the effect that the proposed rule will dramatically change local tax sourcing and concluded that the comments do not accurately apply the proposed rule. The comptroller disagrees with the allegation that the proposed rule will "dramatically change where a sale is consummated if the Comptroller interprets the change to require destination sourcing when a sale is made online using a retailer's website, even if the retailer has only one place of business." And, the comptroller disagrees with the allegation that "sales made by way of websites using the Internet are treated as having been consummated where the taxable item is delivered to the buyer instead of where the order for the item is received and fulfilled by the seller." The consummation hierarchy in subsection (c) does not require the alleged results.

The comptroller has amended the definition of "place of business of the seller" in subsection (a)(18) to provide that the term does not include a computer server, Internet protocol address, domain name, website, or software application. While the discussion of computer servers was added to the rule in 2020, the comptroller had previously advised taxpayers that the location of the server does not create a "place of business" for purposes of the local tax collection and that orders placed on a website or though applications and processed and routed by servers are not "received at" a place of business. *See* STAR Accession Nos. 200510723L (October 6, 2005), 200605592L (May 17, 2006), and 201906015L (June 13, 2019).

The comptroller has also amended the definition of "place of business of the seller" in subsection (a)(18) to provide that staffing by one or more sales personnel is usually required. The statement is not a requirement, but an objective criterion that will often be an important factor in determining whether an outlet, office, or location is a "place of business." In the January

2023 rulemaking, the comptroller explained how the reference to sales personnel is a logical extension of prior comptroller statements, including prior statements regarding fulfillment warehouses and computer servers. *See* (48 TexReg 391, 398) (2023).

Agency counsel has advised that there are several instances in which the rule proposed for readoption is substantively different than the 2016 version of the rule. Subsection (c)(2)(B)(ii) provides that a seller required to collect state use tax must also collect local use tax. This provision expands the collection responsibilities of sellers, which, formerly were obligated to collect local use tax only if they were engaged in business in the local jurisdiction. This provision should have a positive, but indeterminant revenue effect on all local jurisdictions.

The proposed rule, as compared with the 2016 version, adds provisions that the sourcing of marketplace sales is based on destination, because the consummation statute was amended in 2019 by House Bill 1525 to require that result. The fiscal note for House Bill 1525 estimated a probable revenue gain for local governments. However, because House Bill 1525 was already in effect, and rulemaking is not required to effectuate the legislation, the comptroller is assigning no fiscal implication to the rule revision incorporating House Bill 1525, other than a potential increase in compliance with the statute.

The proposed rule, as compared with the 2016 version, also adds provisions for remote sellers to apply a single local tax rate, as authorized by House Bill 2153 in 2019. The fiscal note for House Bill 2153 stated:

"There would be no significant fiscal implications for local governments in the aggregate; there could be some variance in distribution of revenue among jurisdictions compared with the distribution that would occur were all remote sellers required to collect and remit tax at applicable local combined rates, but the extent of such variance cannot be determined and would not be expected to be significant in relation to the total allocations of local sales and use tax revenues."

The comptroller is assigning no fiscal implication to the rule revision incorporating House Bill 2153, since the statute went into effect before the rulemaking, and rulemaking was not required to implement the statute.

The proposed rule, as compared with the 2016 version, alters the treatment of a "traveling salesperson," which was previously defined as: "A seller, or an agent or employee of a seller, who visits potential purchasers in person to solicit sales, and who does not carry inventory ready for immediate sale, but who may carry samples or perform demonstrations of items for sale." Former §3.334(h)(4) provided: "Orders taken by traveling salespersons are received by the seller at the administrative office or other place of business from which the traveling salesperson operates." (41 TexReg 260, 265) (2016) (former 34 Tex. Admin. Code §3.334(h)(4)). The former rule did not further explain the location from which the traveling salesperson operates.

Subsection (b)(4) of the proposed rule replaces the traveling salesperson language with a provision for an order that is received by a salesperson who is not at a place of business when the salesperson receives the order. Subsection (b)(4) provides that the order is treated as being received at the location from which the salesperson operates. Subsection (b)(4) further provides that the location from which the salesperson operates is the principal fixed location where the salesperson conducts work-related activities.

CP Ex-38-0007 of 0018

Commenters have reported that the orders from some traveling salespersons have been sourced to the location to which the traveling salesperson is "assigned," even though the traveling salesperson may conduct principal work-related activities from another location. In these situations, the proposed rule might result in a change to local tax sourcing. However, the significance of this change is indeterminant. The comptroller does not have data to identify traveling salespersons as defined under the former rule, and does not have data to identify the instances in which a traveling salesperson has been "assigned" to a location from which the salesperson does not conduct principal work-related activities. And, if the agency could identify those instances, without conducting extensive audits, the agency would still not know which instances would result in a change of sourcing. For example, if the order is fulfilled from a "place of business," the location of the salesperson is irrelevant.

In summary, due to both to the number of taxing jurisdictions and lack of pertinent, detailed information regarding the specific circumstances of the myriad businesses reporting local sales and use taxes, estimation of fiscal effects of the proposed rule, whether of dollar amounts or merely sign of change, on an individual jurisdiction by jurisdiction basis is infeasible of execution.

The comptroller recognizes that compliance with the proposed rule could result in changes to the local tax reporting methods of some vendors. As a result, there could be loss or increase in revenue to individual local governments. A revenue loss to one local government will often but not always be a revenue gain to others. There will also be revenue gains experienced by all local tax jurisdictions from the expansion of the use tax collection obligations of remote, out-of-state sellers. For the reasons previously stated, the aggregate net gain or loss cannot be reliably estimated by the comptroller from available or reasonably accessible data.

The comptroller has been provided with estimates that some cities will experience net revenue losses. However, the comptroller has not been provided with sufficient information to verify the estimates, and the data from the estimates cannot be extrapolated to other local tax jurisdictions. That said, the estimates of anticipated revenue losses provided by Plaintiffs and others in comments to proposed rulemakings are accepted as valid good faith estimates and may serve as a basis for estimating a minimum amount of revenue from online sales associated with locations that are not places of business as defined in the rule, that will be subject to different sourcing if the affected sales tax permittees cannot or choose not to modify their procedures in order to qualify such business locations as places of business for purposes of local sales tax sourcing. As those estimates were constructed from 2020 data and there has been significant inflation as well as real economic growth since then, they are scaled up by a factor of 1.35 to yield a minimum estimate of $110 million on a current annual basis that may be lost to those cities, plus another $80 million that may be lost to the other local taxing jurisdictions imposing tax at the affected locations, for a total of $190 million of gross revenue reductions, of which 85% or $161.5 million would be estimated gains to other local taxing jurisdiction, and 15% or $28.5 million would be reduction in aggregate local sales tax levies sourced to unincorporated areas without local sales tax or with cumulative local county and special district tax rates less than the cumulative local rates that applied at the locations where the taxable transactions were formerly sourced. A $28.5 million reduction in aggregate local tax levies would result in reduced state service charge revenue of $570,000.

*Public benefits and costs.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the rule will be in effect.

The public will benefit from greater clarity regarding the consummation standards, making compliance easier.

There may be additional economic costs to a person required to comply with the rule. It is conceivable that the rule may cause some vendors to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase. And if vendors change from multiple-location reporting to single-location reporting, their compliance burden may diminish.

*Local employment impact statement.*

For the first five years that the rule will be in effect, the effect on local economies and employment, if any, cannot be determined. To the extent that the proposed rule leads to greater awareness and compliance with the local tax consummation standards, some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions. Whether a change in local tax revenue might increase or decrease the provision of local government services to an extent that would affect local economic activity or employment would depend on discretionary actions of the governing body or the electorate of an affected jurisdiction, and cannot be determined.

*Government growth impact statement.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the rule will be in effect: the amendment will not create or eliminate a government program; will not require the creation or elimination of employee positions; will not require an increase or decrease in future legislative appropriations to the comptroller; will not require an increase or decrease in fees paid to the comptroller; will not create a new regulation; will increase the number of individuals subject to the rule's applicability because sellers without a physical presence in a local tax jurisdiction will be required to collect local use tax if they are required to collect state use tax; and will not positively or adversely affect this state's economy.

*Economic impact statement and regulatory flexibility analysis.*

A statement of fiscal implications for small businesses or rural communities under Government Code, Chapter 2006 is normally not required for a comptroller rule because the rule is proposed under Tax Code, Title 2. In this instance, the rule is proposed under both Title 2 (State Taxation) and Title 3 (Local Taxation). So, the comptroller provides the following statement.

A "rural community" is a municipality with a population of less than 25,000. The comptroller estimates that there are 1,098 such rural communities, of which 1,017 impose a sales tax and may have revenue affected by compliance with the rule.

A "small business" is a legal entity, including a corporation, partnership, or sole proprietorship, that: (A) is formed for the purpose of making a profit; (B) is independently owned and operated; and (C) has fewer than 100 employees or less than $6 million in annual gross receipts. The Comptroller estimates that there are 470,000 businesses with fewer than 100 employees, and 377,000 businesses with annual gross receipts less than $6 million; the sum of these two estimates would overstate the num-

CP Ex-38-0008 of 0018

ber of small businesses, as many businesses would be expected to have both fewer than 100 employees and less than $6 million in annual gross receipts.

To the extent that the proposed rule leads to greater awareness and compliance with the local tax consummation standards, some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions. As previously explained, the comptroller does not have sufficient data on the business operations of each business to identify and quantify the businesses and transactions that might be affected, and the positive or negative revenue impact on each tax jurisdiction.

Although the fiscal implications for local tax jurisdictions cannot be quantified without additional information, several observations can be made. First, the cities asserting that the clarifications provided by the rule will result in changes in sourcing and reporting of local taxes, with consequent reductions in their revenues, tend to be cities with Local Government Code, Chapter 380 agreements involving rebates of local sales and use tax revenues. And, cities with Government Code, Chapter 380 agreements involving distribution or fulfillment centers tend to be larger than rural communities. Of the 1,017 rural communities imposing sales tax, 45 have Chapter 380 agreements involving sales tax on file with the comptroller. Almost all of those involve rebates of sales tax to physical shopping centers or restaurants, or of sales tax paid on equipment or building materials, and would unlikely be affected by a change in sourcing of online sales associated with locations that are not places of business; two of the 45 communities that are not party to the suit against the comptroller appear to involve distribution or fulfillment centers and could be affected if the centers will not qualify as places of business (in Grand Prairie and Waxahachie). Five of the six cities currently suing the Comptroller have populations greater than 25,000. The comptroller has not verified the assertions of revenue shifting. But, if the assertions are correct, the revenue shifting away from cities with Chapter 380 agreements may result in positive revenues for the smaller rural communities from whom the revenues have been diverted.

Second, although the comptroller does not have sufficient information to determine the number of small businesses that may change their local tax reporting as a result of greater awareness and compliance with the local tax consummation standards, it is reasonable to assume that many small businesses will not be affected. A small business that has all of its operations at a single location in Texas, including sales and fulfillment, is probably reporting local sales tax to the taxing jurisdiction where it is located, and it will continue that reporting. Non-marketplace orders fulfilled from that location will continue to be consummated at that location pursuant to §3.334(c)(1) or (c)(2)(A). And, sales of a small business that are through a marketplace are already subject to destination sourcing performed by the marketplace provider. Nevertheless, in some circumstances, it is conceivable that the rule may cause some vendors, small or large, to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase.

Third, the proposed rule expands the local tax collection obligations of remote sellers - out-of-state sellers that collect state use tax must also collect local sales tax. The expansion of the remote seller local tax collection obligation may benefit small businesses in Texas by reducing the perception of customers that purchases from out-of-state sellers are preferable because out-of-state sell-

ers charge less sales or use tax than the small businesses in Texas.

Since the comptroller initiated its rulemaking in 2020, the agency has considered ways to minimize the potential adverse impact on small businesses. In the fall of 2020, the agency added a multi-address search capability to its local sales tax rate locator. And in the spring of 2021, the agency added downloadable address files to determine local tax rates. And, in the winter of 2023, the agency added map search and latitude/longitude search options.

In addition, the comptroller is proposing to add subsection (b)(6):

"If a small business or a micro-business operates a single location out of which it conducts all of its business activities, the comptroller will presume that the location is a place of business of the seller."

The comptroller cannot make a location a "place of business" by rule if the statute does not allow it. But, the agency can presume that a location is a "place of business" based on indicative facts, such as a small, independent business that conducts all of its business operations out of a single location. If extraordinary facts are presented to the agency, the presumption may be rebutted.

The agency has considered other alternatives to reduce the adverse impact on small businesses and micro-businesses, such as allowing small or micro-businesses to source local sales tax to their principal place of business, or establishing a single local sales tax rate for small or micro-businesses that would be distributed similar to the distribution of the single local sales tax collected by remote sellers. However, because these proposals would require amendments to the consummation statutes, the comptroller does not have the regulatory flexibility to implement these proposed methods.

*Public hearing*

The comptroller will hold a hearing to take public comments, on May 9, 2024, at 9:00 a.m. in Room 2.034 of the Barbara Jordan Building, 1601 Congress Avenue, Austin, Texas 78701. Interested persons may sign up to testify beginning at 8:30 a.m. and testimony will be heard beginning at 9:00 a.m. on a first come first serve basis. All persons will have 10 minutes to present their testimony and shall also provide their testimony in writing prior to their oral testimony.

*Comments*

You may submit comments on the proposal to Jenny Burleson, Director, Tax Policy Division, P.O. Box 13528 Austin, Texas 78711 or to the email address: tp.rule.comments@cpa.texas.gov. The comptroller must receive your comments no later than 30 days from the date of publication of the proposal in the *Texas Register*.

*Statement of the statutory or other authority under which the rule is proposed to be adopted.*

Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture), 321.306 (Comptroller's Rules), 322.203 (Comptroller's Rules), and 323.306 (Comptroller's Rules) authorize the comptroller to adopt rules to implement the tax statutes.

*Sections or articles of the code affected.*

Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; and Tax Code, Chapter 323 are affected.

CP Ex-38-0009 of 0018

*§3.334.   Local Sales and Use Taxes.*

(a)   Definitions.  The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

(1)   Cable system--The system through which a cable service provider delivers cable television or bundled cable service, as those terms are defined in §3.313 of this title (relating to Cable Television Service and Bundled Cable Service).

(2)   City--An incorporated city, municipality, town, or village.

(3)   City sales and use tax--The tax authorized under Tax Code, §321.101(a), including the additional municipal sales and use tax authorized under Tax Code, §321.101(b), the municipal sales and use tax for street maintenance authorized under Tax Code, §327.003, the Type A Development Corporation sales and use tax authorized under Local Government Code, §504.251, the Type B Development Corporation sales and use tax authorized under Local Government Code, §505.251, a sports and community venue project sales and use tax adopted by a city under Local Government Code, §334.081, and a municipal development corporation sales and use tax adopted by a city under Local Government Code, §379A.081.  The term does not include the fire control, prevention, and emergency medical services district sales and use tax authorized under Tax Code, §321.106, or the municipal crime control and prevention district sales and use tax authorized under Tax Code, §321.108.

(4)   Comptroller's   website--The   comptroller's website concerning local taxes located at:   https://comptroller.texas.gov/taxes/sales/.

(5)   County sales and use tax--The tax authorized under Tax Code, §323.101, including a sports and community venue project sales and use tax adopted by a county under Local Government Code, §334.081.  The term does not include the county health services sales and use tax authorized under Tax Code, §324.021, the county landfill and criminal detention center sales and use tax authorized under Tax Code, §325.021, or the crime control and prevention district sales and use tax authorized under Tax Code, §323.105.

(6)   Drop shipment--A transaction in which an order is received by a seller at one location, but the item purchased is shipped by the seller from another location, or is shipped by the seller's third-party supplier, directly to a location designated by the purchaser.

(7)   Engaged in business--This term has the meaning given in §3.286 of this title (relating to Seller's and Purchaser's Responsibilities).

(8)   Extraterritorial jurisdiction--An unincorporated area that is contiguous to the corporate boundaries of a city as defined in Local Government Code, §42.021.

(9)   Fulfill--To complete an order by transferring possession of a taxable item to a purchaser, or to ship or deliver a taxable item to a location designated by the purchaser.  The term does not include receiving or tracking an order, determining shipping costs, managing inventory, or other activities that do not involve the transfer, shipment, or delivery of a taxable item to the purchaser or a location designated by the purchaser.

(10)   Independently owned and operated business--A self-controlling entity that is not a subsidiary of another entity or otherwise subject to control by another entity, and that is not publicly traded.

(11)   Itinerant vendor--A seller who travels to various locations for the purpose of receiving orders and making sales of taxable items and who has no place of business in this state.  A person who sells items through vending machines is also an itinerant vendor.  A salesperson that operates out of a place of business in this state is not an itinerant vendor.

(12)   Kiosk--A small stand-alone area or structure:

(A)   that is used solely to display merchandise or to submit orders for taxable items from a data entry device, or both;

(B)   that is located entirely within a location that is a place of business of another seller, such as a department store or shopping mall; and

(C)   at which taxable items are not available for immediate delivery to a purchaser.

(13)   Local taxes--Sales and use taxes imposed by any local taxing jurisdiction.

(14)   Local taxing jurisdiction--Any of the following:

(A)   a city that imposes sales and use tax as provided under paragraph (3) of this subsection;

(B)   a county that imposes sales and use tax as provided under paragraph (5) of this subsection;

(C)   a special purpose district created under the Special District Local Laws Code or other provisions of Texas law that is authorized to impose sales and use tax by the Tax Code or other provisions of Texas law and as governed by the provisions of Tax Code, Chapters 321 or 323 and other provisions of Texas law; or

(D)   a transit authority that imposes sales and use tax as authorized by Transportation Code, Chapters, 451, 452, 453, 457, or 460 and governed by the provisions of Tax Code, Chapter, 322.

(15)   Marketplace provider--This term has the meaning given in §3.286 of this title.

(16)   Micro-business--A legal entity, including a corporation, partnership, or sole proprietorship, that:

(A)   is formed for the purpose of making a profit;

(B)   is independently owned and operated; and

(C)   has not more than 20 employees.

(17)   Order placed in person--An order placed by a purchaser with the seller while physically present at the seller's place of business regardless of how the seller subsequently enters the order.

(18)   Place of business of the seller - general definition--A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller. An "established outlet, office, or location" usually requires staffing by one or more sales personnel.  The term does not include a computer server, Internet protocol address, domain name, website, or software application.  The "purpose" element of the definition may be established by proof that the sales personnel of the seller receive three or more orders for taxable items at the facility during the calendar year.  Additional criteria for determining when a location is a place of business of the seller are provided in subsection (b) of this section for distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices. An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a place of business

CP Ex-38-0010 of 0018

of the seller if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or exists solely to rebate a portion of the tax imposed by those chapters to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or solely to rebate a portion of the tax imposed by those chapters if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.

(19) Purchasing office--An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business.

(20) Remote Seller--As defined in §3.286 of this title, a remote seller is a seller engaged in business in this state whose only activity in the state is:

(A) engaging in regular or systematic solicitation of sales of taxable items in this state by the distribution of catalogs, periodicals, advertising flyers, or other advertising, by means of print, radio, or television media, or by mail, telegraphy, telephone, computer data base, cable, optic, microwave, or other communication system for the purpose of effecting sales of taxable items; or

(B) soliciting orders for taxable items by mail or through other media including the Internet or other media that may be developed in the future.

(21) Seller--This term has the meaning given in §3.286 of this title and also refers to any agent or employee of the seller.

(22) Small business--A legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has fewer than 100 employees or less than $6 million in annual gross receipts.

(23) Special purpose district--A local governmental entity authorized by the Texas legislature for a specific purpose, such as crime control, a local library, emergency services, county health services, or a county landfill and criminal detention center.

(24) Storage--This term has the meaning given in §3.346 of this title (relating to Use Tax).

(25) Temporary place of business of the seller--A location operated by a seller for a limited period of time for the purpose of selling and receiving orders for taxable items and where the seller has inventory available for immediate delivery to a purchaser. For example, a person who rents a booth at a weekend craft fair or art show to sell and take orders for jewelry, or a person who maintains a facility at a job site to rent tools and equipment to a contractor during the construction of real property, has established a temporary place of business. A temporary place of business of the seller includes a sale outside of a distribution center, manufacturing plant, storage yard, warehouse, or similar facility of the seller in a parking lot or similar space sharing the same physical address as the facility but not within the walls of the facility.

(26) Transit authority--A metropolitan rapid transit authority (MTA), advanced transportation district (ATD), regional or subregional transportation authority (RTA), city transit department (CTD), county transit authority (CTA), regional mobility authority (RMA) or coordinated county transportation authority created under Transportation Code, Chapters 370, 451, 452, 453, 457, or 460.

(27) Two percent cap--A reference to the general rule that, except as otherwise provided by Texas law and as explained in this section, a seller cannot collect, and a purchaser is not obligated to pay, more than 2.0% of the sales price of a taxable item in total local sales and use taxes for all local taxing jurisdictions.

(28) Use--This term has the meaning given in §3.346 of this title.

(29) Use tax--A tax imposed on the storage, use or other consumption of a taxable item in this state.

(b) Determining the place of business of a seller.

(1) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller for the purpose of selling taxable items where sales personnel of the seller receive three or more orders for taxable items during the calendar year from persons other than employees, independent contractors, and natural persons affiliated with the seller is a place of business of the seller. Forwarding previously received orders to the facility for fulfilment does not make the facility a place of business.

(B) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller.

(2) Kiosks. A kiosk is not a place of business of the seller for the purpose of determining where a sale is consummated for local tax purposes. A seller who owns or operates a kiosk in Texas is, however, engaged in business in this state as provided in §3.286 of this title.

(3) Purchasing offices.

(A) A purchasing office is not a place of business of the seller if the purchasing office exists solely to rebate a portion of the local sales and use tax imposed by Tax Code, Chapters 321, 322, or 323 to a business with which it contracts; or if the purchasing office functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323. A purchasing office does not exist solely to rebate a portion of the local sales and use tax or to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323 if the purchasing office provides significant business services to the contracting business beyond processing invoices, including logistics management, purchasing, inventory control, or other vital business services.

(B) In making a determination under subparagraph (A) of this paragraph, as to whether a purchasing office provides significant business services to the contracting business beyond processing invoices, the comptroller will compare the total value of the other business services to the value of processing invoices. If the total value of the other business services, including logistics management, purchasing, inventory control, or other vital business services, is less than the value of the service to process invoices, then the purchasing office will be presumed not to be a place of business of the seller.

(C) If the comptroller determines that a purchasing office is not a place of business of the seller, the sale of any taxable item is deemed to be consummated at the place of business of the seller from whom the purchasing office purchased the taxable item for resale and local sales and use taxes are due according to the following rules.

CP Ex-38-0011 of 0018

*(i)* When taxable items are purchased from a Texas seller, local sales taxes are due based on the location of the seller's place of business where the sale is deemed to be consummated, as determined in accordance with subsection (c) of this section.

*(ii)* When the sale of a taxable item is deemed to be consummated at a location outside of this state, local use tax is due based on the location where the items are first stored, used or consumed by the entity that contracted with the purchasing office in accordance with subsection (d) of this section.

(4) An order that is received by a salesperson who is not at a place of business of the seller when the salesperson receives the order is treated as being received at the location from which the salesperson operates. Examples include orders that a salesperson receives by mail, telephone, including Voice over Internet Protocol and cellular phone calls, facsimile, and email while traveling. The location from which the salesperson operates is the principal fixed location where the salesperson conducts work-related activities. The location from which a salesperson operates will be a place of business of the seller only if the location meets the definition of a "place of business of a seller" in subsection (a)(16) of this section on its own, without regard to the orders imputed to that location by this paragraph.

(5) A facility without sales personnel is usually not a "place of business of the seller." A vending machine is not "an established outlet, office, or location," and does not constitute a "place of business of the seller." Instead, a vending machine sale is treated as a sale by an itinerant vendor. See subsections (a)(10) and (c)(6) of this section. However, a walk-in retail outlet with a stock of goods available for immediate purchase through a cashier-less point of sale terminal at the outlet would be "an established outlet, office, or location" so as to constitute a "place of business of the seller" even though sales personnel are not required for every sale. A computer that operates an automated shopping cart software program is not an established outlet, office, or location," and does not constitute a "place of business of the seller." A computer that operates an automated telephone ordering system is not "an established outlet, office, or location," and does not constitute a "place of business of the seller."

(6) If a small business or a micro-business operates a single location out of which it conducts all of its business activities, the comptroller will presume that the location is a place of business of the seller.

(c) Local sales tax - Consummation of sale - determining the local taxing jurisdictions to which sales tax is due. Except for the special rules applicable to remote sellers in subsection (i)(3) of this section, direct payment permit purchases in subsection (j) of this section, and certain taxable items, including taxable items sold by a marketplace provider, as provided in subsection (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas.

(1) Consummation of sale - order received at a place of business of the seller in Texas.

(A) Order placed in person. Except as provided by paragraph (3) of this subsection, when an order for a taxable item is placed in person at a seller's place of business in Texas, including at a temporary place of business of the seller in Texas, the sale of that item is consummated at that place of business of the seller, regardless of the location where the order is fulfilled.

(B) Order not placed in person.

*(i)* Order fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

*(ii)* Order not fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a location that is not a place of business of the seller in Texas, the sale is consummated at the place of business where the order is received.

(2) Consummation of sale - order not received at a place of business of the seller in Texas.

(A) Order fulfilled at a place of business of the seller in Texas. When an order is received at a location that is not a place of business of the seller in Texas or is received outside of Texas, and is fulfilled from a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

(B) Order not fulfilled from a place of business of the seller in Texas.

*(i)* Order fulfilled in Texas. When an order is received at a location that is not a place of business of the seller in Texas and is fulfilled from a location in Texas that is not a place of business of the seller, the sale is consummated at the location in Texas to which the order is shipped or delivered, or at which the purchaser of the item takes possession.

*(ii)* Order not fulfilled in Texas. When an order is received by a seller at a location that is not a place of business of the seller in Texas, and is fulfilled from a location outside of Texas, the sale is not consummated in Texas. However, a use is consummated at the first point in Texas where the item is stored, used, or consumed after the interstate transit has ceased. A taxable item delivered to a point in Texas is presumed to be for storage, use, or consumption at that point until the contrary is established. Local use tax should be collected as provided in subsection (d) of this section. Except as provided in subsection (i)(3) of this section, a remote seller required to collect state use tax under §3.286(b)(2) of this title must also collect local use tax.

(3) Exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5). This paragraph is effective until September 1, 2024. If applicable, the local sales tax due on the sale of a taxable item is based on the location of the qualifying warehouse, which is a place of business of the seller, from which the item is shipped or delivered or at which the purchaser of the item takes possession.

(4) Local sales taxes are due to each local taxing jurisdiction with sales tax in effect where the sale is consummated. Local use tax may also be due if the total amount of local sales taxes due does not reach the two percent cap, and the item purchased is shipped or delivered to a location in one or more different local taxing jurisdictions, as provided in subsection (d) of this section.

(5) Multiple special purpose district taxes, multiple transit authority sales taxes, or a combination of the two may apply to a single transaction. If the sale of a taxable item is consummated at a location within the boundaries of multiple special purpose districts or transit authorities, local sales tax is owed to each of the jurisdictions in effect at that location. For example, a place of business of the seller located in the city of San Antonio is within the boundaries of both the San Antonio Advanced Transportation District and the San Antonio Metropolitan Transit Authority, and the seller is required to collect sales tax for both transit authorities. Similarly, a place of business of the seller in Flower Mound is located within the boundaries of two special purpose districts,

CP Ex-38-0012 of 0018

the Flower Mound Crime Control District and the Flower Mound Fire Control District, and the seller is responsible for collecting sales tax for both special purpose districts.

    (6)   Itinerant vendors; vending machines.

        (A)   Itinerant vendors. Sales made by itinerant vendors are consummated at, and itinerant vendors must collect sales tax based upon, the location where the item is delivered or at which the purchaser of the item takes possession. Itinerant vendors do not have any responsibility to collect use tax.

        (B)   Vending machines. Sales of taxable items made from a vending machine are consummated at the location of the vending machine. See §3.293 of this title (relating to Food; Food Products; Meals; Food Service) for more information about vending machine sales.

    (7)   The location where the order is received by or on behalf of the seller means the physical location of a seller or third party such as an established outlet, office location, or automated order receipt system operated by or on behalf of the seller where an order is initially received by or on behalf of the seller and not where the order may be subsequently accepted, completed or fulfilled. An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller. The location from which a product is shipped shall not be used in determining the location where the order is received by the seller.

   (d)   Local use tax. The provisions addressing the imposition of state use tax in §3.346 of this title also apply to the imposition of local use tax. For example, consistent with §3.346(e) of this title, all taxable items that are shipped or delivered to a location in this state that is within the boundaries of a local taxing jurisdiction are presumed to have been purchased for use in that local taxing jurisdiction as well as presumed to have been purchased for use in the state.

    (1)   General rules.

        (A)   When local use taxes are due in addition to local sales taxes as provided by subsection (c) of this section, all applicable use taxes must be collected or accrued in the following order until the two percent cap is reached: city, county, special purpose district, and transit authority. If more than one special purpose district use tax is due, all such taxes are to be collected or accrued before any transit authority use tax is collected or accrued. See subparagraphs (D) and (E) of this paragraph.

        (B)   If a local use tax cannot be collected or accrued at its full rate without exceeding the two percent cap, the seller cannot collect it, or any portion of it, and the purchaser is not responsible for accruing it.

        (C)   If a seller collects a local sales tax on an item, or a purchaser accrues a local sales tax on an item, a use tax for the same type of jurisdiction is not due on the same item. For example, after a city sales tax has been collected or accrued for an item, no use tax is due to that same or a different city on that item, but use tax may be due to a county, special purpose district, or transit authority. Similarly, if one or more special purpose district sales taxes have been collected or accrued for an item, no special purpose district use tax is due on that item, and if one or more transit authority sales taxes have been collected or accrued for an item, no transit authority use tax is due on that item.

        (D)   Collection or accrual of use tax for multiple special purpose districts. If more than one special purpose district use tax is in effect at the location where use of an item occurs, the special purpose district taxes are due in the order of their effective dates, beginning

with the earliest effective date, until the two percent cap is met. The effective dates of all special purpose district taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the district with the earliest effective date would exceed the two percent cap, the tax for that district is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (C) of this paragraph, whether use tax is due for the district that next became effective.

           *(i)*   If the competing special purpose district taxes became effective on the same date, the special purpose district taxes are due in the order of the earliest date for which the election in which the district residents authorized the imposition of sales and use tax by the district was held.

           *(ii)*   If the elections to impose the local taxes were held on the same date, the special purpose district taxes are due in the order of the earliest date for which the enabling legislation under which each district was created became effective.

        (E)   Collection or accrual of use tax for multiple transit authorities. If more than one transit authority use tax is in effect at the location where use of an item occurs, and the two percent cap has not been met, the transit authority taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all transit authority taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the authority with the earliest effective date would exceed the two percent cap, the tax for that authority is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (D) of this paragraph, whether use tax is due for the authority that next became effective.

           *(i)*   If the competing transit authorities became effective on the same date, the transit authority taxes are due in the order of the earliest date for which the election in which the authority residents authorized the imposition of sales and use tax by the authority was held.

           *(ii)*   If the elections to impose local taxes were held on the same date, the transit authority use taxes are due in the order of the earliest date for which the enabling legislation under which each authority was created became effective.

    (2)   General use tax rules applied to specific situations. The following fact patterns explain how local use tax is to be collected or accrued and remitted to the comptroller based on, and subject to, the general rules in paragraph (1) of this subsection.

        (A)   Sale consummated outside the state, item delivered from outside the state or from a location in Texas that is not operated by the seller - local use tax due. Except as provided in subsection (i)(3) of this section, if a sale is consummated outside of this state according to the provisions of subsection (c) of this section, and the item purchased is either shipped or delivered to a location in this state as designated by the purchaser from a location outside of the state, or if the order is drop shipped directly to the purchaser from a third-party supplier, local use tax is owed based upon the location in this state to which the order is shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use tax due on the sale. If the seller does not collect the local use taxes due on the sale, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller according to the provisions in paragraph (1) of this subsection. For example, if an order for a taxable item is received by a seller at a location outside of Texas, and the order is shipped to the purchaser from a location outside of the state, local use tax is due based upon the location to which the order is shipped or delivered or at which the purchaser of the item takes possession.

CP Ex-38-0013 of 0018

(B) Sale consummated in Texas outside a local taxing jurisdiction, item delivered into one or more local taxing jurisdictions - local use tax due. If a sale is consummated at a location in Texas that is outside of the boundaries of any local taxing jurisdiction according to the provisions of subsection (c) of this section, and the order is shipped or delivered to the purchaser at a location in this state that is within the boundaries of one or more local taxing jurisdictions, local use tax is due based on the location to which the items are shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use taxes due on the sale, regardless of the location of the seller in Texas. If the seller fails to collect any local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(C) Sale consummated in any local taxing jurisdictions imposing less than 2.0% in total local taxes - local sales taxes and use taxes due. If a sale is consummated at a location in Texas where the total local sales tax rate imposed by the taxing jurisdictions in effect at that location does not equal 2.0% according to the provisions of subsection (c) of this section, and the item is shipped or delivered to the purchaser at a location in this state that is inside the boundaries of a different local taxing jurisdiction, additional local use tax may be due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the two percent cap. The seller is responsible for collecting any additional local use taxes due on the sale, regardless of the location of the seller in Texas. See subsection (i) of this section. If the seller fails to collect the additional local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(i) Example one - if an order is received in person at a place of business of the seller, such that the sale is consummated at the location where the order is received as provided under subsection (c)(1)(A) of this section, and the local sales tax due on the sale does not meet the two percent cap, additional local use taxes are due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the provisions in paragraph (1) of this subsection.

(ii) Example two - if a seller receives an order for a taxable item at a seller's place of business in Texas, and the seller ships or delivers the item from an out-of-state location to a location in this state as designated by the purchaser, local sales tax is due based upon the location of the place of business of the seller where the order is received. If the local sales tax due on the item does not meet the two percent cap, use taxes, subject to the provisions in paragraph (1) of this subsection, are due based upon the location where the items are shipped or delivered or at which the purchaser of the item takes possession.

(e) Effect of other law.

(1) Tax Code, Title 2, Subtitles A (General Provisions) and B (Enforcement and Collection), Tax Code, Chapter 141 (Multistate Tax Compact) and Tax Code, Chapter 151 (Limited Sales, Excise, and Use Tax) apply to transactions involving local taxes. Related sections of this title and comptroller rulings shall also apply with respect to local taxes. This includes authorities such as court cases and federal law that affect whether an item is taxable or is excluded or exempt from taxation.

(2) Permits, exemption certificates, and resale certificates required by Tax Code, Chapter 151, shall also satisfy the requirements for collecting and remitting local taxes, unless otherwise indicated by this section or other sections of this title. For example, see subsection (n) of this section concerning prior contract exemptions.

(3) Any provisions in this section or other sections of this title related to a seller's responsibilities for collecting and remitting local taxes to the comptroller shall also apply to a purchaser if the seller does not collect local taxes that are due. The comptroller may proceed against the seller or purchaser for the local tax owed by either.

(f) Tax rates. Except as otherwise provided by law, no local governmental entity may adopt or increase a sales and use tax if, as a result of the adoption or increase of the tax, the combined rate of all sales and use taxes imposed by local taxing jurisdictions having territory in the local governmental entity would exceed 2.0% at any location within the boundaries of the local governmental entity's jurisdiction. The following are the local tax rates that may be adopted.

(1) Cities. Cities may impose sales and use tax at a rate of up to 2.0%.

(2) Counties. Counties may impose sales and use tax at rates ranging from 0.5% to 1.5%.

(3) Special purpose districts. Special purpose districts may impose sales and use tax at rates ranging from 0.125% to 2.0%.

(4) Transit authorities. Transit authorities may impose sales and use tax at rates ranging from 0.25% to 1.0%.

(g) Jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements.

(1) Jurisdictional boundaries.

(A) City boundaries. City taxing jurisdictional boundaries cannot overlap one another and a city cannot impose a sales and use tax in an area that is already within the jurisdiction of another city.

(B) County boundaries. County tax applies to all locations within that county.

(C) Special purpose district and transit authority boundaries. Special purpose districts and transit authorities may cross or share boundaries with other local taxing jurisdictions and may encompass, in whole or in part, other local taxing jurisdictions, including cities and counties. A geographic location or address in this state may lie within the boundaries of more than one special purpose district or more than one transit authority.

(D) Extraterritorial jurisdictions. Except as otherwise provided by paragraph (3) of this subsection concerning strategic partnership agreements and subsection (l)(5) of this section concerning the City of El Paso and Fort Bliss, city sales and use tax does not apply to taxable sales that are consummated outside the boundaries of the city, including sales made in a city's extraterritorial jurisdiction. However, an extraterritorial jurisdiction may lie within the boundaries of a special purpose district, transit authority, county, or any combination of the three, and the sales and use taxes for those jurisdictions would apply to those sales.

(2) Combined areas. A combined area is an area where the boundaries of a city overlap the boundaries of one or more other local taxing jurisdictions as a result of an annexation of additional territory by the city, and where, as the result of the imposition of the city tax in the area in addition to the local taxes imposed by the existing taxing jurisdictions, the combined local tax rate would exceed 2.0%. The comptroller shall make accommodations to maintain a 2.0% rate in any combined area by distributing the 2.0% tax revenue generated in these combined areas to the local taxing jurisdictions located in the combined areas as provided in Tax Code, §321.102 or Health and Safety Code, §775.0754. Combined areas are identified on the comptroller's website. Sellers engaged in transactions on which local sales or use taxes are due in a combined area, or persons who must self-accrue and remit tax directly to the comptroller, must use the combined area local code when reporting the tax rather than the codes for the individual

CP Ex-38-0014 of 0018

city, county, special purpose districts, or transit authorities that make up the combined area.

    (3)   City tax imposed through strategic partnership agreements.

        (A)   The governing bodies of a district, as defined in Local Government Code, §43.0751, and a city may enter into a limited-purpose annexation agreement known as a strategic partnership agreement. Under this agreement, the city may impose sales and use tax within all or part of the boundaries of a district. Areas within a district that are annexed for this limited purpose are treated as though they are within the boundaries of the city for purposes of city sales and use tax.

        (B)   Counties, transit authorities, and special purpose districts may not enter into strategic partnership agreements. Sales and use taxes imposed by those taxing jurisdictions do not apply in the limited-purpose annexed area as part of a strategic partnership agreement between a city and an authorized district. However, a county, special purpose district, or transit authority sales and use tax, or any combination of these three types of taxes, may apply at locations included in a strategic partnership agreement between a city and an authorized district if the tax is imposed in that area by the applicable jurisdiction as allowed under its own controlling authorities.

        (C)   Prior to September 1, 2011, the term "district" was defined in Local Government Code, §43.0751 as a municipal utility district or a water control and improvement district. The definition was amended effective September 1, 2011, to mean a conservation and reclamation district operating under Water Code, Chapter 49.

   (h)   Places of business of the seller and job sites crossed by local taxing jurisdiction boundaries.

    (1)   Places of business of the seller crossed by local taxing jurisdiction boundaries. If a place of business of the seller is crossed by one or more local taxing jurisdiction boundaries so that a portion of the place of business of the seller is located within a taxing jurisdiction and the remainder of the place of business of the seller lies outside of the taxing jurisdiction, tax is due to the local taxing jurisdictions in which the sales office is located. If there is no sales office, sales tax is due to the local taxing jurisdictions in which any cash registers are located.

    (2)   Job sites.

        (A)   Residential repair and remodeling; new construction of an improvement to realty. When a contractor is improving real property under a separated contract, and the job site is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on any separately stated charges for taxable items incorporated into the real property must be allocated to the local taxing jurisdictions based on the total square footage of the real property improvement located within each jurisdiction, including the square footage of any standalone structures that are part of the construction, repair, or remodeling project. For more information about tax due on materials used at residential and new construction job sites, refer to §3.291 of this title (relating to Contractors).

        (B)   Nonresidential real property repair and improvement. When taxable services are performed to repair, remodel, or restore nonresidential real property, including a pipeline, transmission line, or parking lot, that is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on the taxable services, including materials and any other charges connected to the services performed, must be allocated among the local taxing jurisdictions based upon the total mileage or square footage, as appropriate, of the repair, remodeling, or restoration project located in each jurisdiction. For more information about tax due on materials used at nonresidential real property repair and remodeling job sites, refer to §3.357 of this title (relating to Nonresidential Real Property Repair, Remodeling, and Restoration; Real Property Maintenance).

   (i)   Sellers' and purchasers' responsibilities for collecting or accruing local taxes.

    (1)   Sale consummated in Texas; seller responsible for collecting local sales taxes and applicable local use taxes. When a sale of a taxable item is consummated at a location in Texas as provided by subsection (c) of this section, the seller must collect each local sales tax in effect at the location. If the total rate of local sales tax due on the sale does not reach the two percent cap, and the seller ships or delivers the item into another local taxing jurisdiction, then the seller is required to collect additional local use taxes due, if any, based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession, regardless of the location of the seller in Texas. For more information regarding local use taxes, refer to subsection (d) of this section.

    (2)   Out-of-state sale; seller engaged in business in Texas. Except as provided in paragraph (3) of this subsection, when a sale is not consummated in Texas, a seller who is engaged in business in this state is required to collect and remit local use taxes due, if any, on orders of taxable items shipped or delivered at the direction of the purchaser into a local taxing jurisdiction in this state based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section.

    (3)   Local use tax rate for remote sellers.

        (A)   A remote seller required to collect and remit one or more local use taxes in connection with a sale of a taxable item must compute the amount using:

            *(i)*   the combined tax rate of all applicable local use taxes based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession; or

            *(ii)*   at the remote seller's election, the single local use tax rate published in the *Texas Register.*

        (B)   A remote seller that is storing tangible personal property in Texas to be used for fulfillment at a facility of a marketplace provider that has certified that it will assume the rights and duties of a seller with respect to the tangible personal property, as provided for in §3.286 of this title, may elect the single local use tax rate under subparagraph (A)(ii) of this paragraph.

        (C)   Notice to the comptroller of election and revocation of election.

            *(i)*   Before using the single local use tax rate, a remote seller must notify the comptroller of its election using a form prescribed by the comptroller. A remote seller may also notify the comptroller of the election on its use tax permit application form. The remote seller must use the single local use tax rate for all of its sales of taxable items until the election is revoked as provided in clause (ii) of this subparagraph.

            *(ii)*   A remote seller may revoke its election by filing a form prescribed by the comptroller. If the comptroller receives the notice by October 1, the revocation will be effective January 1 of the following year. If the comptroller receives the notice after October 1, the revocation will be effective January 1 of the year after the following year. For example, a remote seller must notify the comptroller by October 1, 2020, for the revocation to be effective January 1, 2021. If the comptroller receives the revocation on November 1, 2020, the revocation will be effective January 1, 2022.

(D) Single local use tax rate.

(i) The single local use tax rate in effect for the period beginning October 1, 2019, and ending December 31, 2019, is 1.75%.

(ii) The single local use tax rate in effect for the period beginning January 1, 2020, and ending December 31, 2020, is 1.75%.

(E) Annual publication of single local use tax rate. Before the beginning of a calendar year, the comptroller will publish notice of the single local use tax rate in the *Texas Register* that will be in effect for that calendar year.

(F) Calculating the single local use tax rate. The single local use tax rate effective in a calendar year is equal to the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year. As soon as practicable after the end of a state fiscal year, the comptroller must determine the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year by:

(i) dividing the total amount of net local sales and use taxes remitted to the comptroller during the state fiscal year by the total amount of net state sales and use tax remitted to the comptroller during the state fiscal year;

(ii) multiplying the amount computed under clause (i) of this subparagraph by the rate provided in Tax Code, §151.051; and

(iii) rounding the amount computed under clause (ii) of this subparagraph to the nearest .0025.

(G) Direct refund. A purchaser may request a refund based on local use taxes paid in a calendar year for the difference between the single local use tax rate paid by the purchaser and the amount the purchaser would have paid based on the combined tax rate for all applicable local use taxes. Notwithstanding the refund requirements under §3.325(a)(1) of this title (relating to Refunds and Payments Under Protest), a non-permitted purchaser may request a refund directly from the comptroller for the tax paid in the previous calendar year, no earlier than January 1 of the following calendar year within the statute of limitation under Tax Code, 111.104 (Refunds).

(H) Marketplace providers. Notwithstanding subparagraph (A) of this paragraph, marketplace providers may not use the single local use tax rate and must compute the amount of local use tax to collect and remit using the combined tax rate of all applicable local use taxes.

(4) Purchaser responsible for accruing and remitting local taxes if seller fails to collect.

(A) If a seller does not collect the state sales tax, any applicable local sales taxes, or both, on a sale of a taxable item that is consummated in Texas, then the purchaser is responsible for filing a return and paying the tax. The local sales taxes due are based on the location in this state where the sale is consummated as provided in subsection (c) of this section.

(B) A purchaser who buys an item for use in Texas from a seller who does not collect the state use tax, any applicable local use taxes, or both, is responsible for filing a return and paying the tax. The local use taxes due are based on the location where the item is first stored, used, or consumed by the purchaser.

(C) For more information about how to report and pay use tax directly to the comptroller, see §3.286 of this title.

(5) Local tax is due on the sales price of a taxable item, as defined in Tax Code, §151.007, in the report period in which the taxable item is purchased or the period in which the taxable item is first stored, used, or otherwise consumed in a local taxing jurisdiction.

(6) A purchaser is not liable for additional local use tax if the purchaser pays local use tax using the rate elected by an eligible remote seller according to paragraph (3) of this subsection. The remote seller must be identified on the comptroller's website as electing to use the single local use tax rate. A purchaser must verify that the remote seller is listed on the comptroller's website. If the remote seller is not listed on the comptroller's website, the purchaser will be liable for additional use tax due in accordance to paragraph (4) of this subsection.

(j) Items purchased under a direct payment permit.

(1) When taxable items are purchased under a direct payment permit, local use tax is due based upon the location where the permit holder first stores the taxable items, except that if the taxable items are not stored, then local use tax is due based upon the location where the taxable items are first used or otherwise consumed by the permit holder.

(2) If, in a local taxing jurisdiction, storage facilities contain taxable items purchased under a direct payment exemption certificate and at the time of storage it is not known whether the taxable items will be used in Texas, then the taxpayer may elect to report the use tax either when the taxable items are first stored in Texas or are first removed from inventory for use in Texas, as long as use tax is reported in a consistent manner. See also §3.288(i) of this title (relating to Direct Payment Procedures and Qualifications) and §3.346(g) of this title.

(3) If local use tax is paid on stored items that are subsequently removed from Texas before they are used, the tax may be recovered in accordance with the refund and credit provisions of §3.325 of this title and §3.338 of this title (relating to Multistate Tax Credits and Allowance of Credit for Tax Paid to Suppliers).

(k) Special rules for certain taxable goods and services. Sales of the following taxable goods and services are consummated at, and local tax is due based upon, the location indicated in this subsection.

(1) Amusement services. Local tax is due based upon the location where the performance or event occurs. For more information on amusement services, refer to §3.298 of this title (relating to Amusement Services).

(2) Cable services. When a service provider uses a cable system to provide cable television or bundled cable services to customers, local tax is due as provided for in §3.313 of this title. When a service provider uses a satellite system to provide cable services to customers, no local tax is due on the service in accordance with the Telecommunications Act of 1996, §602.

(3) Florists. Local sales tax is due on all taxable items sold by a florist based upon the location where the order is received, regardless of where or by whom delivery is made. Local use tax is not due on deliveries of taxable items sold by florists. For example, if the place of business of the florist where an order is taken is not within the boundaries of any local taxing jurisdiction, no local sales tax is due on the item and no local use tax is due regardless of the location of delivery. If a Texas florist delivers an order in a local taxing jurisdiction at the instruction of an unrelated florist, and if the unrelated florist did not take the order within the boundaries of a local taxing jurisdiction, local use tax is not due on the delivery. For more information about florists' sales and use tax obligations, refer to §3.307 of this title (relating to Florists).

CP Ex-38-0016 of 0018

(4) Landline telecommunications services. Local taxes due on landline telecommunications services are based upon the location of the device from which the call or other transmission originates. If the seller cannot determine where the call or transmission originates, local taxes due are based on the address to which the service is billed. For more information, refer to §3.344 of this title (relating to Telecommunications Services).

(5) Marketplace provider sales. Local taxes are due on sales of taxable items through a marketplace provider based on the location in this state to which the item is shipped or delivered or at which the purchaser takes possession. For more information, refer to §3.286 of this title.

(6) Mobile telecommunications services. Local taxes due on mobile telecommunications services are based upon the location of the customer's place of primary use as defined in §3.344(a)(8) of this title, and local taxes are to be collected as indicated in §3.344(h) of this title.

(7) Motor vehicle parking and storage. Local taxes are due based on the location of the space or facility where the vehicle is parked. For more information, refer to §3.315 of this title (relating to Motor Vehicle Parking and Storage).

(8) Natural gas and electricity. Any local city and special purpose taxes due are based upon the location where the natural gas or electricity is delivered to the purchaser. As explained in subsection (l)(1) of this section, residential use of natural gas and electricity is exempt from all county sales and use taxes and all transit authority sales and use taxes, most special purpose district sales and use taxes, and many city sales and use taxes. A list of the cities and special purpose districts that do impose, and those that are eligible to impose, local sales and use tax on residential use of natural gas and electricity is available on the comptroller's website. For more information, also refer to §3.295 of this title (relating to Natural Gas and Electricity).

(9) Nonresidential real property repair and remodeling services. Local taxes are due on services to remodel, repair, or restore nonresidential real property based on the location of the job site where the remodeling, repair, or restoration is performed. See also subsection (h)(2)(B) of this section and §3.357 of this title.

(10) Residential real property repair and remodeling and new construction of a real property improvement performed under a separated contract. When a contractor constructs a new improvement to realty pursuant to a separated contract or improves residential real property pursuant to a separated contract, the sale is consummated at the job site at which the contractor incorporates taxable items into the customer's real property. See also subsection (h)(2)(A) of this section and §3.291 of this title.

(11) Waste collection services. Local taxes are due on garbage or other solid waste collection or removal services based on the location at which the waste is collected or from which the waste is removed. For more information, refer to §3.356 of this title (relating to Real Property Service).

(l) Special exemptions and provisions applicable to individual jurisdictions.

(1) Residential use of natural gas and electricity.

(A) Mandatory exemptions from local sales and use tax. Residential use of natural gas and electricity is exempt from most local sales and use taxes. Counties, transit authorities, and most special purpose districts are not authorized to impose sales and use tax on the residential use of natural gas and electricity. Pursuant to Tax Code, §321.105, any city that adopted a local sales and use tax effective October 1, 1979, or later is prohibited from imposing tax on the residential use of natural gas and electricity. See §3.295 of this title.

(B) Imposition of tax allowed in certain cities. Cities that adopted local sales tax prior to October 1, 1979, may, in accordance with the provisions in Tax Code, §321.105, choose to repeal the exemption for residential use of natural gas and electricity. The comptroller's website provides a list of cities that impose tax on the residential use of natural gas and electricity, as well as a list of those cities that do not currently impose the tax, but are eligible to do so.

(C) Effective January 1, 2010, a fire control, prevention, and emergency medical services district organized under Local Government Code, Chapter 344 that imposes sales tax under Tax Code, §321.106, or a crime control and prevention district organized under Local Government Code, Chapter 363 that imposes sales tax under Tax Code, §321.108, that is located in all or part of a municipality that imposes a tax on the residential use of natural gas and electricity as provided under Tax Code, §321.105 may impose tax on residential use of natural gas and electricity at locations within the district. A list of the special purpose districts that impose tax on residential use of natural gas and electricity and those districts eligible to impose the tax that do not currently do so is available on the comptroller's website.

(2) Telecommunication services. Telecommunications services are exempt from all local sales taxes unless the governing body of a city, county, transit authority, or special purpose district votes to impose sales tax on these services. However, since 1999, under Tax Code, §322.109(d), transit authorities created under Transportation Code, Chapter 451 cannot repeal the exemption unless the repeal is first approved by the governing body of each city that created the local taxing jurisdiction. The local sales tax is limited to telecommunications services occurring between locations within Texas. See §3.344 of this title. The comptroller's website provides a list of local taxing jurisdictions that impose tax on telecommunications services.

(3) Emergency services districts.

(A) Authority to exclude territory from imposition of emergency services district sales and use tax. Pursuant to the provisions of Health and Safety Code, §775.0751(c-1), an emergency services district wishing to enact a sales and use tax may exclude from the election called to authorize the tax any territory in the district where the sales and use tax is then at 2.0%. The tax, if authorized by the voters eligible to vote on the enactment of the tax, then applies only in the portions of the district included in the election. The tax does not apply to sales made in the excluded territories in the district and sellers in the excluded territories should continue to collect local sales and use taxes for the local taxing jurisdictions in effect at the time of the election under which the district sales and use tax was authorized as applicable.

(B) Consolidation of districts resulting in sales tax sub-districts. Pursuant to the provisions of Health and Safety Code, §775.018(f), if the territory of a district proposed under Health and Safety Code, Chapter 775 overlaps with the boundaries of another district created under that chapter, the commissioners court of each county and boards of the counties in which the districts are located may choose to create a consolidated district in the overlapping territory. If two districts that want to consolidate under Health and Safety Code, §775.024 have different sales and use tax rates, the territory of the former districts located within the consolidated area will be designated as sub-districts and the sales tax rate within each sub-district will continue to be imposed at the rate the tax was imposed by the former district that each sub-district was part of prior to the consolidation.

(4) East Aldine Management District.

CP Ex-38-0017 of 0018

(A) Special sales and use tax zones within district; separate sales and use tax rate. As set out in Special District Local Laws Code, §3817.154(e) and (f), the East Aldine Management District board may create special sales and use tax zones within the boundaries of the District and, with voter approval, enact a special sales and use tax rate in each zone that is different from the sales and use tax rate imposed in the rest of the district.

(B) Exemptions from special zone sales and use tax. The sale, production, distribution, lease, or rental of; and the use, storage, or other consumption within a special sales and use tax zone of; a taxable item sold, leased, or rented by the entities identified in clauses (i) - (vi) of this subparagraph are exempt from the special zone sales and use tax. State and all other applicable local taxes apply unless otherwise exempted by law. The special zone sales and use tax exemption applies to:

(i) a retail electric provider as defined by Utilities Code, §31.002;

(ii) an electric utility or a power generation company as defined by Utilities Code, §31.002;

(iii) a gas utility as defined by Utilities Code, §101.003 or §121.001, or a person who owns pipelines used for transportation or sale of oil or gas or a product or constituent of oil or gas;

(iv) a person who owns pipelines used for the transportation or sale of carbon dioxide;

(v) a telecommunications provider as defined by Utilities Code, §51.002; or

(vi) a cable service provider or video service provider as defined by Utilities Code, §66.002.

(5) Imposition of city sales tax and transit tax on certain military installations; El Paso and Fort Bliss. Pursuant to Tax Code, §321.1045 (Imposition of Sales and Use Tax in Certain Federal Military Installations), for purposes of the local sales and use tax imposed under Tax Code, Chapter 321, the city of El Paso includes the area within the boundaries of Fort Bliss to the extent it is in the city's extraterritorial jurisdiction. However, the El Paso transit authority does not include Fort Bliss. See Transportation Code, §453.051 concerning the Creation of Transit Departments.

(m) Restrictions on local sales tax rebates and other economic incentives. Pursuant to Local Government Code, §501.161, Section 4A and 4B development corporations may not offer to provide economic incentives, such as local sales tax rebates authorized under Local Government Code, Chapters 380 or 381, to persons whose business consists primarily of purchasing taxable items using resale certificates and then reselling those same items to a related party. A related party means a person or entity which owns at least 80% of the business enterprise to which sales and use taxes would be rebated as part of an economic incentive.

(n) Prior contract exemptions. The provisions of §3.319 of this title (relating to Prior Contracts) concerning definitions and exclusions apply to prior contract exemptions.

(1) Certain contracts and bids exempt. No local taxes are due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of any local tax if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of any local tax if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(2) Annexations. Any annexation of territory into an existing local taxing jurisdiction is also a basis for claiming the exemption provided by this subsection.

(3) Local taxing jurisdiction rate increase; partial exemption for certain contracts and bids. When an existing local taxing jurisdiction raises its sales and use tax rate, the additional amount of tax that would be due as a result of the rate increase is not due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of the tax rate increase if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of the tax rate increase if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(4) Three-year statute of limitations.

(A) The exemption in paragraph (1) of this subsection and the partial exemption in paragraph (3) of this subsection have no effect after three years from the date the adoption or increase of the tax takes effect in the local taxing jurisdiction.

(B) The provisions of §3.319 of this title apply to this subsection to the extent they are consistent.

(C) Leases. Any renewal or exercise of an option to extend the time of a lease or rental contract under the exemptions provided by this subsection shall be deemed to be a new contract and no exemption will apply.

(5) Records. Persons claiming the exemption provided by this subsection must maintain records which can be verified by the comptroller or the exemption will be lost.

(6) Exemption certificate. An identification number is required on the prior contract exemption certificates furnished to sellers. The identification number should be the person's 11-digit Texas taxpayer number or federal employer's identification (FEI) number.

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on April 8, 2024.

TRD-202401427
Jenny Burleson
Director, Tax Policy
Comptroller of Public Accounts
Earliest possible date of adoption: May 19, 2024
For further information, please call: (512) 475-2220

♦　　　♦　　　♦

# TITLE 43. TRANSPORTATION

# PART 3. MOTOR VEHICLE CRIME PREVENTION AUTHORITY

CP Ex-38-0018 of 0018

# TAB
# I

# TITLE 34. PUBLIC FINANCE

# PART 1. COMPTROLLER OF PUBLIC ACCOUNTS

## CHAPTER 3. TAX ADMINISTRATION
## SUBCHAPTER O. STATE AND LOCAL SALES AND USE TAXES

### 34 TAC §3.334

The Comptroller of Public Accounts adopts the repeal of §3.334, concerning local sales and use taxes, without changes to the proposed text as published in the April 19, 2024, issue of the *Texas Register* (49 TexReg 2440). The rule will not be republished. The comptroller repeals existing §3.334 to replace it with new §3.334. The repeal of §3.334 will be effective the date the new §3.334 takes effect.

*Brief explanation of the rulemaking.*

It has been called to the comptroller's attention that the October 27, 2023, notice of proposed rulemaking did not contain a statement of fiscal implications for small businesses or rural communities as required by Government Code, Chapter 2006. See (48 TexReg 6340) (October 27, 2023). Therefore, the comptroller repeals the adopted rule as proposed in the October 27, 2023, notice of proposed rulemaking. The comptroller is simultaneously readopting the text of the rule effective on January 5, 2024, with amendments, under the same number and title, with the repeal to be effective as of the date the adopted rule.

*Comments*

The comptroller received comments from James Harris on behalf of the Coalition for Appropriate Sales Tax Law and its members, the cities of Coppell, Carrollton, Desoto, Farmers Branch, Humble, Kilgore, Lancaster, and Lewisville, in favor of the repeal of all revisions to the rule, starting with the version adopted in May 2020. The comptroller addresses the criticisms of the revisions in §3.334 in the preamble of the new §3.334, which the comptroller will adopt to be effective concurrently with this repeal.

*Statement of the statutory or other authority under which the rulemaking is adopted.*

The repeal is adopted under Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture), 321.306 (Comptroller's Rules), 322.203 (Comptroller's Rules), and 323.306 (Comptroller's Rules), which authorize the comptroller to adopt rules to implement the tax statutes.

*Sections or articles of the code affected.*

The repeal affects Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; and Tax Code, Chapter 323.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on June 14, 2024.

TRD-202402640



**TRIAL EXHIBIT**

D-1-GN-21-003198

**CP Ex-40**

Jenny Burleson
Director, Tax Policy Division
Comptroller of Public Accounts
Effective date: July 4, 2024
Proposal publication date: April 19, 2024
For further information, please call: (512) 475-2220



### 34 TAC §3.334

The Comptroller of Public Accounts adopts new §3.334, concerning local sales and use taxes, without changes to the proposed text as published in the April 19, 2024, issue of the *Texas Register* (49 TexReg 2442). The rule will not be republished. The comptroller adopts new §3.334 to replace the existing §3.334 that the comptroller is repealing. The new §3.334 includes the text of existing §3.334, with the addition of subsection (b)(6) and supporting definitions.

In addition to soliciting written comments, the comptroller held a public hearing on May 9, 2024. The comptroller received oral and/or written comments regarding adoption of the rule from the following persons:

John Christian, Ryan, LLC, against the rule.

TJ Gilmore, Mayor of the City of Lewisville, against the rule.

Jim Harris, on behalf of the Coalition for Appropriate Sales Tax Law Enactment (CASTLE) and its members, the cities of Coppell, Farmers Branch, Grand Prairie, Humble, Kilgore, Lancaster, and Lewisville, against the rule.

John Kroll, HMWK, against the rule.

Mike Land, City Manager of the City of Coppell, against the rule.

Wes Mays, Mayor of the City of Coppell, against the rule.

Stephan L. Sheets, Attorney for the City of Round Rock, against the rule.

Rich Whitehead, Mayor of the City of Helotes, against the rule.

*Summary of the Principal Reasons For and Against Adoption of the Rule*

The comptroller's principal reason for adoption of the rule is to provide guidance to taxpayers and auditors regarding the application of the local sales and use tax consummation statutes.

The principal reasons alleged against adoption are: that the rule is not needed, that the rule will hurt cities and taxpayers, that the rule is a departure from prior comptroller policy, that the stated reasons for adoption have no factual basis, that the rule is inconsistent with the local sales and use tax consummation statutes, and that the notice of rulemaking did not comply with the requirements of the Administrative Procedure Act.

The subsequent discussion provides the reasons for adopting the rule without changes related to the comments received.

*Summary of the Factual Bases for the Rule - Background*

In January 2020, the comptroller initiated rulemaking to update its local sales and use tax rule. The comptroller subsequently adopted amendments in 2020, 2023, and 2024. (49 TexReg 53) (January 5, 2024), (48 TexReg 391) (January 27, 2023), (45 TexReg 3499) (May 22, 2020). The amendments implemented House Bill 1525, 86th Legislature, 2019, which placed local sales and use tax collection responsibilities on marketplace providers.

The amendments also implemented House Bill 2153, 86th Legislature, 2019, which set a single local use tax rate that remote sellers may elect to use. The amendments also expanded the local sales tax collection responsibilities of sellers based on the United States Supreme Court decision in *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018). These amendments have been noncontroversial.

The rulemaking made other revisions to the text, which are now the subject of litigation in Cause No. D-1-GN-21-003198, *City of Coppell, Texas, et al. v. Glenn Hegar,* in the 201st District Court of Travis County Texas. The Plaintiff cities claim that the agency did not comply with the rulemaking procedures in Government Code, §2001.024 and Government Code, Chapter 2006. The comptroller initiated this rulemaking to address those claims by proposing the readoption of the rule, with amendments, along with a more complete statement of the elements required by Government Code, §2001.024 and Government Code, Chapter 2006.

The comptroller is addressing comments received in the current rulemaking, as well as the prior local tax rulemakings in 2020, 2023, and 2024. The orders adopting the prior rulemakings are available for inspection in the *Texas Register,* and contain additional explanations that augment this document.

*Summary of the Factual Bases for the Rule - Subsection (a)(18) - The definition of "place of business of the seller."*

Local sales and use taxes are generally sourced to where a sale or use is "consummated." Tax Code, §321.203 and §321.205. There are about three dozen sourcing provisions. *Id.* And, there are three potential locations where local sales tax can be soured: the location where the order was received, the location where the order was fulfilled, and the location where the order was delivered to the customer. *Id.* The sourcing outcome can be affected by whether an order is placed in person at, received at, or fulfilled at a seller's "place of business" in Texas.

Tax Code, §321.002(3)(A) uses 82 words to define "place of business of the retailer":

"(3)(A) 'Place of business of the retailer' means an established outlet, office, or location operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items and includes any location at which three or more orders are received by the retailer during a calendar year. A warehouse, storage yard, or manufacturing plant is not a 'place of business of the retailer' unless at least three orders are received by the retailer during the calendar year at the warehouse, storage yard, or manufacturing plant."

The term "place of business of the retailer" is a term of art because the term is more limited than its plain and ordinary meaning. Many business activities can be conducted at a location without that location becoming a "place of business" for local tax sourcing. The definition specifically includes the concept of receiving orders for taxable items. For example, the corporate headquarters of a company may not be a "place of business" if no orders are received there. Additionally, a location is not a "place of business" simply because it receives orders. If that were the case, the legislature could have defined the phrase with those very few words, which can be counted on one hand. And, the final sentence indicates that business locations such as warehouses, storage yards, and manufacturing plants may not be "places of business."

Ultimately, the statutory test is a combination of elements -- whether a facility is an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items. The statutory references to an "established outlet, office, or location," operation "by the retailer or the retailer's agent or employee," and "receiving orders for taxable items" all suggest that the presence of sales personnel is a reasonable criterion for evaluating whether a facility is a "place of business."

Subsection (a)(18) defines "place of business of the seller" as follows:

"(18) Place of business of the seller - general definition--A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller. An 'established outlet, office, or location' usually requires staffing by one or more sales personnel. The term does not include a computer server, Internet protocol address, domain name, website, or software application. The 'purpose' element of the definition may be established by proof that the sales personnel of the seller receive three or more orders for taxable items at the facility during the calendar year. Additional criteria for determining when a location is a place of business of the seller are provided in subsection (b) of this section for distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices. An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a place of business of the seller if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or exists solely to rebate a portion of the tax imposed by those chapters to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or solely to rebate a portion of the tax imposed by those chapters if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services."

The first sentence of subsection (a)(16) states: "A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller." This definition tracks the statutory definition but adds a qualifier from the prior rule that allows a facility to make in-house courtesy sales without becoming a place of business.

The second sentence of the definition of "place of business of the seller" in subsection (a)(16) states: "An 'established outlet, office, or location' usually requires staffing by one or more sales personnel." The word "usually" clarifies that the presence of sales personnel is not an absolute requirement, but rather, an important factor that will often determine whether an outlet, office, or location is a "place of business." In subsequent subsections of the rule, the comptroller describes some examples.

The comptroller is adding the sales personnel language to provide an objective criterion for buyers, sellers, and auditors to consider. Does a facility have sales personnel? If it does, it is likely

CP Ex-40-0002 of 0012

a "place of business" -- an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items. If the facility does not have sales personnel, it is likely not a "place of business."

The reference to sales personnel is also consistent with the general objectives of the local tax statute. "It is a fundamental principle of statutory construction and indeed of language itself that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used." *TGS-NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 441 (Tex. 2011). The context for the "place of business" definition is not limited to the consummation statutes. It also extends to the sales tax permit requirement. The requirement of a sales tax permit for each "place of business" suggests that presence of sales personnel is a reasonable factor to consider.

The third sentence in the definition of "place of business" in subsection (a)(16) states: "The term does not include a computer server, Internet protocol address, domain name, website, or software application." This sentence is consistent with the concept that a "place of business" usually requires the presence of personnel to receive the order. Even a broad, every-day usage of the term "place of business" does not include computer servers, Internet protocol addresses, and websites. Many sellers house their computer servers at a co-location facility or rent computer server space at a managed hosting site. An ordinary person would not consider the physical locations of these computer servers to be places of business of the seller. Similarly, an ordinary person would not perceive an Internet protocol address, a domain name, or a website as an "established outlet, office, or location" so as to constitute a place of business in ordinary usage. And, in this statutory context, which is narrower than ordinary usage, the comptroller has concluded that the legislature could not have intended that the receipt of an order by an automated mechanical device would make the device an "established outlet, office or location operated by the retailer."

In addition to being a reasonable interpretation of the statute and consistent with precedent, the comptroller's interpretation that computer servers and the software applications that run on the servers are not places of business, is a practical interpretation that will facilitate uniformity and ease of administration for taxpayers and auditors. Website orders can be received at multiple physical addresses - any locations that have Internet access. A website order is sent to an Internet protocol (IP) address. An IP address is not a permanent physical address. It is a series of numbers assigned to a device, such as a computer server. Websites may use dynamic IP addresses that are assigned by the network upon connection and that change over time. The public IP address of a website may simply be routing orders to different, private IP addresses. Load balancers may change the IP addresses that communicate with customers. Conversely, multiple websites may be hosted at a single IP address.

The computer server receiving an order may belong to the seller or it may belong to a third party. The computer server may be situated on the seller's premises, it may be situated at a co-location facility operated by a third party, or it may be situated at a web hosting facility operated by a third party. The computer server may be one of multiple servers that serve the same website from different physical addresses as part of a cloud distribution network. The computer server may route the order to multiple other servers for load balancing purposes. Conversely, a single computer server may serve multiple websites. Also, the seller may or may not know the physical address of the server receiving the

order. The physical locations of computer servers that receive website orders are often random, variable, and uncertain. The best way to treat computer servers consistently and coherently is to uniformly recognize that they are not "established" places of business of the seller.

The fourth sentence of the definition of "place of business of the seller" in subsection (a)(16) states: "The 'purpose' element of the definition may be established by proof that sales personnel of the seller received three or more orders for taxable items at the facility during the calendar year." This language is consistent with the statutory language that a "'place of business of the retailer' ... includes any location at which three or more orders are received by the retailer during a calendar year."

The remaining sentences of the definition of "place of business of the seller" are noncontroversial.

Mr. Gilmore, Mr. Kroll, Mr. Land, and Mr. Mays do not believe that this definition simplifies local tax sourcing. However, the comptroller is under no illusions that the definition will eliminate all ambiguities. In some instances, the determination will depend upon the particular facts. But in many instances, it will be clear. And, the rule also makes clear that mere hardware installations are not "places of business of the seller." To that extent, the rule will help taxpayers understand how the comptroller interprets and intends to apply the statute.

*Summary of the Factual Bases for the Rule - Subsection (b)(5) - A facility without sales personnel is usually not a "place of business of the seller."*

Subsection (b)(5) provides:

"(5) A facility without sales personnel is usually not a 'place of business of the seller.' A vending machine is not an 'established outlet, office, or location,' and does not constitute a 'place of business of the seller.' Instead, a vending machine sale is treated as a sale by an itinerant vendor. See subsections (a)(10) and (c)(6) of this section. However, a walk-in retail outlet with a stock of goods available for immediate purchase through a cashier-less point of sale terminal at the outlet would be an 'established outlet, office, or location' so as to constitute a 'place of business of the seller' even though sales personnel are not required for every sale. A computer that operates an automated shopping cart software program is not an 'established outlet, office, or location,' and does not constitute a 'place of business of the seller.' A computer that operates an automated telephone ordering system is not an 'established outlet, office, or location,' and does not constitute a 'place of business of the seller.'"

Subsection (b)(5) provides examples of the application of the definition of "place of business of the seller," and the factual bases for subsection (b)(5) are the same as the for the definition. In addition, the treatment of vending machines is consistent with the treatment of vending machines in prior versions of the rule.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsections (a)(10) and (b)(5).*

Some commenters asserted that a "place of business" does not have to be operated for the purpose of receiving orders for taxable items. According to the comments submitted by CASTLE:

"The statutory definition of 'place of business,' Tax Code, §321.002(3)(A), describes five different place of business categories: established outlets; established offices; established locations operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items;

CP Ex-40-0003 of 0012

any location at which three or more orders are received by the retailer during a calendar year; and warehouses, storage yards, or manufacturing plants that receive three or more orders in a calendar year. Tax Code, §321.002(a)(3)(A). The first two categories need not have as a purpose receipt of orders and do not need to receive orders to be a place of business."

CASTLE further commented that the function of an "established office" is "business." This interpretation would mean that any facility operated by a seller for a business purpose would be a "place of business" -- executive offices, administrative offices, research and development laboratories, maintenance facilities, vehicle garages, etc. The comptroller rejects this interpretation as unreasonable. The 1979 legislation, which adopted the definition of "place of business," required each "place of business" to have a sales tax permit. See 66th Legislature, 1979, Ch. 624, §3. That requirement is now in Tax Code, §321.303. It is unreasonable to think that the legislature intended that a maintenance facility would be required to have a sales tax permit. A more reasonable interpretation is that a "place of business," whether it is an outlet, office, or location, "must be operated by a seller for the purpose of receiving orders for taxable items," as the rule requires.

Mr. Mays and other commenters also alleged that there is no reason for the comptroller to amend its rule. But, CASTLE's interpretation of the "purpose" requirement illustrates the need for clarification. The CASTLE interpretation may work at cross-purposes with other commenters who claim the right to source all their sales to their "single place of business." If every taxpayer facility with a business purpose is in fact a "place of business" as CASTLE suggests, many of these commenters may have multiple places of businesses. The adopted rule states the comptroller's interpretation, and sets the stage for a definitive court resolution of the conflict between competing commenters.

Mr. Christian commented on the portion of the definition of "place of business" that excludes orders from "employees, independent contractors, and natural persons affiliated with the seller." He commented that the language was "extra-statutory." The comptroller disagrees. The language has been in the rule since 2014, when it was adopted without adverse comment. It allows a facility to make in-house courtesy sales to workers at the facility without the facility becoming a place of business. Courtesy sales to workers are insufficient to conclude that a facility was established for the purpose of receiving orders.

Mr. Christian and other commenters observed that the statutory definition of "place of business" does not mention sales personnel. However, an agency rule need not be limited to parroting the words of the statute. The courts have said that a rule may not impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *State Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.,* 131 S.W.3d 314, 321 (Tex. App.--Austin 2004, pet. denied). The implication of that statement is that a rule may impose burdens, conditions, or restrictions that are consistent with the relevant statutory provisions. *E.g., id.* at 342 (court approved "formulaic means" not specified in the statute). Previous tax cases have approved comptroller rules that articulated requirements that were not explicitly stated in the statute. *Perry Homes v. Strayhorn,* 108 S.W.3d 444, 448 (Tex. App.--Austin 2003, no pet.); *DuPont Photomasks, Inc. v. Strayhorn,* 219 S.W.3d 414, 422 (Tex. App.--Austin 2006, pet. denied). The reference to sales personnel in the rule is consistent with the statutory reference to a

retailer's employee in the definition of "place of business of the retailer."

As previously stated, the comptroller is adding the sales personnel language to provide an objective criterion for buyers, sellers, and auditors to consider. Does a facility have sales personnel? If it does, it is likely a "place of business" -- an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items. If the facility does not have sales personnel, it is likely not a "place of business." This objective criterion is supported by the previously explained legislative history of the statute.

Mr. Sheets, citing former §3.334(h)(3)(B), commented that "the prior version of Rule 3.334 recognized that an Internet order is received at a place of business while the proposed amendments cause Internet orders to be received nowhere."

The comptroller responds that the comment overstates the effect of the prior rule and misunderstands the effect of the adopted rule. Prior to the 2020 amendments, §3.334(h)(3)(B) provided:

"(B) Order received at a place of business in Texas, fulfilled at a location that is not a place of business. *When an order that is placed* over the telephone, *through the Internet,* or by any means other than in person *is received by the seller at a place of business in Texas,* and the seller fulfills the order at a location that is not a place of business of the seller in Texas, such as a warehouse or distribution center, the sale is consummated at the place of business at which the order for the taxable item is received."

(41 TexReg 260, 265) (2016) (former 34 TAC §3.334(h)(3), emphasis added); (39 TexReg 9597, 9606) (2014) (former 34 TAC §3.334(h)(3), emphasis added).

The former language only meant that a place of business may receive an order through the Internet, or any other method of communication except in-person communication. For example, a sales representative at a place of business in Texas could receive an order through the Internet in the form of a VOIP call or an email. But, the former language did not mean that every Internet order is automatically received at a place of business, as illustrated by the following comptroller rulings before and after the comptroller adopted §3.334 in 2014.

Comptroller Letter Ruling (STAR Accession No.) 200510723L (2005) stated:

"The location of the server does not create a 'place of business' for purposes of local tax collection."

And Comptroller Letter Ruling (STAR Accession No.) 200605592L (2006) similarly stated:

"The location of the server does not create a 'place of business' for purposes of local tax collection."

And Comptroller Letter Ruling (STAR Accession No.) 201906015L (2019) similarly stated:

"COMPANY operates **************'s online marketplace (Website) and various apps used by Texas customers to make online orders. ... Orders placed on the Website or through COMPANY's apps and processed and routed by servers are not received at a place of business."

Furthermore, the adopted rule does not mean that Internet orders are received "nowhere." Internet orders, such and VOIP calls and emails may be received at a place of business. And under subsection (b)(5), an Internet order received by an auto-

CP Ex-40-0004 of 0012

mated shopping cart is received somewhere - at the computer server -- but, that somewhere is not a "place of business of the seller."

*Summary of the Factual Bases for the Rule - Subsections (b)(1) and (c)(7) - Distributions centers, manufacturing plants, storage yards, and warehouses, and when and where an order is "received."*

Subsection (b)(1) provides:

"(1) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller for the purpose of selling taxable items where sales personnel of the seller receive three or more orders for taxable items during the calendar year from persons other than employees, independent contractors, and natural persons affiliated with the seller is a place of business of the seller. Forwarding previously received orders to the facility for fulfilment does not make the facility a place of business.

(B) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller."

And subsection (c)(7) provides:

"(7) The location where the order is received by or on behalf of the seller means the physical location of a seller or third party such as an established outlet, office location, or automated order receipt system operated by or on behalf of the seller where an order is initially received by or on behalf of the seller and not where the order may be subsequently accepted, completed or fulfilled. An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller. The location from which a product is shipped shall not be used in determining the location where the order is received by the seller."

The text of subsection (c)(7) is taken from Section 3.10.1C5 of the Streamlined Sales and Use Tax Agreement (SSUTA). See https://www.streamlinedsalestax.org/docs/default-source/agreement/ssuta/ssuta-as-amended-through-05-24-23-with-hyperlinks-and-compiler-notes-at-end.pdf.

In its 2014 rulemaking, the comptroller proposed a definition of "receive," but deleted the proposed definition in response to concerns stated in oral and written comments. See (39 TexReg 4179) (May 30, 2014) (proposed rule amendment) and (39 TexReg 9598) (December 5, 2014) (adopted rule amendment).

In its January 2023 rulemaking, the comptroller again declined to adopt a definition of "receive" and instead, addressed the two circumstances that were most prominently debated - automated website orders and fulfillment warehouses. Subsection (b) of the adopted rule articulated the comptroller's interpretation that an automated website "receives" the order and that a fulfillment warehouse does not "receive" the order when it is forwarded from the website to the warehouse. See (48 TexReg 400) (January 27, 2023).

Since then, it has become apparent that other circumstances also require a clear articulation of the comptroller's interpretation of the term "received." Thus, the comptroller is adopting a general standard that is applicable to all situations, as well as to automated website orders and fulfillment warehouses.

The adopted standard comports with the ordinary usage of the terms, as evidenced by the fact that the standard has been approved by twenty-four states under the Streamlined Sales Tax Agreement. The adopted standard will also promote uniformity with those states that have elected or will elect origin-based sourcing.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsections (b)(1) and (c)(7).*

Most of the commenters are concerned with the effect of the subsections on fulfillment warehouses and similar facilities. Subsection (b)(1)(A) provides: "Forwarding previously received orders to a facility for fulfillment does not make the facility a place of business." Subsection (c)(7) similarly provides: "The location where an order is received ... means the physical location ... where an order is initially received ... and not where the order may be subsequently accepted, completed or fulfilled."

Subsection (c)(7) explicitly limits receipt to the location where the order is initially received, ruling out intermediate and final locations where an order might be accepted, completed, or fulfilled. Subsection (c)(7) also explicitly states the criteria for determining when an order is received: "An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller."

CASTLE commented that the modifier "initially" is not present in the portion of definition of "place of business" that refers to the location at which orders are "received." CASTLE, and Kyle Kasner in a previous rulemaking proceeding, also commented that the consummation statute in Tax Code, §321.203 sometimes refers to where the retailer "first receives" the order, implying that an order can be "received" at more than one place.

CASTLE also argued that the dictionary defines "receive" as "to take into one's possession, to take delivery of a thing, to get, or to come by," and a fulfillment warehouse cannot fulfill an order unless it gets or comes by the order. This argument may seem reasonable in the abstract, but not in context. When the statute and its legislative history are considered as a whole, the proper construction is the opposite - a fulfillment warehouse does not receive an order for purposes of the local sales tax statutes merely because fulfillment information has been sent to the warehouse.

With regard to statutory construction, the Texas Supreme Court has stated: "We must analyze statutory language in its context, considering the specific sections at issue as well as the statute as a whole. {Citation omitted}. While 'it is not for courts to undertake to make laws "better" by reading language into them,' we must make logical inferences when necessary 'to effect clear legislative intent or avoid an absurd or nonsensical result that the Legislature could not have intended.'" *Castleman v. Internet Money Ltd.,* 546 S.W.3d 684, 688 (Tex. 2018), quoting *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n,* 518 S.W.3d 318, 338 (Tex. 2017).

Considering the local sales tax statute sections as a whole, the term "received" must be limited to the location where an order is initially received. This construction effects the clear legislative intent and avoids an absurd or nonsensical result that the legislature could not have intended.

The legislature did not define "receiving," "received," or "order." So, the terms must be construed in the context in which they

CP Ex-40-0005 of 0012

are used. One context is the definition of "place of business of the retailer" in Tax Code, §321.002(3)(A). A "place of business of a retailer" is a location operated "for the purpose of receiving orders." One might say, as CASTLE does, that a purpose of a fulfillment warehouse is to receive the order because receipt is a necessary step in fulfillment. However, one might also reasonably say that while a sales office is operated for the "purpose of receiving orders," a fulfillment warehouse without sales personnel is not operated for such a purpose - the purpose is only fulfillment, which does not require the receipt of the entire order containing price and payment terms. The only necessary information is delivery information - the product description, quantity, and delivery location. Because there are at least two reasonable interpretations, the terms in this context are ambiguous.

In another context the meaning becomes clearer. That context is the consummation statute in Tax Code, §321.203. Consider Tax Code, §321.203(d):

"(d) If the retailer has more than one place of business in this state and Subsections (c) and (c-1) do not apply, the sale is consummated at:

(1) the place of business of the retailer in this state where the order is received; or

(2) if the order is not received at a place of business of the retailer, the place of business from which the retailer's agent or employee who took the order operates."

Assume a situation in which the retailer has multiple retail stores in Texas (more than one place of business in the state), but a customer calls in an order to a Texas sales office and the order is fulfilled from a location outside of Texas, so that Tax Code, §321.203(c) and (c-1) indisputably do not apply. Also assume that information from the order is forwarded to the retailer's executive office in Texas for approval, to the retailer's Texas credit office for a credit check, to the retailer's Texas manufacturing facility for assembly, to the retailer's Texas storage lot for bundled shipping to a fulfillment center, to the retailer's fulfillment center for fulfillment to the customer, to the retailer's Texas accounting office for billing, and to the retailer's Texas controller for collection on the account.

In the sense proposed by CASTLE, all these locations "received" the "order" to complete their assigned tasks. But this interpretation leads to absurd results. If the "order" was "received" at multiple locations, so that each location became a "place of business," it would be impossible to identify the particular location where the local tax should be sourced.

Furthermore, Tax Code, §321.203(d) refers to "*the* place of business ... where the order is received," indicating that there is a singular location where the order is received. The most reasonable singular location, and perhaps the only reasonable singular location, is where the information necessary to accept the order is initially received as provided in subsection (c)(7). In the example above, the location where the order is received would be the Texas sales office.

This example regarding Tax Code, §321.203(d) also illustrates the need for additional clarity. Subsection (b)(1)(A) explicitly provides that a fulfillment center is not a "place of business" simply because orders may be forwarded to the facility for fulfillment. But subsection (b)(1)(A) does not explicitly eliminate the possibility that other locations are "places of business," such as locations where orders are accepted or otherwise completed. Subsection (c)(7) explicitly eliminates those possibilities. There is a single

location where an order is received - the initial location where all the information necessary for acceptance has been received. With this clarification, the consummation statute can be applied with greater certainty.

CASTLE commented: "For all practical purposes an order placed on a website is typically received at the same time at various locations, including fulfillment centers." However, for the practical purpose of sourcing local tax, there is a single location where a website order is initially received - the Web server. According to a report from the group's own expert, Amit Basu: "...the Buyer places the online order by communicating with a Web server that manages the Seller's Web site. ... The Web server transmits the order electronically to the Seller's e-Commerce software program."

Mr. Kroll commented that it may be impossible to determine the location of initial receipt: "Some companies will have multiple redundant server/data center operations spread across multiple geographic locations." The comptroller agrees. As pointed out in the 2020 rulemaking, a computer server may be situated on the seller's premises, it may be situated at a co-location facility operated by a third party, or it may be situated at a web hosting facility operated by a third party. The computer server may be one of multiple servers that serve the same website from different physical addresses as part of a cloud distribution network. The computer server may route the order to multiple other servers for load balancing purposes. Conversely, a single computer server may serve multiple websites. The seller may or may not know the physical address of the server receiving the order. If the seller does not even know the physical location of the server, an ordinary person would not consider the physical location of the computer server to be a place of business of the seller. So, the best way to treat these orders consistently and coherently is to treat them uniformly as being received at locations that are not places of business of the seller. If a server is not a "place of business" of the seller, then the exact location of the server does not have to be determined because the location will not determine the sourcing of local sales tax.

The comptroller's application of the statute to fulfillment centers is also supported by statutory history. Prior to 1979, the consummation statute had no provision for sourcing to where an "order" was "received," and the statute provided:

"If the retailer has more than one place of business in the State, the place or places at which retail sales, leases, and rentals are consummated shall be the retailer's place or places where the purchaser or lessee takes possession and removes from the retailer's premises the articles of tangible personal property, or if the retailer delivers the tangible personal property to a point designated by the purchaser or lessee, then the sales, leases, or rentals are consummated at the retailer's place or places of business from which tangible personal property is delivered to the purchaser or lessee." Acts 1969, 61st Leg., 2nd C.S., Ch. 1. Art. 1 §42.

In 1979, the Texas Legislature added a definition of "place of business of the retailer," which was previously undefined. The definition required that the location be operated "for the purpose of receiving orders." Acts 1979, 66th Legislature, Ch. 624, Art. 1, §3 (amended Article 1066c(B)(1)). The legislature also added a sourcing provision based on where the order is received, comparable to current Tax Code, §321.203(d):

"If neither possession of tangible personal property is taken at nor shipment or delivery of the tangible personal property is

CP Ex-40-0006 of 0012

made from the retailer's place of business within this State, the sale, lease, or rental is consummated at the retailer's place of business within the State where the order is received or if the order is not received at a place of business of the retailer, at the place of business from which the retailer's salesman who took the order operates."

Acts 1979, 66th Legislature, Ch. 624, Art. 1, §3 (amended Article 1066c(B)(1)(c)). Like current Tax Code, §321.203(d), the legislature referred to "*the* place of business ... where the order is received," contemplating a single location, and not multiple locations. And like the current statute, the 1979 sourcing statute would be unworkable if an "order" could be "received" at multiple locations where order information might be sent for processing.

The 1979 amendments were originally set to expire on August 31, 1981. But, following an October 2, 1980, Interim Report of the House Ways and Means Committee, the legislature made the 1979 amendments permanent. Acts 1981, 67th Legislature, Ch. 838, §1.

Mr. Kroll commented that the comptroller "misremembers the legislative history." The comptroller disagrees. During the 1979 session of the legislature, a House Study Group analysis stated that the "bill is necessary to protect the state from possible consequences of the pending court suits." The analysis specifically referenced *"Dunigan Tool and Supply v. Bullock"* as one of those suits. The analysis is available at the Legislative Reference Library website at https://lrl.texas.gov/scanned/hro-BillAnalyses/66-0/SB582.pdf.

In the *Dunigan* litigation, sales personnel took orders that were forwarded to pipe storage facilities where the orders were fulfilled. At the time of the 1979 legislation, the district court had ruled that the transactions should be sourced to the pipe storage facilities. *Bullock v. Dunigan Tool & Supply Co.,* 588 S.W.2d 633, 635 (Tex. Civ. App. - Austin, Sept. 6, 1979, writ ref'd n.r.e.). Therefore, when the 1979 House Study Group bill analysis stated that the bill was intended to protect the state from the consequences of the Dunnigan litigation, the analysis meant that the legislation was intended to reduce the circumstances in which transactions would be sourced to fulfillment warehouses, which at the time were often located in rural areas not subject to local sales tax. The legislature accomplished this objective by adding a definition of "place of business" that was limited to a location operated "for the purpose of receiving orders," and by adding a provision for sourcing transactions to where the order was received. Acts 1979, 66th Legislature, Ch. 624, Art. 1, §3.

Mr. Kasner in a previous rulemaking proceeding commented that the proposed rule reverses the effect of the *Dunigan* decision. He is correct, because the rule attempts to follow the subsequent legislation, which was intended to reverse the effect of the Dunigan decision.

In the subsequent October 2, 1980, Interim Report of the House Ways and Means Committee, the committee considered whether to allow the recently adopted statutory definition of "place of business" to expire. The committee described the consequence: "The location of sale would no longer be tied to permitted outlets, salesmen's locations, or sales offices." Interim Report at 20. The committee understood that the phrase "operated for the purpose of receiving orders" meant sales activities and not ancillary activities necessary to subsequently effectuate the sale.

To be clear, under the 1979 legislation and today, a fulfillment warehouse could be and can be a "place of business." The legislature set a low threshold: "A warehouse, storage yard, or manu-facturing plant may not be considered a 'place of business of the retailer' unless three or more orders are received by the retailer in a calendar year at such warehouse, storage yard, or manufacturing plant." Acts 1979, 66th Legislature, Ch. 624, Art. 1, §3. A typical warehouse, storage yard, or manufacturing plant would almost certainly process more than three orders in a calendar year. So, this explicit threshold requirement is an additional indication that the legislature did not intend for these facilities to automatically be "places of business" simply because they processed order information that was previously received at other locations. Instead, the legislature set a low threshold yet still expected these facilities to engage in at least some sales activities.

Mr. Gilmore commented: "This is a major revision to a state practice that has been in place for more than 50 years." CASTLE commented that the amendment is "inconsistent with his {the comptroller's} pre-2019 application of the statutory definition of 'place of business.'" The comptroller disagrees with these comments.

First, the comptroller's treatment of fulfillment warehouses goes as far back as Comptroller's Decision No. 15,654 (1985), which stated (emphasis added):

"But it seems to the administrative law judge that the legislature was amending the law if not entirely in reaction to the then-pending case of *Bullock v. Dunigan Tool & Supply Co.,* 588 S.W.2d 633 (Tex. Civ. App.-Texarkana, writ ref'd n.r.e.), at least partly in reaction to that case. And if that be so, then the legislature did not want warehousing and storage facilities (many of which are outside city limits) to be the places where sales were consummated for local sales tax purposes unless orders were actually received there by personnel working there, but wanted the office location out of which the salesman operated to be the place where the sales were consummated."

CASTLE commented: "The Comptroller misreads the decision." But, the text of the decision speaks for itself: "the legislature ... wanted the office location out of which the salesman operated to be the place where the sales were consummated."

Second, the text of former §3.334(h)(3) indicated that a fulfillment center is not automatically a "place of business" for local sourcing (emphasis added):

"(3) Consummation of sale. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state.

...

(B) Order received at a place of business in Texas, fulfilled at a location that is not a place of business. When an order that is placed over the telephone, through the Internet, or by any means other than in person is received by the seller at a place of business in Texas, and the seller *fulfills the order at a location that is not a place of business of the seller in Texas,* such as a warehouse or distribution center, the sale is consummated at the place of business at which the order for the taxable item is received.

...

(D) Order fulfilled within the state at a location that is not a place of business. When an order is received by a seller at any location other than a place of business of the seller in this state, and the seller *fulfills the order at a location in Texas that is not a place of business of the seller,* then the sale is consummated at the

location in Texas to which the order is shipped or delivered, or the location where it is transferred to the purchaser."

(41 TexReg 260, 265) (2016) (former 34 TAC §3.334(h)(3), emphasis added); (39 TexReg 9597, 9606) (2014) (former 34 TAC §3.334(h)(3), emphasis added).

Third, the consummation rules in former §3.334(h)(3) were augmented with an explicit provision for fulfillment centers, which the former rule referred to as "distribution centers" (emphasis added):

"(2) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller at which the seller receives three or more orders for taxable items during the calendar year is a place of business.

(B) If a salesperson who receives three or more orders for taxable items within a calendar year is assigned to work from, or to work at, a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, *then* the facility is a place of business.

(C) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, *then* the entire facility is a place of business of the seller."

(41 TexReg 260, 263) (2016) (former 34 TAC §3.334(e)(2), emphasis added); (39 TexReg 9597, 9605) (2014) (former 34 TAC §3.334(e)(2), emphasis added).

If a distribution center were automatically a "place of business" for local tax sourcing as the Plaintiff cities contend, subparagraphs (B) and (C) would not be required - there would be no need for a salesperson or a sales office to "then" make the distribution center a "place of business" for local tax sourcing purposes.

Fourth, in addition to its rule, the comptroller distributed Publication 94-105, sometimes called the "Local Sales and Use Tax Bulletin - Guidelines for Collecting Local Sales and Use Tax," or "Tax Topics - Guidelines of Collecting Local Sales and Use Tax" (Guidelines). These Guidelines were posted on the comptroller's website and indexed in the comptroller's State Tax Automated Research System. Since at least 2007, the Guidelines referred to a "location within the state that is not a place of business (such as a warehouse or distribution center)." E.g., STAR Accession No. 200902596L (February 2009). The Guidelines were intended as a general guide and not as a comprehensive resource. But, an ordinary reader would not walk away with the impression that a taxpayer's fulfillment center was automatically a "place of business" for purposes of local tax sourcing.

Fifth, in 2016, the comptroller rewrote the Guidelines to be even more specific regarding fulfillment centers: "The warehouse from which the person ships those items is not a place of business, unless the warehouse separately qualifies as a place of business." STAR Accession No. 201606995L (June 1, 2016).

And, sixth, in 2019, a comptroller letter ruling discussed fulfillment centers, referring to the former rule, then in effect: "Scenario One: Taxpayer Retailer operates fulfillment centers in Texas that are not open to the public. ... When an order is received at a location that is not a place of business and is *fulfilled in Texas at a location that is not a place of business,* the

sale is consummated at the location in Texas to which the order is shipped. See §3.334(h)(3)(D). For Scenario One, local sales and use tax is due based on the location where the order is delivered." STAR Accession No. 201906015L (June 13, 2019) (emphasis added).

Each of these documents, which predate the rulemaking, and which the comptroller indexed and made available for public inspection on the State Tax Automated Research (STAR) System, is consistent with the statement in the rule that the location from which a product is shipped shall not be used in determining the location where the order is received by the seller.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - The use of language from the SSUTA in subsection (c)(7).*

In the rulemaking that adopted subsection (c))(7), the comptroller received comments that are discussed below.

Mr. Kroll commented: "The Texas Legislature, (the entity with constitutional responsibility for the state's Tax Policy), has had nine regular sessions to adopt the SSUTA's preferred origin sourcing model found in SSUTA 3.10.1. The Legislature has not acted, even in 2013 when then Senator Hegar was chairing the Senate Finance, Subcommittee on Fiscal Matters with Tax policy responsibility."

CASTLE similarly commented: "the Legislature, in general, rejected the Comptroller's efforts to become a member and be subject to the Agreement, and, more specifically, declined to adopt the language of 3.10.1 and change the definition of what is a 'place of business.'"

Mr. Land commented: "By not adopting the agreement, the legislature was rejecting the very language the Comptroller proposes to adopt..."

Clyde Hairston, Mayor of the City of Lancaster, commented: "Rule changes refer to the Streamline Sales and Use Tax Agreement. States participating in this agreement do not seem to have similar economic issues as the State of Texas. If the intent of the rule change is to position the state to participate in the Sales and Use Tax Agreement, further research is needed to better support the rationale for this action."

And, Rolin McPhee, City Manager of the City of Longview, commented: "This sentiment runs counter to the story of Texas. Yes, we should look to and learn from other states, but Texas should lead and not follow. We should not implement statewide policies because 'everyone else is doing it.'"

David Bristol, Mayor of the City of Prosper, had similar comments.

Although the legislature declined to adopt the SSUTA, it would be an overstatement to suggest that the legislature specifically rejected the language of a single subsection of the SSUTA. As CASTLE pointed out: "Therefore, prior to December 31, 2007, the Legislature had to agree to the quoted 3.10.1 language, as a step in allowing Texas to be subject to the Agreement. But doing so would have required not only that the Legislature radically revise the statutory definition of 'place of business' but make many other changes to the sections of the Tax Code addressing sales and use tax."

Texas has a unique, composite consummation statute, in which sales are sometimes sourced to where the order is received, sometimes sourced to where the order is fulfilled, and sometimes sourced to where the order is delivered. Adoption of the SSUTA

CP Ex-40-0008 of 0012

would require fundamental changes to this composite consummation statute, which the comptroller is not advocating or promoting. However, there is one area of overlap. Both systems use the receipt of an order as a factor in sourcing. In this area of overlap, it is entirely appropriate to consider how the SSUTA does it.

The comptroller has considered the language in the SSUTA and concluded that it is a reasonable and practical method of determining where and when an order is received. And, the SSUTA language has the added benefit of being a concept that other states have acknowledged, and a concept with which many taxpayers will already be familiar.

*Summary of the Factual Bases for the Rule - Subsection (c) - Application of the consummation rules.*

Subsection (c) states in relevant part:

"The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas."

The language of subsection (c) tracks the language in the prior 2014 and 2016 versions of the rule:

"The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state."

(41 TexReg 260, 265) (2016) (former 34 TAC §3.334(h)(3); (39 TexReg 9597, 9606) (2014) (former 34 TAC §3.334(h)(3)).

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsection (c).*

Mr. Sheets commented that the rule changes how Internet orders are sourced for retailers with a single place of business in Texas. However, the language of subsection (c) has the same effect as the language in the prior 2014 and 2016 versions of the rule - no special treatment for vendors with a single "place of business."

Mr. Sheets commented that the rule conflicts with Tax Code, §321.203(b), which provides:

"(b) If a retailer has only one place of business in this state, all of the retailer's retail sales of taxable items are consummated at that place of business except as provided by Subsection (e)."

Tax Code, §321.203(b) describes the consummation principles for a seller that has only one place of business in the state. In the comptroller's view, those principles are consistent with the treatment of other sellers and do not require special treatment in the rule.

As a matter of statutory construction, Tax Code, §321.203(b) should be viewed in the context of the statute as a whole. *Castleman v. Internet Money Ltd.,* 546 S.W.3d 684, 688 (Tex. 2018). When the statute is considered as a whole, the only reasonable interpretation is that all retail sales associated with a single place of business are consummated at that single place of business, regardless of whether the order was placed in person there, the order was received there from a purchaser at another location, or the order was fulfilled there. But, the statute cannot reasonably mean that an order with no connection to that place of business would be consummated there.

Tax Code, §321.203 establishes a hierarchy among places of business involved in a transaction, subject to certain exceptions. The hierarchy is described in a summary chart in the Comptroller's Guide for Sellers. See https://comptroller.texas.gov/taxes/publications/94-105.php (Local Sales and Use Tax Collection - A Guide for Sellers). If an order is fulfilled from a place of business of the seller in Texas, the sale is consummated at that location even if the order is received at another place of business in Texas (except for orders received in person). Conversely, an order is consummated at the place of business of the seller in Texas where the order is received only if the order was not fulfilled from a place of business in Texas (except for orders received in person). Subsection (c) of the comptroller rule reflects this hierarchy.

The statutory provision in Tax Code, §321.203(b), for a seller with a single place of business in Texas, is simply a recognition that the hierarchy is not required in those circumstances. The outcome will be the same regardless of whether the order is received, fulfilled, or received and fulfilled from that place of business, and regardless of whether the order is placed at that location in person - the sale will be consummated at that place of business.

But the place of business must have a discrete connection to the sale for the sale to be consummated there. Tax Code, §321.203(b) cannot reasonably be interpreted to mean that a sale is consummated at the seller's single place of business in Texas, even if that place of business did not receive the order from the customer, did not fulfill the order to the customer, and was not the location where the order was delivered.

Suppose a reseller has a single place of business, located in City A, that consists only of a sales office. The reseller also has a fully-automated shopping website hosted by a server in City B that receives and processes an order from a customer in City C. The order is then fulfilled from a third-party manufacturer's warehouse in City D and shipped to the customer in City C. To make the customer in City C pay local sales tax to City A, a jurisdiction that had no relation to the customer or the transaction, would be an unreasonable reading of the statute that the Legislature could not have intended. See, *Castleman v. Internet Money Ltd.,* 546 S.W.3d 684, 688 (Tex. 2018) (making "logical inferences" necessary "to avoid an absurd or nonsensical result that the Legislature could not have intended.").

Another rule of statutory construction is that compliance with the constitutions of this State and the United States is intended. Government Code, §311.021(a). In the tax arena, as elsewhere, the United States Constitution requires due process. In tax cases, the United States Supreme Court has stated that due process "centrally concerns the fundamental fairness of governmental activity." *N. Carolina Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Family Tr.,* 139 S. Ct. 2213, 2219, (2019), quoting *Quill v. North Dakota,* 504 U.S. 298, 312 (1992).

The "due course of law" provision of the Texas constitution provides protections similar to, and in some instances, greater than the protections in the federal due process clause. *Patel v. Tex. Dep't of Licensing & Regulation,* 469 S.W.3d 69, 86-87 (Tex. 2015) ("the Texas due course of law protections in Article I, §19, for the most part, align with the protections found in the Fourteenth Amendment to the United States Constitution. But, ... Section 19's substantive due course provisions undoubtedly were intended to bear at least some burden for protecting individual rights that the United States Supreme Court determined were not protected by the federal Constitution.").

CP Ex-40-0009 of 0012

A statute violates the Texas due course of law protection if the "statute's actual, real-world effect as applied to the challenging party could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest." *Id.* at 87.

The actual, real-world effect of Mr. Sheet's interpretation could not arguably be rationally related to, or is so burdensome as to be oppressive to taxpayers in light of, the governmental interest in local taxation. Specifically, there is no rational connection or sufficient government interest to make a purchaser in City C pay sales tax to City A simply because the vendor arranged its business such that it had a single sales office in City A that had nothing to do with the transaction.

Mr. Sheets commented that procedural due process requirements do not apply because Tax Code, §321.203(b) is the result of legislative action. However, the comptroller's statutory interpretation is based on substantive due process. See, *Patel,* 469 S.W.3d at 75.

Mr. Sheets also proposes to add a "special" exception for sellers with a single place of business in Texas. The comptroller declines to make the proposed revisions for the reasons stated in the preceding paragraphs. The City of Round Rock is challenging the comptroller's interpretation in the pending litigation. Again, it is appropriate to state the comptroller's interpretation in the rule so that those who disagree may challenge the interpretation in court.

*Summary of the Factual Bases for the Rule - Subsection (b)(4) - Order received by a salesperson who is not at a place of business when the salesperson receives the order.*

Subsection (b)(4) provides:

"(4) An order that is received by a salesperson who is not at a place of business of the seller when the salesperson receives the order is treated as being received at the location from which the salesperson operates. Examples include orders that a salesperson receives by mail, telephone, including Voice over Internet Protocol and cellular phone calls, facsimile, and email while traveling. The location from which the salesperson operates is the principal fixed location where the salesperson conducts work-related activities. The location from which a salesperson operates will be a place of business of the seller only if the location meets the definition of a 'place of business of a seller' in subsection (a)(16) of this section on its own, without regard to the orders imputed to that location by this paragraph."

Tax Code, §321.203(d) provides for consummation of a local sale at the place of business "from which the retailer's agent or employee who took the order operates." Prior to the 2020 amendment, the rule did not define the location from which a salesperson operates. The third sentence of subsection (b)(4) now provides in part: "The location from which the salesperson operates is the principal fixed location from which the salesperson conducts work-related activities..." A physical connection between the salesperson and the place of business is a reasonable interpretation of the location from which a salesperson operates.

The final sentence of subsection (b)(4) clarifies that the principal fixed location from which the salesperson conducts work-related activities may or may not be a place of business of the seller, depending upon whether the location meets the definitional requirements of subsection (a)(16). For example, if an entrepreneur conducts sales operations from the entrepreneur's residence, the entrepreneur will be operating out of a place of

business of the seller. But if a person performs contract telemarketing from the person's residence, the person will not be operating out of a place of business of the seller because the residence is not "operated by the seller," as required by subsection (a)(16).

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsection (b)(4).*

In the rulemaking that adopted subsection (b)(4), Mr. Kroll commented that subsection (b)(4) "no longer imputes the order to the place of business where the employee is assigned, and that the new policy does not accurately or easily reflect the mobile workforce of today." And Brian Pannell, North America Tax Director for Dell Inc., commented that subsection (b)(4) deviates from Tax Code, §321.203(d)(2) and "effectively changes sourcing rules for salespersons who are assigned to regional places of business but do their principal work-related activities at other locations."

The comptroller disagrees with these comments. Tax Code, §321.203(d) does not impute an order to the location where a salesperson is "assigned." Instead, the statute provides that in certain circumstances, an order may be imputed to the "place of business from which the retailer's agent or employee who took the order operates." And, although an order may be imputed to a place of business of the retailer if the agent or employee operates out of that place of business, the statute does not mandate that an agent or employee be assigned to, or operate out of, a place of business. If an agent or employee does not operate out of a place of business, Tax Code, §321.203(d) has no application. And, it would be unreasonable to allow a vendor to source sales to a place of business by merely "assigning" a salesperson to that location in the absence of any physical connection.

*Summary of the Factual Bases for the Rule - Subsection (b)(6) -small and micro-businesses.*

The comptroller adds subsection (b)(6) to the former rule:

"If a small business or a micro-business operates a single location out of which it conducts all of its business activities, the comptroller will presume that the location is a place of business of the seller."

The comptroller also adds following supporting definitions to subsection (a):

"Independently owned and operated business--a self-controlling entity that is not a subsidiary of another entity or otherwise subject to control by another entity, and that is not publicly traded."

"Micro-business--a legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has not more than 20 employees."

"Small business--a legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has fewer than 100 employees or less than $6 million in annual gross receipts."

The definition of "independently owned and operated business" is taken from Government Code, Chapter 2006, Small Busi-

nesses and Rural Communities Impact Guidelines, updated in December 2017.

The definitions of "micro-business" and "small business" are taken from Government Code, Chapter 2006.

The comptroller cannot make a location a "place of business" by rule if the statute does not allow it. But, the agency can presume that a location is a "place of business" based on indicative facts, such as a small, independent business that conducts all of its business operations out of a single location.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsection (b)6).*

Mr. Sheets commented that the subsection does nothing to reduce the adverse economic effects on small and microbusinesses. Mr. Land commented that there is no rational policy reason for treating businesses differently based upon size or revenue, and Mr. Gilmore questioned the reasoning behind the differentiation. CASTLE commented that the presumption is contrary to the law and factually unsupported. And, Mr. Christian commented that the presumption should be expanded.

The comptroller responds that the agency routinely uses presumptions in applying statutes, and the courts have honored them. A word search of the Texas Administrative Code produces over 60 instances in which the comptroller rules use presumptions. For example, the Austin Court of Appeals recognized that "repainting is presumed to be a taxable activity unless the taxpayer affirmatively shows that the repainting meets the specific requisites of maintenance as set out in the rule." *GATX Terminals Corp. v. Rylander,* 78 S.W.3d 630, 635 (Tex. App. - Austin 2002, no pet.); 34 TAC §3.357(b)(8).

The rational policy reason for special treatment, and the size and revenue requirements have been mandated by the Texas Legislature in Government Code, Chapter 2006. And, the parameters are appropriate for the presumption. It is reasonable to assume that a small business or a micro-business that operates a single location out of which it conducts all of its business activities will receive three or more orders per calendar year at that location, making that location a place of business of the seller. It is less reasonable to make that assumption if the business operates out of more than one location, or if the business is an affiliate of another, creating the possibility that the order receipt and order fulfillment may occur in different locations.

*Summary of the Factual Bases for the Rule - Subsections (c)(2)(B)(ii), (d)(2), and (i) - Seller's obligation to collect local use tax.*

Subsection (c)(2)(B)(ii) provides that a remote seller that is required to collect state use tax must also collect local use tax. Subsection (d)(2) and subsection (i) provide that a non-remote seller is responsible for collecting local use tax regardless of the location of the seller in Texas. Physical presence in the local jurisdiction is no longer required. These expansions of the local sales tax collection responsibilities of sellers are based on the United States Supreme Court decision in *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018).

The comptroller received no negative submissions or proposals regarding these subsections.

*Summary of the Factual Bases for the Rule - Subsection (i)(3) - Single local tax option for remote sellers.*

Subsection (i)(3) implements House Bill 2153, 86th Legislature, 2019, which sets a single local use tax rate that remote sellers may elect to use.

The comptroller received no negative submissions or proposals regarding this subsection.

*Summary of the Factual Bases for the Rule - Subsection (k)(5) - Marketplace sales.*

Subsection (k)(5) implemented House Bill 1525, 86th Legislature, 2019, which places local sales and use tax collection responsibilities on marketplace providers.

The comptroller received no negative submissions or proposals regarding this subsection.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Public benefits and costs.*

Mr. Christian commented that there will be a significant fiscal implication for businesses that must invest in reprogramming software for enhanced local tax compliance, and the economic cost to the public must be estimated. Mr. Gilmore, Mr. Land, Mr. Sheets, and Mr. Mays also commented that the rule will increase business compliance costs.

The comptroller acknowledges that there may be additional compliance costs, since it is conceivable that the rule may cause some vendors to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase. And if vendors change from multiple-location reporting to single-location reporting, their compliance burden may diminish.

The total net economic cost cannot be reliably estimated for reasons explained in the preamble to the proposed rule. The comptroller cannot determine the number of vendors that would change from single-location report to multiple-location reporting. Furthermore, the cost of compliance with the statute cannot be a factor in the rulemaking because compliance with the statute is required with or without the rule.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Revenue Effect*

The preamble to the proposed rule explained the methodology that the comptroller used to estimate the revenue effect. Mr. Mays, Mr. Sheets, Mr. Gilmore, Mr. Land, and CASTLE all commented that the analysis of the revenue impact on cities was insufficient, but did not identify any errors in the assumptions that the agency used in the estimate.

CASTLE contends that "there must be a dollar amount specific to each local government or a dollar amount that can be easily calculated from the methodology used by the Comptroller to generate an estimate." The comptroller responds that Government Code, §2001.024 has never been interpreted by any agency or any court to require individual estimates. There are over 1,700 local governments in Texas with a local sales tax. In all prior rulemakings, the comptroller has never estimated the loss of or increase in local sales tax revenue for each local government in Texas with a local sales tax. And, the comptroller is unaware of any other agency that has made individual estimates for each local government.

Furthermore, the statute does not require the comptroller to articulate a methodology for individual estimates that the agency is not required to make. If an individual jurisdiction wants to con-

CP Ex-40-0011 of 0012

duct its own investigation, the preamble to the proposed rule explained the data that the jurisdiction would have to obtain, and the preamble explained how a consultant used the data in his study. See, (49 TexReg 2440, 2443) (April 19, 2024).

CASTLE suggests that the comptroller could develop a sample of local governments. The comptroller responds that Government Code, §2001.024 does not require sampling. Furthermore, an aggregate estimate based on sample of individual jurisdictions would do little to tell individual jurisdictions how they would be affected.

Mr. Sheets suggested that the comptroller could have undertaken alternatives, such as making estimates for the top twenty most populated jurisdictions or making estimates for the cities involved in the lawsuit. The comptroller responds that Government Code, §2001.024 does not require selective, individual estimates.

The Administrative Procedure Act only requires a fiscal note showing "the estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule." Government Code, §2001.024(a)(4)(C). The comptroller has done that. In addition, the rulemaking process has disclosed the types of cities and taxpayers that may be most affected - cities receiving substantial tax revenues from fulfillment centers, such as the CASTLE group, and cities receiving substantial tax revenues from taxpayers sourcing all their sales to a single location, such as the City of Round Rock.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Local employment impact statement.*

CASTLE commented that the comptroller "fails to provide a non-conclusory explanation of why the impact cannot be determined." The comptroller disagrees. The explanation is stated in the preamble of the proposed rule.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Government growth impact statement.*

CASTLE comments that the preamble to the proposed rule "fails to discuss in any meaningful way" the government growth statement required by Government Code, §2001.0221. Comptroller Rule 11.1(d) states that an agency shall "reasonably describe" the effect on government growth. 34 TAC §11.1(d). Historically, the reasonable descriptions published by the comptroller, as well as other agencies, consist of statements of no effect without explanation, and statements of effect with brief explanations. The comptroller followed the historical approach in this rulemaking.

CASTLE comments that the rule will create or eliminate a government program if a local government loses significant local sales tax revenue. The comptroller responds that the rule itself does not create or eliminate a government program. The creation or elimination of local government programs is at the discretion of local governments.

CASTLE also comments that "the Comptroller has already admitted that there will be a decrease in the fees he receives." The comptroller acknowledges that to the extent that transactions previously sourced within an incorporated municipality would be sourced to an unincorporated area without a cumulative local tax rate levied by municipal (pursuant to a limited purpose annexation agreement), county, and/or special purpose taxing authorities commensurate with the cumulative local tax rate levied by the municipal, county, and/or special purpose taxing authorities

applicable where the transactions were formerly sourced, there would be a reduction in aggregate local sales tax levies and consequent reduction in state service charge revenues under Tax Code, §§321.503, 322.303, and 323.503.

*Statement of the statutory or other authority under which the rule is adopted.*

Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture), 321.306 (Comptroller's Rules), 322.203 (Comptroller's Rules), and 323.306 (Comptroller's Rules) authorize the comptroller to adopt rules to implement the tax statutes.

*Sections or articles of the code affected.*

Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; and Tax Code, Chapter 323 are affected.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on June 14, 2024.

TRD-202402641
Jenny Burleson
Director, Tax Policy Division
Comptroller of Public Accounts
Effective date: July 4, 2024
Proposal publication date: April 19, 2024
For further information, please call: (512) 475-2220



# CHAPTER 5. FUNDS MANAGEMENT (FISCAL AFFAIRS)
# SUBCHAPTER D. CLAIMS PROCESSING--PAYROLL

**34 TAC §5.46**

The Comptroller of Public Accounts adopts amendments to §5.46 concerning deductions for paying membership fees to certain state employee organizations, without changes to the proposed text as published in the May 3, 2024, issue of the *Texas Register* (49 TexReg 2985). The rule will not be republished.

The amendments add a definition of CAPPS in new subsection (a)(1) and renumber the subsequent provisions accordingly.

The amendments to subsections (b)(1)(C) and (b)(2)(B) add a second method of establishing, changing or cancelling a payroll deduction for state employee organization membership fees. These provisions currently allow a state employee to establish, change or cancel a payroll deduction by submitting a written authorization form to the employer's human resource officer or payroll officer. The amendments to these provisions also allow a state employee to establish, change or cancel a payroll deduction by submitting an electronic authorization through CAPPS.

The amendments to subsection (b)(2)(D) make a conforming change to require state agencies to notify the affected eligible organization if a state employee submits an electronic authorization form through CAPPS cancelling a payroll deduction for state employee organization membership fees.

CP Ex-40-0012 of 0012

# TAB
# J

HOW THE STATUTORY DEFINITION OF PLACE OF BUSINESS OF THE RETAILER READS

UNDER THE 2024 VERSION OF RULE 3.334

"Place of business of the retailer" means an established outlet, office, or location operated by the retailer or the retailer's agent or employee for the purpose of having sales personnel receive orders for taxable items and includes any location at which three or more orders are received by sales personnel of the retailer during a calendar year. Any such established outlet, office, or location operated by the retailer or the retailer's agent or employee cannot include a computer server, Internet protocol address, domain name, website, or software application and must be the location where an order is initially received by or on behalf of the seller and not where the order may be subsequently forwarded, accepted, completed or fulfilled. An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller by sales personnel. The location from which a product is shipped shall not be used in determining the location where the order is received by the seller. A warehouse, storage yard, or manufacturing plant is not a "place of business of the retailer" unless at least three orders are received by the retailer as set forth above during the calendar year at the warehouse, storage yard, or manufacturing plant.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Richard Phillips on behalf of Richard Phillips Jr.
Bar No. 24032833
Rich.Phillips@hklaw.com
Envelope ID: 106158677
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Coppell Parties' Opening Brief as Appellants
Status as of 9/29/2025 7:24 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 9/26/2025 10:33:15 PM | SENT |
| Bryan Dotson | 24072769 | bryan.dotson@chamberlainlaw.com | 9/26/2025 10:33:15 PM | SENT |
| Ray Langenberg | 11911200 | ray.langenberg@cpa.texas.gov | 9/26/2025 10:33:15 PM | SENT |
| Reed Randel | 24075780 | Reed.Randel@hklaw.com | 9/26/2025 10:33:15 PM | SENT |
| Stephen Fink | 7013500 | Stephen.Fink@hklaw.com | 9/26/2025 10:33:15 PM | SENT |
| James Harris | 9065400 | jim.harris@hklaw.com | 9/26/2025 10:33:15 PM | SENT |
| Kyle Counce | 24082862 | Kyle.Counce@oag.texas.gov | 9/26/2025 10:33:15 PM | SENT |
| Cynthia Bourland | 790343 | bourland@bourlandlaw.com | 9/26/2025 10:33:15 PM | SENT |
| Brandon L.King | | brandon.king@hklaw.com | 9/26/2025 10:33:15 PM | SENT |